No. 25-1355

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BACARDI & COMPANY LIMITED; BACARDI USA, INC.,

*Plaintiffs-Appellants*,

v.

UNITED STATES PATENT & TRADEMARK OFFICE; COKE MORGAN STEWART, IN HER OFFICIAL CAPACITY AS THE ACTING DIRECTOR OF THE UNITED STATES PATENT & TRADEMARK OFFICE,

*Defendants-Appellees*,

and

EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS,

*Intervenor/Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia

# JOINT APPENDIX

Daniel Tenny
Weili J. Shaw
Attorneys, Appellate Staff
Civil Division, Room 7240
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 514-1371

*Counsel for Defendants-Appellees United States Patent & Trademark Office and Coke Morgan Stewart, Acting Director of the United States Patent & Trademark Office*

David M. Zionts
Alexander J. Cave
Yevgeniy Pilipovskiy
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Additional counsel for Plaintiffs-Appellants Bacardi & Company Limited and Bacardi USA, Inc. on next page*

David H. Bernstein
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6696

*Counsel for Intervenor/
Defendant-Appellee Empresa
Cubana Exportadora de
Alimentos y Productos Varios*

Michael C. Lynch
Damon W. Suden
Edwin Adlam Herod
KELLEY DRYE & WARREN, LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800

*Counsel for Plaintiffs-Appellants
Bacardi & Company Limited
and Bacardi USA, Inc.*

# TABLE OF CONTENTS

**Page**

District Court Docket Sheet ................................................................. JA1

Complaint, Docket No. 1 (filed Dec. 28, 2021) ..................................... JA8

Notice of Filing of Administrative Record, Docket No. 48
(filed Sept. 17, 2024) ........................................................................ JA51

Administrative Record, Docket Nos. 48-1 to 48-3 (filed Sept. 17, 2024)

    Certification of Accuracy of Administrative Record by
    USPTO Director (Sept. 17, 2024) ................................................... JA53

    Incoming Correspondence with application for renewal
    of Registration No. 1,031,651 (Dec. 14, 2005) ................................. JA57

    Incoming Facsimile with Petition to Director
    (Jan. 25, 2006) .............................................................................. JA140

    Incoming Facsimile in response to January 11, 2006 letter
    from counsel for Bacardi & Company Limited and
    Bacardi USA, Inc. (hereinafter "Bacardi")
    (Jan. 30, 2006) .............................................................................. JA170

    Incoming Correspondence (confirmation copy of facsimile)
    (Jan. 31, 2006) .............................................................................. JA174

    Outgoing Facsimile re Trademark General Query
    (Feb. 2, 2006) ............................................................................... JA177

    Incoming Facsimile to Commissioner for Trademarks
    (Feb. 14, 2006) ............................................................................. JA182

    Incoming Correspondence (confirmation copy of facsimile)
    (Feb. 15, 2006) ............................................................................. JA185

Incoming Facsimile to Commissioner for Trademarks in response to February 14, 2006 letter (Feb. 17, 2006).................. JA187

Incoming Facsimile to Commissioner for Trademarks in response to February 14, 2006 letter (Feb. 17, 2006).................. JA190

Incoming Correspondence (confirmation copy of facsimile) (Feb. 21, 2006) ................................................................. JA193

Incoming Facsimile – correspondence to Office of Foreign Assets Control re: License to Pay Renewal Fee (Apr. 7, 2006) ................................................................... JA195

Incoming Facsimile – correspondence to Office of Foreign Assets Control re: License to Pay Renewal Fee (May 9, 2006) ................................................................... JA204

Incoming Facsimile to Commissioner for Trademarks (June 14, 2006) ................................................................. JA209

Incoming Correspondence (confirmation copy of facsimile) (June 15, 2006) ................................................................. JA217

Incoming Facsimile to Commissioner for Trademarks in response to June 14, 2006 letter (June 27, 2006)..................... JA224

Incoming Correspondence (confirmation copy of facsimile) (June 28, 2006) ................................................................. JA249

Incoming Facsimile to Commissioner for Trademarks in response to June 27, 2006 letter (June 29, 2006)..................... JA273

Incoming Correspondence (confirmation copy of facsimile) (June 30, 2006) ................................................................. JA278

Incoming Facsimile to Commissioner for Trademarks in response to June 29, 2006 letter (July 5, 2006) ...................... JA282

Incoming Correspondence (confirmation copy of facsimile) (July 7, 2006)................................................................. JA285

Petition to Director Denied (July 17, 2006) .................................. JA287

Post-Registration Office Action (July 21, 2006) .......................... JA289

Incoming Facsimile with Response to Office Action
(Aug. 1, 2006) ................................................................................. JA292

Incoming Facsimile from Department of Treasury –
copy of correspondence denying request for a license
(Aug. 1, 2006) ................................................................................. JA303

Incoming Correspondence - Response to Office Action
(confirmation copy of facsimile) (Aug. 2, 2006) ............................ JA304

Post-Registration Office Action (Aug. 3, 2006) ............................. JA314

Letter enclosing Petition to Director; Memorandum of
Law in Support of Petition; Declaration of Vincent
Palladino (Oct. 5, 2006) ................................................................ JA315

Letter from Commissioner for Trademarks on Petition
- Suspension of Action pending disposition of civil
action filed by petitioner against the U.S. Department
of Treasury (Dec. 6, 2006) ............................................................ JA466

Incoming Correspondence re: Notice of Address
Change for Correspondence (Jan. 19, 2007) ................................. JA467

Incoming Correspondence re: Freedom of Information
Act (FOIA) Request (Feb. 21, 2007) ............................................. JA468

Incoming Facsimile to FOIA Office re: Request (Apr. 5, 2007) ... JA471

Incoming Correspondence (May 15, 2009) .................................... JA477

Incoming Correspondence in response to May 15, 2009
letter (May 29, 2009) ..................................................................... JA481

Trademark Snap Shot Prosecution History for Review
Correspondence (July 11, 2009) .................................................... JA483

iii

Outgoing Correspondence re: receipt of documents
pertaining to *Hausler v. The Republic of Cuba, et al.*,
Case No. 02-12475 CA 09 (Sept. 3, 2009) ..................................... JA488

Incoming Correspondence re: upcoming submissions
(May 17, 2012)................................................................................. JA490

Incoming Correspondence responding to letter of
December 6, 2006 and May 29, 2009 and supplementing
petition (June 11, 2012).................................................................. JA491

Incoming Correspondence re: Revocation of Previous
Power of Attorney; Appointment of New Attorneys
(June 25, 2012)................................................................................ JA495

Incoming Correspondence from Bacardi (Aug. 7, 2012)............... JA497

Outgoing Correspondence from USPTO re: pending
Petition (Aug. 29, 2012) ................................................................. JA501

Incoming Correspondence from Department of the
Treasury, Office of Foreign Assets Control requesting
information (Aug. 31, 2012)............................................................ JA502

Outgoing Correspondence from USPTO to Office of Foreign
Assets Control with Memorandum providing information
re: U.S. Trademark Registration Maintenance and
Renewal Requirements and USPTO Record Keeping
Procedures (Sept. 27, 2012) ........................................................... JA503

Incoming Facsimile from Department of Treasury
(Nov. 30, 2012) ............................................................................... JA510

Incoming Correspondence (confirmation copy of facsimile)
(Dec. 3, 2012).................................................................................. JA512

Combined Declaration of Excusable Non-Use and
Application for Renewal of Registration of a Mark under
§§ 8 and 9 (Jan. 12, 2016) .............................................................. JA514

iv

Incoming Correspondence Supplementing Petition to
the Director (Jan. 12, 2016) ........................................................... JA519

Petition to Director Granted (Jan. 13, 2016) ................................ JA524

Notice of Acceptance of §8 Declaration and
§9 Renewal (Jan. 13, 2016) ............................................................ JA528

File Jacket (Feb. 9, 2016) .............................................................. JA529

Notation to File (Feb. 10, 2016) .................................................... JA532

Notice of Acceptance of §8 Declaration and
§9 Renewal (Feb. 16, 2016) ........................................................... JA533

Notice of Filing of Supplemental Administrative Record,
Docket No. 57 (filed Nov. 19, 2024) .............................................. JA534

Supplemental Administrative Record, Docket No. 57-1
(filed Nov. 19, 2024)

Certification of Accuracy of Supplemental Administrative
Record by USPTO Director (Nov. 19, 2024) ................................. JA537

Declaration of Matthew Lee (Nov. 18, 2024) .............................. JA538

Exhibit 1 – Transaction Service History (Nov. 8, 2024) .............. JA541

Jan. 24, 2025 Hearing Transcript – Cross-Motions for Summary
Judgment, Docket No. 84 (filed Apr. 15, 2025) .............................. JA543

Memorandum Opinion, Docket No. 78 (Mar. 5, 2025) .................... JA559

Order, Docket No. 79 (Mar. 5, 2025) .............................................. JA571

Notice of Appeal, Docket No. 81 (filed Apr. 2, 2025) ...................... JA573

# U.S. District Court
## Eastern District of Virginia – (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:21–cv–01441–LMB–IDD

Bacardi & Company Limited et al v. Coke Morgan Stewart et al
Assigned to: District Judge Leonie M. Brinkema
Referred to: Magistrate Judge Ivan D. Davis
Case in other court: 4th Circuit; T. Barton, Case Manager, 22–01659
       Fourth Circuit, 25–01355
Cause: 05:702 Administrative Procedure Act

Date Filed: 12/28/2021
Date Terminated: 03/05/2025
Jury Demand: None
Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|---|---|---|
| 12/28/2021 | 1 | Complaint ( Filing fee $ 402, receipt number AVAEDC–8172412.), filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Civil Cover Sheet)(Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 2 | Proposed Summons re 1 Complaint, *to USPTO* by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 3 | Proposed Summons re 1 Complaint, *to Drew Hirshfeld* by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 4 | Corporate Disclosure Statement by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 5 | Motion to appear Pro Hac Vice by Michael C. Lynch and Certification of Local Counsel Cameron Argetsinger Filing fee $ 75, receipt number AVAEDC–8172551. by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 6 | Motion to appear Pro Hac Vice by Damon Suden and Certification of Local Counsel Cameron Argetsinger Filing fee $ 75, receipt number AVAEDC–8172566. by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | 7 | Motion to appear Pro Hac Vice by David Zionts and Certification of Local Counsel Cameron Argetsinger Filing fee $ 75, receipt number AVAEDC–8172604. by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 12/28/2021) |
| 12/28/2021 | | Initial Case Assignment to District Judge Liam O'Grady and Magistrate Judge Ivan D. Davis. (kgall) (Entered: 12/28/2021) |
| 12/28/2021 | 8 | Summons Issued as to Drew Hirshfeld, United States Patent and Trademark Office, U.S. Attorney and U.S. Attorney General NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (Attachments: # 1 Notice)(kgall) (Entered: 12/28/2021) |
| 01/05/2022 | 9 | ORDER granting 6 Motion for Pro hac vice Appointed Damon William Suden for Bacardi & Company Limited and Bacardi U.S.A. Inc. Signed by District Judge Liam O'Grady on 1/5/2022. (kgall) (Entered: 01/06/2022) |
| 01/06/2022 | 10 | ORDER granting 5 Motion for Pro hac vice Appointed Michael C Lynch for Bacardi & Company Limited and Bacardi U.S.A. Inc. Signed by District Judge Liam O'Grady on 1/5/2022. (kgall) (Entered: 01/06/2022) |

| 01/06/2022 | 11 | ORDER granting 7 Motion for Pro hac vice Appointed David Meir Zionts for Bacardi & Company Limited and Bacardi U.S.A. Inc. Signed by District Judge Liam O'Grady on 1/5/2022. (kgall) (Entered: 01/06/2022) |
|---|---|---|
| 01/13/2022 | 12 | CERTIFICATE OF SERVICE by Bacardi & Company Limited, Bacardi U.S.A. Inc. re 8 Summons Issued as to USA,, *Drew Hirshfeld, Director of the United States Patent and Trademark Office* (Argetsinger, Cameron) (Entered: 01/13/2022) |
| 01/13/2022 | 13 | CERTIFICATE OF SERVICE by Bacardi & Company Limited, Bacardi U.S.A. Inc. re 8 Summons Issued as to USA,, *Office of the General Counsel of the United States Patent and Trademark Office* (Argetsinger, Cameron) (Entered: 01/13/2022) |
| 01/13/2022 | 14 | CERTIFICATE OF SERVICE by Bacardi & Company Limited, Bacardi U.S.A. Inc. re 8 Summons Issued as to USA,, *Office of the United States Attorney for the Eastern District of Virginia* (Argetsinger, Cameron) (Entered: 01/13/2022) |
| 01/13/2022 | 15 | CERTIFICATE OF SERVICE by Bacardi & Company Limited, Bacardi U.S.A. Inc. re 8 Summons Issued as to USA,, *Attorney General of the United States* (Argetsinger, Cameron) (Entered: 01/13/2022) |
| 02/28/2022 | 16 | Certificate Reporting Service by Drew Hirshfeld, United States Patent and Trademark Office. All Defendants. (Mezger, Matthew) (Entered: 02/28/2022) |
| 02/28/2022 | 17 | MOTION to Dismiss by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 02/28/2022) |
| 02/28/2022 | 18 | Memorandum in Support re 17 MOTION to Dismiss filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 02/28/2022) |
| 02/28/2022 | 19 | Notice of Hearing Date re 17 MOTION to Dismiss , 18 Memorandum in Support (Mezger, Matthew) (Entered: 02/28/2022) |
| 03/01/2022 | | Set Deadlines as to 17 MOTION to Dismiss . Motion Hearing set for 4/1/2022 at 10:00 AM in Alexandria Courtroom 1000 before District Judge Liam O'Grady. (dvanm) (Entered: 03/01/2022) |
| 03/14/2022 | 20 | Memorandum in Opposition re 17 MOTION to Dismiss filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Argetsinger, Cameron) (Entered: 03/14/2022) |
| 03/21/2022 | 21 | REPLY to Response to Motion re 17 MOTION to Dismiss filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 03/21/2022) |
| 03/31/2022 | | Motion hearing set for April 1, 2022 is terminated. Ruling to be made based on the pleadings. (dvanm) (Entered: 03/31/2022) |
| 04/06/2022 | 22 | ORDER granting 17 Motion to Dismiss (see Order for details). Signed by District Judge Liam O'Grady on 4/6/2022. (nneb) (Entered: 04/06/2022) |
| 06/03/2022 | 23 | NOTICE OF APPEAL as to 22 Order on Motion to Dismiss by Bacardi & Company Limited, Bacardi U.S.A. Inc.. Filing fee $ 505, receipt number AVAEDC–8417182. (Argetsinger, Cameron) (Entered: 06/03/2022) |
| 06/15/2022 | 24 | Transmission of Notice of Appeal to US Court of Appeals re 23 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (nneb) (Entered: 06/15/2022) |
| 06/16/2022 | 25 | USCA Case Number 22–1659 4th Circuit; T. Barton, Case Manager for 23 Notice of Appeal filed by Bacardi U.S.A. Inc., Bacardi & Company Limited. (kgall) (Entered: 06/16/2022) |
| 06/13/2024 | | Case Reassigned to District Judge Leonie M. Brinkema. Retired District Jud Liam O'Grady no longer assigned to the case. (jlan) (Entered: 06/13/2024) |
| 06/13/2024 | 26 | Published Opinion of USCA, decided on 6/13/2024 re 23 Notice of Appeal – REVERSED AND REMANDED. (swil) (Entered: 06/13/2024) |
| 06/13/2024 | 27 | USCA JUDGMENT as to 23 Notice of Appeal filed by Bacardi U.S.A. Inc., Bacardi & Company Limited. In accordance with the decision of this court, the judgment of the district court is reversed. This case is remanded to the district court for further proceedings consistent with the court's decision. This judgment shall take effect upon |

| | | issuance of this court's mandate in accordance with Fed. R. App. P. 41. (swil) (Entered: 06/13/2024) |
|---|---|---|
| 08/05/2024 | 28 | USCA Mandate re 23 Notice of Appeal. The judgment of this court, entered June 13, 2024, takes effect today. This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. (Sbro, ) (Entered: 08/05/2024) |
| 08/07/2024 | 29 | ORDERED that within fourteen (14) days of the date of this Order the parties file a joint status report regarding this civil action. Signed by District Judge Leonie M. Brinkema on 8/6/2024. (Sbro, ) (Entered: 08/07/2024) |
| 08/07/2024 | 30 | Notice of Substitution of Counsel of Cameron Reynolds Argetsinger, II by Katherine R White on behalf of Bacardi & Company Limited, Bacardi U.S.A. Inc. (White, Katherine) (Entered: 08/07/2024) |
| 08/07/2024 | 31 | NOTICE of Appearance by Katherine R White on behalf of Bacardi & Company Limited, Bacardi U.S.A. Inc. (White, Katherine) (Entered: 08/07/2024) |
| 08/07/2024 | 32 | ORDER Granting 30 Notice of Substitution of Counsel filed by Bacardi U.S.A. Inc., Bacardi & Company Limited. Signed by District Judge Leonie M. Brinkema on 8/7/2024. (Sbro, ) (Entered: 08/07/2024) |
| 08/12/2024 | 33 | STATUS REPORT *(Joint) and Joint Motion for a Briefing Schedule* by Drew Hirshfeld, United States Patent and Trademark Office. (Attachments: # 1 Proposed Order)(Mezger, Matthew) (Entered: 08/12/2024) |
| 08/13/2024 | 34 | ORDER granting in part and denying in part 33 Joint Motion for a Briefing Schedule. ORDERED that this civil action shall proceed upon the administrative record of proceedings before the United States Patent and Trademark Office ("USPTO") without further discovery. ORDERED that defendants are excused from answering the Complaint (see Order for details). Signed by District Judge Leonie M. Brinkema on 8/13/2024. (kgall) (Entered: 08/13/2024) |
| 08/13/2024 | | Set Deadlines as to Motion Hearing set for 1/10/2025 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (kgall) (Entered: 08/13/2024) |
| 08/13/2024 | 35 | USCA Order re 23 Notice of Appeal. Costs for these proceedings are taxed and certified in the amount of $595.40, as itemized in the accompanying bill of costs. The costs taxed shall be added to this court's mandate in accordance with Fed. R. App. P. 39(d). (Sbro, ) (Entered: 08/13/2024) |
| 08/29/2024 | 36 | MOTION to Intervene *(Unopposed)* by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Attachments: # 1 Proposed Order)(Tuttle, Jonathan) (Entered: 08/29/2024) |
| 08/29/2024 | 37 | Memorandum in Support re 36 MOTION to Intervene *(Unopposed)* filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/29/2024) |
| 08/29/2024 | 38 | Corporate Disclosure Statement by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/29/2024) |
| 08/29/2024 | 39 | ORDERED that the motion of Empresa Cubana Exportadora de Alimentos y Productos Varies (Cubaexport) to intervene as a defendant in this action is GRANTED; and it is further ORDERED that Cubaexport is excused from answering the Complaint; and it is further ORDERED that Defendants' deadlines to file their cross−motions for summary judgment and their oppositions to plaintiffs' motion for summary judgment, as set forth in the Court's order of August 13, 2024, shall apply to any such submissions by Cubaexport. Signed by District Judge Leonie M. Brinkema on 08/29/2024. (dvanm) Modified to correct text on 9/9/2024 (dvanm). (Entered: 08/29/2024) |
| 08/30/2024 | 40 | Motion to appear Pro Hac Vice by David H. Bernstein and Certification of Local Counsel Jonathan Tuttle Filing fee $ 75, receipt number AVAEDC−9715000. by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/30/2024) |

| 08/30/2024 | 41 | Motion to appear Pro Hac Vice by Michael Schaper and Certification of Local Counsel Jonathan Tuttle Filing fee $ 75, receipt number AVAEDC–9715038. by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/30/2024) |
|---|---|---|
| 08/30/2024 | 42 | Motion to appear Pro Hac Vice by Carl Jonas Micarelli and Certification of Local Counsel Jonathan Tuttle Filing fee $ 75, receipt number AVAEDC–9715044. by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/30/2024) |
| 08/30/2024 | 43 | Motion to appear Pro Hac Vice by Christopher Sean Ford and Certification of Local Counsel Jonathan Tuttle Filing fee $ 75, receipt number AVAEDC–9715051. by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 08/30/2024) |
| 09/03/2024 | 44 | ORDER granting 40 Motion for Pro hac vice Appointed David H. Bernstein for Empresa Cubana Exportadora de Alimentos y Productos Varios. Signed by District Judge Leonie M. Brinkema on 9/3/2024. (nneb) (Entered: 09/03/2024) |
| 09/03/2024 | 45 | ORDER granting 42 Motion for Pro hac vice Appointed Carl Micarelli for Empresa Cubana Exportadora de Alimentos y Productos Varios. Signed by District Judge Leonie M. Brinkema on 9/3/2024. (nneb) (Entered: 09/03/2024) |
| 09/03/2024 | 46 | ORDER granting 41 Motion for Pro hac vice Appointed Michael Schaper for Empresa Cubana Exportadora de Alimentos y Productos Varios. Signed by District Judge Leonie M. Brinkema on 9/3/2024. (nneb) (Entered: 09/03/2024) |
| 09/03/2024 | 47 | ORDER granting 43 Motion for Pro hac vice Appointed Christopher S. Ford for Empresa Cubana Exportadora de Alimentos y Productos Varios. Signed by District Judge Leonie M. Brinkema on 9/3/2024. (nneb) (Entered: 09/03/2024) |
| 09/17/2024 | 48 | NOTICE by Drew Hirshfeld, United States Patent and Trademark Office *of the Filing of the Administrative Record (Part 1 – Part 3)* (Attachments: # 1 Part 1, # 2 Part 2, # 3 Part 3)(Mezger, Matthew) (Entered: 09/17/2024) |
| 09/25/2024 | 49 | MOTION to Continue *(Unopposed)* by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Attachments: # 1 Proposed Order)(Tuttle, Jonathan) (Entered: 09/25/2024) |
| 09/25/2024 | 50 | Memorandum in Support re 49 MOTION to Continue *(Unopposed)* filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 09/25/2024) |
| 09/26/2024 | 51 | ORDER granting 49 Unopposed Motion to Continue. ORDERED that a hearing on the parties' cross–motions for summary judgment will be set for Friday January, 24, 2025 at 10:00 am. ORDERED that the remaining deadlines for briefing of the parties cross–motions for set summary judgment, as set forth in the Court's order of August 13, 2024, shall remain unchanged. Signed by District Judge Leonie M. Brinkema on 9/26/2024. (kgall) (Entered: 09/26/2024) |
| 09/26/2024 | | Reset Deadlines as to Motion Hearing set for 1/24/2025 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (kgall) (Entered: 09/26/2024) |
| 10/17/2024 | 52 | MOTION for Summary Judgment by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Attachments: # 1 Proposed Order)(White, Katherine) (Entered: 10/17/2024) |
| 10/17/2024 | 53 | Memorandum in Support re 52 MOTION for Summary Judgment filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (White, Katherine) (Entered: 10/17/2024) |
| 10/18/2024 | | Notice of Correction: Filing user notified to file a Notice of Hearing or Notice of Waiver of Oral Argument re 52 MOTION for Summary Judgment (Sbro, ) (Entered: 10/18/2024) |
| 10/18/2024 | 54 | Notice of Hearing Date set for January 24, 2025 at 10:00 AM re 52 MOTION for Summary Judgment (White, Katherine) (Entered: 10/18/2024) |
| 10/22/2024 | | Set Deadline as to 52 MOTION for Summary Judgment. Motion Hearing set for 1/24/2025 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. |

| | | |
|---|---|---|
| | | Brinkema. (triv) (Entered: 10/22/2024) |
| 11/13/2024 | 55 | Consent MOTION for Extension of Time to File Response/Reply as to 52 MOTION for Summary Judgment by Drew Hirshfeld, United States Patent and Trademark Office. (Attachments: # 1 Proposed Order)(Mezger, Matthew) (Entered: 11/13/2024) |
| 11/14/2024 | 56 | ORDERED that Defendants Consent Motion for an Enlargement of Time is GRANTED, and it is further ORDERED that Defendants and Defendant–Intervenor shall file their respective cross motions for summary judgment along with their respective memoranda in support of those motions and in opposition to Plaintiffs motion for summary judgment on or before November 20, 2024 re 55 Motion for Extension of Time to File Response/Reply (See Order for further details). Signed by District Judge Leonie M. Brinkema on 11/14/2024. (Sbro, ) (Entered: 11/14/2024) |
| 11/19/2024 | 57 | NOTICE by Drew Hirshfeld, United States Patent and Trademark Office *of Filing of Supplemental Administrative Record* (Attachments: # 1 Supplement Supplemental Administrative Record)(Mezger, Matthew) (Entered: 11/19/2024) |
| 11/20/2024 | 58 | MOTION for Summary Judgment by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 11/20/2024) |
| 11/20/2024 | 59 | Memorandum in Support re 58 MOTION for Summary Judgment filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 11/20/2024) |
| 11/20/2024 | 60 | Notice of Hearing Date re 58 MOTION for Summary Judgment , 59 Memorandum in Support (Mezger, Matthew) (Entered: 11/20/2024) |
| 11/20/2024 | 61 | Memorandum in Opposition re 52 MOTION for Summary Judgment filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 11/20/2024) |
| 11/20/2024 | 62 | MOTION for Summary Judgment by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 11/20/2024) |
| 11/20/2024 | 63 | Memorandum in Support re 62 MOTION for Summary Judgment filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 11/20/2024) |
| 11/20/2024 | 64 | Notice of Hearing Date set for January 24, 2025 re 62 MOTION for Summary Judgment (Tuttle, Jonathan) (Entered: 11/20/2024) |
| 11/20/2024 | 65 | Memorandum in Opposition re 52 MOTION for Summary Judgment filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 11/20/2024) |
| 11/21/2024 | | Set Deadlines as to 58 MOTION for Summary Judgment, 62 MOTION for Summary Judgment. Motion Hearing set for 1/24/2025 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (triv) (Entered: 11/21/2024) |
| 12/05/2024 | 66 | ORDERED that within fourteen (14) days of the date of this Order, the parties advise the Court of their positions on how the new law impacts this case. Signed by District Judge Leonie M. Brinkema on 12/5/2024. (Sbro, ) (Entered: 12/06/2024) |
| 12/13/2024 | 67 | REPLY to Response to Motion re 52 MOTION for Summary Judgment filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (White, Katherine) (Entered: 12/13/2024) |
| 12/13/2024 | 68 | Memorandum in Opposition re 62 MOTION for Summary Judgment , 58 MOTION for Summary Judgment filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (White, Katherine) (Entered: 12/13/2024) |
| 12/19/2024 | 69 | Response to 66 Order filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 12/19/2024) |
| 12/19/2024 | 70 | Response to 66 Order filed by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (White, Katherine) (Entered: 12/19/2024) |

| 12/19/2024 | 71 | Response to 66 Order *by the Court of December 5, 2024* filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 12/19/2024) |
|---|---|---|
| 12/23/2024 | 72 | REPLY to Response to Motion re 58 MOTION for Summary Judgment filed by Drew Hirshfeld, United States Patent and Trademark Office. (Mezger, Matthew) (Entered: 12/23/2024) |
| 12/23/2024 | 73 | REPLY to Response to Motion re 62 MOTION for Summary Judgment filed by Empresa Cubana Exportadora de Alimentos y Productos Varios. (Tuttle, Jonathan) (Entered: 12/23/2024) |
| 01/07/2025 | 74 | NOTICE of Appearance by Joseph J. Green on behalf of Bacardi & Company Limited, Bacardi U.S.A. Inc. (Green, Joseph) (Entered: 01/07/2025) |
| 01/08/2025 | 75 | MOTION to Withdraw as Attorney *for Katherine R. White* by Bacardi & Company Limited, Bacardi U.S.A. Inc.. (Attachments: # 1 Proposed Order)(White, Katherine) (Entered: 01/08/2025) |
| 01/23/2025 | 76 | IT IS HEREBY ORDERED that the Motion is GRANTED and Katherine R. White is granted leave to withdraw as counsel in the above–referenced proceeding pending before this Court re 75 Motion to Withdraw as Attorney. Attorney Katherine R White terminated. Signed by District Judge Leonie M. Brinkema on 1/23/2025. (Sbro, ) (Entered: 01/23/2025) |
| 01/24/2025 | 77 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Motion Hearing held on 1/24/2025. Appearances of counsel. Motions Heard. Plaintiff's 52 MOTION for Summary Judgment – DENIED; Defendants 58 MOTION for Summary Judgment – GRANTED; Intervenors 62 MOTION for Summary Judgment – GRANTED. Order to follow. (Court Reporter S. Austin)(kgall) (Entered: 01/24/2025) |
| 03/05/2025 | 78 | MEMORANDUM OPINION in re 52 MOTION for Summary Judgment, 58 MOTION for Summary Judgment, 62 MOTION for Summary Judgment. Signed by District Judge Leonie M. Brinkema on 3/5/2025. (Sbro, ) (Entered: 03/05/2025) |
| 03/05/2025 | 79 | ORDERED that Motions for Summary Judgment [Dkt. No. 58 & 62] are GRANTED and plaintiff's Motion for Summary Judgment [Dkt. No. 52] is DENIED. Accordingly, it is hereby ORDERED that the January 13,2016 final decision of the Director of the U.S. Patent and Trademark Office be and is AFFIRMED. Signed by District Judge Leonie M. Brinkema on 3/5/2025. (Sbro, ) (Entered: 03/05/2025) |
| 03/05/2025 | 80 | JUDGMENT is hereby entered in favor of defendant Coke Morgan Stewart and intervenor–defendant Empresa Cubana Exportadora de Alimentos y Productos Varios pursuant to the Order of this Court entered on March 5, 2025 and in accordance with Federal Rules of Civil Procedure 58. Signed by Clerk on 3/5/2025. (Sbro, ) (Entered: 03/05/2025) |
| 04/02/2025 | 81 | NOTICE OF APPEAL as to 80 Clerk's Judgment, by Bacardi & Company Limited, Bacardi U.S.A. Inc.. Filing fee $ 605, receipt number AVAEDC–10098524. (Green, Joseph) (Entered: 04/02/2025) |
| 04/04/2025 | 82 | Transmission of Notice of Appeal to US Court of Appeals re 81 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Sbro, ) (Entered: 04/04/2025) |
| 04/08/2025 | 83 | USCA Case Number 25–1355 Fourth Circuit, Case Manager Sheila Lopez–Fetty for 81 Notice of Appeal filed by Bacardi U.S.A. Inc., Bacardi & Company Limited. (Sbro, ) (Entered: 04/08/2025) |
| 04/15/2025 | 84 | TRANSCRIPT of proceedings held on 01/24/2025, before Judge Leonie M. Brinkema, Court Reporter/Transcriber Stephanie Austin, Telephone number 607–743–1894. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty (30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction.** |

| | | After that date it may be obtained through PACER. Redaction Request due 5/15/2025. Redacted Transcript Deadline set for 6/16/2025. Release of Transcript Restriction set for 7/14/2025. (jlan) (Entered: 04/15/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| BACARDI & COMPANY LIMITED and BACARDI U.S.A. INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES PATENT AND TRADEMARK OFFICE, and DREW HIRSHFELD, in his official capacity as the acting Director of the United States Patent and Trademark Office, <br><br> Defendants. | Civil Action No.:  1:21-cv-1441 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Bacardi & Company Limited ("BACO") and Bacardi U.S.A. Inc. ("BUSA")

(collectively, "Bacardi"), by and through their attorneys Kelley Drye & Warren LLP and

Covington & Burling LLP, as and for their complaint against the United States Patent and

Trademark Office ("PTO"), alleges as follows:

**NATURE OF THE ACTION**

1.      Bacardi brings this action to set aside the unlawful and arbitrary actions of the

PTO which purported to renew the HAVANA CLUB trademark registration held by Empresa

Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") ten

years after the registration had expired by operation of the Lanham Act and was declared

"cancelled/expired," because Cubaexport had failed to pay the required filing fee within the time

period required by statute.

2.      Cubaexport was not permitted to pay the filing fee to renew its registration in

JA8

2006, as the statute required it to do in order to avoid expiration, because the mark was associated with a Cuban rum business that was forcibly confiscated from its original owner, Jose Arechabala S.A. ("JASA"), predecessor in interest to Bacardi, by armed special forces of the Castro regime in 1960 without compensation.

3.      The Cuban government unlawfully gave Cubaexport possession of all of JASA's assets – the rum distillery, factories, bank accounts, books, and records.  JASA's owners and employees either had to work under the management of a Castro loyalist or they were jailed or forced into exile.

4.      With JASA's owners scattered across the globe and the company lacking any capability to manufacture or sell its prestigious rum, Cubaexport began to register the HAVANA CLUB mark in countries around the world, including the United States.

5.      Cubaexport, and its business partner Pernod Ricard, have since trafficked in the stolen property of JASA by manufacturing and selling a bootleg HAVANA CLUB branded rum all around the world.  But the United States embargo and other Congressional action has prevented the Cuban regime from profiting off of JASA's stolen property in this country.

6.      Indeed, Cubaexport has never sold a single bottle of its ersatz rum bearing the HAVANA CLUB mark in the United States since it fraudulently obtained registration of the mark in 1976 because of the Cuban embargo.  That embargo will remain in place absent Congressional action.

7.      Congress has also prohibited United States courts from recognizing or enforcing any rights Cubaexport may claim in the stolen HAVANA CLUB mark in the United States, whether arising from common law, statute, or treaty.

8.      Against that backdrop, in 2006, Cubaexport applied for a specific license from the

Office of Foreign Assets Control ("OFAC") in an attempt to pay the mandatory fee to renew its registration of the HAVANA CLUB trademark.  OFAC denied the application on the grounds that it was contrary to U.S. foreign policy.

9.      As a result of OFAC's refusal to grant a specific license in 2006, Cubaexport was not able to fulfill the statutory requirements to renew its registration of the confiscated HAVANA CLUB mark.

10.     The PTO, in an Office Action, gave Cubaexport six months to correct the deficiency, at which point the registration would automatically expire by operation of the statute.  Cubaexport was unable to pay the filing fee within the six-month deadline.  Thus, in August 2006, the PTO determined that "the registration will be cancelled/expired." Exhibit 1.

11.     Cubaexport petitioned the Director to reverse that determination.  That petition remained open for over ten years.

12.     On January 11, 2016, OFAC issued Cubaexport a specific license purporting to authorize Cubaexport to "engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651."

13.     Only three days later, the PTO suddenly acted on Cubaexport's ten-year-old petition in a brief decision by the Commissioner for Trademarks acting under delegated authority from the Director.

14.     The PTO granted the petition and purported to authorize renewal of Cubaexport's long-dead HAVANA CLUB registration on the grounds that it had somehow retroactively paid the filing fee.

15.     The PTO exceeded and/or abused its authority by purporting to resurrect the dead HAVANA CLUB registration nearly ten years after it correctly determined that "the registration

will be cancelled/expired" because of Cubaexport's failure to timely fulfill the mandatory

renewal requirements.  The PTO also lacked statutory authority to permit correction of

deficiencies in Cubaexport's December 2005 renewal application (i.e. the failure to pay the fee)

beyond the six-month deadline provided in the July 2006 Office Action.

16.     The PTO's action seriously prejudices Bacardi.  In the 1990s, Bacardi acquired all

of JASA's rights in the HAVANA CLUB trademark and began selling HAVANA CLUB rum in

the United States, which sales continue today.  Bacardi also submitted an application to the PTO

for the HAVANA CLUB mark, which application remains pending and, if Cubaexport's

registration is permitted to stand, is likely to be rejected in light of Cubaexport's registration of

the same mark.  Bacardi is also prejudiced because its sales of the real HAVANA CLUB rum

throughout the United States are being made while Cubaexport supposedly owns the trademark's

registration in the PTO.

17.     PTO's action granting Cubaexport's petition and permitting Cubaexport's renewal

of its HAVANA CLUB registration some ten years after the registration had expired is a moral

outrage to be sure, but also violates the law and must be set aside.

## JURISDICTION AND VENUE

18.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§

701-706, and under the Court's inherent authority to review *ultra vires* administrative actions,

*Leedom v. Kyne*, 358 U.S. 184, 188 (1958).

19.     This Court has jurisdiction and is authorized to issue the relief sought under 28

U.S.C. sections 1331, 1338, 2201-2202, and 5 U.S.C. sections 702, 706.

20.     Venue is proper in this district under 28 U.S.C. section 1391(e) because

Defendant PTO is located in this district, and because a substantial part of the events giving rise

to the claim occurred in this district.

## THE PARTIES

21.     Plaintiff Bacardi & Company, Ltd. is a Liechtenstein company having its principal place of business at 267 route de Meyrin, 1217 Meyrin, Switzerland.  Bacardi & Company, Ltd. is the successor to Compañía Ron Bacardí, S.A., a Cuban *sociedad anónima* (joint-stock company) which was headquartered in Santiago de Cuba, Republic of Cuba, until its assets in Cuba were confiscated by the Cuban government in October 1960.  Through its affiliates, licensees, and distributors, Bacardi & Company, Ltd. produces and markets distilled spirits worldwide.

22.     Plaintiff Bacardi U.S.A., Inc. is a United States company having its principal place of business at 2701 Le Jeune Road, Coral Gables, Florida, 33134.  Bacardi U.S.A., Inc. is affiliated with Bacardi & Company, Ltd. and imports, markets, distributes, and sells distilled spirits in the United States.

23.     Bacardi & Company, Ltd. is the owner of Application Serial No. 74/572,667 pending in the PTO for registration of the mark HAVANA CLUB for rum (the "Bacardi Application"), which was filed on September 12, 1994.  Bacardi U.S.A., Inc. markets, distributes, and sells rum under the HAVANA CLUB trademark throughout the United States.

24.     The Bacardi Application is currently suspended pending resolution of a federal lawsuit in which Bacardi is seeking to have Cubaexport's trademark registration for HAVANA CLUB declared expired, and/or to cancel the registration on the grounds of, among other things, fraud on the PTO.  *Bacardi & Company Limited et. al. v. Empresa Cubana Exporiadora de Alimentos y Productos Varios et. al*., Case No. 1:04-cv-00519-EGS (D.D.C).  Before the Bacardi Application was suspended, the PTO stated that it would be refused under section 2(d) of the

Trademark Act in part because of Cubaexport's existing registration.  *See* Exhibit 2.  Thus, Bacardi is prejudiced by the PTO's unlawful actions as described in this complaint.

25.     Defendant PTO is a federal agency in the Department of Commerce.  The PTO is located at Madison Building, 600 Dulaney Street, Alexandria, Virginia 22314.

26.     Defendant Drew Hirshfeld is performing the functions and duties of the Director of the PTO and is being sued in his official capacity.

## LEGAL FRAMEWORK

**A.     U.S. Trademark Registration and Renewal Requirements**

27.     The PTO is responsible, among other things, for the registration of trademarks.

28.     As relevant here, owners are required to file an acceptable affidavit or declaration of use or excusable nonuse, "accompanied by the fee prescribed by the Director" during the statutorily prescribed periods pursuant to section 8 of the Trademark Act, as amended, 15 U.S.C. § 1058 ("Lanham Act"), in order to maintain a federal registration.

29.     Pursuant to section 9 of the Lanham Act, 15 U.S.C. § 1059, renewal requires "payment of the prescribed fee" for each class of goods and services and the timely filing of a verified application signed by the registrant or the registrant's representative within the statutory deadline.  15 U.S.C. § 1059; 37 C.F.R. § 2.183.

30.     If the requirements of section 9 are not satisfied before the end of the renewal period, the federal trademark registration involved automatically "expires."  37 C.F.R. §§ 2.182-2.186.

31.     If the owner of a registration files a renewal application which is deficient in any way, the PTO will issue an office action advising of the deficiency and providing a period in which to cure the deficiency.

32.     Pursuant to 15 U.S.C. section 1059, "[i]f any application filed under this section is deficient, the deficiency may be corrected within the time prescribed after notification of the deficiency, upon payment of a surcharge prescribed therefor."

33.     Payment of the required fee is a "requirement[] for a complete renewal application."  A renewal application filed without a fee or with an insufficient fee is deficient. *See* 15 U.S.C. § 1059; 37 C.F.R. § 2.183(b).

34.     If a renewal application is not acceptable, "the Office will issue a notice stating the reason(s) for refusal."  37 C.F.R. § 2.184(a).  Any response to the refusal must be filed "within six months of the date of issuance of the Office action, or before the expiration date of the registration, whichever is later."  *Id.* § 2.184(b)(1).

35.     Thus, the PTO's practice when refusing renewals is to state that "[a]ny deficiency must be cured within the set period for response to the Office action, i.e., within six months of the issuance date of the action, or before the expiration date of the registration, whichever is later."  Trademark Manual of Examining Procedure ("TMEP") 1606.13(a).  If a renewal application is filed during the grace period provided in section 9(a), then "[d]eficiencies must be cured within six months of the issuance date of the Office action." TMEP 1606.13(b).

**B.     PTO Record Keeping and Actions Regarding Renewal of Trademark Registrations**

36.     The Lanham Act requires the Director of the PTO to maintain a public record of all registered trademarks.  15 U.S.C. § 1057(a).  When the status of a registration changes, the PTO is required to update its electronic records to indicate the status change.

37.     If the requirements of section 9 are not satisfied before the end of the renewal period, the registration automatically expires and the PTO is required to update its records to reflect that the registration is expired.  *See* 37 C.F.R. § 2.182; TMEP § 1611.

38.     When the PTO updates the registration records to accurately reflect their legal

status, the PTO performs a ministerial, non-discretionary record-keeping function.

39.     A registration that has been renewed remains designated as "live" in the PTO's records, while a registration that has expired under section 9 and/or been cancelled under section 8 is designated as "dead."

40.     The Director has no discretion to waive the requirements of sections 8 and 9. Thus, if a section 8 registration or a section 9 renewal is not accompanied by the prescribed fees, and that deficiency is not cured within the time period prescribed in the notice of deficiency, the registration expires as a matter of law, and the Director has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired.

**C.      The Cuban Asset Control Regulations**

41.     In 1963, the United States imposed a total embargo of trade between the United States and Cuba under the Trading with the Enemy Act, 50 U.S.C. App. § 1 *et. seq.*  The embargo has been implemented by the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. Part 515, which are administered by OFAC.  In 1996, Congress enacted the Cuban Liberty and Democracy Solidarity Act (the "Libertad Act"), which, among other things, codified the Cuban embargo.  28 U.S.C. § 6032(h).

42.     The CACR prohibits all transactions involving property, including trademarks, in which Cuba, or any national thereof, has any interest of any nature whatsoever, direct or indirect, except as specifically authorized by OFAC.

43.     The CACR provides that "any person having an interest in a transaction or proposed transaction may file an application [with OFAC] for a [specific] license."  31 C.F.R. § 501.801(b)(2).

44.     Until 1998, section 515.527 of the CACR created a "general license" authorizing the registration and renewal in the PTO of trademarks in which the Government of Cuba or a

Cuban national has an interest.

45.     On October 21, 1998, Congress passed Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, Public Law No. 105-277, 112 Stat. 2681 (Oct. 21, 1998) ("Section 211").

46.     Section 211 was designed to prevent the registration, renewal, or enforcement in the United States of trademarks associated with businesses that were confiscated by foreign governments (such as Cuba) and to recognize the property rights of victims of such confiscation and their successors-in-interest.

47.     Section 211(a)(1) provides, in part, that:

> Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect of a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

48.     OFAC implemented Section 211 by adding a subpart (a)(2) to section 515.527 that tracked the language of Section 211 and provided that the general license no longer permits the registration and renewal of trademarks used in connection with a business or assets that were confiscated by foreign governments.  Title 31, section 515.527(a)(2) provides:

> No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name or the bona fide successor-in-interest has expressly consented.

49.     Thus, with this change, a Cuban company claiming ownership of the registration

JA16

of a confiscated mark has to obtain a specific OFAC license authorizing the renewal of that

registration and payment of the statutorily mandated fee.

50.     In making such a licensing decision, OFAC determines: (a) whether the trademark

that is the subject of the proposed renewal application is the same or similar to one that was used

in connection with a business or assets confiscated, without compensation, by the Cuban

government, and (b) whether the renewal applicant has obtained the consent of the original

owner of the stolen mark or the latter's bona fide successor-in-interest to register or renew that

mark.

51.     By carving out from section 515.527, transactions and payments with respect to

previously confiscated marks "unless the original owner of the mark . . . or the bona fide

successor-in-interest expressly consented," Section 211 explicitly recognizes, and affords legal

protection to, the property interests of the original owner and bona fide successor-in-interest in

the confiscated mark.

52.     Section 211 also provides that U.S. courts shall not recognize or enforce any

rights in confiscated marks whether flowing from common law, statute or treaty:

> (a)(2)  No U.S. court shall recognize, enforce or otherwise validate
> any assertion of rights by a designated national based on common
> law rights or registration obtained under such section 515.527 of
> such a confiscated mark, trade name or commercial name.

> (b)  No U.S. Court shall recognize, enforce or otherwise validate
> any assertion of treaty rights by a designated national or its
> successor-in-interest under sections 44(b) or (e) of the Trademark
> Act of 1946 (15 U.S.C. 1126(b) or (e)) for a mark, trade name, or
> commercial name that is the same as or substantially similar to a
> mark, trade name, or commercial name that was used in connection
> with a business or assets that were confiscated unless the original
> owner of such mark, trade name, or commercial name, or the bona
> fide successor-in-interest has expressly consented.

53.     Section 211 therefore codifies the United States policy of non-recognition of

foreign confiscations as it relates to the enforcement of trademark rights, whether arising from the Lanham Act, a treaty, or common law.

## FACTUAL BACKGROUND

**A.    José Arechabala, S.A. Creates and Uses the HAVANA CLUB Trademark in 1934**

54.    The Arechabala family business was founded by Jose Arechabala Aldama in 1878 in Cuba. The business included rum distilling and other enterprises. JASA, which was incorporated in or around 1924, carried out the family's rum business.

55.    JASA began to use the trademark HAVANA CLUB for rum sold in commerce in the United States at least as early as 1934. On May 14, 1935, JASA registered the words HAVANA CLUB on the Principal Register of the PTO as a trademark for, among other things, "rum" under U.S. Registration No. 324,385. On June 16, 1936, JASA registered a label design including the words HAVANA CLUB on the Principal Register of the PTO as a trademark for, among other things, "rum" under U.S. Registration No. 335,919.

56.    From 1934 to the end of 1959, JASA continued to export HAVANA CLUB rum for distribution and sale in the United States.

**B.    The Cuban Revolutionary Government Confiscated JASA's Assets, Including the HAVANA CLUB Mark, in 1960**

57.    On January 1, 1960, armed forces from the Castro government forcibly entered into possession and confiscated the property and assets of JASA. *Havana Club Holding, SA v. Galleon, S.A.*, 62 F. Supp. 2d 1085, 1090 (S.D.N.Y. 1999), *aff'd* 203 F. 3d 116 (2000).

58.    On October 15, 1960, Cuban Law No. 890 was issued, expropriating for the Cuban government the physical assets, property, accounts and business records of JASA. *Id.*

59.    No compensation was ever paid to JASA or its owners by the Cuban government or any other entity on behalf of the Cuban government for the property and assets that were

seized in 1960.  *Id.*

60.     On November 1, 1966, the Cuban government purported to transfer to Cubaexport the trade names and registered trademarks that had been confiscated from JASA, including the HAVANA CLUB mark and related registrations.

**C.     Cubaexport's Registration of the Confiscated HAVANA CLUB Mark**

61.     With all of its assets stolen by the Cuban government, and its executives and shareholders scattered across the globe, JASA had no ability to produce and sell its HAVANA CLUB branded rum (despite many efforts to do so) and ultimately its trademark registrations in the United States lapsed.

62.     On June 12, 1974, shortly after the registrations expired, Cubaexport applied to the PTO, under section 44 of the Lanham Act, 15 U.S.C. § 1126, to register the HAVANA CLUB trademark.

63.     On January 27, 1976, the PTO issued U.S. Reg. No. 1,031,651 of the HAVANA CLUB & DESIGN mark to Cubaexport.

**D.     Bacardi's Acquisition of the HAVANA CLUB Mark**

64.     In April 1997, through a series of transactions, JASA formally transferred to BACO all right, title, and interest in and to the HAVANA CLUB trademark worldwide and such other related assets.

65.     BACO is currently the applicant to register the trademark HAVANA CLUB for, among other things, rum under Serial Number 74/572667.  This application was filed by BACO's predecessor in interest Galleon, S.A. on September 12, 1994 after an agreement in principal had been reached with JASA.

66.     The PTO issued an Office Action advising, among other things, that BACO's application would be denied because of Cubaexport's existing registration of the same mark.

BACO's application is currently suspended pending resolution of a litigation in the United States District Court for the District of Columbia in which BACO seeks to rectify the register and/or cancel Cubaexport's registration on numerous grounds.

67.     Bacardi began selling HAVANA CLUB rum in the United States in 1995 and, but for periods of excusable non-use, it continues to sell HAVANA CLUB rum throughout the United States today.

**E.     Cubaexport's HAVANA CLUB Mark Registration Expired in 2006**

68.     Cubaexport's U.S. HAVANA CLUB Registration was set to lapse on July 27, 2006.

69.     On December 14, 2005, Cubaexport filed to renew its registration with the PTO and submitted a renewal fee from its counsel.  On or about April 6, 2006, OFAC informed Cubaexport's counsel and the PTO that the payment was not authorized.

70.     On April 7, 2006, Cubaexport's counsel wrote to OFAC to request a specific license to incur and receive payment for the expense of renewing the registration.

71.     On or about June 14, 2006, Cubaexport wrote to the PTO, urging the PTO to renew the registration despite the absence of a specific license from OFAC to pay the required fees.

72.     On July 20, 2006, the Post Registration Examiner issued an Office Action ("July 2006 Office Action") rejecting the renewal application because the "required fee for the combined fee has not been paid."

73.     The July 2006 Office Action gave Cubaexport six months to correct the deficiency in its renewal application by submitting the required fees or else "the registration will be deemed cancelled/expired":

RESPONSE TIME DEADLINE:  A complete response must be received within 6 months from the mailing date of this Office action.  The owner must respond by notifying the USPTO whether the specific license application filed on April 7, 2006 has been granted or denied.  If the owner informs the USPTO that the specific license has been granted, the fee or authorization to charge the fee must accompany the response.  If the owner informs the USPTO that the specific license has been denied, or if OFAC notifies the USPTO that the specific license has been denied, the registration will be deemed cancelled/expired.

74.     On July 28, 2006, OFAC denied Cubaexport's April 7, 2006 request for a specific license to pay the registration renewal fee, explaining that it received guidance from the State Department that issuing the license would be "inconsistent with U.S. policy."

75.     Thus, on August 3, 2006, the Post Registration Examiner issued the Office Action ("August 2006 Office Action") finding that Cubaexport's renewal filing "cannot be accepted," and "the registration will be cancelled/expired."  *See* Exhibit 1.

76.     Cubaexport did not correct the deficiency in its December 2005 renewal application within the mandatory six-month period prescribed in the July 2006 Office Action.

77.     Thus, Cubaexport's HAVANA CLUB Registration expired on July 28, 2006, *see* 37 C.F.R. §§ 2.182-2.186.

78.     The PTO was obligated to perform its non-discretionary ministerial record-keeping function of updating the Principal Register by removing the dead Cubaexport HAVANA CLUB Registration from the Register.

79.     As a result of and in reliance on the PTO's August 2006 Office Action stating that "the registration will be cancelled/expired," Bacardi requested that its lawsuit against Cubaexport, pending in the United States District Court for the District of Columbia, seeking cancellation of the same registration be stayed.  Due to the events set out in this complaint, the lawsuit remained stayed for ten years.

**F.      Cubaexport Sues OFAC and Petitions the Director of the PTO to Review the August 2006 Office Action**

80.     On October 4, 2006, Cubaexport petitioned the Director of the PTO to review the Post Registration Examiner's decision.  In its petition to the PTO Director, Cubaexport averred that the August 2006 Office Action should be reversed because it was not "correct" or otherwise amounted to "clear error or abuse of discretion."

81.     Cubaexport's petition to the Director did not and could not extend its time to correct the deficiency identified in the July 2006 Office Action, which deadlines are set by statute and regulation.

82.     Just a week before filing its petition to the Director, Cubaexport commenced an Administrative Procedure Act suit against OFAC, and used the pendency of that lawsuit in an effort to suspend a final decision by the PTO Director on its renewal application.  *See Empresa Cubana Exporiadora de Alimentos y Productos Varios ("Cubaexport") v. U.S. Dep't of Treasury, et. al.*, Case No. 06-cv-1692 (D.D.C.) ("The OFAC Action").

83.     The Deputy Commissioner for Trademark Examination Policy of the PTO suspended action on the petition pending disposition of the OFAC Action.  The district court in the OFAC Action dismissed Cubaexport's claims on March 30, 2009.  On March 29, 2011, the United States Court of Appeals for the District of Columbia Circuit upheld the dismissal of Cubaexport's claims.  By May 2012, Cubaexport exhausted all appeals when the United States Supreme Court denied its petition for a writ of certiorari.  *Empresa Cubana Exportadora De Alimentos Y Productos Varios v. Dep't of Treasury*, 606 F. Supp.2d 59 (D.D.C. 2009), *aff'd* 638 F.3d 794 (D.C. Cir. 2011), *cert. denied* 132 S. Ct. 2377 (May 14, 2012).

84.     On June 8, 2012, having lost its action against OFAC, Cubaexport argued to the PTO that its HAVANA CLUB registration could not be cancelled by the PTO without a specific

license from OFAC.

85.     On July 11, 2012, Cubaexport wrote to OFAC advising that the PTO was

considering the status of the HAVANA CLUB registration, and reiterating Cubaexport's position

that the PTO could not take action without an OFAC license.  Cubaexport requested a meeting to

discuss the matter.

86.     On August 31, 2012, in preparation for that meeting, OFAC asked the PTO to

provide information regarding Cubaexport's registration, "including an explanation of any

applicable statutory requirements, rules and procedures."

87.     On September 27, 2012, the Commissioner for Trademarks provided OFAC with

a detailed memorandum of the PTO regarding these statutory rules and requirements that the

PTO was obligated to follow.

88.     In its September 2012 memorandum, the PTO wrote:

> Renewal requires "payment of the prescribed fee" for each class of
> goods and services and the timely "filing of a verified application:"
> signed by the registrant or the registrant's representative. . . .
>
> If the renewal application is not filed within the time periods set by
> statute, or if it is timely filed but unacceptable because it does not
> meet the statutory requirements, *see* 15 U.S.C. § 1059(a), the
> registration "expires" as of the end of its term.  37 C.F.R. §§ 2.182-
> 2.186.
>
>             * * *
>
> The statutory requirements of maintenance and renewal, however,
> are distinct, as are the consequences of an untimely or
> unacceptable filing.  As noted above, if the requirements of §8 are
> not met, the Director is required by that provision to cancel the
> registration as of the end of its term.  If the requirements of §9 are
> not met, the registration expires as of the end of its term.
>
>             * * *
>
> The Director has no discretion to waive the requirements of §§8
> and 9.  Thus, if a §8 affidavit, §9 renewal, or combined §8/9 filing

> is not accompanied by the prescribed fees, the Director has no
> discretion but to issue a refusal stating that the registration will be
> canceled and/or has expired.

*See* Exhibit 3.

89.     On November 30, 2012, OFAC stated that "no license is required under the

CACR for the PTO actions at issue."  It explained that if a renewal application "does not meet

the statutory requirements, the registration expires as of the end of its term."  The PTO's

"ministerial record-keeping function" of updating its records "does not alter the registration's

legal status," which "changes because the term of the registration ends without the owner

meeting the statutory requirements for renewal."

## G.     Between November 30, 2012 and January 13, 2016, the PTO Takes No Action on Cubaexport's Petition

90.     Despite OFAC's confirmation in November 2012 that the CACR posed no barrier

to rectifying the Register, the PTO exceeded its statutory authority by failing to remove

Cubaexport's registration and failed to perform its non-discretionary duty to update its

registration records for an additional three years.

91.     Meanwhile, Bacardi's own application to register the HAVANA CLUB mark

remained, and still remains, suspended and will likely be refused because of Cubaexport's

registration.

## H.     OFAC and the PTO Improperly Attempt to Retroactively Revive Cubaexport's HAVANA CLUB registration

92.     Upon information and belief, on or about November 10, 2015, Cubaexport

submitted another application to OFAC for a specific license in an effort to improperly revive its

long dead U.S. HAVANA CLUB registration.

93.     On January 11, 2016, more than nine years after the HAVANA CLUB

Registration had lapsed, OFAC issued a specific license to Cubaexport purporting to permit

Cubaexport "engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States patent and Trademark Office (PTO), including those related to Cubaexport's submission filed with the PTO on or about December 14, 2005, and the payment referenced therein, as described in the Application."

94.     Cubaexport sent the PTO a copy of the specific license on January 12, 2016.

95.     Just one day later, on January 13, 2016, the PTO granted Cubaexport's ten-year old petition and purported to accept Cubaexport's long-overdue filing fee and permit the renewal of Cubaexport's HAVANA CLUB registration.  *See* Exhibit 4.

96.     The Director instructed the Examining Attorney to renew its examination of Bacardi's application to register the HAVANA CLUB mark.  The existence of Cubaexport's registration prejudices Bacardi's application, which still remains suspended and will be refused under section 2(d) of the Trademark Act if Cubaexport's registration remains on the registry.

## CAUSES OF ACTION

### COUNT 1: Administrative Procedures Act

**(5 U.S.C. § 706(2), Action to Set Aside Agency Action that Is Unauthorized, Not in Accordance with Law, and/or Arbitrary and Capricious)**

97.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98.     Section 9 of the Lanham Act (15 U.S.C. § 1059) provides that at the conclusion of a trademark registration's ten-year term, it may be renewed "upon payment of the prescribed fee and the filing of a written application, in such form as may be prescribed by the Director."  The statute further provides that "[i]f any application filed under this section is deficient, the deficiency may be corrected within the time prescribed after notification of the deficiency, upon payment of a surcharge prescribed therefor."

99.     The term of Cubaexport's registration ended on July 27, 2006.  The examiner refused Cubaexport's application for renewal on July 21, 2006, because Cubaexport could not pay the statutorily required filing fee.  The notification prescribed a period of six months to correct the deficiency and stated that if Cubaexport could not pay the fee the registration "will be cancelled/expired."  Cubaexport then informed the PTO that OFAC would not provide a specific license enabling it to pay the statutorily required fee within the six months provided, and the examiner issued another action on August 2, 2006 maintaining its refusal of renewal.  Because Cubaexport's renewal application did not include "payment of the prescribed fee," and Cubaexport did not correct the deficiency "within the [six months] prescribed after notification of the deficiency," 15 U.S.C. § 1059, Cubaexport's registration expired.

100.     An applicant to renew a registration may petition the Director of the PTO to review the refusal of renewal.  37 C.F.R. § 2.186.  The Director reviews the actions of a post-registration examiner regarding a section 8 affidavit or section 9 renewal application to determine whether the judgment of the examiner was correct.  TMEP 1706.

101.     Here, the post-registration examiner was correct in rejecting the renewal application of Cubaexport because it did not and could not pay the filing fee as required by statute.

102.     Under the statute, the Director had no authority to do anything other than deny the petition and affirm the office action.

103.     Filing a petition with the Director does not toll or extend the time for a party to correct deficiencies in their renewal applications.  The statute requires deficiencies to be corrected "within the time prescribed after notification of the deficiency."  15 U.S.C. § 1059.  Regulations specify that this period will be six months, *see* 37 C.F.R. § 2.184, and Cubaexport

was in fact notified by the examiner that the deficiency had to be corrected within six months. That deadline is binding under the statute.

104.    The Director has no statutory authority to extend the time for paying a filing fee beyond the period prescribed in the notification of deficiency, much less to extend that time by ten years.  *See, e.g.*, *In re Culligan Int'l Co.*, 915 F.2d 680 (Fed. Cir. 1990) (applicant's failure to pay the late renewal fee under section 9 during the period allowed in the statute could not be waived by the Commissioner).

105.    Thus, the Director acted outside the scope of her statutory authority, and acted contrary to law, including 15 U.S.C. § 1059, when she granted Cubaexport's petition, permitted Cubaexport to pay its filing fee ten years late, granted renewal of the registration, and provided that PTO's records will be updated accordingly.

106.    That decision is also arbitrary and capricious and/or contrary to law because it is contrary to the PTO's own regulations.  Under the regulations, Cubaexport was required to respond to the Office Action to correct the deficiency within six months.  37 C.F.R. § 2.184(b); *see also* TMEP 1606.13 ("Any deficiency must be cured within the set period for response to the Office action, i.e., within six months of the issuance date of the action, or before the expiration date of the registration, whichever is later." (citing 37 C.F.R. § 2.184(b)).

107.    The PTO's action is also arbitrary and capricious because the agency changed its position without acknowledging, much less offering a reasoned explanation for, the change.  In September 2012, the Commissioner for Trademarks provided OFAC with a memorandum of the PTO setting forth the PTO's interpretation of the law and stating that the PTO has no discretion to excuse Cubaexport's failure to pay its filing fee or to do anything other than to reflect on the register that Cubaexport's registration has expired.  *See* Exhibit 3.  In 2016, however, in a brief

decision, the Commissioner for Trademarks (acting under delegated authority from the Director) purported to reach a contrary conclusion. *See* Exhibit 4. In doing so, however, the Commissioner did not even address that this was a change in the agency's position from 2012. The Commissioner therefore did not provide any reasoned explanation for this change of position.

108.   Thus, the PTO's action is unauthorized and not in accordance with law, and arbitrary and capricious.

## COUNT 2: Ultra Vires Action

109.   As explained above, the Director had no authority to do anything other than deny Cubaexport's petition and affirm the office action holding that Cubaexport had failed to pay the renewal fee and, therefore, its registration was expired.

110.   The PTO itself agrees that "[t]he Director has no discretion to waive the requirements of §§8 and 9. Thus, if a §8 affidavit, §9 renewal, or combined §8/9 filing is not accompanied by the prescribed fees, the Director has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired." Exhibit 3.

111.   Thus, the PTO acted in violation of the Trademark Act in allowing renewal of Cubaexport's registration. Such *ultra vires* acts are unauthorized and violate the statute.

112.   The Court should reverse the Director's ruling and direct the PTO to remove Cubaexport's registration from the registry.

**PRAYER FOR RELIEF**

113.    Bacardi therefore asks that the Court: (i) set aside the decision of the Director of

the PTO; (ii) declare that Cubaexport's HAVANA CLUB trademark registration (U.S. Reg. No.

1,031,651) expired as of the end of its term in 2006; and (iii) order the PTO to remove

Cubaexport's expired HAVANA CLUB trademark registration from the registry.


Dated:    Washington, D.C.                          Respectfully submitted,
          December 28, 2021


                                                      _/s/ Cameron R. Argetsinger_____
                                                    Cameron R. Argetsinger (Bar No. 72703)
                                                    KELLEY DRYE & WARREN LLP
                                                    Washington Harbour
                                                    3050 K Street NW, Suite 400
                                                    Washington, DC 20007
                                                    (202) 342-8649

                                                    Michael C. Lynch (*pro hac* application forthcoming)
                                                    Damon Suden (*pro hac* application forthcoming)
                                                    KELLEY DRYE & WARREN LLP
                                                    3 World Trade Center
                                                    175 Greenwich Street
                                                    New York, New York 10007
                                                    (212) 808-7800

                                                    David Zionts (*pro hac* application forthcoming)
                                                    COVINGTON & BURLING LLP
                                                    One CityCenter
                                                    850 Tenth Street, NW
                                                    Washington, DC  20001-4956
                                                    (212) 662-5987

                                                    Attorneys for Plaintiffs

# EXHIBIT 1

# UNITED STATES PATENT AND TRADEMARK OFFICE

**REGISTRATION NO**:          1,031,651

**REGISTRANT**:  EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

August 3, 2006

# *1031651*

**RETURN ADDRESS**:
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**CORRESPONDENT ADDRESS**:
          HERBERT SCHWARTZ
          ROPES & GRAY LLP
          1251 AVENUE OF THE AMERICAS
          NEW YORK, NY 10020

**MARK**:          HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO** :   N/A

**CORRESPONDENT EMAIL ADDRESS**:

Please provide in all correspondence:

1.   Registration date, registration number, mark and registrant's name.
2.  Date of this Office Action.
3.   Examiner's name and Post Registration Division.
4.  Your telephone number and e-mail address.

# POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The Office has received your letter of August 1, 2006, indicating that the specific license necessary to authorize the required fee for filing the combined document has been denied.  Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

It is noted that your letter contains arguments in support of renewing the subject registration.  You may file a petition to the Director requesting review of this decision.  The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100.  37 C.F.R. §§2.6, 2.146(a)(2) and 2.176.

Sharon Granata
/Sharon Granata/
Trademark Specialist
Post Registration Division
PH:  (571) 272-9167
FAX (571) 273-9167
sharon.granata@uspto.govov

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's  Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

# EXHIBIT 2

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:** 74/572667

**APPLICANT:** BACARDI & COMPANY LIMITED

**CORRESPONDENT ADDRESS:**
    William R. Golden, Jr.
    101 Park Avenue
    New York, NY 10178

**RETURN ADDRESS:**
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513
**ecom107@uspto.gov**

**MARK:** HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO:** N/A

**MAILING DATE:** May 7, 2002

**CORRESPONDENT EMAIL ADDRESS:**
    N/A

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Mailing date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and ZIP code.

## OFFICE ACTION

**TO AVOID ABANDONMENT, WE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF OUR MAILING OR E-MAILING DATE.**

To respond formally using the Office's Trademark Electronic Application System (TEAS), visit **http://www.uspto.gov/teas/index.html** and follow the instructions.

To respond formally via E-mail, visit **http://www.uspto.gov/september11/tmelecresp.htm** and follow the instructions.

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the serial number, law office and examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

For general and other useful information about trademarks, you are encouraged to visit the Office's web site at **http://www.uspto.gov/main/trademarks.htm**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY.**

RE: Serial Number 74/572667

This letter responds to the applicant's communication filed on April 12, 2002.

74/572667                                    -2-

It is called to applicant's attention that Cancellation Proceeding no. 24,108, relating to U.S. Trademark Registration no. 1,031,651, and Cancellation Proceeding nos. 25,346 and 40,287, relating to U.S. Trademark Registration no. 1,956,660, are ongoing at this time. Correspondingly, the refusal to register under Trademark Act § 2(d) based upon U.S. Trademark Registration nos. 1,031,651 and 1,956,660 is maintained.

Registration is refused under Trademark Act § 2(e)(3). Due to the extensive use of the mark in commerce by applicant, applicant was informed that a claim of distinctiveness could be filed under Trademark Act § 2(f) and the refusal to register would be withdrawn. While applicant submitted April 12, 2002, an Affidavit of Ramon Arechabala, the affidavit does not constitute a claim of distinctiveness. The affidavit contains only a history of the "Havana Club" trademark from the prospective of the Arechabala family, the original owner of the "Havana Club" trademark. An allegation that the mark has become distinctive of the goods due to use in commerce or promotion was not presented in the affidavit. Correspondingly, the refusal to register the mark under Trademark Act § 2(e)(3) is maintained.

In Office Action dated October 12, 2001, applicant was apprised of the fact that the Amendment to Allege Use lists only "rum" as the goods for which the mark is used. This listing contains fewer goods than were indicated in the recitation of goods. Applicant was required to indicate whether the omission of the items -- distilled spirits specialty containing rum and prepared alcoholic cocktail containing rum -- were intentional. Applicant responded by stating that it intended to file a Request to Divide the application to form a separate application for the distilled spirits specialty containing rum and prepared alcoholic cocktail containing rum. Correspondingly, the following is noted:

In the amendment to allege use, the applicant has described the goods more narrowly than those described in the application itself. Therefore, the applicant must either confirm that the identification indicated in the amendment to allege use is proper or submit an amended identification. The goods identified in the amended identification may not exceed the scope of those identified in the application itself. TMEP §1104.09(C).

If the applicant amends to add goods not specified in the amendment to allege use, the applicant must verify, with an affidavit or a declaration in accordance with 37 C.F.R. §2.20, that the mark is now in use in commerce on or in connection with the additional goods. TMEP §1104.09(c). Of course, the applicant may withdraw the amendment to allege use or request that the application be divided. TMEP §§1104.10 and 1110 *et seq.*

Applicant must amend the recitation of goods by either: stating that the goods are restricted to rum, only; or adding some or all of the goods listed in the recitation of goods to the goods in the amendment to allege use supported with either an affidavit or declaration signed by applicant's representative indicating that the mark is now in use in commerce on or in connection with the additional goods; or filing a request to Divide the application to form a separate application for the goods other than rum.

74/572667                              -3-

Because a proper listing of the goods contained in an Amendment to Allege Use does not involve a statutory refusal, but rather constitutes and informality, the application may not be suspended until the informality is resolved. Suspension of action is in order only after all issues have been resolved or are in condition for a final action. See: TMEP § 1108. Therefore, action on this application will not be suspended until applicant resolves the issue relating to the recitation of goods.

It is noted that if an applicant fails to completely respond to all the issues contained in an outstanding Office Action within six months after the mailing date of an Office Action, the application shall be deemed to have been abandoned. Trademark Rule 2.65(a).

David C. Reihner, Examining Attorney
Law Office 107, 703-308-9107 ext. 169
703-746-8107 fax.

# EXHIBIT 3



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

SEP  27  2012

Ms. Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control
Department of the Treasury
Washington, DC 20220

Re:   Information Requested for OFAC's Meeting with Cubaexport
      U.S. Trademark Registration No. 1031651
      Mark:  HAVANA CLUB and design

Dear Ms. Hammerle:

Thank you for your letter dated August 31, 2012, requesting information from the USPTO
regarding the actions discussed in Cubaexport's June 11, 2012 letter to me.

Attached is a memorandum providing information regarding provisions of the Trademark Act,
the Trademark Rules of Practice, and the Trademark Manual of Examining Procedure (TMEP)
applicable to the USPTO actions at issue, as well as specific information about the USPTO
actions and procedures regarding Cubaexport's trademark registration.

Please contact me if you have any questions or would like any additional information.

Sincerely,

Deborah S. Cohn
Commissioner for Trademarks

Encl:   Memorandum

cc:   David H. Bernstein, Esq.
      Debevoise & Plimpton LLP
      (Counsel to Cubaexport)

JA37

MEMORANDUM

To:     Office of Foreign Assets Control, U.S. Department of the Treasury

From:   United States Patent and Trademark Office

Date:   September 27, 2012

Re:     Information Regarding U.S. Trademark Registration Maintenance and Renewal
        Requirements and USPTO Record Keeping Procedures

I.      EXPLANATION OF TRADEMARK REGISTRATION MAINTENANCE AND
        RENEWAL REQUIREMENTS

        A.      REGISTRATION AND RENEWAL TERMS

Prior to November 16, 1989, federal trademark registrations were issued or renewed for a
twenty-year term.  All registrations are now issued or renewed for a ten-year term pursuant to the
Trademark Law Revision Act of 1988, Pub. L. No. 100-667, 102 Stat. 3935.  *See* 15 U.S.C.
§ 1058(a) ("Each registration shall remain in force for 10 years . . . .") and 15 U.S.C. § 1059(a)
("[E]ach registration may be renewed for periods of 10 years at the end of each successive 10-
year period following the date of registration . . . .").

        B.      REGISTRATION MAINTENANCE REQUIREMENTS

In order to maintain a federal registration, owners are required to file an acceptable affidavit or
declaration of use or excusable nonuse, "accompanied by the fee prescribed by the Director"
during the statutorily prescribed periods pursuant to section 8 of the Trademark Act, 15 U.S.C.
§ 1058 ("§8").[1]  An acceptable §8 affidavit must be filed between the fifth and sixth year after
registration or during the six-month grace period immediately following ("6-Year §8 Affidavit").
15 U.S.C. § 1058(a)(1); 37 C.F.R. § 2.160.  The owner of the registration also must file an
acceptable affidavit of use or excusable nonuse between the ninth and tenth year after
registration and each successive ten-year period following registration, or during the six-month
grace period immediately following ("10-Year §8 Affidavit").  15 U.S.C. § 1058(a)(3); 37 C.F.R.
§ 2.160.

Both the 6-Year and 10-Year §8 Affidavits have the same legal requirements.  The owner of the
registration must pay the prescribed fee for each class of goods and services and (i) if use of the
mark in commerce is being claimed, file an affidavit stating that the mark is in use in commerce,

---

[1] The holder of a registered extension of protection of an international registration to the United
States must periodically file affidavits of use or excusable nonuse pursuant to § 71 of the
Trademark Act, 15 U.S.C. § 1141(k).

1

set forth the goods and services with which the mark is in use in commerce, and include a specimen showing current use of the mark in commerce, or (ii) if excusable nonuse is being claimed, file an affidavit setting forth the goods and services with which the mark is not in use in commerce, and include a showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. 15 U.S.C. § 1058(b); 37 C.F.R. § 2.161; TMEP § 1604.05. The current fee for filing a §8 affidavit is $100 per class with an additional charge of $100 per class if filed during the grace period. 37 C.F.R. § 2.6.

If the 6-Year or 10-Year §8 Affidavit is not filed within the time periods set by statute, or if the §8 Affidavit is timely filed but unacceptable because it does not meet the statutory requirements, the registration is "canceled." 15 U.S.C. § 1058(a) ("[T]he registration of any mark shall be canceled by the Director for failure to comply with the provisions of subsection (b) of this section, upon expiration of the following time periods, as applicable . . . ."); 37 C.F.R. § 2.160.

C.   RENEWAL REQUIREMENTS

Pursuant to section 9 of the Trademark Act, 15 U.S.C. § 1059 ("§9"), registrations may be renewed at the end of each successive ten-year period following the date of registration.[2] Renewal requires "payment of the prescribed fee" for each class of goods and services and the timely "filing of a verified application" signed by the registrant or the registrant's representative. 15 U.S.C. § 1059; 37 C.F.R.§ 2.183. Renewal applications must be filed within the one-year period before the end of each successive ten-year period for which the registration was issued or renewed, or within the six-month grace period immediately following. 15 U.S.C. § 1059; 37 C.F.R. § 2.182. The current fee for renewing a registration is $400 per class with an additional charge of $100 per class if filed during the grace period.

If the renewal application is not filed within the time periods set by statute, or if it is timely filed but unacceptable because it does not meet the statutory requirements, *see* 15 U.S.C. § 1059(a), the registration "expires" as of the end of its term. 37 C.F.R. §§ 2.182-2.186.

D.   COMBINED 10 YEAR SECTION 8 AND SECTION 9 RENEWAL FILINGS

Because the deadline for filing a §9 renewal application coincides with the deadline for filing the 10-Year §8 affidavit—both are due at the end of each successive ten-year period following the date of registration—registrants generally file a combined §8 declaration of use and/or excusable nonuse and a §9 application for renewal ("combined §8/9 filing"). The statutory requirements of maintenance and renewal, however, are distinct, as are the consequences of an untimely or unacceptable filing. As noted above, if the requirements of §8 are not met, the Director is required by that provision to cancel the registration as of the end of its term. If the requirements of §9 are not met, the registration expires as of the end of its term.

---

[2] Section 9 does not apply to Extensions of Protection of International Registrations to the United States. Renewals of international registrations must be made at the International Bureau of the World Intellectual Property Organization, in accordance with Article 7 of the Madrid Protocol. 37 C.F.R. § 7.41(a).

II.  USPTO RECORD KEEPING AND ACTIONS REGARDING MAINTENANCE AND RENEWAL OF TRADEMARK REGISTRATIONS

The Trademark Act requires the Director of the United States Patent and Trademark Office ("USPTO") to maintain a public record of all registered trademarks. 15 U.S.C. § 1057(a) ("[A] record [of issued registrations] shall be kept in the United States Patent and Trademark Office"). Previously kept in paper files, the USPTO's registration records are now electronic and available for searching on the USPTO's website. When the status of a registration changes, the USPTO updates its electronic records to indicate the status change.

If no §9 renewal application is filed before the end of the grace period, the registration expires and the USPTO records are updated to indicate that the registration is expired. *See* 37 C.F.R. § 2.182; TMEP § 1611. Likewise, if no §8 affidavit is filed before the end of the grace period, the registration is canceled, and the USPTO records are updated to indicate that the registration is canceled. *See* 37 C.F.R. § 2.160; TMEP § 1611.

When the USPTO updates the registration records to accurately reflect their legal status, the USPTO performs a ministerial record-keeping function. A registration that has been renewed and maintained remains designated as "live" in the USPTO's records, while a registration that has expired under §9 and/or been canceled under §8 is designated as "dead." Specifically, when a registration cancels/expires for failure to meet both the 10-year statutory maintenance and renewal requirements, the status field in the registration record is updated to show CANCELLED, the prosecution history is updated to show CANCELLED SEC. 8 (10-YR)/EXPIRED SECTION 9, and the "Live/Dead Indicator" field is updated to indicate that the registration is "DEAD." The "Cancellation Date" field shown in the USPTO's records indicates the date the records were updated, but the registration's actual cancellation/expiration date is the end of the registration term as set by statute. The USPTO's updating of its registration records in this way does not alter the registration's legal status. The legal status of the registration changes because the term of the registration or renewal ends without the owner meeting the requirements of §8 and/or §9.[3]

If a §8 affidavit and/or §9 renewal is filed, the prosecution history of the registration in the electronic records of the USPTO is updated to show the filing of the document(s). By statute, the USPTO Director must notify the registration owner if the §8 affidavit and/or §9 renewal are refused and the reasons for refusal. 15 U.S.C. § 1058(e) and § 1059(b); 37 C.F.R. §§ 2.163 and 2.184. In the case of a combined §8/9 filing, the USPTO issues a single Office action stating the reason(s) for refusal. If the deficiency identified in the Office action is not corrected or the registrant fails to respond to the Office action, and no time remains in the grace period in which to file a new document, the registration simultaneously will be both canceled for failure to

---

[3] Similarly, the USPTO updates registration records to reflect changes to their status when ordered to do so by a court pursuant to 15 U.S.C. § 1119, which instructs that the Director "shall make appropriate entry upon the records of the Patent and Trademark Office." When the USPTO updates its records pursuant to a § 1119 order, the date indicated in the records is not the date of the court order, but rather the date the records were updated by the USPTO.

comply with the requirements of §8 and it will expire under §9. The owner of the registration may file a petition to the Director for review of the action under 37 C.F.R. §§ 2.146(a)(2) and 2.165(b). The decision on a petition under 37 C.F.R. § 2.146 is the final action of the USPTO.

The Director has no discretion to waive the requirements of §§8 and 9.[4] Thus, if a §8 affidavit, §9 renewal, or combined §8/9 filing is not accompanied by the prescribed fees, the Director has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired.

III.   THE "HAVANA CLUB" REGISTRATION (Reg. No. 1031651)

Pursuant to OFAC's regulations in effect at the time, which permitted registration, maintenance, and renewal fees to be paid pursuant to the general license provision of the Cuban Assets Control Regulations (CACR), the original registration for HAVANA CLUB was issued on January 27, 1976 and remained in force until 1996 for an initial term of twenty years. A 6-Year §8 Affidavit of excusable nonuse was filed and the required fees paid on January 13, 1982, and subsequently accepted on April 12, 1982. The first renewal application was filed and required fees paid on January 18, 1996 and granted on June 18, 1996, for a period of ten years, i.e., until January 27, 2006.

At the time the second renewal application was filed on December 14, 2005 as a combined §8/9 filing, OFAC's regulations had changed as a result of the 1998 enactment of Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681, which eliminated the ability of Cuban companies to rely on the general license provisions to register or renew certain trademarks, including the HAVANA CLUB registration. The combined filing included authorization to charge the required fees to the USPTO deposit account of Ropes and Gray LLP, attorney for Cubaexport at the time of the combined §8/9 filing. Ropes and Gray indicated in the cover letter accompanying the combined filing that authorization to pay the fee was given pursuant to OFAC License No. CU-74488, issued on March 4, 2005.

---

[4] See Checkers Drive-In Restaurants, Inc. v. Comm'r of Patents and Trademarks., 51 F.3d 1078, 1085, 34 USPQ2d 1574, 1581 (D.C. Cir. 1995), cert. denied, 516 U.S. 866 (1995) ("[I]n establishing cancellation as the penalty for failure to file the required affidavit [under 15 U.S.C. §1058], Congress made no exception for the innocent or the negligent. Thus, the Commissioner had no discretion to do other than cancel Checkers's service mark registration in this case"); In re Mother Tucker's Food Experience (Canada) Inc., 925 F.2d 1402, 1405, 17 USPQ2d 1795, 1798 (Fed. Cir. 1991) ("The history of Section 8 supports the view that compliance with the statutory requirements is mandatory" and "[i]t was not within the Commissioner's discretionary authority to waive [the] requirement" to show use in commerce.); In re Culligan Int'l Co., 915 F.2d 680, 16 USPQ2d 1234 (Fed. Cir. 1990) (affirming that an applicant's failure to pay the late renewal fee under Section 9 during the three month period allowed in the statute for late renewal applications "on payment of the additional fee," 15 U.S.C. § 1059(a), could not be waived by the Commissioner since it was an express requirement of the statute): In re Holland American Wafer Co., 737 F.2d 1015, 1018, 222 USPQ 273, 275 (Fed. Cir. 1984) ("Timeliness set by statute is not a minor technical defect which can be waived by the Commissioner.").

4

Although Cubaexport's attorney had authorized payment of the fee from the law firm's deposit account, the USPTO was informed by OFAC in a letter dated April 6, 2006 that payment of the fee was not authorized under License No. CU-74488. Because payment of the fee is required by statute and cannot be waived, the USPTO issued an Office action on July 21, 2006, notifying Cubaexport that the combined filing was refused because the fee had not been paid:

> "The combined filing included authorization to charge the fee to the deposit account of Ropes & Gray LLP, attorney for registrant. As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005. However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee. Therefore, the required fee for the combined filing has not been paid.
>
> It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration. Registrant is required to notify the USPTO whether that specific license has been granted or denied."

The Office action provided Cubaexport six months to submit the required fees. 37 C.F.R. §§ 2.161(d)(1), 2.183(b). On August 2, 2006, Cubaexport's attorney submitted a response to the Office action notifying the USPTO that OFAC declined to grant Cubaexport a specific license to pay the required fee and requested that the registration be renewed nonetheless. In an Office action dated August 3, 2006, refusal of the combined filing was continued because the required fees were not paid:

> "The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.
>
> The Office has received your letter of August 1, 2006, indicating that the specific license necessary to authorize the required fee for filing the combined document has been denied. Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.
>
> It is noted that your letter contains arguments in support of renewing the subject registration. You may file a petition to the Director requesting review of this decision. The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100. 37 C.F.R. §§2.6, 2.146(a)(2) and 2.176."

Cubaexport filed a petition to the Director on October 5, 2006 seeking review of the refusal to renew the registration. Action on the petition was suspended on December 6, 2006 pending disposition of the federal court litigation that Cubaexport filed against Treasury/OFAC regarding OFAC's decision to refuse to grant the specific license for the renewal fee payment. The petition

5

suspension order provided Cubaexport 30 days from the date of the final disposition of the litigation against OFAC to notify the USPTO.

In a decision issued on March 29, 2011, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the district court's ruling upholding OFAC's decision to deny Cubaexport's request for a specific license to pay the prescribed fee. *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794 (D.C. Cir. 2011). The appeals court decision held that: the 1998 law prohibited Cubaexport from renewing the registration when it sought to do so in 2006; OFAC is required to follow the 1998 law; authorization in the form of a specific license from OFAC to pay the prescribed fee was a necessary prerequisite to renewal of the registration; and OFAC's decision to deny such license was appropriate. The court's decision thus confirms that the fees required to maintain and renew the registration are not authorized to be paid. On May 14, 2012, the U.S. Supreme Court denied Cubaexport's petition for certiorari, and the appeals court decision became final.

Cubaexport filed a submission with the USPTO on June 11, 2012 notifying the USPTO of the final disposition of the litigation against OFAC and raising new arguments that the petition should be granted (or in the alternative, that the registration should remain frozen in its previously existing state for the duration of the Cuban embargo) because the USPTO's actions of refusing the combined maintenance and renewal filing for failure to pay the prescribed fees and of updating the USPTO's records to reflect the expired and canceled status of the registration would be prohibited under the CACR unless licensed by OFAC. Cubaexport thereafter contacted OFAC to request a meeting to discuss the issues raised in the June 11th letter to the USPTO. The USPTO will not act to decide the petition until OFAC has the opportunity to consider whether the USPTO actions at issue require a license.

6

JA43

# EXHIBIT 4

# UNITED STATES PATENT AND TRADEMARK OFFICE

**U. S. APPLICATION SERIAL NUMBER**: 73/023981

**U. S. REGISTRATION NUMBER**: 1,031,651

**CORRESPONDENCE ADDRESS**:

David H. Bernstein
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

**RETURN ADDRESS**:

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK**:
HAVANA CLUB and Design

**ISSUE/MAILING DATE**:
January 13, 2016

**APPLICANT/REGISTRANT**:
Empresa Cubana Exportadora de Alimentos y Productos
Varios d/b/a Cubaexport

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
N/A

**CORRESPONDENT'S EMAIL ADDRESS**:
dhbernstein@debevoise.com

# PETITION TO DIRECTOR GRANTED

On October 5, 2006, Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport" or "petitioner") petitioned the Director of the United States Patent and Trademark Office ("Director") to reverse the August 3, 2006 decision of the Post Registration examiner refusing the combined filing petitioner submitted on December 14, 2005, pursuant to sections 8 and 9 of the Trademark Act, 15 U.S.C. §§ 1058 and 1059 ("combined §8/9 filing"). The filing was refused because petitioner could not legally pay the filing fee without a specific license issued by the Office of Foreign Assets Control, and thus the fee submitted with the filing was deemed not to have been paid. On January 12, 2016, petitioner supplemented its petition by providing a license that specifically authorizes the combined §8/9 filing fee payment made on December 14, 2005, as well as all other transactions necessary to renew and maintain the registration. The Director has the authority to review petitioner's request. *See* 37 C.F.R. §§2.146(a)(2), 2.146(a)(3), 2.165(b), 2.186.[1] The petition is GRANTED.

---

[1] The Director's authority to decide trademark-related petitions has been delegated to the Commissioner for Trademarks. *See* 37 C.F.R. § 2.146(h); *Trademark Manual of Examining Procedure* (TMEP) § 1709 (Oct. 2015).

**FACTS**

As a Cuban entity, petitioner is subject to the terms of the Cuban embargo and is also subject to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, which are administered by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). The Cuban Asset Control Regulations ("CACR") do not authorize trademark registration maintenance and renewal fees to be paid for this registration unless specifically licensed by OFAC. 31 C.F.R. § 515.527(a); *see generally Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 796-798, 802 (D.C. Cir. 2011) ("*Empresa Cubana*") (explaining that Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681, eliminated the ability of Cubaexport to rely on the CACR's general license provision to renew the registration for the HAVANA CLUB mark and required Cubaexport to obtain a specific license from OFAC authorizing the transaction).

Petitioner's December 14, 2005 combined §8/9 filing included authorization to charge the required filing fee to the United States Patent and Trademark Office ("USPTO") deposit account of the law firm representing petitioner at the time of the filing. The cover letter accompanying the combined filing indicated that authorization to pay the required fee was given pursuant to OFAC License No. CU-74488, issued on March 4, 2005. The USPTO was informed by OFAC in a letter dated April 6, 2006, that payment of the fee was not authorized under License No. CU-74488.

The Post Registration examiner assigned to review the filing issued an Office action on July 21, 2006, notifying petitioner that the combined §8/9 filing could not be accepted because the required fee was not authorized to be paid and thus was deemed not to have been paid. The Office action noted that petitioner had filed, on April 7, 2006, an application with OFAC for a specific license authorizing payment of the fees. The Office action provided a response time of six months to notify the USPTO whether that request for a specific license was granted or denied. On August 2, 2006, petitioner submitted a response to the Office action notifying the USPTO that OFAC had denied petitioner's request for a specific license to pay the fee for the combined §8/9 filing. In an Office action dated August 3, 2006, the Post Registration examiner maintained the refusal of the combined §8/9 filing. The Office action noted that the owner "may file a petition to the Director requesting review of this decision" and that such petition must be filed within six months from the August 3, 2006 action date.

This petition was filed on October 5, 2006. Action on the petition was suspended for approximately six years pending the final disposition of petitioner's litigation against the Treasury Department challenging OFAC's decision to deny Cubaexport a specific license to pay the prescribed fee. On June 11, 2012, petitioner submitted a letter notifying the USPTO of the final disposition of the litigation against OFAC, which upheld OFAC's decision. *See generally Empresa Cubana*. Petitioner also submitted supplemental arguments why the petition should be granted even in the absence of a specific license, which resulted in an exchange of correspondence between the USPTO and OFAC.

On January 12, 2016, petitioner submitted a letter supplementing its petition and including a copy of specific license number CU-2015-323837-1, issued by OFAC on January 11, 2016. The OFAC license specifies that "Cubaexport is hereby authorized to engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States Patent and Trademark Office (USPTO), including those related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein . . . ." By its terms, the "license expires on the earlier of January 31, 2018 or the

date of completion of the authorized transactions." Petitioner argues that the sole basis for the prior refusal to accept the combined §8/9 filing has been removed and requests that the petition be granted and the filing accepted. Petitioner authorizes the USPTO to charge the USPTO deposit account of its current counsel to the extent any fees need to be collected by the USPTO in connection with the 2005 combined §8/9 filing or the 2006 petition.

## DISCUSSION

The Trademark Act provides that registrations are issued and can be renewed for ten year terms, provided that the required documents and fees are timely submitted to the USPTO. 15 U.S.C. §§ 1058, 1059; 37 C.F.R. §§ 2.160, 2.182, 2.183. Petitioner timely submitted its combined §8/9 filing and proffered payment of the fee via charge to its counsel's USPTO deposit account on December 14, 2005, within the statutory period for making the filing. But without OFAC authorization to pay the fee for the combined §8/9 filing, petitioner could not comply with the requirements of §§ 8 and 9. Thus, when petitioner's combined §8/9 filing was reviewed by the Post Registration examiner in 2006, she was constrained to refuse the filing because petitioner lacked an OFAC license authorizing the fee payment.

The Director may exercise supervisory authority on petition in appropriate circumstances. 37 C.F.R. § 2.146(a)(3). The facts here support the invocation of supervisory authority to accept petitioner's combined §8/9 filing.

Petitioner has provided an OFAC license that specifically authorizes petitioner's December 14, 2005 combined §8/9 filing and fee payment. Thus, the fee payment is effective as of December 14, 2005, and the combined §8/9 filing is considered complete and acceptable as of that date.

Moreover, even if the OFAC license did not specifically authorize Petitioner's December 14, 2005 fee payment, the license authorizes "all transactions necessary to renew and maintain" the registration. Non-payment or insufficient payment of the fee for a combined §8/9 filing is a deficiency that can be corrected, even after the statutory time period, as long as the correction occurs within the time prescribed after notification of the deficiency. *See* 15 U.S.C. §§1058(c) and 1059(a); 37 C.F.R. §§ 2.164 and 2.185; *see generally Trademark Manual of Examining Procedure* §§ 1604.06, 1604.17, 1604.19, 1606.05, 1606.13 (October 2015 version and 4th ed. April 2005). Petitioner was notified in two Office actions issued by the Post-Registration examiner that the fee it had proffered for its December 14, 2005 combined §8/9 filing could not be accepted in the absence of an OFAC license, and was further notified that it could seek review of the post-registration decision by filing a petition to the Director. Petitioner filed a timely petition. Petitioner has satisfied the fee requirement by obtaining an OFAC license that authorizes petitioner's payment of the fee for the combined §8/9 filing, providing the license to the USPTO as a timely supplement to its petition, and authorizing the USPTO to charge any uncollected fees to its counsel's USPTO deposit account. All required fees have been collected.

3

JA47

**DECISION**

The petition is granted.  The combined §8/9 filing is accepted.  The registration is renewed and the USPTO's records will be updated accordingly.  The registration file will be forwarded to the Post Registration Division for action consistent with this decision.


/Mary Boney Denison/
Commissioner for Trademarks

For general and other useful information about trademarks, you are encouraged to visit the USPTO web site at **http://www.uspto.gov/main/trademarks.htm**.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BACARDI & COMPANY LIMITED and BACARDI U.S.A. INC.

**(b)** County of Residence of First Listed Plaintiff    N/A
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment.

## DEFENDANTS

UNITED STATES PATENT AND TRADEMARK OFFICE, and DREW HIRSHFELD, in his official capacity as the acting Director of the United States Patent and Trademark Office

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV |
| **REAL PROPERTY** | | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Administrative Procedure Act, 5 U.S.C. §§ 701-706

Brief description of cause:
Administrative action that exceeded agency's authority.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE          DOCKET NUMBER

DATE
12/28/2021

SIGNATURE OF ATTORNEY OF RECORD
s/ Cameron Argetsinger

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

**<u>Attachment</u>**

Attorneys:

Cameron R. Argetsinger (Bar No. 72703)
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC 20007
(202) 342-8649

Michael C. Lynch (*pro hac* application forthcoming)
Damon Suden (*pro hac* application forthcoming)
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800

David Zionts (*pro hac* application forthcoming)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
(202) 662-5987

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BACARDI & COMPANY LIMITED, *et al.*, <br>                Plaintiffs, <br> <br>    v. <br> <br> UNITED STATES PATENT AND <br> TRADEMARK OFFICE, *et al.*, <br>                Defendants, <br> <br>    and <br> EMPRESA CUBANA EXPORTADORA DE <br> ALIMENTOS Y PRODUCTOS VARIOS <br>              Intervenor-Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 1:21-cv-1441 (LMB/IDD) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF FILING OF THE ADMINISTRATIVE RECORD

PLEASE TAKE NOTICE that on September 17, 2024, Federal Defendants have electronically filed the certified administrative record of the pertinent proceedings before the United States Patent and Trademark Office that preceded Plaintiff's claim in the above-captioned action.

Given the administrative record's size and the limits inherent in this Court's Electronic Case Filing ("ECF") system, the administrative record has been divided into several separate ECF Filings. This filing contains This filing contains <u>Part 1 through Part 3</u> out of a total of 3 separate parts.

//

//

//

JA51

Dated: September 17, 2024

Respectfully Submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

_____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: matthew.mezger@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

ELIZABETH TULIS
Trial Attorney
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Tel:    (202) 514-9237
Email: elizabeth.tulis@usdoj.gov

*Counsel for Federal Defendants*

**U.S. DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

<u>**September 17, 2024**</u>
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark registration identified below concerning the 2005 and 2016 requests to renew the registration.  The list was taken from the TSDR electronic database of the United States Patent and Trademark Office and comprises the record before the United States Patent and Trademark Office.

**Owner: EMPRESA CUBANA EXPORTADA DE ALIMENTOS Y PRODUCTOS VARIOS DBA CUBA EXPORT**

**U.S. Trademark Reg. No. 1,031,651**

**Registration Date: January 27, 1976**

**Mark:**





By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Orchideh Rushenas*
**Certifying Officer**

JA53

## PROSECUTION HISTORY (2005-2016)
## OF U.S. TRADEMARK REGISTRATION NO. 1,031,651
### Mark:



| DATE | DESCRIPTION | PAGE NUMBER |
|---|---|---|
| 12/14/2005 | Incoming Correspondence with application for renewal of Registration No. 1,031,651 | A001 |
| 01/25/2006 | Incoming Facsimile with Petition to Director | A084 |
| 01/30/2006 | Incoming Facsimile in response to January 11, 2006 letter from counsel for Bacardi & Company Limited and Bacardi USA, Inc. (hereinafter "Bacardi") | A114 |
| 01/31/2006 | Incoming Correspondence (confirmation copy of facsimile) | A118 |
| 02/02/2006 | Outgoing Facsimile re Trademark General Query | A121 |
| 02/14/2006 | Incoming Facsimile to Commissioner for Trademarks | A126 |
| 02/15/2006 | Incoming Correspondence (confirmation copy of facsimile) | A129 |
| 02/17/2006 | Incoming Facsimile to Commissioner for Trademarks in response to February 14, 2006 letter | A131 |
| 02/17/2006 | Incoming Facsimile to Commissioner for Trademarks in response to February 14, 2006 letter | A134 |
| 02/21/2006 | Incoming Correspondence (confirmation copy of facsimile) | A137 |
| 04/07/2006 | Incoming Facsimile – correspondence to Office of Foreign Assets Control re: License to Pay Renewal Fee | A139 |
| 05/09/2006 | Incoming Facsimile – correspondence to Office of Foreign Assets Control re: License to Pay Renewal Fee | A148 |
| 06/14/2006 | Incoming Facsimile to Commissioner for Trademarks | A153 |
| 06/15/2006 | Incoming Correspondence (confirmation copy of facsimile) | A161 |

| 06/27/2006 | Incoming Facsimile to Commissioner for Trademarks in response to June 14, 2006 letter | A168 |
|---|---|---|
| 06/28/2006 | Incoming Correspondence (confirmation copy of facsimile) | A192 |
| 06/29/2006 | Incoming Facsimile to Commissioner for Trademarks in response to June 27, 2006 letter | A217 |
| 06/30/2006 | Incoming Correspondence (confirmation copy of facsimile) | A222 |
| 07/05/2006 | Incoming Facsimile to Commissioner for Trademarks in response to June 29, 2006 letter | A226 |
| 07/07/2006 | Incoming Correspondence (confirmation copy of facsimile) | A229 |
| 07/17/2006 | Petition to Director Denied | A231 |
| 07/21/2006 | Post-Registration Office Action | A233 |
| 08/01/2006 | Incoming Facsimile with Response to Office Action | A236 |
| 08/01/2006 | Incoming Facsimile from Department of Treasury – copy of correspondence denying request for a license | A247 |
| 08/02/2006 | Incoming Correspondence - Response to Office Action (confirmation copy of facsimile) | A248 |
| 08/03/2006 | Post-Registration Office Action | A258 |
| 10/05/2006 | Letter enclosing Petition to Director; Memorandum of Law in Support of Petition; Declaration of Vincent Palladino | A259 |
| 12/06/2006 | Letter from Commissioner for Trademarks on Petition - Suspension of Action pending disposition of civil action filed by petitioner against the U.S. Department of Treasury | A410 |
| 01/19/2007 | Incoming Correspondence re: Notice of Address Change for Correspondence | A411 |
| 02/21/2007 | Incoming Correspondence re: Freedom of Information Act (FOIA) Request | A412 |
| 04/05/2007 | Incoming Facsimile to FOIA Office re: Request | A415 |
| 05/15/2009 | Incoming Correspondence | A421 |
| 05/29/2009 | Incoming Correspondence in response to May 15, 2009 letter | A425 |
| 07/11/2009 | Trademark Snap Shot Prosecution History for Review Correspondence | A427 |
| 09/03/2009 | Outgoing Correspondence re: receipt of documents | A432 |

| | | |
|---|---|---|
| | pertaining to *Hausler v. The Republic of Cuba, et al.*, Case No. 02-12475 CA 09 | |
| 05/17/2012 | Incoming Correspondence re: upcoming submissions | A434 |
| 06/11/2012 | Incoming Correspondence responding to letter of December 6, 2006 and May 29, 2009 and supplementing petition | A435 |
| 06/25/2012 | Incoming Correspondence re: Revocation of Previous Power of Attorney; Appointment of New Attorneys | A439 |
| 08/07/2012 | Incoming Correspondence from Bacardi | A441 |
| 08/29/2012 | Outgoing Correspondence from USPTO re: pending Petition | A445 |
| 08/31/2012 | Incoming Correspondence from Department of the Treasury, Office of Foreign Assets Control requesting information | A446 |
| 09/27/2012 | Outgoing Correspondence from USPTO to Office of Foreign Assets Control with Memorandum providing information re: U.S. Trademark Registration Maintenance and Renewal Requirements and USPTO Record Keeping Procedures | A447 |
| 11/30/2012 | Incoming Facsimile from Department of Treasury | A454 |
| 12/03/2012 | Incoming Correspondence (confirmation copy of facsimile) | A456 |
| 01/12/2016 | Combined Declaration of Excusable Non-Use and Application for Renewal of Registration of a Mark under §§ 8 and 9 | A458 |
| 01/12/2016 | Incoming Correspondence Supplementing Petition to the Director | A463 |
| 01/13/2016 | Petition to Director Granted | A468 |
| 01/13/2016 | Notice of Acceptance of §8 Declaration and §9 Renewal | A472 |
| 02/09/2016 | File Jacket | A473 |
| 02/10/2016 | Notation to File | A476 |
| 02/16/2016 | Notice of Acceptance of §8 Declaration and §9 Renewal | A477 |



**ROPES & GRAY**

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

Enclosed is an original application for renewal of Registration No. 1,031,651, executed by the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). Please use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee in this matter. A duplicate copy of the application is included at Attachment 1 to this letter.

Payment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury on March 4, 2005 (the "License", Attachment 2) in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation").

For the benefit of the Patent and Trademark Office, Cubaexport is setting forth in this letter the circumstances under which it applied for and received from OFAC licenses concerning representation of Cubaexport in the Litigation, as well as the reasons Cubaexport believes the *status quo* should be maintained pending resolution of this dispute.

**The Dispute**

Cubaexport was joined as a respondent in a cancellation proceeding, *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi Company Limited* v. *Havana Club*, No. 24108 (1995) (the "Cancellation Proceeding"), on January 21, 2003. On January 29, 2004, the United States Trademark Trial and Appeal Board (the "Board") denied petitioners' ("Bacardi's") motion for

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 2

summary judgment and dismissed the Cancellation Proceeding (the "Board Decision", Attachment 3).

In reaching its decision, the Board stated:

we conclude that HCH [Havana Club Holding] was in compliance with PTO renewal rules and practice when it filed its renewal application in its name [in 1996], that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration [1,031,651] in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board.  (Board Decision 39)

and went on to state:

Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation.  Therefore, the supplemental and amended petition to cancel is DISMISSED.  (Board Decision 56)

Bacardi appealed the Board Decision by instituting the Litigation on March 29, 2004.  In its Complaint, Bacardi seeks among other relief reversal of the Board Decision and cancellation of Registration No. 1,031,651.  The Court in the Litigation has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint and has ordered the parties to engage in discovery relating to those motions before the motions are filed.  That discovery is currently being conducted by the parties.

**OFAC's Grant of Specific Authority
To Represent Cubaexport In The Dispute**

Since Cubaexport was joined as a respondent in the Cancellation Proceeding, the law firm of Ropes & Gray or its predecessor firm Fish & Neave has been retained to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark. Ropes & Gray and its predecessor firm Fish & Neave have sought and received a license from OFAC for this purpose.

In particular, on March 10, 2003 OFAC issued License No. CU-71416 authorizing:

All transactions ... to enable Fish & Neave (the "Licensee"), in connection with all matters related to *Galleon S.A.* v. *Havana Club Holding, S.A.,* Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 3

Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national. (Attachment 4).

That license was renewed on February 20, 2004 in License No. CT-1943, which authorized Fish & Neave to "provide legal services to, and to receive payment for such services from ... Cubaexport" until March 31, 2005 (Attachment 5). Following the merger of Fish & Neave and Ropes & Gray, on March 4, 2005 OFAC issued the current License authorizing until March 31, 2006:

All transactions ... to enable the Licensee [Ropes & Gray], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark ... to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals. (Attachment 2)

It is pursuant to these licenses that Ropes & Gray currently represents Cubaexport in the Litigation in which Bacardi has appealed the Board Decision and requested cancellation of Registration No. 1,031,651 and, as part of that representation of Cubaexport, has applied herein for renewal of Registration No. 1,031,651. Ropes & Gray has advised OFAC of this renewal application in the enclosed letter dated December 13, 2005 (Attachment 6).

### Reasons To Maintain The *Status Quo* Pending Resolution Of The Dispute

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board Decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed the Cancellation Petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in the Cancellation Proceeding. In Bacardi's appeal

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 4

of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint. Effectively overruling the Board Decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the Board Decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were not to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the present Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport submits the enclosed renewal application to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

Kindly acknowledge receipt of this letter and attachments by stamping and returning the enclosed self-addressed postcard.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       (Each With Enclosures)



**ROPES & GRAY**

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia  22313-1451

HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

Enclosed is an original application for renewal of Registration No. 1,031,651, executed by the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport").  Please use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee in this matter.  A duplicate copy of the application is included at Attachment 1 to this letter.

Payment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury on March 4, 2005 (the "License", Attachment 2) in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation").

For the benefit of the Patent and Trademark Office, Cubaexport is setting forth in this letter the circumstances under which it applied for and received from OFAC licenses concerning representation of Cubaexport in the Litigation, as well as the reasons Cubaexport believes the *status quo* should be maintained pending resolution of this dispute.

**The Dispute**

Cubaexport was joined as a respondent in a cancellation proceeding, *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi Company Limited* v. *Havana Club*, No. 24108 (1995) (the "Cancellation Proceeding"), on January 21, 2003.  On January 29, 2004, the United States Trademark Trial and Appeal Board (the "Board") denied petitioners' ("Bacardi's") motion for

12-14-2005

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #26

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 2

summary judgment and dismissed the Cancellation Proceeding (the "Board Decision", Attachment 3).

In reaching its decision, the Board stated:

we conclude that HCH [Havana Club Holding] was in compliance with PTO renewal rules and practice when it filed its renewal application in its name [in 1996], that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration [1,031,651] in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board.  (Board Decision 39)

and went on to state:

Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation.  Therefore, the supplemental and amended petition to cancel is DISMISSED.  (Board Decision 56)

Bacardi appealed the Board Decision by instituting the Litigation on March 29, 2004.  In its Complaint, Bacardi seeks among other relief reversal of the Board Decision and cancellation of Registration No. 1,031,651.  The Court in the Litigation has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint and has ordered the parties to engage in discovery relating to those motions before the motions are filed.  That discovery is currently being conducted by the parties.

**OFAC's Grant of Specific Authority**
**To Represent Cubaexport In The Dispute**

Since Cubaexport was joined as a respondent in the Cancellation Proceeding, the law firm of Ropes & Gray or its predecessor firm Fish & Neave has been retained to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark. Ropes & Gray and its predecessor firm Fish & Neave have sought and received a license from OFAC for this purpose.

In particular, on March 10, 2003 OFAC issued License No. CU-71416 authorizing:

All transactions ... to enable Fish & Neave (the "Licensee"), in connection with all matters related to *Galleon S.A.* v. *Havana Club Holding, S.A.*, Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 3

Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national. (Attachment 4).

That license was renewed on February 20, 2004 in License No. CT-1943, which authorized Fish & Neave to "provide legal services to, and to receive payment for such services from ... Cubaexport" until March 31, 2005 (Attachment 5). Following the merger of Fish & Neave and Ropes & Gray, on March 4, 2005 OFAC issued the current License authorizing until March 31, 2006:

> All transactions ... to enable the Licensee [Ropes & Gray], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark ... to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals. (Attachment 2)

It is pursuant to these licenses that Ropes & Gray currently represents Cubaexport in the Litigation in which Bacardi has appealed the Board Decision and requested cancellation of Registration No. 1,031,651 and, as part of that representation of Cubaexport, has applied herein for renewal of Registration No. 1,031,651. Ropes & Gray has advised OFAC of this renewal application in the enclosed letter dated December 13, 2005 (Attachment 6).

### Reasons To Maintain The *Status Quo*
### Pending Resolution Of The Dispute

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board Decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed the Cancellation Petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in the Cancellation Proceeding. In Bacardi's appeal

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 4

of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint. Effectively overruling the Board Decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the Board Decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were not to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the present Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport submits the enclosed renewal application to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

Kindly acknowledge receipt of this letter and attachments by stamping and returning the enclosed self-addressed postcard.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:     David W. Mills, OFAC
        Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC
        (Each With Enclosures)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |

Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

### COMBINED DECLARATION AND APPLICATION
### FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-

identified registration, granted to it on January 27, 1976, be renewed for all of the goods

listed in the registration in accordance with the provisions of Section 9 of the Trademark

Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2),

37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows.  He is Director of the



registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso,

Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this

declaration and application on behalf of the registrant.  The registrant owns Registration

No. 1,031,651, issued on January 27, 1976.  The mark is not being used in commerce on

the goods recited in the registration due solely to special circumstances, namely, the

embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets

Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

A009
JA65

in the United States of goods produced in Cuba.  Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

<u>CONTACT INFORMATION</u>

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: _9, 12_____, 2005                    _____

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451 on the date which appears below:

_____
Name

_12 December 2005_
Date of Signature and Deposit

2

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |

Attachments to Ropes & Gray Letter To Commissioner
for Trademarks Concerning Renewal of Registration

*1*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |

Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

## COMBINED DECLARATION AND APPLICATION
## FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-identified registration, granted to it on January 27, 1976, be renewed for all of the goods listed in the registration in accordance with the provisions of Section 9 of the Trademark Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2), 37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows. He is Director of the registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso, Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this declaration and application on behalf of the registrant. The registrant owns Registration No. 1,031,651, issued on January 27, 1976. The mark is not being used in commerce on the goods recited in the registration due solely to special circumstances, namely, the embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

in the United States of goods produced in Cuba.  Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

<u>CONTACT INFORMATION</u>

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: _____9, 12_____, 2005       _____

2

A014
JA70

2



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**

License No. CU-74488

# LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   **Ropes & Gray LLP (the "Licensee")**
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Attn:  Renee L. Stasio, Esq.

1.   Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2.  This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3.  The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4.  This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5.  This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By *Clara David* 3/4/05
*for* David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

3

DIPOSITION
IS NOT CITABLE
AS PRECEDENT
OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

Zervas

Mailed:  January 29, 2004

Cancellation No. 92024108

Galleon S.A., Bacardi-
Martini U.S.A., Inc., and
Bacardi & Company Limited

v.

Havana Club Holding,
S.A., dba HCH, S.A., and
Empresa Cubana
Exportadora De Alimentos
y Productos Varios, S.A.,
dba Cubaexport, joined as
a defendant

**Before Sams, Chief Administrative Trademark Judge, and Cissel and Walters, Administrative Trademark Judges.**

**By the Board.**

On January 21, 2003, the Board (i) resumed proceedings and allowed the parties time to brief petitioners' motion (filed March 15, 2002) for summary judgment; (ii) joined Empresa Cubana Exportadora De Alimentos y Productos Varios, S.A. ("Cubaexport") as a defendant along with Havana Club Holding, S.A. ("HCH"); and (iii) denied HCH's "Motion Pursuant to the Government in the Sunshine Act for (A) an Order Requiring Petitioners to Show Cause Why Their Claims

Cancellation No. 92024108

Should Not be Dismissed Due to Improper Ex Parte Contacts

Concerning an Adjudicatory Proceeding, (B) Full Disclosure

by Petitioners, Governor Bush, USPTO Director James E. Rogan

and Deputy Director Jon Dudas of the Extent and Nature of

All Such Ex Parte Communications Related to This Proceeding,

and (C) Suspension of This Proceeding Pending Resolution of

the Foregoing" (filed September 10, 2002).

    This case now comes up on the following motions:

1.  Petitioners' motion (filed March 15, 2002) for
summary judgment;

2.  HCH's motion (filed February 19, 2003) for
reconsideration of the Board's denial of HCH's
"Motion Pursuant to the Government in the Sunshine
Act ..."; and

3.  Cubaexport's motion (filed April 25, 2003) "For an
Order (1) Dismissing Bacardi's Amended Petition to
Cancel; (2) In the Alternative, Directing Bacardi To
Show Cause Why Its Amended Petition Should Not Be
Dismissed and Compelling Disclosure of All Ex Parte
Communications; and (3) Suspending All Proceedings
Pending Resolution of This Dispositive Motion."

Respondents have opposed petitioners' motion and petitioners

have opposed the motions filed by HCH and Cubaexport.  We

have exercised our discretion and considered all reply

briefs filed by the parties.  See Trademark Rule 2.127(a)

and TBMP § 502.02(b) (2d ed. 2003) and authorities cited

therein.

    As requested by HCH and Cubaexport in their respective

motions, we first turn to their motions before considering

petitioners' motion for summary judgment.

2

Cancellation No. 92024108

**1.  *HCH's Motion for Reconsideration of Board's Denial of HCH's "Motion Pursuant to the Government in the Sunshine Act ...."***

In our January 21, 2003 order, we found that if the Government in the Sunshine Act applies to this case, HCH's motion was without merit and denied the motion.  We explained that the evidence filed by HCH in support of its contention that there were improper *ex parte* contacts, namely, (a) a June 13, 2002 letter from Florida Governor Jeb Bush to former Under Secretary of Commerce for Intellectual Property and United States Patent and Trademark Office ("PTO") Director James Rogan[1] written on behalf of Florida-based Bacardi-Martini, USA, Inc.; (b) a response from Director Rogan to Governor Bush dated July 3, 2002; and (c) a letter dated July 16, 2002 from Governor Bush in which Governor Bush thanked Director Rogan for the information he "passed along regarding the Bacardi case," were not relevant to the *merits* of this proceeding, as required by the statutory provisions under which HCH based its motion.  We also addressed Governor Bush's statement in his July 16, 2002 letter that "[a]long with the continued assistance of Mr. Jon Dudas [formerly, Deputy Under Secretary of Commerce for Intellectual Property and PTO Deputy Director, now, acting Under Secretary of Commerce for Intellectual Property and acting PTO Director], your attention to this matter has

---

[1] Director Rogan departed the PTO on January 12, 2004.

3

Cancellation No. 92024108

been very helpful." HCH maintained that this statement indicated that there were "other and further *ex parte* communications." We stated that we were "unpersuaded by the record before us that such [*ex parte*] communications have occurred." Further, we noted that petitioners and respondent HCH had not briefed the applicability of the Government in the Sunshine Act to Board proceedings, and, after a lengthy discussion of certain relevant statutory provisions, expressed our reservations about the applicability of the Government in the Sunshine Act to Board *inter partes* proceedings.

HCH contends that our decision is erroneous in several respects and has submitted "documents obtained subsequent to the filing of the Motion – some 150 pages of letters, e-mails, and other communications obtained from freedom of information laws in Florida and the federal FOIA [i.e., the Freedom of Information Act]."[2] According to HCH, the documents "confirm what was already apparent from the slim – but startling – factual material available when the motion was filed: Bacardi set out to enlist Governor Bush to apply political pressure to obtain the cancellation it was seeking, and used that relationship to facilitate numerous *ex parte* communications by its own staff, and by the

---

[2] HCH submitted the documents as a part of Charles Sims' declaration, which was filed with HCH's motion for reconsideration. (Mr. Sims is one of HCH's attorneys.)

4

**Cancellation No. 92024108**

Governor and his staff." Because a motion for reconsideration may not properly be used to introduce additional evidence, see TBMP Section 518 (2d ed. 2003), we do not consider the "some 150 pages of letters, e-mails, and other communications" submitted by HCH and its arguments based on such letters, emails and other communications.

We next turn to HCH's arguments that are not based on the "some 150 pages of letters, e-mails, and other communications," mindful that a motion for reconsideration should not be devoted simply to a reargument of the points presented in a brief on the original motion, but rather should be limited to a demonstration that, based on the facts before it and the applicable law, the Board's ruling is in error and requires appropriate change. *Id.*

 A. *Applicability of Government in the Sunshine Act to this Proceeding.*

We addressed this issue at length in our January 21, 2003 decision. Nevertheless, HCH maintains -- in a footnote nonetheless -- that it "need not address the [Board's] suggestion that the Government in the Sunshine Act does not apply to this proceeding, since the Board made no such holding and decided the Motion on its merits." HCH, however, cannot prevail on its original motion if we are not persuaded that the Government in the Sunshine Act indeed

5

**Cancellation No. 92024108**

applies to this proceeding.[3]  We are unaware of any
precedent holding that the Government in the Sunshine Act is
applicable to Board proceedings, and HCH has not cited any
such precedent in its motion for reconsideration, even after
we had raised questions about the statute's applicability to
this proceeding.  Thus, we remain unconvinced that the
Government in the Sunshine Act applies to this proceeding.[4]

    B.   *"The Showing In This Proceeding Was More Compelling
       Than In Every Reported Case Where Disclosure Was
       Required"*[5]

    HCH complains that it "made a much stronger showing [in
this case] of *ex parte* contacts than in those cases [cited
by HCH] where disclosure was ordered"[6] in view of the
"actual *ex parte* communications, urging the Director (a

---

[3] The manner in which HCH has chosen to address this vital
concern regarding the viability of its motion, i.e., cursorily in
a footnote, without addressing 5 U.S.C. § 554(a) (which limits
the statute's application to particular proceedings), without
addressing prior court precedent, and without discussing the
statute's legislative history, suggests to us that HCH is aware
that the basis for its motion is questionable.
[4] HCH also contends that "[e]ven if the Act did not apply, due
process and basic norms of administrative law would effectively
require the same result here."  Cubaexport has made essentially
the same argument in its motion, which is discussed below.  This
argument is not well taken for the reasons identified below in
the discussion of Cubaexport's motion.
[5] Subsection heading, HCH's motion for reconsideration, at
p. 5.
[6] For example, HCH cites to the news articles of *Portland Audubon
Soc'y v. Endangered Species Comm.*, 984 F.2d 1534 (9th Cir. 1993)
and the "third-party declarations professing *suspicions* of ex
parte contacts" of *Professional Air Traffic Controllers
Organization v. Federal Labor Relations Authority*, 672 F.2d 109
(D.C. Cir. 1982) ("PATCO I").

6

Cancellation No. 92024108

statutory member of the PTO[7]) to grant Bacardi the ultimate
relief it was seeking, and to do expeditiously [sic]."
According to HCH, the cases cited in HCH's motion for
reconsideration provide that disclosure is "mandatory …
[and] require *a fortiori* that it be directed here."  Also,
HCH argues that the Board committed plain error by "skipping
over the first step required by the Government in the
Sunshine Act, obtaining the full record - [and rushing] to
the second step, evaluation of what remedy is required, when
the factual basis to assess what had happened had not yet
been compiled."

　　Initially, we advise HCH that this case must be decided
on its record, and not by comparison to unrelated cases.
But even if we consider HCH's contention that HCH "has made
a much stronger showing of *ex parte* contacts than in those
cases where disclosure was ordered," we do not agree.  HCH's
"showing" was quite unpersuasive.  First, the correspondence
in the record before us when we considered HCH's original
motion was between Governor Bush and Director Rogan, not the
actual decision-makers in this case.  Although Director
Rogan was a statutory member of the Board, see 15 U.S.C. §
1067(b), his work at the PTO was not limited to Board
matters, see 35 U.S.C. § 3(a), and he did not author any of

---

[7] We assume that HCH intended to refer to the Board and not the
PTO.

7

Cancellation No. 92024108

the orders written thus far in this case.  Second, HCH filed
just *three* letters between Governor Bush and the PTO as
evidence of *ex parte* communications.  (HCH did not include
the "some 150 pages of letters, e-mails, and other
communications" filed with its motion for reconsideration.)
In these letters, HCH points to just two phrases; i.e.,
Governor Bush's statement in his June 13, 2002 letter
seeking cancellation and his statement in his July 16, 2002
letter thanking Director Rogan for the "continued
assistance" of Mr. Dudas.  Thus, HCH's evidence in support
of its original motion was limited.  Third, the three
letters that HCH did file with its motion do not discuss or
refer to petitioners' claims in this proceeding.  As we
noted in our January 21, 2003 decision, the statutory
sections under which HCH brought its motion all require that
the *ex parte* communications be *on the merits*.  See 5 U.S.C.
§§ 557(d)(1)(A)-(C).  HCH has failed to satisfy one of the
key requirements of a statute under which HCH bases its
motion.

    We also disagree with HCH's contention that we
committed plain error by evaluating "what remedy is
required, when the factual basis to assess what had happened
had not yet been compiled."  Assuming the Government in the
Sunshine Act empowers us to grant the relief HCH seeks, we
must first be satisfied that there is cause to believe that

8

**Cancellation No. 92024108**

an impermissible *ex parte* communication indeed has been
made.  In this case, HCH has not persuaded us that there
have been any *ex parte* communications on the merits, has not
asserted that there have been any *ex parte* communications
with any of the actual decision-makers in this case, and has
not offered any evidence that there has been any *ex parte*
communications with such actual decision-makers.  Simply
put, the evidence submitted with HCH's original motion does
not persuade us that there is cause to grant the relief HCH
seeks, i.e., issuing a show cause order or requiring full
disclosure by petitioners, Governor Bush, Director Rogan and
Mr. Dudas – even assuming we have the authority to do so.[8]

> C.   *"The Communications Already Presented To The Board
>      Were Clearly Relevant To the Merits Of This
>      Proceeding, And Cannot Be Dismissed As Mere Status
>      Inquiries"*[9]

HCH's arguments are largely based on the statement in
Governor Bush's letter of June 13, 2002 that "[t]he out-
dated registration belongs to a company owned by Fidel
Castro called CubaExport and should be cancelled
immediately."  HCH contends that a "request that the relief
one party seeks be granted cannot be construed as a mere

---

[8] In footnote no. 4 of our January 21, 2003 order, we noted that
HCH did not cite to any authority under which the Board may
compel Governor Bush to provide "full disclosure."  HCH has not
informed us of any such authority in its motion for
reconsideration.  In view thereof, we conclude that there is no
authority for us to compel Governor Bush to provide "full
disclosure."
[9] Subsection heading, HCH's motion for reconsideration, at p. 7.

9

Cancellation No. 92024108

procedural inquiry, regardless of the recipient's portrayal of the request, and is plainly relevant to the merits."

    HCH ignores that there is more to the letter than simply the request for immediate cancellation of the registration.  The letter also states that Bacardi-Martini, USA, Inc. is headquartered in Miami, "has a workforce of more then 300 Floridians," and has "faced ... a process mired in lengthy bureaucratic procedures, with no end in sight"; and invites contact with the Governor's Office if there are further questions.  Thus, despite HCH's arguments, we still conclude that if the letter is considered as a whole, it is a complaint on behalf of a Florida-based business about delays in the cancellation process with a request for status information, rather than an *ex parte* communication on the merits.

    Also, in arguing that our decision was erroneous, HCH addressed our citation to *Professional Air Traffic Controllers Org. v. FLRA*, 685 F.2d 547 (D.C. Cir. 1982) ("*PATCO II*"), in which the court found, inter alia, that two phone calls by the Secretary of Transportation to two members of the Federal Labor Relations Authority ("FLRA")

10

Cancellation No. 92024108

were not *ex parte* communications on the merits.[10]  HCH
points out that unlike *PATCO II* where the Secretary of
Transportation limited his statements to procedural matters,
in this case, Governor Bush "expressly requested that this
proceeding be decided in Bacardi's favor."  HCH further
contends that the *PATCO II* court's treatment of a dinner
conversation between American Federation of Teachers
President Albert Shanker and a member of the FLRA is "more
similar to the type [of *ex parte* contact] at issue in this
proceeding."  HCH states that "the labor leader expressed
his views as to what type of punishment should be meted out
to a union that participates in an illegal strike … without
even directly referring to the pending proceeding"; and that
the court in *PATCO II* "found this communication clearly
improper, as it was a blatant attempt to influence the
member's decision."

    We are not persuaded by petitioners' arguments.  First,
we cited the court's conclusion concerning the Secretary's
phone calls in our discussion of Governor Bush's request for
"quick, decisive action" or declaration that "a swift
resolution to this matter is imperative" in his first letter

---

[10] The Secretary had stated in one phone call the "the Department
of Transportation would appreciate expeditious handling of the
case."  In the other phone call, he expressed "his concern that
the case not be delayed."  The court, after considering the
substance of the communications, commented that the Secretary
"did not in fact discuss the merits of the case."  *Id.* at 118.

11

Cancellation No. 92024108

-- we did not cite the case in addressing Governor Bush's statement that the "out-dated registration … should be cancelled."  We dealt with Governor Bush's statement regarding cancellation separately in a subsequent paragraph in the order.  Second, we note that in the cited case, Mr. Shanker's comments in his dinner meeting were not made in a vacuum; they came after repeated public advocacy on his views of the PATCO strike, in support of PATCO.  According to the court, "[h]e spoke frequently on this subject, was interviewed about the PATCO strike on a nationally televised news program, and published a number of columns in the New York Times discussing the PATCO situation."  *Id.* at 570.  Thus, there was no secret as to Mr. Shanker's view on the *PATCO* case and his advocacy for a particular result, and it is not surprising that he took the opportunity to advocate for his views in a private dinner with a member of the FLRA who was involved in deciding the case.  The court evidently realized this too, and advised that the FLRA member should have terminated his discussion with Mr. Shanker when the conversation turned to the discipline appropriate for a striking union.

    The facts in the case at hand are remarkably different.  Here, we consider statements made in an unsolicited *letter* (not in a private dinner meeting or similar encounter) complaining of bureaucratic delays in a matter involving a

12

Cancellation No. 92024108

Florida constituent, where Florida's Governor requested that
the relief the constituent seeks be granted.  There is no
evidence in the record of a history of public advocacy for
petitioners by Governor Bush or his staff, or public
statements made by him or his staff on this matter.  Thus,
we are not persuaded that the court's treatment of a dinner
conversation between a union head with a history of public
advocacy of a pro-union position in a case before the FLRA
with an actual decision-maker in the FLRA case is in any way
analogous to the case before us.

> D.   *"Even If The Communications Presented To The Board Were
>      Status Inquiries, They Were Still Improper Under The
>      Government In The Sunshine Act"[11]*

HCH also argues that even if the communications were
status inquiries, they still were improper because "even a
procedural inquiry may be a subtle effort to influence an
agency decision," citing the *PATCO II* decision.[12]  It adds
that the communications in issue here are "more egregious
than the communications found improper in *PATCO*" because in
*PATCO II*, it was the Secretary of Transportation who made
the status inquiries, but in this case, the communications
came on behalf of a private party, seeking "a quick,
favorable decision for Bacardi from the Director"; and that

---

[11] Subsection heading, HCH's motion for reconsideration, at p. 10.
[12] As HCH acknowledges, despite its statements regarding
procedural inquiries, the *PATCO II* court did not remand the case
for a new proceeding.

13

Cancellation No. 92024108

the "Director is a statutory member of the TTAB, with power to select members of TTAB panels and substantial influence over their work and careers."

Because HCH does not contend that any of the actual decision-makers in this case, i.e., those individuals who authored or participated in the decisions rendered thus far in this case, were asked about the status of this case, or that Director Rogan or Mr. Dudas contacted any of the actual decision-makers in this case, HCH's argument is not well taken.

In view of the foregoing, we find that HCH has not demonstrated that our decision of January 21, 2003 was in error based on the facts before us and the applicable law. HCH's motion for reconsideration is therefore denied.

**2. *Cubaexport's Motion to Dismiss or, in the Alternative, for an Order to Show Cause and Compelling Disclosure, and to Suspend.***

Before turning to the merits of the motion, we address petitioners' objection on the basis that the Board's order of April 15, 2003 did not encompass Cubaexport's filing the instant motion. Specifically, petitioners contend that our order of April 15, 2003 only recognized the decision of the Department of Treasury's Office of Foreign Assets Control ("OFAC") on Fish & Neave's (Cubaexport's attorneys in the proceeding) application for a specific license to respond to petitioners' summary judgment motion. Because Eric Huang,

14

**Cancellation No. 92024108**

one of Cubaexport's attorneys employed by Fish & Neave,
states in his cover letter accompanying Cubaexport's motion
that the motion is made "pursuant to the Board's April 15,
2003 order allowing respondent Cubaexport to respond to the
motion for reconsideration filed by" HCH, and because the
motion is based, at least in part, on the same facts and
statute as HCH's motion, petitioners' objections are not
well taken and we proceed to consider Cubaexport's motion.

According to Cubaexport, from January 2002 through at
least September 2002, Governor Bush's office and petitioners
acted in concert and in secret to persuade the PTO to act in
petitioners' favor.  As evidence, Cubaexport offers the
declaration of Mr. Huang, which encloses a duplicate copy of
(a) the declaration of Gregg Reed, one of HCH's attorneys,
filed with HCH's motion under the Government in the Sunshine
Act and enclosing, inter alia, a copy of the three
communications between Governor Bush and Director Rogan
discussed above, and (b) Mr. Sims' declaration which was
filed with HCH's motion for reconsideration and encloses a
copy of the "some 150 pages of letters, e-mails, and other
communications."  From the documents submitted with Mr.
Huang's declaration, Cubaexport concludes as follows:

> • Two of Governor Bush's aides, on February 20,
>   2002, met in secret with PTO attorney Eleanor
>   Meltzer [of the PTO's Office of Legislation and
>   International Affairs] to discuss Bacardi's
>   cancellation petition.

15

**Cancellation No. 92024108**

- On February 25, 2002, Bacardi Vice President Jorge Rodriguez-Marquez met secretly with PTO officials, including Deputy Director Jon Dudas and Ms. Meltzer, to discuss the cancellation and press Bacardi's case.  That second meeting focused specifically on Bacardi's arguments as to why the HAVANA CLUB registration [that is, the registration which is the subject of this proceeding] should be cancelled.

- Bacardi later complained that, in the February 25 meeting, Ms. Meltzer revealed "personal negative feelings about [Bacardi's] case."

- On March 19, 2002, Governor Bush's office informed Deputy Director Dudas of [the] summary judgment motion that Bacardi filed.

- On March 20, 2002, Bacardi's vice president sent to Travis Thomas, Director of the Commerce Department's Office of Business Liaison, an e-mail with copies of Bacardi's summary judgment motion, along with Bacardi's arguments as to why Cubaexport is not entitled to the HAVANA CLUB registration.  In his e-mail, Bacardi's vice president discussed "Bacardi's rights under the law" and argued (incorrectly) that Cubaexport allowed the registration to lapse.  He argued that "Cubaexport willingly gave up all their rights in 1993 when they transferred them to HCH" and that "Cubaexport's 20 year registration ended in 1996 and they chose not to renew it…."

- On March 21, 2002, after speaking with Bacardi's vice president, [Mr.] Thomas forwarded to Deputy Director Dudas the March 20 e-mail.  (Citations omitted.)

Further, Cubaexport maintains that petitioners, "seemingly frustrated with the progress of [their] *ex parte* efforts … decided to up the ante," and contends as follows:

- Bacardi's vice president requested that Governor Bush help put more pressure on the PTO "where possible."  From April through the beginning of June 2002, Bacardi and the Governor's staff

16

**Cancellation No. 92024108**

prepared a letter from Governor Bush himself to
"get this resolved."  The decision was made by
the Governor's staff to "move up the food chain"
to the PTO Director James Rogan, a member of the
Board.

- On June 13, 2002, Governor Bush personally
  demanded that the registration be cancelled in a
  letter to Director Rogan.

- On September 3, 2002, Deputy Director Dudas met
  with Bacardi representatives to discuss the
  cancellation proceeding.  There is no information
  now available to respondents as to what was
  specifically discussed.  (Citations omitted.)

Cubaexport represents that neither Cubaexport nor HCH were
copied on any of these letters and e-mails, nor were they
informed of, or invited to attend, the meetings mentioned
above.

Cubaexport first maintains that "Bacardi's concerted
effort to force a particular outcome in this action through
secret meetings and correspondence with PTO officers
violates the most basic concepts of fairness in adversary
proceedings."  In support, Cubaexport notes that the PTO
Director and Deputy Director "have substantial influence
over the Board members' work and careers"; that they both
are statutory members of the Board; and that they both have
the power to cancel a registration in a cancellation
proceeding, citing 15 U.S.C. § 1067(b), 15 U.S.C. § 1068 and
35 U.S.C. § 3.  Second, Cubaexport maintains that "Bacardi's
*ex parte* communications" constitute improper *ex parte*
communications under the Government in the Sunshine Act.

17

Cancellation No. 92024108

Cubaexport seeks dismissal, or, in the alternative, a show cause order why petitioners' supplemental and amended petition to cancel should not be dismissed. Cubaexport also requests that petitioners be compelled to disclose fully the amount, context and impact of *ex parte* communications. According to Cubaexport, full disclosure will "afford the Board a more complete picture of exactly what transpired than even the current record, and will allow respondent to respond fully to the arguments presented *ex parte* to the PTO."

We have carefully considered each of Cubaexport's and petitioners' arguments in connection with Cubaexport's motion.[13] Assuming we have the authority to grant what Cubaexport seeks, we are not persuaded that Cubaexport is entitled to the relief it requests.

First, Cubaexport is incorrect in contending that the Deputy Director is a statutory member of the Board. Neither 15 U.S.C. § 1067(b) nor 35 U.S.C. § 3, cited by Cubaexport, nor any other statute, states that the Deputy Director is a member of the Board. Even though 35 U.S.C. § 3 authorizes the Deputy Director to act in the capacity of the Director

---

[13] The Board has not received a response to Cubaexport's motion from HCH.

18

Cancellation No. 92024108

when the Director is absent, as Cubaexport contends, it does not state that the Deputy Director a member of the Board. Also, there is no evidence in this case that during relevant time periods, Director Rogan was absent from the PTO and Mr. Dudas was acting in the capacity of the Director.  Thus, we reject the implication in Cubaexport's argument that contact with Mr. Dudas was contact with the Board.

Second, Cubaexport has not provided evidence of any ex parte communications between petitioners and/or their "agents," and the actual decision makers in this case, and has not provided evidence of any communications between Director Rogan and Mr. Dudas and the actual decision-makers in this case.  Without any evidence of contact with the actual decision-makers in this case, we cannot agree that, if indeed the Government in the Sunshine Act applies to this proceeding,[14] petitioners have violated the Government in

---

[14] Cubaexport tries to persuade us that the Government in the Sunshine Act applies to Board inter partes proceedings, despite Section 554 thereof which exempts matters "subject to a subsequent trial of the law and the facts *de novo* in a court." Cubaexport argues that a court's review of Board decisions are "not a true *de novo* proceeding"; and the "Board's finding[s] of fact are 'given great weight' and are not upset unless new evidence is introduced which 'carries thorough conviction.'" However, courts regularly refer to a district court appeal from a Board decision as a *de novo* proceeding.  See, e.g., *Redken Laboratories, Inc. v. Clairol, Incorporated*, 501 F.2d 1403, 183 USPQ 84 (9th Cir. 1974) ("Title 15 U.S.C. § 1071 affords both parties to a completed cancellation proceeding before the Board the option of having all further proceedings conducted as a civil action in the district court.  That civil action is intended to be a trial de novo."); *Gold Seal Company v. Weeks*, 129 F.Supp. 928, 105 USPQ 407 (D.D.C. 1955) (The court stated "[t]his is a trial de novo" in a district court appeal of a Patent Office

19

Cancellation No. 92024108

the Sunshine Act or that the requested show cause order should be issued, or even that the "fairness and the integrity of the process" has been compromised.

In view of the foregoing, including the reasons set forth in our denial of HCH's motion for reconsideration, and for the reasons discussed in our January 21, 2003 order, Cubaexport's motion to dismiss, or, in the alternative, for a show cause order, under both the Government in the Sunshine Act and under "concepts of fairness in adversary proceedings," is denied. Also, in view of our denial of Cubaexport's motion to dismiss, or, in the alternative, for a show cause order, Cubaexport's motion to suspend pending resolution of its motion is moot.

### 3. Petitioners' Motion for Summary Judgment

Before addressing the merits of petitioners' summary judgment motion, we provide a recitation of the underlying facts. Because this matter is not a simple one, the information provided herein is lengthy. We first describe the adoption, use, registration and transfers of the mark which is the subject of this proceeding; then describe the

---

decision refusing registration); J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 21:20 (4th ed. 1997)("If appeal is made to the Federal Circuit, the case proceeds on a closed record and no new evidence is permitted. But if review is sought in a federal court, review is a form of 'de novo' scrutiny and new evidence is permitted."); and *Id.* at 21:21 ("Civil review in federal court is intended to be a trial 'de novo' of the Trademark Board decision.") We therefore are not persuaded by Cubaexport's argument.

20

Cancellation No. 92024108

civil action between the parties; and conclude with a description of petitioners' actions in the PTO.[15]

*Adoption, use, registration and transfer of mark*

Before the Cuban revolution, Jose Arechabala, S.A. ("JASA"), a Cuban corporation owned principally by members of the Arechabala family, produced HAVANA CLUB rum. JASA obtained the following four United States trademark registrations:

1. U.S. Reg. No. 324,385 for HAVANA CLUB for "ethyl alcohol, rum, etc." (registered May 14, 1935);

2. U.S. Registration No. 335,919 for HAVANA CLUB and Design for "rum, etc." (registered June 16, 1936);

3. U.S. Registration No. 578,679 for a second HAVANA CLUB and Design mark (lined for yellow-beige and red) for "rum" (registered August 11, 1953 on the Supplemental Register); and

4. U.S. Registration No. 578,680 for the second HAVANA CLUB and Design mark (without color lining) for "rum" (registered August 11, 1953 on the Supplemental Register).

These registrations expired after their initial twenty-year terms for failure to renew the registrations. JASA exported its rum to the United States until 1960, when the Cuban

---

[15] The background information recited herein has been extracted from PTO records, the parties' briefs, the decision of the District Court in *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.Supp. 302 (S.D.N.Y. 1997), and the decision of the Second Circuit in *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000), *cert. denied*, 531 U.S. 918 (2000).

21

Cancellation No. 92024108

government, under the leadership of Fidel Castro, seized and expropriated JASA's assets.  Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government.

Soon thereafter, Cubaexport began selling HAVANA CLUB rum made in the JASA distillery.  On June 12, 1974, Cubaexport applied to register the following trademark (hereinafter "HAVANA CLUB and Design") for "rum" under Section 44 of the Trademark Act, based on Cuban Registration No. 110,353:



The resulting registration, i.e., Registration No. 1,031,651, issued on January 27, 1976 for an initial term of twenty years.[16]

In 1963, the United States imposed an embargo on Cuba. See Cuban Assets Control Regulations ("CACR"), 31 C.F.R.

---

[16] Registration No. 1,031,651 includes a disclaimer of "Havana" and "Fundada en 1878," and is lined for the color gold.  The PTO accepted a Section 8 declaration on April 12, 1982, and the registration was renewed on June 18, 1996.

22

**Cancellation No. 92024108**

Part 515, promulgated pursuant to the Trading with the Enemy Act of 1917, 12 U.S.C. § 95a.[17]  In 1996, Congress enacted the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, Pub. L. No. 104-114 (1996), which, among other things, codified the regulations implementing the Cuban embargo, see 22 U.S.C. § 6032(h).  The Secretary of the Treasury has the authority to administer the Cuban embargo, which he has delegated to OFAC.  See 31 C.F.R. § 515.802.

From 1972 to 1993, Cubaexport, a Cuban state enterprise, exclusively exported HAVANA CLUB rum primarily to Eastern Europe and the Soviet Union.  In 1993, Cubaexport sought to reorganize and find a foreign partner for its "Havana Club" rum business.  Havana Rum & Liquors, S.A. ("HR & L"), a newly formed Cuban company, entered into a joint venture agreement with Pernod Ricard, S.A. ("Pernod"), a French company distributing liquor internationally.  Under a November 1993 agreement between Pernod and HR & L, Havana Club International, S.A. ("HCI") and HCH were formed.  HCH and HCI are entities organized under the laws of Luxembourg and Cuba, respectively.  In an agreement dated January 10, 1994, Cubaexport assigned the HAVANA CLUB and Design

---

[17] The CACR prohibit, inter alia, (i) the importation into the United States of merchandise from Cuba or merchandise of Cuban origin, and (ii) the use in U.S. commerce of any trademark in which Cuba or a Cuban national has, at any time since July 8, 1963, had any interest, direct or indirect.  See 31 C.F.R. §515.201 and §515.204, and 31 C.F.R. §515.201 and §515.311, respectively.

23

Cancellation No. 92024108

trademark and registration to HR & L, and in a subsequent
agreement dated June 22, 1994, HR & L assigned this
trademark and registration to HCH.[18]

    After an October 5, 1995 application to OFAC for a
"specific" license authorizing the 1994 assignments of the
HAVANA CLUB and Design trademark from Cubaexport to HR & L,
and from HR & L to HCH, OFAC issued License No. C- 18147 on
November 13, 1995, which approved the two assignments and
authorized all necessary transactions incident to the
assignments of the mark.

    Subsequently, on January 18, 1996, HCH filed a renewal
application for Registration No. 1,031,651, containing an
excusable nonuse declaration asserting that but for the
embargo, HCH would sell HAVANA CLUB rum in the United
States.  On June 18, 1996, U.S. Registration No. 1,031,651
was renewed for an additional term of ten years.

    Almost one year later, on April 17, 1997, OFAC revoked
License No. C- 18147, stating:

> You are notified that, as a result of facts and
> circumstances that have come to the attention of
> this Office which were not included in the
> application of October 5, 1995, License No. C-
> 18147 … is hereby revoked retroactive to the date
> of issuance.  The determination to revoke License
> No. C- 18147 is made pursuant to § 515.805 of the
> Cuban Assets Control Regulations, 31 C.F.R. Part
> 515.  Any action taken under this specific license

---

[18] The Assignment Branch of the PTO recorded the assignment from
Cubaexport to HR & L at Reel No. 1104, Frame No. 0046, on
February 10, 1994 and recorded the assignment from HR & L to HCH
at Reel No. 1219, Frame No. 0428, on September 13, 1994.

24

Cancellation No. 92024108

from the date of issuance until now is null and void as to matters under the jurisdiction of the Office of Foreign Assets Control.[19]

*Litigation Between the Parties.*

Beginning in 1995, petitioner Galleon S.A. ("Galleon") produced rum in the Bahamas bearing the HAVANA CLUB name, and distributed sixteen cases of this rum in the United States. From May 1996 to August 1996, petitioners distributed an additional 906 cases of Galleon's HAVANA CLUB rum in the United States.

In December 1996, HCH and HCI filed a civil action to enjoin Galleon, Bacardi-Martini USA, Inc. and three other entities (collectively "Bacardi") from using the HAVANA CLUB trademark, alleging violations of sections 32 and 43(a) of the Trademark Act. One of Bacardi's defenses was that OFAC's specific license to HCH, authorizing the assignments of the U.S. trademark, was invalid because HCH obtained the mark by fraud. In March 1997, the District Court ruled that

---

[19] OFAC did not provide the reasons for the revocation of the license. However, the District Court, in its opinion, stated as follows:

> [T]he "facts and circumstances" which later came to the attention of OFAC apparently concerned the incorporation of Pernod into the ownership of HC Holding and HCI. Plaintiffs' October 19, 1995 application, filed by Plaintiffs' counsel, stated that "each of the assignors and assignees are nationals of Cuba." Plaintiffs' own papers indicate that Pernod, one of the parties involved in the reorganization, is not a national of Cuba.

*Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.Supp 302, n. 7 (S.D.N.Y. 1997) ("*Havana Club II*").

25

A042

Cancellation No. 92024108

Bacardi lacked standing to challenge OFAC's specific license to HCH and that OFAC's decision to grant the specific license was unreviewable by the District Court.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 961 F.Supp 498 (S.D.N.Y. 1997) (*"Havana Club I"*).

In August 1997, the District Court ruled on Bacardi's summary judgment motion on its counterclaim for cancellation, finding that HCH had no rights to the HAVANA CLUB trademark because the specific license to assign the mark to HCH had been nullified by OFAC's revocation of the specific license and because the CACR's general license authority under 31 C.F.R. § 515.527(a) did not authorize the assignment.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 974 F.Supp 302 (S.D.N.Y. 1997) (*"Havana Club II"*).  Although acknowledging that the nullification of the assignment caused the rights in the mark to revert to Cubaexport, the assignor, the District Court did not cancel the United States registration for HAVANA CLUB and Design because Cubaexport was not a party to the litigation.  *Id.* at 311-12.

On February 4, 2000, the Second Circuit affirmed the decision of the District Court.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d. Cir. 2000), *cert. denied*, 531 U.S. 918 (2000).

26

**Cancellation No. 92024108**

*Actions taken in the PTO*

Petitioners commenced this cancellation proceeding seeking cancellation of Registration No. 1,031,651 on July 12, 1995 with the filing of their original petition to cancel.  On September 4, 1996, the Board granted petitioners' motion to amend the petition to cancel and the supplemental and amended petition to cancel (filed August 20, 1996) became petitioners' operative pleading in this case.  The supplemental and amended petition to cancel asserts the following claims; (i) fraud in obtaining the registration; (ii) fraud in maintaining the registration (with the filing of the Section 8 affidavit); .(iii) fraud in renewing the registration; (iv) abandonment based on the legal effect of the assignments of the registration; and (v) misrepresentation of the source of the goods.

On March 17, 1997, the Board granted petitioners' motion to suspend proceedings due to the civil action between the parties.  The Board also deferred action on *HCH's* motion (filed October 18, 1996) for summary judgment; petitioners' motion (filed December 3, 1996) to extend the time to respond to HCH's motion for summary judgment; and petitioners' motion (filed January 6, 1997) under Fed. R. Civ. P. 56(f), which were pending at the time.

Several months after the Supreme Court of the United States denied a writ of certiorari of the Second Circuit's

27

Cancellation No. 92024108

decision, petitioners requested on March 1, 2001 that "the judgment of the United States District Court ... canceling Havana Club Holding's rights in Registration No. 1,031,651 be given effect ...." On July 6, 2001, the Board noted petitioners' request was not in accordance with 15 U.S.C. § 1119 providing that "[d]ecrees and orders [regarding cancellation of registrations] shall be certified by the court to the Director," and maintained the proceedings in suspended status.

Three and a half months later, on October 26, 2001, Acting PTO Director Nicholas Godici issued an order directing the parties to the District Court proceeding to show cause why the records of the PTO should not be rectified to reflect the District Court's order invalidating the assignments of the registration involved in this proceeding. After the parties responded, Commissioner of Trademarks Anne H. Chasser issued a notice on January 15, 2002 providing that PTO records "will be rectified to reflect the district court's order invalidating the recorded assignments" and that "registration records will also be rectified to conform with the assignment records." PTO assignment records at Reel No. 2398, Frame No. 0855 now show that Cubaexport is the owner of record of Registration No. 1,031,651, as does the PTO's automated database of registrations. On March 15, 2002, petitioners filed a

28

Cancellation No. 92024108

Petition for Review with the Federal Circuit, thereby "appealing" the Commissioner's decision. On July 31, 2002, the Federal Circuit granted the PTO's motion to dismiss and dismissed the appeal, finding that the Federal Circuit's review of decisions concerning trademarks is limited to the "review [of] decisions of the Trademark Trial and Appeal Board with respect to applications for registration of marks, cancellation proceedings, and opposition proceedings."

Also on March 15, 2002, petitioners filed their combined motion for summary judgment and motion to resume proceedings which we address *infra*; noting that the civil action "has long since concluded, appeals have been taken, and a final decision on the merits has been entered." On April 3, 2002, HCH sought continued suspension of the cancellation proceeding in view of petitioners' Federal Circuit appeal of the Commissioner's Notice, which we granted in an order mailed on April 24, 2002.[20] We resumed proceedings and reset the time for further briefing of the summary judgment motion and motion for reconsideration on April 15, 2003, after the Federal Circuit had rendered its decision and after Fish & Neave had obtained permission from OFAC to represent Cubaexport in this proceeding.

---

[20] The Board made minor amendments to its April 24, 2002 order in an order mailed on May 13, 2002.

29

Cancellation No. 92024108

With the facts and events mentioned above in mind, we turn to the merits of petitioners' summary judgment motion.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. See Fed. R. Civ. P. 56(c). The purpose of summary judgment is to avoid an unnecessary trial where additional evidence would not reasonably be expected to change the outcome. See *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 222 USPQ 741 (Fed. Cir. 1984). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). The evidence must be viewed in a light favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. See *Old Tyme Food, Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

Petitioners maintain that the District Court "Cancellation Order" cancelled HCH's rights in the registration, found that HCH never acquired any ownership rights in the registration and that the assignments from Cubaexport to HC & L and from HC & L to HCH were null and void. Thus, according to petitioners, "the renewal

30

**Cancellation No. 92024108**

affidavit filed by HCH must also be treated as a nullity because if HCH was not the registrant and never acquired any ownership interest of any kind in the subject registration … then HCH could not as [a] matter of law renew that application [sic]."  They conclude that "HCH's renewal application was a dead letter just like the assignments, so the U.S. HAVANA CLUB Registration expired in 1996." Further, they maintain that "[o]nly Cubaexport, the putative owner of the U.S. HAVANA CLUB Registration in 1996, lawfully had the power to file the renewal affidavit"; that Cubaexport has not filed a renewal application; and if Cubaexport were allowed to file one now, it would not be "justifiable" because Cubaexport had transferred its rum business, including worldwide rights, its personnel and its files, and the time for filing a renewal affidavit has passed.  They argue that as a result, the registration has expired and must be cancelled.

In response, HCH and Cubaexport, in separate briefs, argue, inter alia, that because petitioners commenced this proceeding more than five years after the issuance of the registration, they may not challenge the registration except on one of the grounds set forth in Section 14(3) of the Trademark Act.  Noting that the motion for summary judgment is predicated on the argument that the registration should be canceled because HCH, not Cubaexport, filed the renewal

31

**Cancellation No. 92024108**

application, respondents contend that the motion must be denied because "wrong-party renewal" is not a ground for cancellation under Section 14(3).

Respondents also argue that cancellation would be inequitable under the circumstances of this case. Specifically, HCH contends in its response as follows:

> … HCH acted reasonably and in complete good faith in renewing the Havana Club Registration.  In fact, *only* HCH could have renewed the Havana Club Registration during the renewal period: throughout the 1996 renewal period, HCH was the owner of the registration from the perspective of all concerned, including without limitation (a) Cubaexport and HCH (both of which then reasonably believed the assignments from Cubaexport to HRL and from HRL to HCH to have been legally effective, based on, among other factors, the existence of the Specific License …); (b) OFAC (which had granted the then-effective Specific License); and (c) the PTO (which processed and accepted without question the renewal papers filed by HCH).
>
> In fact, during the renewal period, the PTO would have been obligated by law to reject any application to renew the Havana Club Registration filed by Cubaexport or any other person or entity other than HCH, because from the perspective of the PTO and all others concerned, it was HCH that then owned the registration.  It was not until April 1997 — long after the renewal period for the Havana Club Registration had closed — that OFAC revoked the Specific License retroactive to its date of issuance; … and it was not until October 1997 that the court directed the PTO to void the assignments, revest Cubaexport with ownership of the Havana Club Registration, and retroactively deem Cubaexport as the owner of the registration at all times since issuance of the registration in 1976.

In reply, petitioners argue that the "wrong-party renewal" argument is a red herring because "the Lanham Act

32

Cancellation No. 92024108

mandates that a lapsed registration be stricken automatically" and "[n]o formal cancellation proceeding is required."  They add that "[e]ven if a cancellation proceeding were required to be brought, appropriate grounds for cancellation under Section 14(3) include abandonment and fraud, as may be asserted here."  Further, petitioners reiterate that "[o]nly Cubaexport, the putative record owner of the HAVANA CLUB Registration in 1996, lawfully has the power to file the renewal affidavit" and it did not do so. Therefore, they conclude that the registration is "nothing more than 'dead wood' and the PTO must rectify the register to expunge that registration."

Further, in response to respondents' contention that the renewal application (filed by HCH) was timely and proper because it was accepted by the PTO, petitioners argue that the district court determined that HCH had no interest in the registration at the time HCH filed the renewal papers; that under Section 9(a) of the Trademark Act, the "true owner of the registration" must file a renewal application within a specific statutory time period; and that HCH was not that true owner.

In deciding petitioners' summary judgment motion, we begin with the decision of the District Court in *Havana Club II*, which stated as follows:

> Cubaexport's rights arise out of the invalid transfer of the rights to the mark.  The abortive

33

Cancellation No. 92024108

> transfer between Cubaexport, Havana Rum & Liquors,
> and Plaintiffs voids those provisions of the
> contract relating to the mark, rendering them
> invalid and of no effect.  Cubaexport, Havana Rum
> & Liquors, and Plaintiffs, as the original parties
> to the transaction, are returned to the *status quo
> ante*.  Cubaexport, restored as the owner of the
> registration, inevitably has an interest in the
> outcome of the registration issue.  *Havana Club
> II,* 974 F.Supp at 311.

The District Court also recognized that "Cubaexport has a

significant business interest in maintaining the

registration of its mark" and that "[c]ancelling the

registration … [would] neglect the substantial rights of

Cubaexport, a party not before this court."  Although

Bacardi was seeking cancellation of the registration, the

court went on to state:

> [Cubaexport] may reform its agreement with
> Plaintiffs so that it is once again the company
> entitled to export the rum under the Havana Club
> mark after the embargo is lifted.  Or, it may seek
> to renegotiate the assignment of the mark to
> Plaintiffs after Plaintiffs restructure their
> corporate organization to comply with the
> provisions of the CACR.  Such opportunities would
> clearly be impaired if this Court granted
> Defendants' petition to cancel Cubaexport's
> registration.  Accordingly, Defendants' petition
> to cancel the registration is denied, and all
> rights to the registration revert to Cubaexport.
> *Id.*

From the foregoing, we conclude that the District

Court, in addition to specifically declining petitioners'

request that the HAVANA CLUB and Design registration be

34

Cancellation No. 92024108

cancelled, contemplated that the registration would continue to exist.[21]

Next, we address two of respondents' arguments which merit comment.  First, both respondents argue that Section 14(3) of the Trademark Act precludes a challenge to the validity of a registration more than five years old on the ground of "improper renewal of a registration."[22] Respondents are correct -- Section 14(3) does limit the grounds a plaintiff may assert in a petition to cancel a registration that is more than five years old.  However, because petitioners base their summary judgment motion on the District Court's orders, we give petitioners the benefit of any doubt and construe the motion as being based on a District Court order directed to the validity of the registration, and not based on the "improper renewal of a registration."  Thus, we have considered the merits of petitioners' summary judgment motion.

Second, one of respondents, i.e., Cubaexport, has argued that petitioners do "not (and cannot) dispute that

---

[21] Petitioners' characterization in its summary judgment motion of the District Court's opinion as a "cancellation order" is therefore both misleading and incorrect.  (We note that petitioners ceased referring to the District Court's order as a "Cancellation Order" in their reply brief.)

[22] Respondents cite to *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985) ("A mark that has been registered five years is protected from cancellation except on the grounds stated in §§14(c) and (e)"); and *Treadwell's Drifters Inc. v. Marshak*, 18 USPQ2d 1318 (TTAB 1990) (holding that ownership of a registered mark is not one of the grounds allowed under Section 14(3)).

35

Cancellation No. 92024108

the application for renewal filed by HCH satisfied all
statutory and PTO requirements for a complete application."
Petitioners have not challenged Cubaexport's argument.
Thus, we assume that the renewal application is otherwise in
accordance with "all statutory and PTO requirements for a
complete application" and limit our inquiry to the questions
raised by petitioners regarding the validity of the renewal
registration in light of the District Court decision.

We now turn to the question which is at the heart of
petitioners' motion, i.e., whether the District Court's
opinions compel cancellation of the renewed HAVANA CLUB and
Design registration.

A proper renewal application must be executed and filed
by the owner of a registration.[23]  See 15 U.S.C. § 1059
(1988) and 15 U.S.C. § 1127 (1994); *In re Wella A.G.*, 787
F.2d 1549, 229 USPQ 274, n.1 (Fed. Cir. 1986); 37 C.F.R.
§2.182; and TMEP §1605.03 (2d ed. 1993).  If the owner, as
set forth in the application for renewal, is not the same
person or the same legal entity as the registrant shown in

---

[23] Trademark Rule 2.182, at the time of the renewal, stated:

> An application for renewal may be filed by the
> registrant at any time within six months before the
> expiration of the period for which the certificate of
> registration was issued or renewed, or it may be filed
> within three months after such expiration ...."

Pursuant to 15 U.S.C. § 1127, the term "registrant" includes both
the original registrant and a person who has acquired ownership
through proper transfer of title.

36

**Cancellation No. 92024108**

the registration, continuity of title from the registrant to the present owner must be shown. *Id.* The owner may establish its ownership of the registration by recording papers evidencing each change of ownership in the Assignment Division and specifying where such evidence is recorded in the PTO or submitting other proof of the change of ownership. *Id.*

In this case, well before the nine-month renewal period commenced,[24] it appeared that Cubaexport was no longer the owner of the registration. According to HCH and Cubaexport, all of the parties concerned considered HCH as the owner of the registration. Cubaexport had assigned the registration to HR & L, and HR & L had assigned the registration to HCH. The assignments from Cubaexport to HR & L and from HR & L to HCH had been recorded with the Assignment Branch of the PTO. Continuity of title to an assignee -- one of the renewal requirements noted above -- from the original registrant (Cubaexport) to HCH existed within the records of the PTO, and the renewal application was made in the name of HCH, the owner of record.

---

[24] The initial term of the HAVANA CLUB and Design registration expired on January 27, 1996. Thus, the applicable statutory renewal period spanned from July 27, 1995 to April 27, 1996. See Trademark Rule § 2.182; and 15 U.S.C. § 1059 (1988). HCH filed the renewal application on January 12, 1996, two weeks before the expiration date of the registration.

37

**Cancellation No. 92024108**

Petitioners contend that "[o]nly Cubaexport … lawfully had the power to file the renewal affidavit." However, if Cubaexport had tried to renew the registration during the applicable statutory renewal period, it would have been unsuccessful; the Post Registration Division would have properly refused the renewal application because the owner of record was not HCH. Additionally, because the mark had actually been transferred prior to the filing of the renewal application, a declaration by Cubaexport stating that Cubaexport was the owner of the registration would not have been truthful at that time, and therefore renewal of the registration in the name of Cubaexport would have been subject to challenge.

Two other considerations must be given great weight in our decision. First, in judging the validity of the renewal registration, we must focus on circumstances in effect when the renewal applicant filed its application, and not on the circumstances which existed years later. To do otherwise would inject confusion and uncertainty in the renewal process and administratively burden the Trademark Office. Second, there is no opportunity now for Cubaexport to file a new, substitute or amended renewal application. The statutory renewal period has long passed, and neither we, nor the parties, may extend or reopen that period.

38

Cancellation No. 92024108

In view of the foregoing, we conclude that HCH was in compliance with PTO renewal rules and practice when it filed its renewal application in its name, that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board. Therefore, and again mindful that the District Court has not specifically ordered the cancellation of the registration, but in fact concluded that Cubaexport "retained whatever rights it had in said mark and the related U.S. Registration as of said date, notwithstanding the invalid transfers" and noted that Cubaexport "may reform its agreement with Plaintiffs so that it is once again the company entitled to export the rum under the Havana Club mark after the embargo is lifted," we conclude that the District Court's order does not compel us to cancel the registration. Petitioners' summary judgment motion is therefore denied.

**4.  *Sufficiency of Claims in Petition to Cancel.***

We next consider the legal sufficiency of petitioners' complaint, i.e., whether petitioners have stated any claims in their supplemental and amended petition to cancel upon which the Board may grant relief. See Fed. R. Civ. P.

Cancellation No. 92024108

12(b)(6);[25] and *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir. 1989)(a court may dismiss a complaint under its own motion for failure to state a claim). Petitioners' pleading need only allege such facts as would, if proven, establish that petitioners are entitled to the relief sought, that is, that (1) petitioners have standing to maintain the proceeding, and (2) a valid ground exists for petitioning to cancel the involved registration. In undertaking our review, we accept all of petitioners' well-pleaded allegations as true, and we construe the complaint in the light most favorable to petitioners. See TBMP § 503.02 (2d ed. 2003) and cases cited therein.

We consider each of petitioners' allegations in turn below. Because we find that petitioners have not alleged any valid ground for petitioning to cancel the involved registration, we need not consider petitioners' standing and have not done so.

*Fraud in Obtaining Registration.*

The supplemental and amended petition to cancel pleads as follows in relevant part:

> 21. Cubaexport … was not the successor to Jose Arechabala, S.A. … The use of the statement "Fundado en 1878" as part of the HAVANA CLUB and DESIGN mark registered by Cubaexport was meant to be understood by the American public as an indication that Cubaexport's rum was somehow associated with or approved

---

[25] Fed. R. Civ. P. 12(b)(6) is made applicable to the Board pursuant to Trademark Rule 2.116(a).

40

Cancellation No. 92024108

by the original source of HAVANA CLUB rum in the United States and was of the same quality as the rum they had previously purchased and enjoyed.

22. Cubaexport was well aware at the time it filed its application ... that it was not the owner of the mark HAVANA CLUB for rum in the United States.

23. Cubaexport knew that the HAVANA CLUB and DESIGN mark which it applied for in the United States was still associated with Jose Arechabala, S.A., the original Cuban company which had previously imported and previously sold HAVANA CLUB rum in the United States. Moreover, the formula used to make ersatz HAVANA CLUB rum by Cubaexport was materially different from the formula used by the original producers of HAVANA CLUB rum. This formula was changed surreptitiously in a manner calculated to deceive purchasers of HAVANA CLUB rum as to the changed nature of the product.

         *     *     *

44. These fraudulent acts and statements include, but are not limited to, the statement that the HAVANA CLUB and DESIGN mark was owned by Cubaexport at the time of the original application .... [This statement was] willfully false and fraudulent when made and [was] done with the intention of fraudulently obtaining ... the registration of the HAVANA CLUB and DESIGN mark on the Principal Register of the PTO.

First, we address a misstatement in paragraph 44. Petitioners allege that Cubaexport represented that it owned the HAVANA CLUB and Design mark at the time of the original application. In actuality, Cubaexport merely represented that it *believed* that it was the owner of the mark in the original application. Specifically, Cubaexport, by its

41

**Cancellation No. 92024108**

Director, stated:

> … he believes said company to be the owner of the
> mark sought to be registered; that to the best of
> his knowledge and belief no other person, firm,
> corporation or association has the right to use
> said mark in commerce, either in the identical
> form or in such near resemblance thereto as may be
> likely, when applied to the goods or such other
> person, to cause confusion, or to cause mistake,
> or to deceive ….

See 35 U.S.C. § 1051(a)(1).  This difference is significant

because "[w]here there is reasonable doubt as to who is the

owner of a mark, it is not fraud to state in the application

oath that one 'believes himself, or the firm, corporation or

association in whose behalf he makes the verification, to be

the owner of the mark sought to be registered.'"  J. Thomas

McCarthy, *McCarthy on Trademarks & Unfair Competition*

§ 31:71 (4th ed. 1997).

Next, we consider whether paragraph 44 comports with

Fed. R. Civ. P. 9(b), which requires that fraud be pleaded

with particularity.[26]  Paragraph 44 states in part that

"[t]hese fraudulent acts and statements include, but are not

limited to, the statement that the HAVANA CLUB and DESIGN

mark was owned by Cubaexport at the time of the original

application …."  To the extent that paragraph 44 pleads

---

[26] Federal Rule 9(b) states:

> In all averments of fraud or mistake, the
> circumstances constituting fraud or mistake shall be
> stated with particularity.  Malice, intent, knowledge,
> and other condition of mind of a person may be averred
> generally.

Cancellation No. 92024108

unspecified "fraudulent acts and statements," it does not
meet Federal Rule 9(b)'s requirement that fraud be pleaded
with particularity.  We therefore only consider the specific
"fraudulent acts and statements" mentioned in paragraph 44,
i.e., "the statement that the HAVANA CLUB and DESIGN mark
was [believed to be] owned by Cubaexport at the time of the
original application …."

Fraud in procuring a trademark registration or renewal
occurs when an applicant knowingly makes false, material
representations of fact in connection with his application.
*Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d
1483 (Fed. Cir. 1986).  See also *Smith International, Inc.
v. Olin Corp.*, 209 USPQ 1033 (TTAB 1981).  The Trademark Act
only imposes on an applicant the obligation that he will not
make *knowingly* inaccurate or *knowingly* misleading statements
in the verified declaration forming a part of the
application for registration.  See 35 U.S.C. § 1051(a)(1)
(1988).  Thus, an applicant need only verify a statement
that "no other person, firm, corporation, or association, to
the best of his knowledge and belief, has the right to use
such mark in commerce either in the identical form thereof
or in such near resemblance thereto as might be calculated
to deceive."  *Bart Schwartz International Textiles, Ltd. v.
F.T.C.*, 289 F.2d 665, 129 USPQ 258 (CCPA 1961).  When a
claim of fraudulent misrepresentation is made regarding a

43

Cancellation No. 92024108

registrant's sworn declaration as to its ownership of the
mark and as to the rights of others to use the mark -- which
essentially is petitioners' claim in this proceeding -- a
plaintiff must prove that "at the time of the application
for registration, the registrant knew that others had the
right to use and were using the word [in question] as the
name of the product."[27]   *Id.* at 260.

Petitioners have alleged that JASA, of Cardenas, Cuba,
had first used the HAVANA CLUB mark in commerce in the
United States as early as the 1930s (paragraph 19); that the
mark "was still associated with" JASA when Cubaexport filed
its application (paragraph 23); that JASA was "the original
Cuban company which had previously imported and sold HAVANA
CLUB rum in the United States" (paragraph 23); that in 1963,
the CACR imposed a total embargo on all trade between the

---

[27] C.f., *Intellimedia Sports, Inc. v. Intellimedia Corporation*, 43
USQP2d 1203 (TTAB 1997), in which we stated:

> [A] plaintiff claiming that the declaration or oath in
> defendant's application for registration was executed
> fraudulently, in that there was another use of the
> same or a confusingly similar mark at the time the
> oath was signed, must allege particular facts which,
> if proven, would establish that: (1) there was in fact
> another use of the same or a confusingly similar mark
> at the time the oath was signed; (2) the other user
> had legal rights superior to applicant's; (3)
> applicant knew that the other user had rights in the
> mark superior to applicant's, and either believed that
> a likelihood of confusion would result from
> applicant's use of its mark or had no reasonable basis
> for believing otherwise; and that (4) applicant, in
> failing to disclose these facts to the Patent and
> Trademark Office, intended to procure a registration
> to which it was not entitled.

44

Cancellation No. 92024108

United States and Cuba (paragraph 31); and that since the effective date of the CACR, "no rum produced in Cuba has been lawfully imported into and sold in the United States" (paragraph 31). Also, petitioners have alleged that JASA owned four United States trademark registrations containing the term "Havana Club" (paragraph 19). (We note that by June 12, 1974, the filing date of Cubaexport's U.S. application, all of JASA's U.S. registrations had expired.)

Petitioners have *not* made out a legally sufficient claim of fraud. First, petitioners have not alleged that there was any use of HAVANA CLUB in the United States by JASA at the time when Cubaexport filed its U.S. application.[28] (JASA's use in the 1930s, which petitioners have alleged, is deemed too distant in time from when Cubaexport filed its application to satisfy this element of a fraud claim.) Second, the pleaded facts, even when construed in a light most favorable to petitioners, do not support a key element of petitioners' claim, i.e., that Cubaexport *knew* when it filed its application that JASA had the *right to use* the mark in the United States. JASA's

---

[28] N.b., *King Automotive, Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 212 USPQ 801 (CCPA 1981)(holding that a pleading of fraud (in connection with a statement in an application that no one else had the right to use the same or a confusingly similar mark in commerce) requires averments of fact supportive of plaintiff's belief that registrant knew of a third party's right to use a mark in commerce when it filed its application in the United States.)

45

Cancellation No. 92024108

right to use HAVANA CLUB in 1974 was not by any means clear.
JASA's four United States trademark registrations which
included the HAVANA CLUB mark had all expired prior to 1974,
and eleven years had passed since the Cuban embargo
commenced, barring the importation of any Cuban rum.
Additionally, petitioners' pleading only alleges an
*association* of the mark with JASA, not actual use of the
mark in the United States by JASA.  An association with an
entity does not allow an entity to indefinitely claim
trademark rights once it has stopped using the mark.
Rather, at some point, the mark is deemed abandoned.  Third,
Cubaexport, consistent with the Trademark Act, merely
represented in its application that it *believed* no other
entity had the right to use the applied-for mark in the
United States.  Fraud "will not lie if it can be proven that
the statement [to the PTO], though false, was made with a
reasonable and honest belief that it was true."  *Smith
International, supra* at 1044.

Thus, the pleaded facts do not support petitioners'
claim of fraud and, consequently, petitioners have failed to
state a claim of fraud upon which relief may be granted.
Petitioners' claim of fraud in obtaining the registration is
therefore dismissed.

*Fraud in Maintaining Registration.*

As facts underlying this claim, petitioners have

46

Cancellation No. 92024108

pleaded the following:

28.   On or about January 12, 1982, a Section 8
      Declaration was filed in the PTO in
      connection with Registration No. 1,031,651.
      On information and belief, that declaration
      ... wilfully [sic] and falsely stated that the
      mark [HAVANA CLUB] "is still in use on goods
      and services in each class as evidenced by
      the attached specimen for each class showing
      the mark as currently used."

29.   The Declaration further falsely averred that
      Cubaexport was the owner of said mark and
      registration.  As alleged aforesaid,
      Cubaexport, at all relevant times, knew said
      mark HAVANA CLUB and DESIGN was not owned by
      Cubaexport in the United States.

Turning first to the allegation in paragraph 28, we

note that at the time Cubaexport filed its Section 8

declaration, the practice of the Patent and Trademark Office

Post Registration Section was that any use, even use only in

a foreign country, was sufficient to meet the requirements

of Section 8.   See *Cerveceria India, Inc. v. Cerveceria

Centroamericana, S.A.*, 10 USPQ2d 1064 (TTAB 1989), *aff'd*,

892 F.2d 1021, 13 USPQ2d 1307 (Fed. Cir. 1989); and H. Rep.

542, accompanying H. R. 6260, 97th Cong., 2d Sess. 10

(1982), regarding amendment of Section 8 from "still in use"

to "use in commerce."[29]   See also, 2 *Notes From the Patent*

_____

[29] When Cubaexport filed the Section 8 declaration on January 12,
1982, Section 8 stated as follows, in relevant part:

     [T]he registration of any mark under the provisions of
     this Act shall be canceled by the Commissioner at the
     end of 6 years following its date, unless within 1
     year next preceding the expiration of such 6 years the
     registrant shall file in the Patent and Trademark

47

Cancellation No. 92024108

*Office*, Section 4, Part 3, Note 8-1 (July, 1965)("[T]he policy followed is to accept an allegation that the mark is 'in use' as being sufficient to comply with the requirements of Sec. 8, without a statement of use in commerce.  It is considered significant that the words 'in use' in Sec. 8 are not modified by the words 'in commerce' as they are in Secs. 9 and 15.")  Thus, Cubaexport's declaration complied with the applicable statute and PTO Section 8 practice. Petitioners therefore have not asserted a legally sufficient claim regarding Cubaexport's statement on use in its Section 8 declaration.

Turning next to petitioners' allegation in paragraph 29 that the Section 8 declaration "falsely averred that Cubaexport was the owner of the mark," petitioners must show that Cubaexport's statement of ownership was a false, material misrepresentation made knowingly.  See *Torres*, *supra*; and *McCarthy on Trademarks and Unfair Competition*, *supra* at § 20:15 ("It is relatively clear that fraud made in affidavits under sections 8 and 15, to continue a registration and obtain incontestability, also constitute fraud in 'obtaining' a registration sufficient for

---

Office an affidavit showing that said mark is still in use or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark ….

Section 8 was amended to add the "use in commerce" requirement on August 27, 1982.  See Pub. L. No. 97-247 (1982).

48

**Cancellation No. 92024108**

cancellation."). For the reasons set forth in the previous section of this order, including petitioners' failure to allege use of HAVANA CLUB in the United States when Cubaexport filed its application, we conclude that Cubaexport could not have knowingly made a misrepresentation as to ownership of the mark in its Section 8 declaration.

Petitioners' claims of fraud in connection with maintaining the HAVANA CLUB and Design registration are therefore dismissed.

*False and Fraudulent Renewal by Respondent Havana Club Holding, S.A.*

As another claim, petitioners allege as follows:

47.  The rights, if any subsisted, to the HAVANA CLUB and DESIGN mark in the United States and U.S. Registration 1,031,651 on or about January 12, 1996, still resided in Cubaexport, not Respondent Havana Club Holdings, S.A. Nonetheless, Havana Club Holdings, S.A. purported to renew said registration on said date. The purported attempts by Cubaexport and Respondents to transfer said mark and registration were, in addition to being assignments-in-gross, null and void <u>ab initio</u> pursuant to 31 CFR 515.203(a) and cannot serve as the basis for recognizing any rights to said mark in Respondent Havana Club Holdings, S.A. Alternatively, since Cubaexport never sought to renew Reg. No. 1,031,651 of said HAVANA CLUB and DESIGN mark, the requirements of 15 U.S.C. 1059(a) and (e) were not met, and the registration thereof in the United States PTO expired, and said registration must be cancelled and expunged.

48.  Cubaexport, Respondent Havana Club Holdings, S.A., and Respondent Havana Rum & Liquors, S.A., were at all relevant times aware of the fact that the purported transfers of the

49

**Cancellation No. 92024108**

> HAVANA CLUB and DESIGN mark in the United
> States and said registration thereof were
> prohibited by the CACR and willfully
> violated those regulations.  Furthermore,
> Respondent Havana Club Holdings, S.A.
> knowingly falsely represented that it owned
> said mark and registration in connection
> with the renewal declaration filed on or
> about January 12, 1996.

> 49.  Wherefore, Registration No. 1,031,651 of the
> HAVANA CLUB and DESIGN mark was falsely and
> fraudulently renewed by Respondent Havana
> Club Holdings, S.A. in violation of 15
> U.S.C. 1064(3) and should be cancelled as
> prayed for hereinafter.

We first turn to the allegations of paragraph 47.  The

District Court has agreed with petitioners that HCH did not

obtain any rights in the mark or registration pursuant to

the assignments by Cubaexport and HR & L.  However, despite

petitioners' arguments regarding Cubaexport's failure to

renew the registration, the District Court did not order the

cancellation of the registration.  We have considered the

substance of the allegations of paragraph 47 in the first

half of this decision in view of the District Court's

orders, and have concluded that the registration should not

be cancelled.

Turning now to the allegations of paragraph 48, we note

that petitioners' claim is premised on Cubaexport, HCH and

HR & L's willful violation of the CACR.  OFAC, however, when

it revoked its license approving the assignment and

authorizing all necessary transactions incident to the

assignment of the mark, did not explain why it revoked the

50

Cancellation No. 92024108

license and did not find that there was a willful violation of the CACR.[30]  Additionally, while the District Court found that the "attempted transfer of the Havana Club registration fell under the provisions of" the CACR, it did not find that there was a willful violation of the CACR and did not consider petitioners' allegation that there was fraud in the assignments of the registration.  See *Havana Club I, supra*.

In order to determine whether there has been a fraudulent transfer of the mark under the CACR, we would, of course, need to examine the CACR.  The Board has little or no experience in determining violations of statutes or regulations that do not directly concern registration of trademarks.  The better practice in determining whether a violation of a statute or regulation has occurred, or whether a fraud has been committed under one or more regulatory acts, is to defer to a court or government agency having competent jurisdiction under the statute or regulation involved.  See, e.g., *Santinine Societa v. P.A.B. Produits*, 209 USPQ 958 (TTAB 1981); and *Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q.2d 2045 (TTAB 1988).  Thus, because petitioners have not pleaded that a court or

---

[30] In fact, the District Court noted that "OFAC enjoys considerable discretion in granting or revoking licenses, and the CACR permit OFAC to amend, modify, or revoke a license at any time, on its own initiative." *Havana Club II, supra* at 306.  It also found that OFAC's decisions are not reviewable by the District Court.  *Id.*

51

Cancellation No. 92024108

government agency having competent jurisdiction under the CACR has found that Cubaexport, HCH and/or HR & L have willfully violated the CACR, or that the attempted transfer of the HAVANA CLUB and Design registration was fraudulent or part of a fraudulent scheme, petitioners have failed to state a proper claim of false and fraudulent renewal upon which the Board may grant relief.  Petitioners' claim of false and fraudulent renewal is therefore dismissed.

*Abandonment.*

Petitioners' allegations regarding abandonment of the mark underlying the HAVANA CLUB and DESIGN registration are as follows:

37.  By Assignment, dated January 10, 1994, Cubaexport purportedly assigned the rights to the HAVANA CLUB and DESIGN trademark in the United States and U.S. Reg. No. 1,031,651 thereof to Respondent Havana Rum & Liquors, S.A., a Cuban company, with its address at 305 Miramar, Havana Cuba.  …  No goodwill or related assets were conveyed with the purported trademark, so this assignment-in-gross destroyed any rights of the purported assignee in or to said HAVANA CLUB and DESIGN mark or the registration thereof in the United States.

38.  By Assignment, dated June 22, 1994, Havana Rum and Liquors, S.A., a Cuban company, purportedly assigned the rights to the trademark HAVANA CLUB and DESIGN in the United States and U.S. Reg. No. 1,031,651 thereof to Respondent Havana Club Holdings, S.A. ….  The assignment recited that the transfer was for $10 and other good and valuable consideration received by Havana Rum & Liquors, S.A., from Havana Club Holdings, S.A.  …  No goodwill or related assets were conveyed with the purported

52

Cancellation No. 92024108

> trademark, so this assignment-in-gross
> destroyed any rights of the purported
> assignee in or to said mark or the
> registration thereof in the United States.

Because of the Cuban embargo, Cubaexport, HCH and HR & L

could not have imported, distributed, sold or maintained any

assets in the United States, and it was impossible for them

to separate the mark from the business assets.  In view

thereof, we conclude, as the District Court did in *Havana

Club II*, that the principle of assignment-in-gross is

inapplicable to this case.[31]  Petitioners' claim of

abandonment is therefore dismissed.

*Misrepresentation of Source.*

> Petitioners allege as follows:

> 54.  Respondents and Cubaexport have prepared and
> caused advertisements for their ersatz
> HANANA CLUB rum to appear in magazines and
> publications distributed through the
> channels of interstate commerce in the
> United States and have paid promotional fees

---

[31] The District Court in *Havana Club II, supra,* addressed this issue in its opinion at footnote no. 9, stating:

> Defendants additionally argue that the separation of
> the trademark from the appurtenant business, the hard
> assets in Cuba, resulted in an assignment in gross. …
> As a general matter, Defendants are correct in
> asserting that such a situation may lead to an
> assignment in gross.  However, the principle is
> inapplicable to the unique circumstances of this
> matter.  Cubaexport and Plaintiffs never had assets in
> the United States.  While the Havana Club trademark
> may be recognizable by U.S. consumers, the embargo has
> prevented Plaintiffs and Cubaexport from importing,
> distributing, selling, or maintaining any assets in
> this country.  Thus, it was impossible for the
> Plaintiffs and Cubaexport to have separated the mark
> from the business assets when no assets existed in the
> United States.

53

**Cancellation No. 92024108**

> or given other inducements to movie producers to cause their HAVANA CLUB rum and their purported HAVANA CLUB and DESIGN mark to be depicted in movies distributed in interstate commerce in the United States, including the film "The Firm". These advertisements and the use and depiction of said mark in films are designed to induce American consumers into buying Respondents' ersatz HAVANA CLUB rum abroad and to build up a demand for said product when it becomes legally available for sale in the United States.

> 55.   The aforesaid actions of Respondents, including their use of the labeling statement incorporated as a component of the DESIGN portion of the aforesaid mark that falsely indicates that the producer was "founded in 1878" is part of a deliberate scheme by Respondents to pass off their ersatz HAVANA CLUB rum as being somehow approved by the producer of, or as being the same quality as, the only HAVANA CLUB rum ever sold legally in the United States which was produced by Jose Arechabala, S.A.

> 56.   Furthermore, said advertising and promotional use of said HAVANA CLUB and DESIGN mark and Respondents' other aforesaid acts and omissions are intended to confuse the American public into wrongly believing that Respondents are somehow the legitimate successor to the original producer of the HAVANA CLUB rum sold in the United States, Jose Arechabala, S.A.  Indeed, the use of the statement "founded in 1878" as part of the Design portion of the mark can have no other purpose.

Petitioners conclude that respondents "have used the purported HAVANA CLUB and DESIGN mark as a vehicle for fraud and said mark is being used in violation of 15 U.S.C. § 1064(3) to misrepresent the source of Respondents' ersatz HAVANA CLUB rum."

54

Cancellation No. 92024108

Section 14(3) of the Trademark Act recognizes a claim of misrepresentation of source if "the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used." We have stated in the past that "application [of Section 14(3)] under the decisional law has … been limited to cases involving deliberate and blatant misrepresentation of source wherein the registration is merely a vehicle for the misuse rather than evidence of even a colorable ownership claim, and where the mark is intentionally displayed in such a manner as to facilitate passing off the goods as those of another." *Global Maschinen GmbH v. Global Banking Systems, Inc.*, 227 USPQ 862 (TTAB 1985). See also *McCarthy on Trademarks and Unfair Competition, supra* at § 20.60 (a Section 14(3) cancellation claim for misrepresentation "requires a pleading that registrant deliberately sought to pass off its goods as those of petitioner.") Thus, if Cubaexport has "even a colorable claim of ownership," there is no misuse and hence no misrepresentation of source.

Petitioners' claim is premised on the assumption that Cubaexport is not the true and legitimate owner of the HAVANA CLUB mark, which can only be regarded as a political question based on the premise that the Cuban government is not legitimate. Obviously, we, as a tribunal within the

55

**Cancellation No. 92024108**

U.S. Department of Commerce, do not have the authority to answer this question.  Thus, petitioners have not stated a claim of misrepresentation as to source upon which we may grant relief and the claim is dismissed.

**4.   Summary**

HCH's motion for reconsideration is denied; Cubaexport's motion is denied; and petitioners' motion for summary judgment is denied.  In view thereof, HCH's motion for summary judgment; petitioners' motion to extend the time to respond to the motion for summary judgment; and petitioners' motion under Fed. R. Civ. P. 56(f), which have been pending for some time, are denied as moot.  Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation.  Therefore, the supplemental and amended petition to cancel is DISMISSED.

4



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                    License No. CU-71416

### LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et
seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

    To:  Fish & Neave (the ''Licensee'')
         1251 Avenue of the Americas
         New York, New York 10020
         Attn: Herbert F. Schwartz

    1. Pursuant to your letter dated January 29, 2003, the following is hereby
licensed:

                        *****SEE REVERSE*****
    2.  This license is granted upon the statements and representations made in your
application, or otherwise filed with or made to the Treasury Department as a supplement to
your application, and is subject to the conditions, among others, that you comply in all
respects with all regulations, rulings, orders and instructions issued by the Secretary of
the Treasury under the authority of Section 620(a), Public Law 87-195, or under the
authority of section 5(b) of the Act of October 6, 1917, as amended, and the terms of this
license.

    3.  The licensee shall furnish and make available for inspection any relevant
information, records or reports requested by the Secretary of the Treasury or any duly
authorized officer or agency of the Secretary.

    4.  This license is not transferable, is subject to the provisions of Title 31, Parts
501 and 515 of the Code of Federal Regulations, and any regulations and rulings issued
pursuant thereto and may be revoked or modified at any time at the discretion of the
Secretary of the Treasury acting directly or through the agency through which the license
was issued, or any other agency designated by the Secretary of the Treasury.  If this
license was issued as a result of willful misrepresentation on the part of the applicant or
his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be
declared void from the date of its issuance, or from any other date.

    5.  This license does not excuse compliance with any law or regulation administered
by the Office of Foreign Assets Control or another agency (including reporting
requirements) applicable to the transactions(s) herein licensed, nor does it release
Licensee(s) or third parties from civil or criminal liability for violation of any law or
regulation.

    Issued by direction and on behalf of the Secretary of the Treasury:

                        OFFICE OF FOREIGN ASSETS CONTROL

                  By _____
                          R. Richard Newcomb, Director
[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
  50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CU-71416                                        Page 2 of 2
Licensee: Fish & Neave

SECTION 1 - AUTHORIZATIONS: All transactions are authorized to enable
Fish & Neave (the ``Licensee''), in connection with all matters related
to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal
Board Cancellation No. 24,108, to provide legal services to, receive
payment for such services from and to receive reimbursement for expenses
related to such services from Empresa Cubana Exportadora De Alimentos y
Productos Varios (``Cubaexport''), a Cuban national.

Authority: 31 CFR 515.801.

SECTION 2 - CONDITIONS: (a) It is a condition of this License that
Licensee shall keep a full and accurate record of each transaction
undertaken pursuant to this License, and that each such record shall be
available for examination for at least five years after the date of such
transaction.

SECTION 3 - REPORTING REQUIREMENT: Pursuant to 31 CFR 501.605 Licensee is
directed to provide all required reports, notices, copies and facsimiles.

SECTION 4 - WARNINGS: (a) Except as explicitly authorized in Section 1
above, nothing in this license authorizes persons subject to the
jurisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations.

SECTION 5 - WARNINGS: (b) Nothing in this License authorizes any debit or
credit from any blocked account.

SECTION 6 - PRECEDENCE:  This License is issued on a nonprecedential
basis.

      *******************************************************************

5

FEB-24-2004  12:44        OFAC                                    P.01/02



## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    **License No. CT-1943**

### LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   **Fish & Neave** (the "Licensee")
      1251 Avenue of the Americas
      New York, NY  10020
      ATTN:  Martin A. Leroy

1. Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

*****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or  third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By  *Clara David  2/20/04*
for David W. Mills
    Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

FEB-24-2004  12:44      OFAC                                    P.02/02

License No. CT-1943                                    **Page 2 of 2**
Licensee: **Fish & Neave**

`CTION 1 – AUTHORIZATION: (a)** This license authorizes the Licensee to engage in travel-related ~nsactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the Regulations") and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below.

**(b)** This license authorizes the Licensee to provide legal services to, and to receive payment for such services from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

**(c)** This license authorizes **multiple trips** during the validity period of the license.

**Authority: 31 CFR 515.560(c), 515.564(b) and 515.801**

**SECTION 2 – CONDITIONS: (a)** The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations prior to travel.

~CTION 3 - WARNINGS: Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel. Each individual traveler must also retain records related to his/her travel transactions. Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction. A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION: (a)** For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An abridged version of consular information sheets can be heard by calling (202) 647-5225.

`CTION 6 - PRECEDENCE:** The authorization contained in this license is limited to the facts and ~ircumstances specific to the application.
*********************************************************************************

                                              TOTAL P.02

6



**FISH & NEAVE IP GROUP**

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation.  In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled.  Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

        We appreciate this office's continued attention to this matter.  If we can be of further assistance, please do not hesitate to call me.

        Sincerely,

        Vincent N. Palladino

VNP:emf
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
       Clara David, Licensing Division, OFAC (encl.)
       Commissioner for Trademarks

# SHLESINGER, ARKWRIGHT & GARVEY LLP

PATENT, TRADEMARK & COPYRIGHT LAW

JAMES E. SHLESINGER
JOSEFINO P. DE LEON
MICHAEL M. ZADROZNY*
TERRENCE L.B. BROWN*
DANIEL T. EARLE

OF COUNSEL
B. EDWARD SHLESINGER, JR.

*ADMITTED TO A BAR OTHER THAN VIRGINIA

ESTABLISHED 1950

1420 KING STREET
SUITE 600
ALEXANDRIA, VIRGINIA 22314

GEORGE A. ARKWRIGHT (RET.)
GEORGE A. GARVEY (RET.)

TELEPHONE: (703) 684-5600
FAX: (703) 836-5288
FAX: (703) 836-5698
EMAIL: PATENTS@SAGLLP.COM

OUR REF. NO.:

## FACSIMILE TRANSMISSION

Date:   January 25, 2006

| | |
|---|---|
| TO THE ATTENTION OF: | Petitions, Office of Commissioner for Trademarks |
| TELECOPIER NO.: | 571 273 8950 |
| FROM : | Daniel T. Earle, Esq. |
| RE: | Registration No. 1,031,651 – HAVANA CLUB & Design<br>Our Docket No. T-11/2006 |

TOTAL NUMBER OF PAGES BEING TRANSMITTED (INCLUDING COVER PAGE)30
IF ALL PAGES ARE NOT RECEIVED, PLEASE CONTACT *myrna* IMMEDIATELY.
TELEPHONE NO.: (703) 684-5600
TELECOPIER NO.: (703) 836-5288
TELECOPIER NO.: (703) 836-5698

## MESSAGE:

Enclosed, in accordance with a telephone conference with Lisa, is a Petition originally hand-filed in the Mailroom on January 11, 2006. The fee has been processed. Please assign this to the appropriate person. This copy includes a Certificate of Service which was not included in the original filing. If you have any questions, please contact me.

Very truly yours,

Daniel T. Earle

This facsimile contains confidential information which may also be privileged. Unless you are the addressee named above (or authorized to receive for the addressee), you may not copy, use, or distribute it. If you have received it in error, please advise Shlesinger, Arkwright & Garvey LLP immediately by telephone or fax and return it promptly by the U.S. Postal Service. Our telephone number, fax number, and address are indicated above.

PAGE 1/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**IOI PARK AVENUE**

**NEW YORK, NEW YORK IOI78**

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7802

EMAIL: wgolden@kelleydrye.com

January 11, 2006

**BY HAND DELIVERY**

Commissioner for Trademarks
PO Box 1451
Alexandria VA 22313-1451

Re:   HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir or Madam:

We represent Bacardi & Company Limited and Bacardi USA, Inc. (collectively, "Bacardi") in connection with intellectual property matters. Bacardi is the petitioner in Cancellation No. 24,108, which seeks cancellation of the above-referenced registration (the "HAVANA CLUB Registration") on the ground, among others, that the registration was improperly renewed in 1996. We write in opposition to the renewal application filed by registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") on or about December 14, 2005.

Cubaexport's attempt to renew the registration is in direct violation of existing laws and regulations. Contrary to the statements in the letter on behalf of Cubaexport accompanying the renewal application, renewal of the HAVANA CLUB Registration has not been specifically authorized by the Office of Foreign Assets Control ("OFAC"). Consequently, any such renewal is expressly prohibited by the Cuban Assets Control Regulations ("CACRs"). *See* 31 C.F.R. §515.201; §515.203; §515.306; §515.309 to §515.313; §515.527(a)(2). Accordingly, the U.S. Patent and Trademark Office ("USPTO") is obligated to reject Cubaexport's renewal application.

The CACRs prohibit, *inter alia*, all dealings in property in which Cuba or a Cuban national has an interest by any person subject to the jurisdiction of the United States, except as specifically authorized by OFAC. *See* 31 C.F.R. §515.201(b)(1) and (d). The CACRs also prohibit any transaction "for the purpose or which has the effect of evading or avoiding" the aforementioned prohibition. *See* 31 C.F.R. §515.201(c). The HAVANA CLUB Registration is property in which Cubaexport, as the registrant, has an interest. *See*

NY01/MARCM/1076227.1

**KELLEY DRYE & WARREN** LLP

Commissioner for Trademarks
January 11, 2006
Page Two

31 C.F.R. §515.312 (defining "interest" as including "an interest of any nature whatsoever, direct or indirect"). By its own admission, Cubaexport is a Cuban entity; in fact it is an agency or instrumentality of the Cuban government. *See* Cubaexport's Combined Declaration and Application for Renewal of Registration under §§ 8 and 9 at 1. Consequently, the renewal of the HAVANA CLUB Registration is prohibited by the CACRs in the absence of a specific license from OFAC authorizing that particular transaction.

On May 13, 1999, Section 515.527 of the CACRs, which had generally licensed certain transactions in the USPTO related to the registration and renewal of trademarks in which Cuba or a Cuban national has an interest, was amended as required by Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998). The amended regulation, as currently in effect, provides as follows:

> (a)(1) Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

> (2)   No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in §515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

37 C.F.R. § 515.527.

The renewal of the HAVANA CLUB Registration falls under the exclusion of paragraph (a)(2) above. The HAVANA CLUB mark registered in the United States is identical to the HAVANA CLUB mark that was used (and owned) by José Arechebala, S.A. ("JASA") in connection with its rum-making business in Cuba. That business and all the related assets (including the HAVANA CLUB trademark) were "confiscated" in 1960 by the Cuban government within the meaning of 37 C.F.R. §515.336.[2] In *Havana Club*

---

[2] "[T]he term *confiscated* refers to:

NY01/MARCM/1076227.1

PAGE 3/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

**A086**
JA142

**KELLEY DRYE & WARREN** LLP

Commissioner for Trademarks
January 11, 2006
Page Three

*Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116 (2d Cir. 2000), the Second Circuit found that "[b]efore the Cuban revolution, Jose Arechebala, S.A., a Cuban corporation owned principally by members of the Arechebala family, produced 'Havana Club' rum and owned the trademark 'Havana Club' for use with its rum. JASA exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets. Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government." 203 F.3d at 119-120. The Trademark Trial and Appeal Board, in a proceeding involving the same HAVANA CLUB mark, adopted the aforesaid findings and granted summary judgment. *Havana Club Holding, S.A. v. Buffett*, Opposition No. 91/116,754 (T.T.A.B. Mar. 13, 2003) (a copy of this decision is annexed hereto as Exhibit "A.")

Bacardi is the *bona fide* successor-in-interest to all of JASA's rights in the HAVANA CLUB trademark. Neither Bacardi nor JASA has ever consented, expressly or otherwise, to the renewal of the HAVANA CLUB Registration by or on behalf of Cubaexport or to any transaction or payment related thereto. Accordingly, the renewal of the HAVANA CLUB Registration is not authorized by Section 515.527(a)(1) of the CACRs and falls within the prohibitions of Section 515.201.

Cubaexport's attempt to rely on OFAC License No. CU-74488 is groundless. That license was granted by OFAC to Cubaexport's counsel, Ropes & Gray, to receive payment from Cuban nationals for fees and expenses related to the legal representation of Cubaexport and Havana Club Holding S.A. Those companies are defendants in a pending court case, *Bacardi & Company Limited v. Cubaexport et al.*, 1:04-CV-00519 (EGS) (D.D.C. 2004) ("the Lawsuit") in which Bacardi is contesting, among other things, a Trademark Trial and Appeal Board decision upholding the validity of the prior (1996) renewal of the same registration. According to Cubaexport, License No. CU-74488, which expires on March 31, 2006, authorizes:

---

| | |
|---|---|
| (a) | The nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959; |
| (1) | Without the property having been returned or adequate and effective compensation provided; or |
| (2) | Without the claim to the property having been settled pursuant to an international settlement agreement or other mutually agreed settlement procedure." |

31 C.F.R. § 515.336.

NY01/MARCM/1076227.1

**KELLEY DRYE & WARREN** LLP

Commissioner for Trademarks
January 11, 2006
Page Four

All transactions . . . to enable the Licensee [Ropes & Gray], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark . . . *to receive payment for such services and reimbursement for expenses related to such services* from Cuban nationals.[3]

The plain wording of this license authorizes *Ropes & Gray* to receive payment for legal fees and reimbursement of expenses related thereto. It does not authorize *Cubaexport* to seek or obtain renewal of the HAVANA CLUB Registration. The applicant is improperly seeking to apply the license to an unrelated transaction, in violation of the specific terms of the license and the prohibitions of the CACRs,[4] That unrelated transaction is prohibited and is not at issue in the Lawsuit.

The Applicant argues that it is merely trying to maintain the *status quo* by renewing the HAVANA CLUB Registration pending the court's decision on the validity of the 1996 renewal. But the existence of a dispute about the validity of the 1996 renewal does not excuse Cubaexport from complying with the laws and regulations applicable to a further renewal of the registration ten years later. Nor would Cubaexport be denied effective legal representation by requiring its counsel to comply with the law.

---

[3] Letter from Vincent Palladino to Commissioner for Trademarks, dated December 13, 2005 (emphasis added). A copy of License No. CU-74488 was purportedly attached to the letter as Attachment 2. The version of Attachment 2 that appears on the USPTO electronic database does not include, however, page 2 of the license, which apparently includes the operative language. We request that Cubaexport be directed to submit a complete copy of License No. CU-74488 for review by the Commissioner and these Opponents.

[4] The license recites that it is not transferable and that it does not excuse compliance with OFAC regulations. *See* License No. CU-74488, paragraphs 4 and 5. It also recites that it is granted upon the statements and representations made in the application and is subject to the conditions, among others, that the licensee comply with OFAC regulations and the terms of the license. *Id.*, paragraph 2. The license application submitted by Ropes & Gray refers only to representation of Cubaexport in existing legal proceedings and says nothing about renewal of the HAVANA CLUB Registration. (A copy of the license application is annexed hereto as Exhibit "B.")

NY01/MARCM/1076227.1

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
January 11, 2006
Page Five

    The CACRs prohibit renewal of the HAVANA CLUB Registration in the present circumstances. These regulations and the laws on which they are based are clear and must be enforced as written.  Since the renewal transaction is not authorized, the renewal affidavit must be rejected.

                Sincerely,

                *William R. Golden Jr.*

                William R. Golden,  Jr.

cc:    David W. Mills, OFAC
        Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC
        (Each By Hand, With Enclosures)

NY01/MARCM/1076227.1

A089
JA145

# EXHIBIT A

PAGE 7/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

THIS OPINION IS NOT CITABLE
AS PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

NLO/AKL

Mailed:  March 13, 2003

Opposition No. 91116754

HAVANA CLUB HOLDING S.A.

v.

JIMMY BUFFETT

Before Quinn, Walters, and Drost,
Administrative Trademark Judges.

By the Board:

Jimmy Buffett ("applicant"), seeks to register the mark
HAVANAS AND BANANAS on the Principal Register for "menu items,
namely, prepared alcoholic cocktails."[1]  Havana Club Holding,
S.A. ("opposer") has opposed registration on the grounds that
the mark:  (1) is primarily geographically deceptively
misdescriptive under Section 2(e)(3) of the Trademark Act
because the goods do not originate from Cuba; (2) disparages
and suggests a false connection with opposer within the
meaning of Section 2(a); and (3) dilutes opposer's HAVANA CLUB

---

[1] Application Serial No. 75/720,955, filed November 30, 1999,
reciting February 4, 1999 as the date of first use and first use
in commerce.

trademark[1] in violation of Sections 43(c) and 13. Applicant, in his answer, denied the salient allegations of the Notice of Opposition.

This case now comes up for consideration of applicant's motion for summary judgment. The motion has been fully briefed. In his motion, applicant argues that opposer lacks standing in this proceeding and cannot make a sufficient showing to establish the essential elements of any of its claims that applicant's mark is primarily geographically deceptively misdescriptive, disparages or falsely suggests a connection with opposer, or dilutes opposer's HAVANA CLUB trademark.

Summary judgment is appropriate in cases where the moving party establishes that there is no genuine issue of material fact which requires resolution at trial and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is material when its resolution would affect the outcome of the proceeding under governing law.

---

[1] Opposer, through its predecessors-in-interest, claims ownership of the mark HAVANA CLUB for rum manufactured exclusively in Cuba, and owns Luxembourg Registration No. 032424 (dated May 13, 1971) for same. Opposer also claims ownership of two pending applications in the United States Patent and Trademark Office (USPTO) which were filed under Section 44(e) of the Trademark Act: (1) Serial No. 74/673,898 for HAVANA CLUB for "rums produced exclusively in the Province of La Havana, Cuba"; and (2) Serial No. 75/409,541 for HAVANA CLUB and design for "rums produced exclusively in the Province of La Havana, Cuba." Action on both applications is currently suspended.

2

PAGE 9/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A092
JA148

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is genuinely in dispute if the evidence of record is such that a reasonable fact finder could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. Under Fed. R. Civ. P. 56, the nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all reasonable inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

In support of his motion for summary judgment, applicant argues that opposer lacks standing to bring the instant opposition because opposer's claims to the HAVANA CLUB mark are void in the United States as a matter of law. Specifically, applicant alleges that due to the existence of the Cuban embargo imposed by the United States government in 1963 and the finding of the court in *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000) ("*Galleon V*"), opposer has no claim to the HAVANA CLUB mark. Further, applicant asserts that, despite ownership of its Luxembourg registration, opposer's attempts to claim standing through ownership of its two pending U.S. applications under

3

PAGE 10/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

Section 44(e) are invalid under U.S. law because these
applications are for marks that are the same as or
substantially similar to a mark that was used in connection
with a business that was confiscated by the Cuban government.

Opposer contends that its two pending applications filed
under Section 44(e) of the Trademark Act provide standing in
this proceeding because they were filed prior to the
application being opposed herein.  Opposer also contends that,
pursuant to the law of the case doctrine, the Board
"implicitly decided the issue of standing in favor of opposer"
when it denied applicant's previous motion to dismiss under
Fed. R. Civ. P. 12(b)(6).  Additionally, oppdser asserts that
because it is a Luxembourg corporation, and not a "designated
national" under statutory law, it is not subject to the Cuban
embargo prohibitions found in U.S. law.  Moreover, opposer
argues U.S. law expressly invests opposer with the right to
file and prosecute applications.

In reply, applicant argues that the Board never reached
the issue, nor entered a decision regarding opposer's standing
in this matter and, hence, the law of the case doctrine is
inapplicable.  Applicant recounts that the Board merely denied
applicant's motion to dismiss following the submission of
opposer's amended notice of opposition and applicant's lack of
objection to the amended pleading.  Also, applicant asserts
that opposer "hopes to out-fox this Board" into believing that

4

PAGE 11/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A094
JA150

it does not fall within the purview of regulations implementing the Cuban embargo by claiming it is "...merely an innocent Luxembourg corporation...."

Applicant's contention with regard to the court's ruling in *Galleon V*[7] is essentially a claim that res judicata, in particular, issue preclusion, is appropriate in this case.

Under the doctrine of issue preclusion (collateral estoppel), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is normally conclusive in a subsequent suit involving the parties to the prior litigation. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017 (Fed. Cir. 1984). The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again. *Mother's Restaurant Incorporated v. Mama's Pizza, Inc.*, 723 F.2d 1566, 221 USPQ 394 (Fed. Cir. 1983).

In order for issue preclusion to apply, the following requirements must be met: 1) the issue to be determined must

---

[7] *See also Havana Club Holding, S.A. v. Galleon, S.A.*, 961 F. Supp. 498 (S.D.N.Y. 1997) ("*Galleon I*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302 (S.D.N.Y. 1997) ("*Galleon II*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 49 USPQ2d (BNA) 1296 (S.D.N.Y. 1998) ("*Galleon III*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999) ("*Galleon IV*").

5

be identical to the issue involved in the prior litigation;
2) the issue must have been raised, litigated and actually
adjudged in the prior action; 3) the determination of the
issue must have been necessary and essential to the
resulting judgment; and 4) the party precluded must have
been fully represented in the prior action.  *Polaroid Corp.
v. C & E Vision Services Inc.*, 52 USPQ2d 1954 (TTAB 1999);
*Mother's Restaurant, supra.*

    Issue preclusion is applicable in the instant proceeding.
The ownership rights of opposer to the HAVANA CLUB mark was an
issue actually litigated in *Galleon V.*  This issue was raised,
litigated and actually adjudged in that case and opposer's
ownership rights to HAVANA CLUB were necessary and essential
to the resulting judgment of the Second Circuit.  Moreover,
absent any reason to assume otherwise, we find that opposer
was fully represented in the prior action.  Accordingly, we
adopt the following factual findings of the Second Circuit
Court of Appeals regarding opposer's mark and assignments as
recited in *Galleon V.*

    Prior to the Cuban revolution, Jose Arechabala, S.A.
("JASA"), a Cuban corporation formed by members of the
Arechabala family, produced HAVANA CLUB rum and owned the
trademark for use therewith.  JASA exported the rum to the
United States until 1960, when Fidel Castro's government

6

confiscated JASA's assets, including the HAVANA CLUB mark.[*]  In
1963, the United States government imposed an embargo on Cuba.

Beginning in 1972, Empresa Cubana Exportadora De
Alimentos y Productos Varios ("Cubaexport"), a Cuban state-run
organization established by the Cuban Ministry of Foreign
Commerce, exported HAVANA CLUB rum to Eastern Europe and the
Soviet Union.  This state enterprise registered the HAVANA
CLUB and design mark with USPTO in 1976 under Registration No.
1,031,651.

Following an effort to reorganize, Cubaexport became
Havana Rum & Liquors, S.A. ("HR&L") in 1993 and entered into a
joint venture agreement with the French company Pernod Ricard,
S.A., an international liquor distributor.  An agreement
between these entities in 1993 created the opposer herein,
Havana Club Holding, S.A. ("HCH") and Havana Club
International, S.A. ("HCI").  HCH is a Luxembourg corporation
and HCI is a joint-stock company organized under the laws of
Cuba.

In 1994, Cubaexport assigned U.S. Registration No.
1,031,651 (for the mark HAVANA CLUB and design) to HR&L, and
in a subsequent agreement HR&L assigned this registration to

---

[*] On October 15, 1960, Cuban Law No. 890 ("Law No. 890") was
issued, expropriating for the Cuban government the physical
assets, property, accounts and business records of JASA. See DX
573A ("Law No 890") ("Nationalization is ordered by the forced
expropriation of all industrial and commercial corporations, as
well as the factories, stores, warehouses and other assets and
rights of same and the properties of the following natural
persons or companies").

7

HCH.  After the reorganization, upon application by HCH in
June 1996, the USPTO renewed the registration of the HAVANA
CLUB mark for a term of ten years.  In 1995, the Office of
Foreign Assets Control ("OFAC") of the U.S. Department of
Treasury issued a license to Cubaexport approving the
assignments from Cubaexport to HR&L and from HR&L to HCH
(opposer).  These assignments were nullified, however, when
OFAC revoked the license in 1997, pursuant to Section 515.805
of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R.
Part 515.[5]

    The Second Circuit in *Galleon V* affirmed a holding of the
lower court that HCH (opposer herein)[6] did not have standing to
assert trademark rights in HAVANA CLUB against another rum
producer because the specific license to assign the mark to

---

[5] On April 17, 1997, OFAC issued a Notice of Revocation stating
that "as a result of facts and circumstances that have come to
the attention of this Office which were not included in the
application of October 5, 1995, License No. C-18147 . . . is
hereby revoked retroactive to the date of issuance."  *See Havana
Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302, 306
(S.D.N.Y. 1997).

[6] Opposer acknowledges that it was in the position as plaintiff
in *Galleon* through the following statement:  "…the reason why
Opposer amended its Notice of Opposition was to interpose
paragraphs 4 and 5, thus providing a Section 44(e) basis for
standing that is independent of Opposer's old registration of the
HAVANA CLUB mark, whose assignment to Opposer was rejected in the
Galleon decision."  Opp. Brief, p. 5.

8

PAGE 15/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A098
JA154

opposer was nullified by OFAC's revocation of the license and because the Cuban embargo did not authorize the assignment.[']

Turning to the issue of standing before us in this case, we note that standing is a threshold inquiry directed solely to establishing a plaintiff's interest in the proceeding.['] The purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff is no more than an intermeddler. *American Vitamin Products, Inc. v. DowBrands, Inc.*, 22 USPQ2d 1313 (TTAB 1992). To establish standing, it must be shown that a plaintiff has a "real interest" in the outcome of a proceeding; that is, plaintiff must have a direct and personal stake in the outcome of the opposition. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987) ("it is in the pleading stage of the opposition proceeding that the opposer must plead facts

---

[']*Galleon V*, 53 USPQ2d at 1611. The Board notes that as a result of the *Galleon V* decision, the recordation of assignments of U.S. Registration No. 1,031,651 from Cubaexport to HRL and from HRL to HCH have been invalidated by the Commissioner for Trademarks. Current PTO records indicate that ownership of said registration remains with Cubaexport [i.e., the original registrant]. *See* Trademark Assignment Records, Reel 2398 Frame 0855.

['] Section 13 of the Trademark Act, 15 U.S.C. § 1063, sets forth the foundation for establishing standing in an opposition proceeding, stating in relevant part:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register ... may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office.

9

PAGE 16/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A099
JA155

sufficient only to show a personal interest in the outcome of the case beyond that of the general public").

As a preliminary matter, we determine that applicant is correct in stating that the Board never reached the issue of standing, nor entered a decision regarding opposer's standing in this matter. Hence, the law of the case doctrine is inapplicable.

The most common way to demonstrate standing is by proving ownership of a relevant U.S. trademark registration or a common law mark. Opposer's standing may be rooted in enforceable rights despite the existence of the strictures of the Cuban embargo and the relevant regulations surrounding its implementation.

The CACR, 31 C.F.R. Part 515, implements the U.S. embargo against Cuba.[*] Unless authorized, the embargo prohibits, with respect to property in which a Cuban national or entity has an interest, (1) "all dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States"; (2) "all transfers outside the United States with regard to any property or

---

[*] The CACR was implemented in 1963 under Section 5(b) of the Trading with the Enemy Act of 1917, as amended, 50 U.S.C. App. 1-44. The Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), Pub. L. No. 104-114, 110 Stat. 785 (1996), was passed by Congress in 1996, which subsequently codified the regulations implementing the embargo.

PAGE 17/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

property interest subject to the jurisdiction of the United States"; and (3) "any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions [above]." Id. at Section 515.201(b) and (c). The embargo defines "property" to include trademarks. *See* id. at Section 515.311.

In the *Galleon V* decision, the court found that the party who is opposer herein has no rights to U.S. Registration No. 1,031,651 for the mark HAVANA CLUB and design because the specific license granted to Cubaexport to assign the mark to opposer was nullified by the OFAC's revocation of the specific license and because CACR does not authorize the assignments. Thus, opposer cannot have standing based on that registration.

Similarly, opposer's standing based on claims of ownership of the Luxembourg registration for the mark and its two pending United States applications fails as a matter of law. Opposer is explicitly barred by statute from bringing this opposition based upon a trademark that is the same or substantially similar to a trademark used in connection with a business that was confiscated by the Cuban government. We note that on October 21, 1998, Congress passed Section 211 of the Department of Commerce Appropriations Act 1999, as included in the Omnibus Consolidated and Emergency Supplemental Appropriations Act 1999 [hereinafter "Section 211]. See Pub. Law 105-277, 112 Stat. 2681.

11

PAGE 18/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A101
JA157

This statute limits the registration and renewal of, and the assertion of trademark and trade name rights in, marks that were used in connection with property confiscated by the Cuban government.  The statute, in relevant part, provides:

> (2)(b) No U.S. court shall recognize, enforce or otherwise validate any assertion of treaty rights by a designated national or its successor-in-interest under sections 44(b) or (e) of the Trademark Act of 1946 (15 U.S.C. 1126(b) or (e)) for a mark, trade name or commercial name that is the same or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of such mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Opposer argues that because the Board is not a "U.S. court," we are not bound by the restrictions of this provision.  We disagree.  While it is true that the Board is not a "U.S. court," it is also true that any judicial review of our decision will be to a "U.S. court."  See Section 21 of the Trademark Act.  If opposer would be barred from asserting its rights in that court, it would not have standing to assert them before the Board.  It would make no sense to ignore opposer's statutorily imposed inability to assert its rights in any judicial review and render a decision that opposer could not appeal or defend on the merits.

Opposer also contends that it does not fall within the parameters of subsection (b) of Section 211 because it is not by definition a "designated national or its successor-in-interest."  We again disagree.  Section 211 states:

12

PAGE 19/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A102
JA158

> The term "designated national" has the
> meaning given such term in section 515.305
> of title 31, Code of Federal Regulations, as
> in effect on September 9, 1998, and includes
> a national of any foreign country who is a
> successor-in-interest to a designated
> national.

We turn to 31 C.F.R. Section 515.305 which defines a "designated national" as "Cuba and any national thereof including any person who is a specially designated national." A "specially designated national" is defined in 31 C.F.R. Section 515.306 and includes "any partnership, association, corporation or other organization which on or since [July 8, 1963][15] has been owned or controlled directly or indirectly by the Government or authorities exercising control over a designated foreign country or by any specially designated national."

Opposer is a Luxembourg corporation, but it is 50% owned by the Cuban entity HR&L, and therefore, is a "designated national."[11] Because it is half owned, and therefore indirectly controlled, by a designated national, under Section 515.306, opposer is a specially designated national. As a specially designated national, opposer is validly deemed a "designated national" for purposes of Section 211. Consequently, because opposer's pending Section 44(e)

---

[16] This is the "effective date" established under 31 C.F.R. Section 515.201(d).

13

applications are for the same or a substantially similar mark as the mark confiscated by the Cuban government and because opposer has not provided any evidence of any express consent by the original owner of the mark, opposer's claimed rights to the pending applications at issue cannot be recognized, enforced, or validated under U.S. law. Opposer's rights to ownership of these marks in the United States, therefore, fail despite the fact that these applications were filed before the mark being opposed."

Additionally, we note that under 31 C.F.R. Section 515.528," designated nationals are precluded from filing and prosecuting any applications for blocked trademarks." Thus, opposer's contention that the Cuban embargo regulations

---

" We note that the relevant restrictions of the Cuban embargo apply to a Cuban national or entity regardless of the degree or amount of ownership interest involved. 31 C.F.R. § 515.201(b).
" This decision has no practical effect on these pending applications because they are not within the Board's jurisdiction. Our consideration of these applications falls only within the context of determining the issue of standing in this opposition proceeding.

" 31 C.F.R. Section 515.528 reads, in relevant part:

   (a)   The following transactions by any person who is not a
         designated national are hereby authorized:

         (1)   The filing and prosecution of any application for a
               blocked foreign patent, trademark or copyright, or
               for the renewal thereof;
         (2)   The receipt of any blocked foreign patent,
               trademark, or copyright;
         (3)   The filing and prosecution of opposition or
               infringement proceedings with respect to any blocked
               foreign patent, trademark, or copyright, and the
               prosecution of a defense to any such proceedings....

14

PAGE 21/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A104
JA160

"expressly" invest opposer with the right to file and
prosecute applications and "thus with the precise predicate
for standing" in this proceeding also fails as a matter of law
given opposer's status as a "designated national."

Although Section 13 of the Trademark Act[15] establishes a
broad class of persons who may be considered proper opposers,
we find that no material issue exists as to whether opposer
falls within said class as a person capable of filing an
opposition in this instance.  With regard to opposer's claim,
under Section 2(e)(3) of the Trademark Act, that applicant's
mark "HAVANAS AND BANANAS" is primarily geographically
deceptively misdescriptive of rum drinks not originating from
Cuba, it is clear that opposer has no standing to pursue this
claim just as it had no standing to pursue its false
designation of origin claim under Section 43(a) in *Galleon V*.
The Second Circuit affirmed the District Court's holding that
opposer had no standing because the Cuban embargo prevented
opposer from selling its rum in the United States, and thereby

---

[14] 31 C.F.R. Section 515.528 states that the term "blocked foreign
patent, trademark, or copyright" as used in the section means
"any patent, petty patent, design patent, trademark or copyright
issued by any foreign country in which a designated foreign
country or national thereof has an interest, including any
patent, petty patent, design patent, trademark or copyright
issued by a designated foreign country."

[15] Section 13 of the Act, which provides:

Any person who believes that he would be damaged by the
registration of a mark upon the principal register may, upon payment
of the prescribed fee, file an opposition in the Patent and
Trademark Office, stating the grounds therefor....

15

PAGE 22/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

from suffering commercial injury because of Bacardi's actions;
and quoted the District Court, as saying: "Any competitive
injury plaintiffs will suffer based upon their intent to enter
the U.S. market once the embargo is lifted is simply too
remote and uncertain to provide them with standing." *Galleon
V* at 122; cf. *The Joint Stock Society v. UDV North America*,
266 F.3d 164, 60 USPQ2d 1258 (3rd Cir. 2001).

As to its claim of dilution, the absence of a proprietary
right to the HAVANA CLUB trademark weighs against standing.
Section 43(c)(1) states that "[t]he owner of a famous
trademark shall be entitled...to obtain such...relief as is
provided in this subsection." Because opposer has no
ownership rights to the mark, any attempt to calculate the
dilution to said mark is unwarranted.

Similarly, with regard to the its claim involving Section
2(a), opposer's attempts to assert that applicant's use of the
HAVANAS AND BANANAS mark may disparage or falsely suggest a
connection with opposer's persona or identity is ill founded.
Opposer's lack of proprietary rights to the HAVANA CLUB mark
having thus been established, we are aware of no reason why
the creation of a name or identity brought about by the mere
addition of an entity designator (Holding, S.A.) to a
trademark owned by another should, in effect, confer standing
on opposer in this instance.

16

Opposer cannot demonstrate any real interest in the outcome of this proceeding and lacks standing to assert the claims alleged in this proceeding.  Accordingly, applicant's motion for summary judgment is granted and the opposition is dismissed."[16]

---

[16] In view of our finding regarding opposer's lack of standing we need not address the issues with respect to opposer's substantive claims.

17

PAGE 24/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A107
JA163

# EXHIBIT B

01-05-05   11:21am   From-Fish & Neave          2023092800      T-198  P.002/005  F-025

## ROPES & GRAY LLP

1826 I STREET NW, SUITE 400, WASHINGTON, DC 20006 202.857.5222

BCC COPY

HENRY L. STARIO
DIRECT DIAL 202.303.2428
DIRECT FAX 202.302.2018
E-MAIL HENRY.STARIO@ROPESGRAY.COM

January 5, 2005

### VIA FACSIMILE (CONF. BY FEDEX)

Mr. David W. Mills
Chief of Licensing
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Office, N.W.
Washington D.C. 20220

Dear Mr. Mills:

The law firm of Fish & Neave is currently the licensee under License No. CT-1943 pertaining to authorization for (a) "...Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the 'Regulations') and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below; (b) "...Licensee to provide legal services to, and receive payment for such services from Empresa Cubana Exportadora De Alimentos y Productos Varios ('Cubaexport'), a Cuban national; (c) multiple trips during the validity period of the license." License No. CT-1943 is set to expire on March 31, 2005. A copy of this license is enclosed.

On January 29, 2004, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissed cancellation proceeding number 24,108. On March 29, 2004, Bacardi & Company Ltd. (the parent company of Galleon S.A.) and Bacardi U.S.A., Inc. filed a complaint against Havana Club Holding S.A. and Cubaexport, which was joined by the Trademark Trial and Appeal Board to the cancellation proceeding. The complaint appeals the decision of the Trademark Trial and Appeal Board and asserts additional claims against the defendants. Fish & Neave has continued to represent Cubaexport in these proceedings.

01-06-05    11:21am    From-Fish & Neave                2028032800        T-188  P.008/005  F-025

Mr. David W. Mills
January 5, 2005
Page 2

      Effective October 1, 2004, Fish & Neave became Fish & Neave LLP.  Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP.  The merged entity will conduct business under the name of Ropes & Gray LLP.  Because Ropes & Gray will be the law firm representing Cubaexport in connection with the above-mentioned matters, Ropes & Gray hereby requests a renewal of License No. CT-1943, or in the alternative, a new special license naming Ropes & Gray as the Licensee and giving Ropes & Gray the same rights as authorized in License No. CT-1943.

      Thank you for your attention to this matter.  If we can be of further assistance, please do not hesitate to call me at (202)303-2429.

             Sincerely yours,

             Renée L. Stasio

RS:rs
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC

bcc:   Oscar M. Garibaldi, Esq.
       William R. Golden, Jr., Esq.
       Charles S. Sims, Esq.

Jan-25-06 03:38P Shlesinger Arkwright & Ga                    P.28

01-05-06   11:21am   From-Fish & Neave              2023032800        T-189   P.004/006   F-026



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                          **License No. CT-1943**

### LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   Fish & Neave (the "Licensee")
      1251 Avenue of the Americas
      New York, NY 10020
      ATTN: Martin A. Leroy

1. Pursuant to your application dated February 11, 2004, the following is hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on March 31, 2005, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 2/20/04
   for David W. Mills
   Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001, 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

PAGE 28/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

01-05-06   11:22am   From-Fish & Neave                    2020032000        T-108  P.005/005  F-025

License No. CT-1943                                                 **Page 2 of 2**
Licensee:  Fish & Neave

**SECTION 1 – AUTHORIZATION:** (a) This license authorizes the Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the Regulations") and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below.

(b) This license authorizes the Licensee to provide legal services to, and to receive payment for such services from Empresa Cuban Exportacion de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

(c) This license authorizes multiple trips during the validity period of the license.

Authority:  31 CFR 515.560(c), 515.564(b) and 515.801

**SECTION 2 – CONDITIONS:** (a) The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

(b) It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations prior to travel.

**ACTION 3 – WARNINGS:  Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations. This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 – RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel. Each individual traveler must also retain records related to his/her travel transactions. Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction. A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION:** (a) For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

(b) The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000. An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**CTION 6 – PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
*****************************************************************************************

TOTAL  P.05

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2006, I caused a copy of the attached

PETITION TO COMMISSIONER to be served on Herbert F. Schwartz, Esq. of Ropes & Gray,

counsel for registrant Empresa Cubana Exportadora de Alimentos y Productos Varios, S.A. by

causing a true and correct copy thereof to be delivered by first class mail addressed to the

aforesaid attorney at 1251 Avenue of the Americas, New York, New York 10020, the address

designated by said attorney for that purpose.

Dated:  January 25, 2006

Matthew D. Marcotte

NY01/MARCM/1079271.1

PAGE 30/30 * RCVD AT 1/25/2006 3:36:25 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/37 * DNIS:2738950 * CSID: * DURATION (mm-ss):10-16

A113
JA169



ROPES & GRAY LLP

FACSIMILE TRANSMISSION

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks | Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | January 30, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB & Design (Reg. No. 1,031,651) | | 4 |

MESSAGE

This communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON DC



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

January 30, 2006

**VIA FACSIMILE**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

This letter responds to the January 11, 2006 letter that William R. Golden, Jr. submitted on behalf of Bacardi & Company Limited and Bacardi USA, Inc. ("the Golden Letter"). Ropes & Gray received a copy of the letter by mail on January 27, 2006.  Cubaexport regrets the need to submit a response to the letter, but believes that Bacardi's uncalled for and inappropriate intervention in the *ex parte* renewal process should be addressed.

Bacardi's letter is an improper interference with the *ex parte* renewal process, in which Bacardi has no standing to intervene, in an attempt to obtain the relief Bacardi was denied when it petitioned to cancel the HAVANA CLUB Registration.  The District Court now hearing Bacardi's appeal in *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation") is the proper forum to rule on Bacardi's challenge to that registration.

Bacardi's letter improperly seeks to turn the *ex parte* renewal of the HAVANA CLUB Registration by Cubaexport into an adversary proceeding.  Bacardi has no standing under the Lanham Act or Patent and Trademark Office ("PTO") rules to intervene in this way.  Bacardi's right to challenge the registration is limited to seeking cancellation of the registration on the grounds set out in 15 U.S.C. § 1064.  Bacardi unsuccessfully exercised that right in the cancellation proceeding which resulted in the Trademark Trial and Appeal Board ("Board") decision that Bacardi has appealed in the ongoing Litigation.  By ignoring the Lanham Act and PTO rules with its letter, Bacardi is not now entitled to obtain the relief it was denied when it adhered to the statute and the rules.

01-30-06   14:17   From-ROPES & GRAY LLP                T-096   P.003/004   F-893

ROPES & GRAY LLP

Commissioner for Trademarks
January 30, 2006
Page 2

The District Court hearing Bacardi's appeal of the Board ruling, not the PTO considering Cubaexport's renewal application, is the proper forum for deciding whether the HAVANA CLUB Registration ought to be cancelled as Bacardi contends or maintained as the Board ruled. Indeed, Bacardi's letter raises issues outside the scope of the renewal process, including for example whether Bacardi succeeded to any rights in the HAVANA CLUB trademark that JASA may have had. *See* Golden Letter page 3. The District Court is the appropriate forum to resolve such issues. The PTO examining Cubaexport's renewal application is not.

While ignoring the statute and rules that govern PTO practice, Bacardi claims that the PTO should consider Cuban Assets Control Regulations, Bacardi's unsolicited misinterpretation of a license that OFAC issued pursuant to those regulations, and a non-citable inapposite Board decision, and decide that these require the PTO to reject Cubaexport's renewal application. That simply is not so. It need hardly be pointed out to the PTO that its charter is to decide whether Cubaexport's renewal application complies with the requirements of 15 U.S.C. §§ 1058-1059 and the PTO rules that implement those statutory provisions. Despite Bacardi's unwarranted intervention, it is undisputed that Cubaexport's application complies with those requirements. [1]

In denying Bacardi's motion for summary judgment in the cancellation proceeding, the Board correctly observed that accepting Bacardi's view of the registration renewal process "would inject confusion and uncertainty in the renewal process and administratively burden the Trademark Office." Board Decision at 38 (Ropes & Gray Dec. 13, 2005 Letter, Exh. 3). The same may be said of Bacardi's latest attempt to interfere with the renewal process. If every third party with a complaint about the maintenance of a registration were permitted to interject its views, the PTO would be burdened and the orderly statutory scheme by which third parties intervene through cancellation proceedings would be undermined if not nullified.

---

[1]     Bacardi's discussion of the OFAC license is a mere diversion from this issue. OFAC of course is well aware of what it said in the license it issued, and the PTO can read what the license provides for on its face. Bacardi's construction of the license is neither appropriate nor correct. Moreover, contrary to Bacardi's suggestion at Golden Letter page 3, note 3, the license in its entirety was submitted to the PTO with Ropes & Gray's December 13, 2005 letter. Further, the PTO need not and should not consider *Havana Club Holding S.A.* v. *Jimmy Buffett*, Opposition No. 91116754 (2003), attached as Golden Letter, Exh. A, in deciding whether Cubaexport's renewal application complies with the Lanham Act and applicable PTO rules. In any event, that decision concerning claims in an opposition proceeding has no bearing on that issue.

ROPES & GRAY LLP

Commissioner for Trademarks
January 30, 2006
Page 3

Cubaexport respectfully requests that the PTO exercise its statutory authority, act on Cubaexport's properly filed renewal application and renew the HAVANA CLUB Registration.

Respectfully submitted,

Vincent N. Palladino

VNP:emf

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       William R. Golden, Jr., Esq.



# ROPES & GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

January 30, 2006

**VIA FACSIMILE**
**CONFIRMATION VIA FEDEX** ✓

Commissioner for Trademarks
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314

01-31-2006
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #30

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

This letter responds to the January 11, 2006 letter that William R. Golden, Jr. submitted on behalf of Bacardi & Company Limited and Bacardi USA, Inc. ("the Golden Letter"). Ropes & Gray received a copy of the letter by mail on January 27, 2006.  Cubaexport regrets the need to submit a response to the letter, but believes that Bacardi's uncalled for and inappropriate intervention in the *ex parte* renewal process should be addressed.

Bacardi's letter is an improper interference with the *ex parte* renewal process, in which Bacardi has no standing to intervene, in an attempt to obtain the relief Bacardi was denied when it petitioned to cancel the HAVANA CLUB Registration.  The District Court now hearing Bacardi's appeal in *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation") is the proper forum to rule on Bacardi's challenge to that registration.

Bacardi's letter improperly seeks to turn the *ex parte* renewal of the HAVANA CLUB Registration by Cubaexport into an adversary proceeding.  Bacardi has no standing under the Lanham Act or Patent and Trademark Office ("PTO") rules to intervene in this way.  Bacardi's right to challenge the registration is limited to seeking cancellation of the registration on the grounds set out in 15 U.S.C. § 1064.  Bacardi unsuccessfully exercised that right in the cancellation proceeding which resulted in the Trademark Trial and Appeal Board ("Board") decision that Bacardi has appealed in the ongoing Litigation.  By ignoring the Lanham Act and PTO rules with its letter, Bacardi is not now entitled to obtain the relief it was denied when it adhered to the statute and the rules.

ROPES & GRAY LLP

Commissioner for Trademarks
January 30, 2006
Page 2

The District Court hearing Bacardi's appeal of the Board ruling, not the PTO considering Cubaexport's renewal application, is the proper forum for deciding whether the HAVANA CLUB Registration ought to be cancelled as Bacardi contends or maintained as the Board ruled. Indeed, Bacardi's letter raises issues outside the scope of the renewal process, including for example whether Bacardi succeeded to any rights in the HAVANA CLUB trademark that JASA may have had. *See* Golden Letter page 3. The District Court is the appropriate forum to resolve such issues. The PTO examining Cubaexport's renewal application is not.

While ignoring the statute and rules that govern PTO practice, Bacardi claims that the PTO should consider Cuban Assets Control Regulations, Bacardi's unsolicited misinterpretation of a license that OFAC issued pursuant to those regulations, and a non-citable inapposite Board decision, and decide that these require the PTO to reject Cubaexport's renewal application. That simply is not so. It need hardly be pointed out to the PTO that its charter is to decide whether Cubaexport's renewal application complies with the requirements of 15 U.S.C. §§ 1058-1059 and the PTO rules that implement those statutory provisions. Despite Bacardi's unwarranted intervention, it is undisputed that Cubaexport's application complies with those requirements. [1]

In denying Bacardi's motion for summary judgment in the cancellation proceeding, the Board correctly observed that accepting Bacardi's view of the registration renewal process "would inject confusion and uncertainty in the renewal process and administratively burden the Trademark Office." Board Decision at 38 (Ropes & Gray Dec. 13, 2005 Letter, Exh. 3). The same may be said of Bacardi's latest attempt to interfere with the renewal process. If every third party with a complaint about the maintenance of a registration were permitted to interject its views, the PTO would be burdened and the orderly statutory scheme by which third parties intervene through cancellation proceedings would be undermined if not nullified.

---

[1]     Bacardi's discussion of the OFAC license is a mere diversion from this issue. OFAC of course is well aware of what it said in the license it issued, and the PTO can read what the license provides for on its face. Bacardi's construction of the license is neither appropriate nor correct. Moreover, contrary to Bacardi's suggestion at Golden Letter page 3, note 3, the license in its entirety was submitted to the PTO with Ropes & Gray's December 13, 2005 letter. Further, the PTO need not and should not consider *Havana Club Holding S.A.* v. *Jimmy Buffett*, Opposition No. 91116754 (2003), attached as Golden Letter, Exh. A, in deciding whether Cubaexport's renewal application complies with the Lanham Act and applicable PTO rules. In any event, that decision concerning claims in an opposition proceeding has no bearing on that issue.

ROPES & GRAY LLP

Commissioner for Trademarks
January 30, 2006
Page 3

       Cubaexport respectfully requests that the PTO exercise its statutory authority, act on Cubaexport's properly filed renewal application and renew the HAVANA CLUB Registration.

                    Respectfully submitted,

                    Vincent N. Palladino

VNP:emf

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       William R. Golden, Jr., Esq.



# Office of the Deputy Commissioner for Trademark Examination Policy

## Facsimile Transmission

**TO:**  **Name:**          jolie washington
       **Company:**
       **Fax Number:**    5712739583
       **Voice Phone:**

**FROM:**  **Name:**
        **Fax Number:**    **571-273-8900**
        **Voice Phone:**

**The fax number used to transmit this document should not be used to submit responses to Office Actions or any other official communications with the Patent and Trademark Office. All such papers intended for this Law Office/section of the Office that are eligible for transmission via facsimile should only be submitted to the 'Official Fax Number' listed above in the "From" section of the heading of this page. Please see the Trademark Manual of Examining Procedure (TMEP) section 702.04 *et seq.* and 37 CFR 1.8(a) for the Office's complete policy concerning facsimile transmissions.**

Fax Notes:

Date and time of transmission: Thursday, February 02, 2006 2:24:24 PM
Number of pages including this cover sheet: 05

Case 1:21-cv-01441-LMB-IDD   Document 48-1   Filed 09/17/24   Page 126 of 285 PageID# 367



**Search Another:**
**Serial Number or Registration**
**Number**

[            ] [Transmit]

## TRADEMARK GENERAL QUERY AS OF: 02/02/06 14:20:11

| | | | |
|---|---|---|---|
| **SERIAL NUMBER:** 73023981 FEES | **FILING DATE:** 06/12/1974 | **TEAS PLUS FILED:** NO | CHECK ASSIGNMENTS |
| **REG. NUMBER:** 1031651 FEES | **REG. DATE:** 01/27/1976 | **TEAS PLUS CURRENT:** NO | TICRS |
| **REGISTER:** PRINCIPAL | **MARK TYPE:** TRADEMARK | | CREATE J-NOTES |
| **FILED USE:** NO | **CURRENTLY USE:** NO | **AMENDED USE:** NO | TTABVUE |
| **FILED ITU:** NO | **CURRENTLY ITU:** NO | **AMENDED ITU:** NO | |
| **FILED 44D:** NO | **CURRENTLY 44D:** NO | **AMENDED 44D:** NO | |
| **FILED 44E:** YES | **CURRENTLY 44E:** YES | **AMENDED 44E:** NO | |
| **FILED 66A:** NO | **CURRENTLY 66A:** NO | | |
| **FILED NO BASIS:** NO | **CURRENTLY NO BASIS:** NO | | |

**TM ATTORNEY:** TM ATTORNEY NOT ASSIGNED
**TM ATTY LO:** N/A                          **LO ASSIGNED:** NONE
**WORK LOCATION:** 848-TTAB
**DATE IN LOC:** 04/17/2003
**CHRG TO LOC:** NONE
**CHRG TO:** NONE
**PHYSICAL LOCATION:** 848 -TTAB              HISTORY
**DATE IN PHYS LOC:** 07/24/2004
**STATUS:** 800 - REGISTERED AND RENEWED
**STATUS DATE:** 07/30/1997
**TM PARALEGAL:** 61151-PFOHL, FRANCES A
**TM LIE:** LIE NOT ASSIGNED


**PUB DATE:**          **DATE ABANDONED:**          **DATE CANCELLED:**

Case 1:21-cv-01441-LMB-IDD   Document 48-1   Filed 09/17/24   Page 127 of 285 PageID# 368

**SECTION 8:** YES   **SECTION 15:** NO        **ASSIGNMENT:** YES
**RENEWAL FILED:** **RENEWAL DATE:**       **DATE AMENDED**
 NO               01/27/1996            **REG:**
**CLASSES ACTIVE:**  **LAST ACTION DATE:**
 01

**MARK:** HAVANA CLUB
**STANDARD CHARACTERS CLAIMED:** NO
**MARK DRAWING CD:** 3-AN ILLUSTRATION DRAWING WHICH INCLUDES WORD (S)/LETTER(S)/NUMBER(S)
**COLOR DRAWING CURRENT:** NO

### CURRENT OWNER INFORMATION

**PARTY TYPE:** 42-SUBSEQUENT OWNER AFTER REGISTRATION
**NAME:** EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS
**DBA/AKA:** DBA CUBA EXPORT
**ADDRESS:** 55 23RD ST.
VEDADO HAVANA CUBA
**ENTITY:** 11-COMPANY
**CITIZENSHIP:** CUBA
**ASSIGNE OF:** BY COURT ORDER

### GOODS AND SERVICES

**The following symbols indicate that the goods and services have been amended after registration of the Mark.**

**Double parenthesis ((..)) identify any "less goods";**

**Single brackets [..] indicate deleted goods; and,**

**Single asterisks *..* identify additional (new) wording in the goods.**

**FOR:** RUM
 **U.S. CLASS** 033  **(INT. CLASS** 033)
 **FIRST USE:** None    **USE IN COMMERCE:** None    **CLASS STATUS:** 6

### MISCELLANEOUS INFORMATION

**SECTION 2F:** NO      **SECTION 2F IN PART:** NO
**Disclaimer:**          APPLICANT DISCLAIMS THE WORDS "HAVANA" AND "FUDNADA EN 1878" APART FROM THE MARK AS A WHOLE.
**Lining and Stipling Statement:**   THE DRAWING IS LINED FOR THE COLOR GOLD.

**FOREIGN INFORMATION**

**COUNTRY OF ORIGIN:** CUBA
**FOREIGN REG NUM:** 110353        **FOREIGN REG DATE:** 02/12/1974
**FOREIGN RNWL REG NUM:**          **DATE OF FOREIGN RNWL:**
**FOREIGN EXPIRATION:**            **FOREIGN RNWL EXPIRATION:**

**PROSECUTION HISTORY**

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM | PRCD NUM |
|---|---|---|---|---|---|
| 01/31/2006 | MAIL | I | PAPER RECEIVED | 018 | 000000 |
| 01/30/2006 | FAXX | I | FAX RECEIVED | 017 | 000000 |
| 01/25/2006 | FAXX | I | FAX RECEIVED | 016 | 000000 |
| 12/14/2005 | MAIL | I | PAPER RECEIVED | 015 | 000000 |
| 01/29/2004 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 014 | 024108 |
| 07/30/1997 | ABND | Z | ABANDONMENT DELETED BY TTAB | 013 | 000000 |
| 07/30/1997 | CCCN | T | COUNTERCLAIM CANC. NO. 999999 | 012 | 025346 |
| 07/30/1997 | ABND | Z | ABANDONMENT DELETED BY TTAB | 011 | 000000 |
| 06/18/1996 | RNL1 | Q | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 010 | 000000 |
| 02/10/1993 | 9.AF | I | REGISTERED - SEC. 9 FILED/CHECK RECORD FOR SEC. 8 | 009 | 000000 |
| 04/17/1996 | CANT | T | CANCELLATION TERMINATED NO. 999999 | 008 | 022881 |
| 04/17/1996 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 007 | 022881 |
| 01/18/1996 | 9.AF | I | REGISTERED - SEC. 9 FILED/CHECK RECORD FOR SEC. 8 | 006 | 000000 |
| 10/19/1995 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 005 | 022881 |
| 08/15/1995 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 004 | 024108 |
| 08/15/1995 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 003 | 024108 |
| 07/19/1994 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 002 | 022881 |
| 04/12/1982 | 8.OK | O | REGISTERED - SEC. 8 (6-YR) ACCEPTED | 001 | 000000 |

**CORRESPONDENCE**

**Attorney:**                  HERBERT F. SCHWARTZ
**Attorney Docket Number:** None
**Correspondence Address:**  HERBERT SCHWARTZ
                             FISH & NEAVE
                             1251 AVENUE OF THE AMERICAS
                             NEW YORK, NY 10020
**Phone:**
**Fax:**

**Domestic Representative:**   FISH & NEAVE

## OTHER INFORMATION

**Design Search Codes:**      04.01.25-Genies
                                    -Giants
                                    -Men, Wizards
                                    -Paul Bunyan
                                    -Pied Piper
                                    -Robin Hood
                                    -Sherlock Holmes
                                    -Witches
                                    -Wizards

                              20.03.10-Alcohol bottle labels
                                    -Bottles, labels for alcohol bottles
                                    -Labels, alcohol bottles

                              26.11.21-Rectangles that are completely or partially shaded

**Section 8 In Part:** NO
**Repub Sec 12C:** NO          **Pub Date 12C:**
**Change In Registration:** NO
**TTAB Decision:** NO
**Lost Case:** NO
**In TICRS:** NO

## PRIOR OWNER INFORMATION

**PARTY TYPE:** 41-SUBSEQUENT OWNER AFTER REGISTRATION
**NAME:**        HAVANA CLUB HOLDING, S.A.
**ADDRESS:**     6 RUE HEINE
                 L-1720 LUXEMBOURG
**ENTITY:**      11-COMPANY
**CITIZENSHIP:** LUXEMBOURG
**ASSIGNE OF:**  ASSIGNEE OF
**PARTY TYPE:** 30-ORIGINAL REGISTRANT
**NAME:**        EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS
                 VARIOS
**DBA/AKA:**     DBA CUBA EXPORT
**ADDRESS:**     55, 23RD ST.
                 VEDADO HAVANA CUBA
**ENTITY:**      11-COMPANY
**CITIZENSHIP:** CUBA

# KELLEY
## DRYE



# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Commissioner for Trademarks |
| **FIRM** | United States Patent and Trademark Office |
| **CITY** | Alexandria |
| **FAX** | 571-273-8950 |
| **PHONE** | |
| **NO. OF PAGES** | 3 (including this page) |
| **DATE** | February 14, 2006 |

**KELLEY DRYE & WARREN LLP**
**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**
**(212) 808-7800**
**FAX (212) 808-7897**

**MESSAGE:**

| | |
|---|---|
| **FROM** | William R. Golden, Jr. |
| **PHONE** | (212) 808-7992 |
| **E-MAIL** | wgolden@kelleydrye.com |
| **TIMEKEEPER ID** | 00070 |
| **CLIENT NO.** | 004352-0024 |

**NEW YORK, NY**
**WASHINGTON, DC**
**TYSONS CORNER, VA**
**CHICAGO, IL**
**STAMFORD, CT**
**PARSIPPANY, NJ**
**BRUSSELS**

**AFFILIATE OFFICES**
**JAKARTA**
**MUMBAI**

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

NY01/GOLDW/1083725.1
PAGE 1/3 * RCVD AT 2/14/2006 5:54:48 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/29 * DNIS:2738950 * CSID:212 808 7897 * DURATION (mm-ss):00-56

### KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
——
BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com
DIRECT LINE: (212) 808-7992
EMAIL: wgolden@kelleydrye.com

February 14, 2006

**VIA FACSIMILE (571-273-8950) AND FEDERAL EXPRESS**

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Re:   <u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

This letter responds to the letter of January 30, 2006, submitted by Mr. Palladino on behalf of Cubaexport.

Mr. Palladino's January 30 letter characterizes his earlier filing of December 13, 2005 as being made in an *ex parte* renewal process. This in itself is an acknowledgment that, even under Mr. Palladino's own argument, the renewal filing is not covered by a valid OFAC license. OFAC License No. CU-74488 (the "License"), which Mr. Palladino invokes in the December 13 filing, is a license granted to Ropes & Gray solely to receive payment for fees and expenses in connection with the proceedings in *Bacardi & Company Limited v. Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS)(D.D.C. 2004)(the "Litigation"). If the renewal application had been a part of the Litigation, rather than a separate *ex parte* process, Ropes & Gray would have been obligated to serve us with a copy of that application when it was filed on December 13, 2005. By providing no service, counsel acknowledged that the renewal was not part of the Litigation. In fact, the Litigation has nothing to do with counsel's attempted renewal. The Litigation concerns, among other things, the validity of an earlier renewal of the trademark ten years ago; it does not concern any renewal in 2006. Therefore, it follows from counsel's own admission that the License could not conceivably cover the renewal application.

Our January 11th letter-petition to the Commissioner, which we served on Cubaexport's counsel, was filed because we believed it was incumbent on us, as an interested party, to call this attempted violation of OFAC regulations to the attention of the PTO. OFAC

NY01/GRAHM/1082717.5

**KELLEY DRYE & WARREN LLP**

Commissioner for Trademarks
February 14, 2006
Page Two

was simultaneously notified of the attempted violation, because it has primary jurisdiction to interpret its own license. Our view, given the *sui generis* nature of the matter, was that the public interest and the interests of our clients were best served by alerting the PTO to this attempt to violate the law and serving Cubaexport's counsel with our submission. Plainly, Cubaexport's counsel is irked because its renewal application cannot withstand scrutiny.

Sincerely,

William R. Golden, Jr.

cc:    Vincent N. Palladino, Esq.
        David W. Mills, OFAC
        Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC

NY01/GRAHM/1082717.5



**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

February 14, 2006

**VIA FACSIMILE (571-273-8950) AND FEDERAL EXPRESS**

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

02-15-2006

U.S. Patent & TMOfc/Ti Mail Rcpt Dt. #11

Re:   HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

This letter responds to the letter of January 30, 2006, submitted by Mr. Palladino on behalf of Cubaexport.

Mr. Palladino's January 30 letter characterizes his earlier filing of December 13, 2005 as being made in an *ex parte* renewal process. This in itself is an acknowledgment that, even under Mr. Palladino's own argument, the renewal filing is not covered by a valid OFAC license. OFAC License No. CU-74488 (the "License"), which Mr. Palladino invokes in the December 13 filing, is a license granted to Ropes & Gray solely to receive payment for fees and expenses in connection with the proceedings in *Bacardi & Company Limited v. Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS)(D.D.C. 2004)(the "Litigation"). If the renewal application had been a part of the Litigation, rather than a separate *ex parte* process, Ropes & Gray would have been obligated to serve us with a copy of that application when it was filed on December 13, 2005. By providing no service, counsel acknowledged that the renewal was not part of the Litigation. In fact, the Litigation has nothing to do with counsel's attempted renewal. The Litigation concerns, among other things, the validity of an earlier renewal of the trademark ten years ago; it does not concern any renewal in 2006. Therefore, it follows from counsel's own admission that the License could not conceivably cover the renewal application.

Our January 11th letter-petition to the Commissioner, which we served on Cubaexport's counsel, was filed because we believed it was incumbent on us, as an interested party, to call this attempted violation of OFAC regulations to the attention of the PTO. OFAC

NY01/GRAHM/1082717.5

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
February 14, 2006
Page Two

was simultaneously notified of the attempted violation, because it has primary jurisdiction to interpret its own license. Our view, given the *sui generis* nature of the matter, was that the public interest and the interests of our clients were best served by alerting the PTO to this attempt to violate the law and serving Cubaexport's counsel with our submission. Plainly, Cubaexport's counsel is irked because its renewal application cannot withstand scrutiny.

Sincerely,

William R. Golden, Jr.

cc:    Vincent N. Palladino, Esq.
       David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC



ROPES & GRAY LLP

FACSIMILE TRANSMISSION

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks | Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | February 17, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB & Design (Reg. No. 1,031,651) | | 3 |

MESSAGE

This communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON DC

Feb-17-06   09:57   From-ROPES & GRAY LLP                    +212 596 9096        T-239   P.002/003   F-019

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

February 17, 2006

**VIA FACSIMILE**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

This responds to William Golden's February 14, 2006 letter written on behalf of Bacardi.

Nothing in the letter shows that the HAVANA CLUB Registration should not be renewed as Bacardi contends. From the fact that renewal of the registration is an *ex parte* process and Ropes & Gray has a license to represent Cubaexport in a litigation involving the registration, it simply does not follow that Ropes & Gray may not pay the renewal fee on Cubaexport's behalf in order to preserve the subject of the litigation or that Bacardi may intervene in the *ex parte* renewal process. Bacardi's exclusive remedy lies in seeking cancellation of the registration, which it has attempted without success.

PAGE 2/3 * RCVD AT 2/17/2006 10:13:07 AM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/24 * DNIS:2738950 * CSID:+2125969096 * DURATION (mm-ss):00-52

ROPES & GRAY LLP

Commissioner for Trademarks
February 17, 2006
Page 2


        Cubaexport again respectfully requests that the PTO exercise its statutory authority,
act on Cubaexport's properly filed renewal application and renew the HAVANA CLUB
Registration.

                        Respectfully submitted,

                        Vincent N. Palladino

VNP:emf

cc:     David W. Mills, OFAC
        Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC
        William R. Golden, Jr., Esq.

02-17-06   10:33   From-ROPES & GRAY LLP                                          T-332   P.001/003   F-139



ROPES & GRAY LLP

FACSIMILE TRANSMISSION

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks | Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | February 17, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB & Design (Reg. No. 1,031,651) | | 3 |

MESSAGE

This communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON DC

PAGE 1/3 * RCVD AT 2/17/2006 10:47:28 AM [Eastern Standard Time] * SVR:USPTO-EFXRF-6/28 * DNIS:2738950 * CSID: * DURATION (mm-ss):00-46

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

February 17, 2006

**VIA FACSIMILE**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

This responds to William Golden's February 14, 2006 letter written on behalf of
Bacardi.

Nothing in the letter shows that the HAVANA CLUB Registration should not be
renewed as Bacardi contends.  From the fact that renewal of the registration is an *ex parte* process
and Ropes & Gray has a license to represent Cubaexport in a litigation involving the registration, it
simply does not follow that Ropes & Gray may not pay the renewal fee on Cubaexport's behalf in
order to preserve the subject of the litigation or that Bacardi may intervene in the *ex parte* renewal
process.  Bacardi's exclusive remedy lies in seeking cancellation of the registration, which it has
attempted without success.

ROPES & GRAY LLP

Commissioner for Trademarks
February 17, 2006
Page 2

Cubaexport again respectfully requests that the PTO exercise its statutory authority, act on Cubaexport's properly filed renewal application and renew the HAVANA CLUB Registration.

Respectfully submitted,

Vincent N. Palladino

VNP:emf

cc:   David W. Mills, OFAC
      Matthew Tuchband, Office of Legal Counsel, OFAC
      Clara David, Licensing Division, OFAC
      William R. Golden, Jr., Esq.



# ROPES & GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

February 17, 2006

**VIA FACSIMILE**
**CONFIRMATION VIA FEDEX** ✓

Commissioner for Trademarks
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

   This responds to William Golden's February 14, 2006 letter written on behalf of Bacardi.

   Nothing in the letter shows that the HAVANA CLUB Registration should not be renewed as Bacardi contends.  From the fact that renewal of the registration is an *ex parte* process and Ropes & Gray has a license to represent Cubaexport in a litigation involving the registration, it simply does not follow that Ropes & Gray may not pay the renewal fee on Cubaexport's behalf in order to preserve the subject of the litigation or that Bacardi may intervene in the *ex parte* renewal process.  Bacardi's exclusive remedy lies in seeking cancellation of the registration, which it has attempted without success.

02-21-2006
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #34

ROPES & GRAY LLP

Commissioner for Trademarks
February 17, 2006
Page 2

        Cubaexport again respectfully requests that the PTO exercise its statutory authority, act on Cubaexport's properly filed renewal application and renew the HAVANA CLUB Registration.

                              Respectfully submitted,

                              Vincent N. Palladino

VNP:emf

cc:    David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC
       William R. Golden, Jr., Esq.

04-07-06    11:05    From-ROPES & GRAY LLP                    T-931  P.001/009  F-991



ROPES & GRAY LLP

FACSIMILE TRANSMISSION

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks | Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | April 7, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB | | 3 |

MESSAGE

This communication is intended only for the use of the addressee and may contain information that is privileged and confidential.  If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone.  If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090

BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON DC

PAGE 1/9 * RCVD AT 4/7/2006 11:08:13 AM [Eastern Daylight Time] * SVR:USPTO-EFXRF-3/3 * DNIS:2738950 * CSID: * DURATION (mm-ss):02-48

A139
JA195

04-07-06    11:05    From-ROPES & GRAY LLP                                      T-931   P.002/009   F-991

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

April 7, 2006

## VIA FACSIMILE - CONFIRMATION BY FEDEX

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. - Annex
Washington, DC  20220

**Attn: Licensing Division**

### License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir/Madam:

This letter is prompted by Ms. Barbara C. Hammerle's April 6, 2006 letter (copy enclosed).

Ropes & Gray was granted License No. CU-74488 authorizing it to receive payment for services rendered and expenses incurred in connection with representing Cubaexport in a dispute with Bacardi regarding among other issues cancellation of Cubaexport's United States Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration"). Ropes & Gray interpreted that license to authorize it to incur the expense of renewing the HAVANA CLUB Registration, which is at issue in the litigation, by paying the United States Patent and Trademark Office ("PTO") registration renewal filing fee and to receive payment for that expense.

Ms. Hammerle's letter states that License No. CU-74488 does not authorize Ropes & Gray to incur and receive payment for the expense of renewing the registration. The letter invites Ropes & Gray to seek a license authorizing Ropes & Gray to do so. Ropes & Gray respectfully requests that such a license be granted.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 2

      Ropes & Gray respectfully submits that in light of OFAC's willingness to grant License No. CU-74488, authorizing payment for large legal and other expenses incurred on Cubaexport's behalf in maintaining the HAVANA CLUB Registration, it would be reasonable to authorize Ropes & Gray to incur and be paid for the minor expense ($500 or less) of maintaining the registration through payment of the renewal fee.

      In addition, Ropes & Gray submits that the grant of this further limited license is reasonable in light of the following reasons discussed in our December 13, 2005 letter (copy enclosed) and summarized in Ms. Hammerle's letter:

> (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal.

As we stated in our December 13, 2005 letter, we believe that "outcome would be and would be perceived to be unfair." Although we appreciate that OFAC has determined these reasons do not support payment of the renewal fee under License No. CU-74488, we believe they offer further support for the grant of the additional limited license Ropes & Gray hereby requests.

      Finally, Ropes & Gray wishes to point out that renewing the HAVANA CLUB Registration before it would otherwise expire on July 27, 2006 does not mean the Court hearing the litigation will affirm the PTO's Trademark Trial and Appeal Board decision that the HAVANA CLUB Registration should not be cancelled. That issue will remain to be resolved by the Court, along with Bacardi's additional claims for declaratory and injunctive relief.

      If the additional license is granted *nunc pro tunc* to December 13, 2005 when Ropes & Gray submitted Cubaexport's renewal application, the renewal fee will be $400. If the additional license is not granted *nunc pro tunc*, the fee will be $500.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 3


       Because the renewal period for the HAVANA CLUB Registration will expire on
July 27, 2006, Ropes & Gray respectfully requests that any new license be issued well before that
date so that the PTO may be so advised.  We appreciate OFAC's attention to this matter and
respectfully request that the additional license be granted.

                     Sincerely yours,

                     Vincent N. Palladino

VNP:emf
Enclosure

cc:     Commissioner for Trademarks
        Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
        Liz Farrow, OFAC
        (each via facsimile and FedEx)



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

FAC No. CU-268932

APR  6 2006

Vincent N. Palladino
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020-1104

      Re:   License No. CU-74488

Dear Mr. Palladino:

      The purpose of this letter is to clarify that License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005, does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") for renewal of Registration No.1,031,651 (the "HAVANA CLUB trademark") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). In a December 13, 2006, letter to PTO, Ropes & Gray LLP applied for renewal of the HAVANA CLUB trademark and requested that PTO deduct the filing fee from a Ropes & Gray LLP deposit account, arguing that License No. CU-74488 authorizes payment of the filing fee.

      License No. CU-74488 pertains to a cancellation proceeding. It states that it is issued "Pursuant to an application dated January 26, 2005." The authorization section of License No. CU-74488, quoted in full (with emphasis added), states:

> All transactions are authorized to enable the Licensee [Ropes & Gray LLP], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

The only legal proceeding described in your firm's January 26, 2005 application was "a complaint [] currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A." This complaint is an appeal from the dismissal of a cancellation proceeding before the United States Trademark Trial and Appeal Board concerning the HAVANA CLUB trademark.

      In your letter to PTO dated December 13, 2005, you present a number of arguments why the renewal fee for the HAVANA CLUB trademark should be allowed to

be paid, including the following: (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal. These arguments do not extend the limited authorization contained in License No. CU-74488, which covers only those transactions in connection with the pending District Court litigation, to those transactions that are external to the pending District Court litigation, such as the payment of a renewal fee to initiate a separate action before the PTO.

In your letter of December 13, 2005, you also argue that the failure of the District Court to reach a reasoned decision, which allegedly will result from the failure to pay the trademark registration renewal fee, will deprive Cubaexport of the representation that OFAC has authorized Ropes & Gray LLP to provide. We disagree with that argument. In issuing License No. CU-74488, OFAC authorized Ropes & Gray LLP to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court. OFAC is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation, and, in any event, License No. CU-74488 does not purport to authorize any transactions related to such other proceedings.

We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO. If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division. Should you have any further questions, please contact the Deputy Chief Counsel (Foreign Assets Control) at 202-622-2410.

Sincerely,

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, PTO

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC 20220

Dear Mr. Mills:

We are enclosing a copy of our December 13, 2005 letter addressed to the
Commissioner for Trademarks in connection with an application filed by Empresa Cubana
Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United
States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the
attachments to that letter.

On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal
application and undertaken to pay the filing fee that is required in order to maintain the registration
and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps
pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to
represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB
trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-
CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and
expenses it incurs in the course of that representation. In the Litigation, Bacardi & Company
Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the
"Board") and requested cancellation of Registration No. 1,031,651.

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by
maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision
should be affirmed or reversed and the registration maintained or cancelled. Given the current
posture of the Litigation, no final unappealable decision on those issues will be rendered before
Registration No. 1,031,651 must be renewed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

       We appreciate this office's continued attention to this matter. If we can be of further assistance, please do not hesitate to call me.

                Sincerely,

                Vincent N. Palladino

VNP:emf
Enclosures

cc:   Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
      Clara David, Licensing Division, OFAC (encl.)
      Commissioner for Trademarks

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

**FACSIMILE**

| DATE | TOTAL PAGES W/COVER |
|---|---|
| May 9, 2006 | 5 |

| FROM | EMAIL | FAX | TEL |
|---|---|---|---|
| Oscar M. Garibaldi | ogaribaldi@cov.com | (202) 778-5624 | (202) 662-5624 |

| TO | FAX | TEL |
|---|---|---|
| Commissioner for Trademarks<br>United States Patent and Trademark Office | 571.273.8950 | 571.272.8900 |

**REMARKS**

DC: 2134804-1

THIS FACSIMILE TRANSMISSION IS INTENDED ONLY FOR THE ADDRESSEE SHOWN ABOVE. IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE. ANY REVIEW, DISSEMINATION OR USE OF THIS TRANSMISSION OR ITS CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND MAIL THE ORIGINAL TO US AT THE ABOVE ADDRESS.

SUITE NUMBER:     613C
**PAGE 1/5 * RCVD AT 5/9/2006 2:46:48 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/36 * DNIS:2738950 * CSID:202 662 6291 * DURATION (mm-ss):02-04**

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

OSCAR M. GARIBALDI
TEL 202.662.5624
FAX 202.778.5624
OGARIBALDI@COV.COM

9 May 2006

**VIA FACSIMILE-CONFIRMATION VIA FEDEX**

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. – Annex
Washington, D.C. 20220

Attn: Licensing Division

Re:   License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir or Madam:

We are writing on behalf of Bacardi & Company Limited and Bacardi U.S.A., Inc. in opposition to the April 7, 2006 letter of Vincent N. Palladino, Esq., of Ropes & Gray, requesting a license to incur and receive payment for the expense of renewing Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration"). Ropes & Gray is counsel to Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"), the purported registrant of the HAVANA CLUB Registration. The transaction for which the license is sought would be performed on behalf and for the benefit of Cubaexport.

Mr. Palladino's letter responds to the April 6, 2006 letter of Barbara C. Hammerle, Acting Director of OFAC, in which OFAC determined that License No. CU-74488 did not authorize Ropes & Gray to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") to renew the HAVANA CLUB Registration on behalf of Cubaexport. In light of that determination, Mr. Palladino requests that OFAC grant Ropes & Gray an additional license permitting it to pay the renewal fee prior to July 27, 2006, the expiration of the grace period for renewal.

We submit that OFAC should refuse to issue any license authorizing renewal of the HAVANA CLUB Registration on behalf or for the benefit of Cubaexport or any payment or transaction related to any such renewal. In the circumstances of this case, any renewal of the HAVANA CLUB Registration on behalf or for the benefit of Cubaexport would contradict the policies underlying the Cuban embargo and the long-standing principles of international law and U.S. public policy that deny recognition to claims of title to U.S. property based on foreign confiscatory measures. Those principles are now codified in respect of Cuba in Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat.

COVINGTON & BURLING

Office of Foreign Assets Control
9 May 2006
Page Two

2681 (1998) (hereafter "Section 211") and Section 515.527 of the Cuban Assets Control Regulations ("CACRs"), 31 C.F.R. § 515.527.

Section 515.527 of the CACRs, as amended pursuant to Section 211 and currently in effect, provides as follows:

"(a)(1) Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)    No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented." 31 C.F.R. § 515.527.

The renewal of the HAVANA CLUB Registration falls squarely within the prohibition set out in paragraph (a)(2) above. *First*, the purported registrant being Cubaexport, an agency of the Cuban Government, the HAVANA CLUB Registration is property in which the Government of Cuba has an interest. *Second*, the HAVANA CLUB mark registered in the United States is identical to the HAVANA CLUB mark that was used (and owned) by José Arechebala, S.A. ("JASA") in connection with its rum-making business in Cuba. *Third*, that business and all the related assets (including the HAVANA CLUB trademark) were confiscated in 1960 by the Cuban government within the meaning of 31 C.F.R. § 515.336. In *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116 (2d Cir. 2000), the Second Circuit found that "[b]efore the Cuban revolution, Jose Arechebala, S.A., a Cuban corporation owned principally by members of the Arechebala family, produced 'Havana Club' rum and owned the trademark 'Havana Club' for use with its rum. JASA exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets. Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government." 203 F.3d at 119-20. *Fourth*, Bacardi is the *bona fide* successor-in-interest to all of JASA's rights in the HAVANA CLUB trademark. Neither Bacardi nor JASA has ever consented, expressly or otherwise, to the renewal of the HAVANA CLUB Registration by or on behalf of Cubaexport.

COVINGTON & BURLING

Office of Foreign Assets Control
9 May 2006
Page Three

While OFAC has broad discretion to grant or deny specific licenses under the CACRs, no case has been made by Cubaexport why OFAC should disregard Section 211 and the long standing policy of the United States against giving exterritorial effect to claims of title to U.S. intellectual property on the basis of a foreign confiscatory measure. *See, e.g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293 F. Supp. 892, 916 (S.D.N.Y. 1968) *aff'd in pertinent part*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*, 403 U.S. 905 (1971). The same reasons that exclude cases like the present one from the generic license of Section 515.527(a)(1) of the CACRs compel denial of a specific license. Further, the Congressional policy in this regard is made abundantly clear not only in Section 211(a)(1), which underlies the amended Section 515.527 of the CACRs, but also in Section 211(a)(2), which provides as follows:

> "No U.S. court shall recognize, enforce or otherwise validate any assertion of rights by a designated national based on common law rights or registration obtained under such section 515.527 of such a confiscated mark, trade name or commercial name."

Cubaexport and Havana Club Holding, S.A., have previously sought an OFAC license for a transfer of the same HAVANA CLUB Registration. Their request was based on statements that falsely described the transactions which were the subject of the license sought. A license issued by OFAC in reliance of those false statements was later revoked retroactively to the date of issuance when OFAC became aware of the misrepresentation. While Cubaexport and Havana Club Holding fail to disclose the true circumstances of the purported transfer of the U.S. HAVANA CLUB mark to Havana Club Holding, they cannot deny that the putative transactions involved the payment of large sums of money to the Cuban government in exchange for U.S. property, in violation of U.S. laws and regulations.

Mr. Palladino argues that License No. CU-74488 authorized "payment for large fees and other expenses incurred on Cubaexport's behalf in maintaining the HAVANA CLUB Registration" and claims that it would be reasonable to authorize the minor expense of "maintaining the registration through payment of the renewal fee." This argument, which is deceptively presented as an argument *a maiore ad minus*, fails for two reasons. *First*, the petitioner again misrepresents the extent of License No. CU-74488. That license did not authorize payments incurred "in maintaining" the HAVANA CLUB Registration. As Ms. Hammerle's letter explained, License No. CU-74488 merely authorized Ropes & Gray "to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court." *Second*, the size of the renewal fee relative to the previously authorized payments does not matter, because the real object of the license sought by Ropes & Gray is a separate and distinct *transaction*, namely the proposed renewal of the registration in 2006. That new

**COVINGTON & BURLING**

Office of Foreign Assets Control
9 May 2006
Page Four

transaction has nothing to do with the fees and expenses incurred to defend Cubaexport in the District Court action.

Mr. Palladino further argues that Ropes & Gray is merely trying to maintain the *status quo* by renewing the HAVANA CLUB Registration pending a decision of the District Court for the District of Columbia on the validity of the 1996 renewal of that registration. The pending dispute on the validity of the 1996 renewal has nothing to do, however, with the proposed transaction for which a license is sought, *i.e.*, the renewal of the trademark in 2006. The existing controversy on the 1996 renewal does not exempt Cubaexport or its counsel from the existing laws and regulations applicable to further renewals, nor does it justify ignoring fundamental U.S. public policies against permitting any such renewal in 2006.

Based on the foregoing, we respectfully request that OFAC deny Mr. Palladino's April 7 application for an additional license authorizing Ropes & Gray to incur and receive payment for the expense of renewing the HAVANA CLUB Registration on behalf of Cubaexport.

Respectfully submitted,

Oscar. M. Garibaldi
*Attorney for Bacardi & Company
Limited & Bacardi U.S.A., Inc.*

cc:   Commissioner for Trademarks
      Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
      Elizabeth W. Farrow, OFAC
      (Each Via Facsimile and FedEx)

Jun-14-06   10:40am   From-ROPES & GRAY LLP                    +212 596 9096        T-918   P.001/008   F-551



ROPES & GRAY LLP

**FACSIMILE TRANSMISSION**

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks | Customer Service Window Randolph Building 401 Dulany Street Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | June 14, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB & Design | | 8 |

MESSAGE

3178364_1

s communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON DC

PAGE 1/8 ª RCVD AT 6/14/2006 10:41:57 AM [Eastern Daylight Time] ª SVR:USPTO-EFXRF-6/26 ª DNIS:2738950 ª CSID:+2125969096 ª DURATION (mm-ss):02:42



ROPES
&GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

June 14, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**VIA FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
401 Dulany Street
Alexandria, Virginia 22314

HAVANA CLUB & Design Registration No. 1,031,651

Dear Sir/Madam:

This letter requests that the Patent and Trademark Office ("PTO") approve the renewal application that the registrant Cubaexport filed on December 13, 2005 and renew Registration No. 1,031,651 of the HAVANA CLUB & Design trademark ("the HAVANA CLUB Registration").

Cubaexport filed a timely and complete renewal application together with the renewal fee prescribed by the PTO regulations that implement the Lanham Act. Out of an abundance of caution, Cubaexport's attorneys Ropes & Gray advised the PTO that the renewal fee was being tendered pursuant to its understanding that OFAC's specific License CU-74488 authorized Ropes & Gray to pay the renewal fee and receive reimbursement for that expense from Cubaexport. On April 6, 2006, OFAC advised Ropes & Gray that specific License CU-74488 does not authorize the payment and invited Ropes & Gray to seek a specific license that entitles Ropes & Gray to pay the renewal fee. Ropes & Gray applied for such a specific license on April 7, 2006. We appreciate OFAC's continued attention to this matter. However, OFAC has not yet acted on the request for a new specific license, and we have not been able to determine when OFAC will do so.

The HAVANA CLUB Registration will expire on July 27, 2006 if it is not renewed. Accordingly, Cubaexport requests that the registration be renewed. First, the PTO should carry out its statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a registrant submits a renewal application and tenders the prescribed renewal fee. Second, even if the PTO decides to take into account the Cuban Asset Control Regulations ("the CACR"), it should not conclude that the CACR prohibit renewal of the registration. Finally, Bacardi has no right to intervene in the *ex parte* renewal process.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 14, 2006

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits within the statutory renewal period "the prescribed fee and ... a written application, in such form as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the PTO to consider the applicability of the CACR to the registration renewal process. Where as here Cubaexport's renewal application was timely filed together with the fee prescribed by the PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that the application should be accepted and the registration renewed. *See, e.g.*, 3 *McCarthy on Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S. Treasury, OFAC*, 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its own implementing regulations for the foregoing reason and because the PTO has "little or no experience in [construing]. . . regulations that do not directly concern registration of trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 * 63 (T.T.A.B. 2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a registration would be cancelled] based upon [an] alleged failure to comply with the requirements of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965 (T.T.A.B. 1988).

Even if OFAC does not act on the request for a specific license or denies that license, the PTO may not refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal. The court in *Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997), explained that:

> The CACR creates both general licenses, which permit classes or categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542 (authorizing "all transactions of common carriers incident to the receipt of mail between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC. See id. § 515.801. A

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 14, 2006

general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."* 31 C.F.R. § 515.527(a).

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)      No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face. That is not an exercise in which the PTO should engage.

### The PTO Should Renew The Registration
### Even If The PTO Considers The CACR

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First*, construing 31 CACR § 515.227(a) to prohibit renewal of the HAVANA CLUB Registration would be contrary to a key purpose of the CACR. The CACR are intended to *preserve* assets owned by Cuban nationals such as Cubaexport. *Havana Club Holding, S.A. v. Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997). By

ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 14, 2006

contrast, declining to renew the HAVANA CLUB Registration "raises the specter of the destruction of blocked assets [the HAVANA CLUB Registration] ... which otherwise would function as bargaining chips in United States relations with Cuba". *Ibid.*

      *Second*, 31 CACR § 515.227(a)(2) was not enacted until 1999 following the passage of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998.  It should not be applied retroactively to destroy an asset that was created in 1976 when the HAVANA CLUB Registration issued.  *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d 116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.")

      *Third*, amended 31 CACR § 515.227(a) should not be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the payment of the prescribed fee and the [timely] filing of a written application."  In keeping with the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed fee.  Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own regulations with the CACR by accepting payment of the renewal fee pursuant to its own regulations and 31 CACR § 515.227(a)(1).  *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist. LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when two statutes are capable of coexistence, it is the duly of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective").

      This outcome is particularly appropriate here.  No court has yet ruled on the applicability of 31 CACR § 515.227(a) to renewal of the HAVANA CLUB Registration.  Moreover, preserving the HAVANA CLUB Registration until such a ruling is made comports with a key purpose of the CACR.

      *Fourth*, the New York litigation referred to above involved Bacardi and Havana Club Holding, S.A. ("HCH"), which was the PTO record owner of the HAVANA CLUB Registration for a time until Cubaexport was held to be the owner of the registration.  The New York litigation did not decide whether 31 CACR § 515.227(a)(2) prohibits *renewal* of the HAVANA CLUB Registration because it concerned the applicability of the CACR to the *transfer* of the registration from Cubaexport to HCH.  Moreover, Cubaexport was not a party to the New York litigation.  For that reason, the New York court ruled that cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court would be "an inequitable adjudication."  *Havana*

ROPES & GRAY LLP

Commissioner for Trademarks
Page 5
June 14, 2006

*Club Holding, S.A.,* 974 F. Supp. at 1089.  The PTO should follow suit by preserving the HAVANA CLUB Registration through renewal until Cubaexport has had its day in court.

        ***Fifth,*** it would be inappropriate to destroy the HAVANA CLUB Registration at this time in contravention of the CACR's basic purpose in order to give retroactive effect to 31 CACR § 515.227(a)(2) when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is inapplicable to the renewal of its registration.  That, in turn, involves two issues:  whether there was a confiscation within the meaning of 31 CACR § 515.227(a)(2) and, even if there was, whether Cubaexport is required to obtain permission to renew its registration.

        Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336."  31 CACR § 515.336 refers to the nationalization of property by the Cuban government in 1959 without "adequate and effective compensation."  Property includes trademarks.  31 CACR § 515.311.  Cubaexport maintains that it should be entitled to prove that neither the HAVANA CLUB trademark nor a business or assets associated with the trademark, owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without compensation.  Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the HAVANA CLUB Registration, the registration should be preserved as an asset through renewal until that determination is made in a case to which Cubaexport is a party.

        Concerning the second issue, only Bacardi, as the alleged successor in interest to the trademark rights of Jose Arechabala, S.A. ("JASA"), could be adjudicated a party whose permission is required by 31 CACR § 515.227(a)(2).  No such adjudication has been made in any forum including the New York litigation referred to above.  On the contrary, as the PTO Attorney examining Bacardi's application to register HAVANA CLUB observed in rejecting the application:

        [The New York litigation] reveals a few clearly decided points.... [T]he rights in
        the mark and . . . Registration no. 1,031,651 reside in Cuba Export.... Registration
        no. 1,031,651 was neither cancelled nor determined to be the property of
        [Bacardi].

        If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for renewal of the HAVANA CLUB Registration. Whether JASA had rights in HAVANA CLUB it could have assigned to Bacardi is an issue that will be litigated in Bacardi's District of Columbia case against Cubaexport and HCH, where Bacardi *inter alia* seeks review of the decision Trademark Trial & Appeal

ROPES & GRAY LLP

Commissioner for Trademarks
Page 6
June 14, 2006

Board ("Board") dismissing Bacardi's petition to cancel the HAVANA CLUB
Registration. It is not an issue the PTO can or should decide.

### Bacardi Has No Right to Intervene
### In The *Ex Parte* Renewal Process

Bacardi's attempt to cancel the HAVANA CLUB Registration in the
Board and in court for its own commercial ends seeks the destruction of an asset that the
CACR is designed to preserve. Bacardi seeks the same outcome by improperly
intervening in the *ex parte* renewal process and urging the PTO to ignore Lanham Act § 9
and the PTO's own regulations and not renew the registration because 31 CACR
515.227(a)(2) supposedly prohibits that.

Bacardi has no right to intervene, much less to urge that the registration
not be renewed. Review of Cubaexport's renewal application is the province of the Post-
Registration Division, which has yet to act on the application. *See* TMEP §§ 1606.11-13.
Bacardi has no right to tell the Post-Registration Division what it should do. Even if the
Post-Registration Division had renewed the registration and Bacardi regarded that
decision as adverse to Bacardi's own interests, Bacardi would have no standing to petition
the Director for relief. *See* TMEP § 1606.14; 2 *McCarthy on Trademarks* § 21:5 at 21-8
(4th ed. 2006).

If Bacardi wishes to eliminate the HAVANA CLUB Registration as a bar
to its own rejected application to register HAVANA CLUB, its sole remedy is a
cancellation proceeding raising one or more of the grounds set out in the Lanham Act.
*See* TMEP §§ 1607. Bacardi has already availed itself of that procedure. The Board
dismissed its petition. Bacardi may not try to obtain the same relief by improperly
intervening in the *ex parte* renewal process even as it appeals the Board's decision not to
cancel the HAVANA CLUB Registration.

Despite Bacardi's improper intervention, the PTO should preserve the
HAVANA CLUB Registration by renewing it and allow the District of Columbia court to
resolve Bacardi's dispute with Cubaexport and HCH. Bacardi in effect wants the PTO to
replace the HAVANA CLUB Registration with a registration of HAVANA CLUB
owned by Bacardi. Toward that end, Bacardi asks the PTO to disregard the Lanham Act,
the PTO's own regulations and a key purpose of the CACR. Moreover, it asks this of the
PTO although the PTO has refused to grant Bacardi's application to register HAVANA
CLUB because the application is barred by the HAVANA CLUB Registration and the
designation HAVANA CLUB is primarily geographically deceptively misdescriptive of
Bacardi's non-Cuban rum.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 7
June 14, 2006

   In short, Bacardi wants the PTO to destroy an existing Cuban asset although no new asset — Cuban or otherwise — will be created because Bacardi's application has properly been refused. The PTO should decline to do that when it plainly has the power, and the statutory obligation, to renew the HAVANA CLUB Registration in accordance with Lanham Act § 9 and its own implementing regulations.

   For the foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31 CACR 515.227(a)(2), before Cubaexport has had its day in court. If a court ultimately determines that the PTO should not have renewed the HAVANA CLUB Registration, the court can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119. Accordingly, Cubaexport respectfully requests that the PTO accept payment of the renewal fee and any late renewal fee it may deem appropriate and approve Cubaexport's renewal application.

     Respectfully submitted,

     Vincent N. Palladino

VNP:emf

cc: Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
   Ms. Liz Farrow, OFAC
   (each Via Facsimile and FedEx)



**ROPES & GRAY**

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

June 14, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**VIA FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Customer Service Window
401 Dulany Street
Alexandria, Virginia 22314

HAVANA CLUB & Design Registration No. 1,031,651

Dear Sir/Madam:

This letter requests that the Patent and Trademark Office ("PTO") approve the renewal application that the registrant Cubaexport filed on December 13, 2005 and renew Registration No. 1,031,651 of the HAVANA CLUB & Design trademark ("the HAVANA CLUB Registration").

Cubaexport filed a timely and complete renewal application together with the renewal fee prescribed by the PTO regulations that implement the Lanham Act. Out of an abundance of caution, Cubaexport's attorneys Ropes & Gray advised the PTO that the renewal fee was being tendered pursuant to its understanding that OFAC's specific License CU-74488 authorized Ropes & Gray to pay the renewal fee and receive reimbursement for that expense from Cubaexport. On April 6, 2006, OFAC advised Ropes & Gray that specific License CU-74488 does not authorize the payment and invited Ropes & Gray to seek a specific license that entitles Ropes & Gray to pay the renewal fee. Ropes & Gray applied for such a specific license on April 7, 2006. We appreciate OFAC's continued attention to this matter. However, OFAC has not yet acted on the request for a new specific license, and we have not been able to determine when OFAC will do so.

The HAVANA CLUB Registration will expire on July 27, 2006 if it is not renewed. Accordingly, Cubaexport requests that the registration be renewed. First, the PTO should carry out its statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a registrant submits a renewal application and tenders the prescribed renewal fee. Second, even if the PTO decides to take into account the Cuban Asset Control Regulations ("the CACR"), it should not conclude that the CACR prohibit renewal of the registration. Finally, Bacardi has no right to intervene in the *ex parte* renewal process.

06-15-2006
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #34

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 14, 2006

## The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits within the statutory renewal period "the prescribed fee and ... a written application, in such form as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the PTO to consider the applicability of the CACR to the registration renewal process. Where as here Cubaexport's renewal application was timely filed together with the fee prescribed by the PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that the application should be accepted and the registration renewed. *See, e.g.*, 3 *McCarthy on Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S. Treasury, OFAC*, 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its own implementing regulations for the foregoing reason and because the PTO has "little or no experience in [construing]. . . regulations that do not directly concern registration of trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.,* 2004 TTAB LEXIS 38 * 63 (T.T.A.B. 2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a registration would be cancelled] based upon [an] alleged failure to comply with the requirements of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965 (T.T.A.B. 1988).

Even if OFAC does not act on the request for a specific license or denies that license, the PTO may not refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal. The court in *Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997), explained that:

> The CACR creates both general licenses, which permit classes or categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542 (authorizing "all transactions of common carriers incident to the receipt of mail between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC.  See id. § 515.801. A

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 14, 2006

general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."* 31 C.F.R. § 515.527(a).

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)      No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face. That is not an exercise in which the PTO should engage.

### The PTO Should Renew The Registration
### Even If The PTO Considers The CACR

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First*, construing 31 CACR § 515.227(a) to prohibit renewal of the HAVANA CLUB Registration would be contrary to a key purpose of the CACR. The CACR are intended to *preserve* assets owned by Cuban nationals such as Cubaexport. *Havana Club Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997). By

ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 14, 2006

contrast, declining to renew the HAVANA CLUB Registration "raises the specter of the destruction of blocked assets [the HAVANA CLUB Registration] ... which otherwise would function as bargaining chips in United States relations with Cuba". *Ibid.*

*Second*, 31 CACR § 515.227(a)(2) was not enacted until 1999 following the passage of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998. It should not be applied retroactively to destroy an asset that was created in 1976 when the HAVANA CLUB Registration issued. *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d 116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.")

*Third*, amended 31 CACR § 515.227(a) should not be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the payment of the prescribed fee and the [timely] filing of a written application." In keeping with the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed fee. Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own regulations with the CACR by accepting payment of the renewal fee pursuant to its own regulations and 31 CACR § 515.227(a)(1). *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist. LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective").

This outcome is particularly appropriate here. No court has yet ruled on the applicability of 31 CACR § 515.227(a) to renewal of the HAVANA CLUB Registration. Moreover, preserving the HAVANA CLUB Registration until such a ruling is made comports with a key purpose of the CACR.

*Fourth*, the New York litigation referred to above involved Bacardi and Havana Club Holding, S.A. ("HCH"), which was the PTO record owner of the HAVANA CLUB Registration for a time until Cubaexport was held to be the owner of the registration. The New York litigation did not decide whether 31 CACR § 515.227(a)(2) prohibits *renewal* of the HAVANA CLUB Registration because it concerned the applicability of the CACR to the *transfer* of the registration from Cubaexport to HCH. Moreover, Cubaexport was not a party to the New York litigation. For that reason, the New York court ruled that cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court would be "an inequitable adjudication." *Havana*

ROPES & GRAY LLP

Commissioner for Trademarks
Page 5
June 14, 2006

*Club Holding, S.A.,* 974 F. Supp. at 1089.  The PTO should follow suit by preserving the HAVANA CLUB Registration through renewal until Cubaexport has had its day in court.

   **Fifth**, it would be inappropriate to destroy the HAVANA CLUB Registration at this time in contravention of the CACR's basic purpose in order to give retroactive effect to 31 CACR § 515.227(a)(2) when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is inapplicable to the renewal of its registration.  That, in turn, involves two issues:  whether there was a confiscation within the meaning of 31 CACR § 515.227(a)(2) and, even if there was, whether Cubaexport is required to obtain permission to renew its registration.

   Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336."  31 CACR § 515.336 refers to the nationalization of property by the Cuban government in 1959 without "adequate and effective compensation."  Property includes trademarks.  31 CACR § 515.311.  Cubaexport maintains that it should be entitled to prove that neither the HAVANA CLUB trademark nor a business or assets associated with the trademark, owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without compensation.  Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the HAVANA CLUB Registration, the registration should be preserved as an asset through renewal until that determination is made in a case to which Cubaexport is a party.

   Concerning the second issue, only Bacardi, as the alleged successor in interest to the trademark rights of Jose Arechabala, S.A. ("JASA"), could be adjudicated a party whose permission is required by 31 CACR § 515.227(a)(2).  No such adjudication has been made in any forum including the New York litigation referred to above.  On the contrary, as the PTO Attorney examining Bacardi's application to register HAVANA CLUB observed in rejecting the application:

    [The New York litigation] reveals a few clearly decided points....  [T]he rights in
    the mark and . . . Registration no. 1,031,651 reside in Cuba Export....  Registration
    no. 1,031,651 was neither cancelled nor determined to be the property of
    [Bacardi].

   If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for renewal of the HAVANA CLUB Registration.  Whether JASA had rights in HAVANA CLUB it could have assigned to Bacardi is an issue that will be litigated in Bacardi's District of Columbia case against Cubaexport and HCH, where Bacardi *inter alia* seeks review of the decision Trademark Trial & Appeal

ROPES & GRAY LLP

Commissioner for Trademarks
Page 6
June 14, 2006

Board ("Board") dismissing Bacardi's petition to cancel the HAVANA CLUB
Registration.  It is not an issue the PTO can or should decide.

### Bacardi Has No Right to Intervene In The *Ex Parte* Renewal Process

Bacardi's attempt to cancel the HAVANA CLUB Registration in the
Board and in court for its own commercial ends seeks the destruction of an asset that the
CACR is designed to preserve.  Bacardi seeks the same outcome by improperly
intervening in the *ex parte* renewal process and urging the PTO to ignore Lanham Act § 9
and the PTO's own regulations and not renew the registration because 31 CACR
515.227(a)(2) supposedly prohibits that.

Bacardi has no right to intervene, much less to urge that the registration
not be renewed.  Review of Cubaexport's renewal application is the province of the Post-
Registration Division, which has yet to act on the application.  *See* TMEP §§ 1606.11-13.
Bacardi has no right to tell the Post-Registration Division what it should do.  Even if the
Post-Registration Division had renewed the registration and Bacardi regarded that
decision as adverse to Bacardi's own interests, Bacardi would have no standing to petition
the Director for relief.  *See* TMEP § 1606.14; 2 *McCarthy on Trademarks* § 21:5 at 21-8
(4th ed. 2006).

If Bacardi wishes to eliminate the HAVANA CLUB Registration as a bar
to its own rejected application to register HAVANA CLUB, its sole remedy is a
cancellation proceeding raising one or more of the grounds set out in the Lanham Act.
*See* TMEP §§ 1607.  Bacardi has already availed itself of that procedure.  The Board
dismissed its petition.  Bacardi may not try to obtain the same relief by improperly
intervening in the *ex parte* renewal process even as it appeals the Board's decision not to
cancel the HAVANA CLUB Registration.

Despite Bacardi's improper intervention, the PTO should preserve the
HAVANA CLUB Registration by renewing it and allow the District of Columbia court to
resolve Bacardi's dispute with Cubaexport and HCH.  Bacardi in effect wants the PTO to
replace the HAVANA CLUB Registration with a registration of HAVANA CLUB
owned by Bacardi.  Toward that end, Bacardi asks the PTO to disregard the Lanham Act,
the PTO's own regulations and a key purpose of the CACR.  Moreover, it asks this of the
PTO although the PTO has refused to grant Bacardi's application to register HAVANA
CLUB because the application is barred by the HAVANA CLUB Registration and the
designation HAVANA CLUB is primarily geographically deceptively misdescriptive of
Bacardi's non-Cuban rum.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 7
June 14, 2006

       In short, Bacardi wants the PTO to destroy an existing Cuban asset although no new asset – Cuban or otherwise – will be created because Bacardi's application has properly been refused.  The PTO should decline to do that when it plainly has the power, and the statutory obligation, to renew the HAVANA CLUB Registration in accordance with Lanham Act § 9 and its own implementing regulations.

       For the foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31 CACR 515.227(a)(2), before Cubaexport has had its day in court.  If a court ultimately determines that the PTO should not have renewed the HAVANA CLUB Registration, the court can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119.  Accordingly, Cubaexport respectfully requests that the PTO accept payment of the renewal fee and any late renewal fee it may deem appropriate and approve Cubaexport's renewal application.

       Respectfully submitted,

       Vincent N. Palladino

VNP:emf

cc:    Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Ms. Liz Farrow, OFAC
       (each Via Facsimile and FedEx)

# KELLEY
## DRYE

2006 JUN 27 PM 4:47

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Commissioner for Trademarks |
| **FIRM** | United States Patent and Trademark Office |
| **CITY** | Alexandria |
| **FAX** | 571-273-8950 |
| **PHONE** | 571-273-8900 |
| **NO. OF PAGES** | 25 (including this page) |
| **DATE** | June 27, 2006 |

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK 10178
(212) 808-7800
FAX (212) 808-7897

**MESSAGE:**

| | |
|---|---|
| **FROM** | William R. Golden, Jr. |
| **PHONE** | (212) 808-7992 |
| **E-MAIL** | wgolden@kelleydrye.com |
| **TIMEKEEPER ID** | 00070 |
| **CLIENT NO.** | 004352-0024 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
BRUSSELS

AFFILIATE OFFICES
JAKARTA
MUMBAI

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

PAGE 1/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06:48

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## IOI PARK AVENUE

### NEW YORK, NEW YORK IOI78

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

June 27, 2006

**VIA FACSIMILE (571-273-8950) AND EXPRESS MAIL**

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Re:    HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

This letter responds to the letter of June 14, 2006 submitted by Mr. Palladino on behalf of Cubaexport. Mr. Palladino's letter misrepresents the law and ignores crucial facts in the service of reaching an erroneous conclusion. The Lanham Act does not require that the HAVANA CLUB Registration be renewed. On the contrary, no such renewal can occur under the Lanham Act unless Cubaexport can submit a complete application for renewal prior to July 27, 2006. Absent such renewal the Registration must expire on that date. *See In re Michaels Stern & Co.*, 199 U.S.P.Q. 382 (Comm.'s Pats. & TMs 1978). No application for the renewal of the HAVANA CLUB Registration can be complete unless it includes a specific license from the Office of Foreign Assets Control (OFAC) authorizing all transactions incident to the renewal of the HAVANA CLUB Registration, including the payment of the renewal fee. In the absence of such a specific OFAC license, the renewal of the HAVANA CLUB Registration is prohibited by the Cuban Assets Control Regulations (CACR), which are binding on all persons and entities subject to U.S. jurisdiction, including the PTO.

Cubaexport's application to renew the HAVANA CLUB Registration is incomplete because it does not include a valid specific license from OFAC authorizing all transactions incident to such renewal, including the payment of the corresponding fees. The specific license invoked by Cubaexport in its December 13, 2005 renewal application (License No. CU-74488) does not authorize any such renewal, as OFAC has expressly ruled on April 6, 2006. Cubaexport has applied for a specific license to authorize such transactions from OFAC, but OFAC has not yet acted on that application. In the absence of a specific license authorizing all transactions

NY01/GOLDW/1118782.3

PAGE 2/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

**A169**
JA225

**KELLEY DRYE & WARREN** LLP

Commissioner for Trademarks
June 27, 2006
Page Two

related to such a renewal, the renewal application is incomplete and must be denied as such. Further, as Cubaexport concedes, the PTO has no authority to waive a requirement of the Lanham Act or to suspend compliance with the statute.

Cubaexport erroneously asserts that it has paid the fee connected with the renewal. As noted, OFAC has ruled that such payment is not authorized under license No. CU-74488 and has not yet acted on Cubaexport's request for a new specific license to authorize the renewal. Consequently, any tender of monies by Cubaexport or its counsel was not authorized by OFAC and did not and could not serve as payment of the required fee. Section 515.203(a) of the CACR provides that any transfer in violation of any provision of the CACR "is null and void."

Furthermore, payment of the license fee is not the only transaction at issue under the CACR, despite Cubaexport's assumption to the contrary. The CACR prohibit not only payment of the renewal fee but also the renewal itself. More precisely, the CACR prohibit any transaction related to the renewal of the HAVANA CLUB Registration, unless authorized by a specific license from OFAC. Section 515.201(b) of the CACR prohibits (in the absence of an OFAC license) certain transactions referred to below if they involve "property" in which Cuba or a Cuban national has had, at any time since 8 July 1963, "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. §515.201(b). The HAVANA CLUB Registration is "property" (as this term is defined in 31 C.F.R. §515.311(a)) in which Cuba or a Cuban national has an interest, because Cubaexport, the registrant, is a Cuban person as well as an agency of the Cuban government.

The transactions prohibited by the CACR include "[a]ll dealings in, including, without limitation, transfers . . . of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States." 31 C.F.R. §515.201(b)(1). The term "transfer" refers to "any actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, transfer or alter, directly or indirectly, any right, remedy, power, privilege or interest with respect to any property . . ." 31 C.F.R. §515.310. Accordingly, any acts or transactions related to the renewal of the HAVANA CLUB Registration are "dealings" and "transfers" of property in which Cuba or a Cuban person has an interest. They are therefore prohibited absent an OFAC license.

Cubaexport argues in its letter of June 14, 2006 that payment of the renewal fee for the HAVANA CLUB Registration is authorized by the general license set forth in 31 C.F.R. §515.527(a). This argument, which is inconsistent with Cubaexport's application for a *specific* license to the same effect, is foreclosed by §515.527(a) on its face. The generic authorization of 31 C.F.R. §515.527(a)(1) is expressly restricted by 31 C.F.R. §515.527(a)(2), which was added to the CACR in 1999 in compliance with Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998) ("Section 211").

NY01/GOLDW/1118782.3

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Three

Section 211(a)(1) excluded certain transactions or payments from the generic license of 31 C.F.R. §515.527 (as it was in effect at the time the statute was enacted) and in so doing it overrode "any other provision of law." Section 211(a)(1) provides:

> Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Section 515.527 was accordingly amended to include paragraph (a)(2), which provides:

> No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark . . . that is the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated, as that term is defined in §515.336, unless the original owner of the mark . . . or the bona fide successor-in-interest has expressly consented.

The renewal of the HAVANA CLUB Registration falls squarely within the prohibition of section 515.527(a)(2):

- The Registration concerns a mark (HAVANA CLUB) that is the same as a mark (HAVANA CLUB) that was used in connection with the business and assets of Jose Arechabala S.A. (JASA). *See Havana Club Holding S.A. v. Galleon, S.A.*, 203 F.3d 116, 119 (2d Cir. 2000) ("Before the Cuban revolution, Jose Arechabala S.A. ('JASA'), a Cuban corporation owned principally by members of the Arechabala family, produced 'Havana Club' rum and owned the trademark 'Havana Club' for use with its rum").

- The business or assets of JASA were confiscated by the Cuban Government after 1 January 1959, within the meaning of 31 C.F.R. §515.336. JASA's business and assets were seized, expropriated, and nationalized and no compensation was ever paid. *Id.* at 119-20. ("JASA exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets. Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government.").

- Neither JASA nor Bacardi (JASA's bona fide successor in interest) has ever consented to the renewal of the HAVANA CLUB trademark nor has Cubaexport ever alleged any such consent.

NY01/GOLDW/1118782.3

**KELLEY DRYE & WARREN LLP**

Commissioner for Trademarks
June 27, 2006
Page Four

As the renewal of the HAVANA CLUB Registration falls within Section 211(a)(1) and the express exception of 31 C.F.R. §515.527(a)(2), it is not covered by the general license of 31 C.F.R. §515.527(a)(1). Therefore, it is prohibited by section 31 C.F.R. §515.201(b)(1) in the absence of a specific OFAC license.

Cubaexport asks the PTO to renew the Registration without considering "the applicability of the CACR to the registration renewal process." The CACR, however, are binding on all agencies of the federal government as well as on any other person subject to the jurisdiction of the United States. The PTO does not have the power to ignore applicable federal law just because it is outside the Lanham Act. Nor may the PTO ignore the CACR because it may have less experience applying these regulations than applying its own. Cubaexport raises the specter of the PTO having to "interpret" the general license of section 515.527(a)(1) and the exception of section 515.527(a)(2) as if the relationship between these two provisions were somehow in need of "interpretation." On the contrary, it is plain on the face of these provisions that paragraph (a)(2) is a carve-out of paragraph (a)(1), just as it is plain on the face of the CACR and Section 211 that they apply to any person subject to U.S. jurisdiction and notwithstanding any other provision of law. In any event, if the PTO has any doubt about how these rules should be applied, it should consult OFAC – not ignore the CACR altogether, as Cubaexport urges it to do.

Cubaexport argues, apparently in the alternative, that the CACR do not prohibit renewal of the HAVANA CLUB Registration. Cubaexport's arguments in this regard ignore the plain meaning of the regulations and try to introduce issues of fact that are either irrelevant or have been resolved in prior legal actions. We respond to Cubaexport's arguments in the order in which they are stated.

*First,* the purpose of the CACR is not merely to preserve assets owned by Cuban nationals, but to implement the general trade embargo against Cuba. One purpose of the CACR (expressly reflected in section 515.527(a)(2)) is to prevent the Cuban government from acquiring and maintaining U.S. property that it could not acquire or have acquired but for the confiscation of property from its legitimate owners.

*Second,* applying section 515.527(a)(2) of the CACR to the renewal of the HAVANA CLUB Registration would not be a retroactive application. Applying that provision would not invalidate the last renewal of the Registration in 1996, nor would failure to renew the Registration in 2006 cancel the Registration *nunc pro tunc.* The requirement of a specific license for the renewal of trademarks such as HAVANA CLUB has no retroactive effect; it applies only to prospective renewals following the enactment of Section 211 and the adoption of Section 515.527(a)(2).

*Third,* applying 31 C.F.R. §515.527(a)(2) would not "repeal" section 9 of the Lanham Act. The Lanham Act would of course remain in effect and would continue to govern the federal registration of trademarks. Section 211 and §515.227(a) of the CACR merely introduced

NY01/GOLDW/1118782.3

**KELLEY DRYE & WARREN LLP**

Commissioner for Trademarks
June 27, 2006
Page Five

additional requirements for the registration and renewal of certain trademarks, such as HAVANA CLUB, that are the same as or substantially similar to those confiscated by the Cuban government. Those requirements are either (i) the express consent of the original owner or its bona fide successor-in-interest or (ii) a specific license from OFAC. Nor can there be any doubt that Section 211, being a later statute, and §515.527(a)(2) issued thereunder, are fully effective to add conditions to acts regulated by the Lanham Act.

Fourth, while it is true that in *Havana Club Holding S.A. v. Galleon S.A.* the District Court did not decide whether §515.527(a)(2) applied to the renewal of the HAVANA CLUB Registration, that fact has no significance, because the issue was not before the court. This is the first time that Cubaexport has attempted to renew the HAVANA CLUB Registration since Section 211 was enacted in 1998 and 31 C.F..R. §515.527(a)(2) was adopted in 1999.

Fifth, there can be no reasonable question that JASA's assets, including the HAVANA CLUB trademark, were confiscated, that is, expropriated or nationalized by the Cuban government without compensation. As already noted, that issue was decided in *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d at 119-120 ("Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government."). The Trademark Trial and Appeal Board, in a proceeding involving the same HAVANA CLUB mark, adopted those findings and granted summary judgment. *Havana Club Holding, S.A. v. Buffett*, Opposition No. 91/116,754 (T.T.A.B. Mar. 13, 2003) (a copy of this decision is annexed hereto as Exhibit "A.")

Nor can there be any question that Bacardi is JASA's successor in interest. Bacardi acquired in 1997 all of JASA's right and interest in the HAVANA CLUB trademark (with an intermediate transfer to JASA's affiliate Jose Arechabala International Ltd.). In any event, this purported factual issue is a red herring. If Cubaexport truly believed that Bacardi is not the bona fide successor to JASA, under §515.527(a)(2) Cubaexport should have produced the express consent of JASA, which was the original owner of the confiscated assets, as determined by the Second Circuit and the TTAB. Of course, Cubaexport has not produced and cannot produce any such consent.

Cubaexport closes by asserting that Bacardi lacks any rights to intervene in this renewal process. This is an unusual renewal process, for it is subject to the CACR prohibitions and has been characterized by Cubaexport's repeated attempts to evade them. Bacardi is the party whose express consent is needed under §515.527(a)(2) to obviate a specific OFAC license. Bacardi is also the owner of a pending application to register the HAVANA CLUB trademark. For these reasons, Bacardi, as an interested party, should be allowed the right to protest Cubaexport's multitude of misrepresentations of law and fact.

For all the foregoing reasons, the PTO should decline to accept Cubaexport's incomplete application to renew the HAVANA CLUB Registration until and unless OFAC issues a license authorizing all transactions related to the renewal of that registration. If no such license issues

NY01/GOLDW/1118782.3

JUN 27 2006  4:48 PM FR KELLEY DRYE WARREN12 8087533 TO *200435200249157 P.07

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Six

before July 27, 2006, the Registration will lapse for failure to file a complete renewal application before the required date.

Sincerely,

*William R. Golden, Jr.* (signature)

William R. Golden, Jr.

cc:     Vincent N. Palladino, Esq.
        David W. Mills, OFAC
        Matthew Tuchband, Office of Legal Counsel, OFAC
        Clara David, Licensing Division, OFAC

NY01/GOLDW/1118782.3

PAGE 7/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A174
JA230

JUN 27 2006  4:48 PM FR KELLEY DRYE WARREN12 8087533 TO *200435200249157 P.08

# EXHIBIT A

PAGE 8/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

| | |
|---|---|
| THIS OPINION IS NOT CITABLE AS PRECEDENT OF THE TTAB | **UNITED STATES PATENT AND TRADEMARK OFFICE**<br>**Trademark Trial and Appeal Board**<br>**2900 Crystal Drive**<br>**Arlington, Virginia 22202-3513** |

NLO/AKL

Mailed:  March 13, 2003

Opposition No. 91116754

HAVANA CLUB HOLDING S.A.

v.

JIMMY BUFFETT

Before Quinn, Walters, and Drost,
Administrative Trademark Judges.

By the Board:

Jimmy Buffett ("applicant"), seeks to register the mark HAVANAS AND BANANAS on the Principal Register for "menu items, namely, prepared alcoholic cocktails."[1]  Havana Club Holding, S.A. ("opposer") has opposed registration on the grounds that the mark:  (1) is primarily geographically deceptively misdescriptive under Section 2(e)(3) of the Trademark Act because the goods do not originate from Cuba; (2) disparages and suggests a false connection with opposer within the meaning of Section 2(a); and (3) dilutes opposer's HAVANA CLUB

---

[1] Application Serial No. 75/720,955, filed November 30, 1999, reciting February 4, 1999 as the date of first use and first use in commerce.

trademark[2] in violation of Sections 43(c) and 13.  Applicant, in his answer, denied the salient allegations of the Notice of Opposition.

This case now comes up for consideration of applicant's motion for summary judgment.  The motion has been fully briefed.  In his motion, applicant argues that opposer lacks standing in this proceeding and cannot make a sufficient showing to establish the essential elements of any of its claims that applicant's mark is primarily geographically deceptively misdescriptive, disparages or falsely suggests a connection with opposer, or dilutes opposer's HAVANA CLUB trademark.

Summary judgment is appropriate in cases where the moving party establishes that there is no genuine issue of material fact which requires resolution at trial and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is material when its resolution would affect the outcome of the proceeding under governing law.

---

[2] Opposer, through its predecessors-in-interest, claims ownership of the mark HAVANA CLUB for rum manufactured exclusively in Cuba, and owns Luxembourg Registration No. 032424 (dated May 13, 1971) for same.  Opposer also claims ownership of two pending applications in the United States Patent and Trademark Office (USPTO) which were filed under Section 44(e) of the Trademark Act:  (1) Serial No. 74/673,898 for HAVANA CLUB for "rums produced exclusively in the Province of La Havana, Cuba"; and (2) Serial No. 75/409,541 for HAVANA CLUB and design for "rums produced exclusively in the Province of La Havana, Cuba."  Action on both applications is currently suspended.

2

PAGE 10/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A177
JA233

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is genuinely in dispute if the evidence of record is such that a reasonable fact finder could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. Under Fed. R. Civ. P. 56, the nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all reasonable inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

In support of his motion for summary judgment, applicant argues that opposer lacks standing to bring the instant opposition because opposer's claims to the HAVANA CLUB mark are void in the United States as a matter of law. Specifically, applicant alleges that due to the existence of the Cuban embargo imposed by the United States government in 1963 and the finding of the court in *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000) ("*Galleon V*"), opposer has no claim to the HAVANA CLUB mark. Further, applicant asserts that, despite ownership of its Luxembourg registration, opposer's attempts to claim standing through ownership of its two pending U.S. applications under

3

Section 44(e) are invalid under U.S. law because these applications are for marks that are the same as or substantially similar to a mark that was used in connection with a business that was confiscated by the Cuban government.

Opposer contends that its two pending applications filed under Section 44(e) of the Trademark Act provide standing in this proceeding because they were filed prior to the application being opposed herein.  Opposer also contends that, pursuant to the law of the case doctrine, the Board "implicitly decided the issue of standing in favor of opposer" when it denied applicant's previous motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Additionally, opposer asserts that because it is a Luxembourg corporation, and not a "designated national" under statutory law, it is not subject to the Cuban embargo prohibitions found in U.S. law.  Moreover, opposer argues U.S. law expressly invests opposer with the right to file and prosecute applications.

In reply, applicant argues that the Board never reached the issue, nor entered a decision regarding opposer's standing in this matter and, hence, the law of the case doctrine is inapplicable.  Applicant recounts that the Board merely denied applicant's motion to dismiss following the submission of opposer's amended notice of opposition and applicant's lack of objection to the amended pleading.  Also, applicant asserts that opposer "hopes to out-fox this Board" into believing that

4

it does not fall within the purview of regulations implementing the Cuban embargo by claiming it is "...merely an innocent Luxembourg corporation...."

Applicant's contention with regard to the court's ruling in *Galleon V*[1] is essentially a claim that res judicata, in particular, issue preclusion, is appropriate in this case.

Under the doctrine of issue preclusion (collateral estoppel), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is normally conclusive in a subsequent suit involving the parties to the prior litigation. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017 (Fed. Cir. 1984). The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again. *Mother's Restaurant Incorporated v. Mama's Pizza, Inc.*, 723 F.2d 1566, 221 USPQ 394 (Fed. Cir. 1983).

In order for issue preclusion to apply, the following requirements must be met: 1) the issue to be determined must

---

[1] *See also Havana Club Holding, S.A. v. Galleon, S.A.*, 961 F. Supp. 498 (S.D.N.Y. 1997) ("*Galleon I*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302 (S.D.N.Y. 1997) ("*Galleon II*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 49 USPQ2d (BNA) 1296 (S.D.N.Y. 1998) ("*Galleon III*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999) ("*Galleon IV*").

5

PAGE 13/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A180
JA236

be identical to the issue involved in the prior litigation; 2) the issue must have been raised, litigated and actually adjudged in the prior action; 3) the determination of the issue must have been necessary and essential to the resulting judgment; and 4) the party precluded must have been fully represented in the prior action. *Polaroid Corp. v. C & E Vision Services Inc.*, 52 USPQ2d 1954 (TTAB 1999); *Mother's Restaurant, supra.*

Issue preclusion is applicable in the instant proceeding. The ownership rights of opposer to the HAVANA CLUB mark was an issue actually litigated in *Galleon V*. This issue was raised, litigated and actually adjudged in that case and opposer's ownership rights to HAVANA CLUB were necessary and essential to the resulting judgment of the Second Circuit. Moreover, absent any reason to assume otherwise, we find that opposer was fully represented in the prior action. Accordingly, we adopt the following factual findings of the Second Circuit Court of Appeals regarding opposer's mark and assignments as recited in *Galleon V*.

Prior to the Cuban revolution, Jose Arechabala, S.A. ("JASA"), a Cuban corporation formed by members of the Arechabala family, produced HAVANA CLUB rum and owned the trademark for use therewith. JASA exported the rum to the United States until 1960, when Fidel Castro's government

6

confiscated JASA's assets, including the HAVANA CLUB mark.[*]  In 1963, the United States government imposed an embargo on Cuba.

Beginning in 1972, Empresa Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban state-run organization established by the Cuban Ministry of Foreign Commerce, exported HAVANA CLUB rum to Eastern Europe and the Soviet Union.  This state enterprise registered the HAVANA CLUB and design mark with USPTO in 1976 under Registration No. 1,031,651.

Following an effort to reorganize, Cubaexport became Havana Rum & Liquors, S.A. ("HR&L") in 1993 and entered into a joint venture agreement with the French company Pernod Ricard, S.A., an international liquor distributor.  An agreement between these entities in 1993 created the opposer herein, Havana Club Holding, S.A. ("HCH") and Havana Club International, S.A. ("HCI").  HCH is a Luxembourg corporation and HCI is a joint-stock company organized under the laws of Cuba.

In 1994, Cubaexport assigned U.S. Registration No. 1,031,651 (for the mark HAVANA CLUB and design) to HR&L, and in a subsequent agreement HR&L assigned this registration to

---

[*] On October 15, 1960, Cuban Law No. 890 ("Law No. 890") was issued, expropriating for the Cuban government the physical assets, property, accounts and business records of JASA. See DX 573A ("Law No 890") ("Nationalization is ordered by the forced expropriation of all industrial and commercial corporations, as well as the factories, stores, warehouses and other assets and rights of same and the properties of the following natural persons or companies").

7

HCH.  After the reorganization, upon application by HCH in June 1996, the USPTO renewed the registration of the HAVANA CLUB mark for a term of ten years.  In 1995, the Office of Foreign Assets Control ("OFAC") of the U.S. Department of Treasury issued a license to Cubaexport approving the assignments from Cubaexport to HR&L and from HR&L to HCH (opposer).  These assignments were nullified, however, when OFAC revoked the license in 1997, pursuant to Section 515.805 of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515.[5]

The Second Circuit in *Galleon V* affirmed a holding of the lower court that HCH (opposer herein)[6] did not have standing to assert trademark rights in HAVANA CLUB against another rum producer because the specific license to assign the mark to

---

[5] On April 17, 1997, OFAC issued a Notice of Revocation stating that "as a result of facts and circumstances that have come to the attention of this Office which were not included in the application of October 5, 1995, License No. C-18147 . . . is hereby revoked retroactive to the date of issuance."  *See Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302, 306 (S.D.N.Y. 1997).

[6] Opposer acknowledges that it was in the position as plaintiff in *Galleon* through the following statement:  "…the reason why Opposer amended its Notice of Opposition was to interpose paragraphs 4 and 5, thus providing a Section 44(e) basis for standing that is independent of Opposer's old registration of the HAVANA CLUB mark, whose assignment to Opposer was rejected in the Galleon decision."  Opp. Brief, p. 5.

8

PAGE 16/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A183
JA239

opposer was nullified by OFAC's revocation of the license and because the Cuban embargo did not authorize the assignment.[7]

Turning to the issue of standing before us in this case, we note that standing is a threshold inquiry directed solely to establishing a plaintiff's interest in the proceeding.[8] The purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff is no more than an intermeddler. *American Vitamin Products, Inc. v. DowBrands, Inc.*, 22 USPQ2d 1313 (TTAB 1992). To establish standing, it must be shown that a plaintiff has a "real interest" in the outcome of a proceeding; that is, plaintiff must have a direct and personal stake in the outcome of the opposition. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987) ("it is in the pleading stage of the opposition proceeding that the opposer must plead facts

---

[7] *Galleon V*, 53 USPQ2d at 1611. The Board notes that as a result of the *Galleon V* decision, the recordation of assignments of U.S. Registration No. 1,031,651 from Cubaexport to HRL and from HRL to HCH have been invalidated by the Commissioner for Trademarks. Current PTO records indicate that ownership of said registration remains with Cubaexport [i.e., the original registrant]. *See* Trademark Assignment Records, Reel 2398 Frame 0855.

[8] Section 13 of the Trademark Act, 15 U.S.C. § 1063, sets forth the foundation for establishing standing in an opposition proceeding, stating in relevant part:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register ... may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office.

9

sufficient only to show a personal interest in the outcome of the case beyond that of the general public").

As a preliminary matter, we determine that applicant is correct in stating that the Board never reached the issue of standing, nor entered a decision regarding opposer's standing in this matter.  Hence, the law of the case doctrine is inapplicable.

The most common way to demonstrate standing is by proving ownership of a relevant U.S. trademark registration or a common law mark.  Opposer's standing may be rooted in enforceable rights despite the existence of the strictures of the Cuban embargo and the relevant regulations surrounding its implementation.

The CACR, 31 C.F.R. Part 515, implements the U.S. embargo against Cuba.[9]  Unless authorized, the embargo prohibits, with respect to property in which a Cuban national or entity has an interest, (1) "all dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States"; (2) "all transfers outside the United States with regard to any property or

---

[9] The CACR was implemented in 1963 under Section 5(b) of the Trading with the Enemy Act of 1917, as amended, 50 U.S.C. App. 1-44.  The Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), Pub. L. No. 104-114, 110 Stat. 785 (1996), was passed by Congress in 1996, which subsequently codified the regulations implementing the embargo.

10

PAGE 18/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A185
JA241

property interest subject to the jurisdiction of the United States"; and (3) "any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions [above]." Id. at Section 515.201(b) and (c). The embargo defines "property" to include trademarks. *See* id. at Section 515.311.

In the *Galleon V* decision, the court found that the party who is opposer herein has no rights to U.S. Registration No. 1,031,651 for the mark HAVANA CLUB and design because the specific license granted to Cubaexport to assign the mark to opposer was nullified by the OFAC's revocation of the specific license and because CACR does not authorize the assignments. Thus, opposer cannot have standing based on that registration.

Similarly, opposer's standing based on claims of ownership of the Luxembourg registration for the mark and its two pending United States applications fails as a matter of law. Opposer is explicitly barred by statute from bringing this opposition based upon a trademark that is the same or substantially similar to a trademark used in connection with a business that was confiscated by the Cuban government. We note that on October 21, 1998, Congress passed Section 211 of the Department of Commerce Appropriations Act 1999, as included in the Omnibus Consolidated and Emergency Supplemental Appropriations Act 1999 [hereinafter "Section 211]. See Pub. Law 105-277, 112 Stat. 2681.

11

This statute limits the registration and renewal of, and the assertion of trademark and trade name rights in, marks that were used in connection with property confiscated by the Cuban government.  The statute, in relevant part, provides:

> (2)(b) No U.S. court shall recognize, enforce or otherwise validate any assertion of treaty rights by a designated national or its successor-in-interest under sections 44(b) or (e) of the Trademark Act of 1946 (15 U.S.C. 1126(b) or (e)) for a mark, trade name or commercial name that is the same or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of such mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Opposer argues that because the Board is not a "U.S. court," we are not bound by the restrictions of this provision.  We disagree.  While it is true that the Board is not a "U.S. court," it is also true that any judicial review of our decision will be to a "U.S. court."  See Section 21 of the Trademark Act.  If opposer would be barred from asserting its rights in that court, it would not have standing to assert them before the Board.  It would make no sense to ignore opposer's statutorily imposed inability to assert its rights in any judicial review and render a decision that opposer could not appeal or defend on the merits.

Opposer also contends that it does not fall within the parameters of subsection (b) of Section 211 because it is not by definition a "designated national or its successor-in-interest."  We again disagree.  Section 211 states:

12

> The term "designated national" has the
> meaning given such term in section 515.305
> of title 31, Code of Federal Regulations, as
> in effect on September 9, 1998, and includes
> a national of any foreign country who is a
> successor-in-interest to a designated
> national.

We turn to 31 C.F.R. Section 515.305 which defines a "designated national" as "Cuba and any national thereof including any person who is a specially designated national." A "specially designated national" is defined in 31 C.F.R. Section 515.306 and includes "any partnership, association, corporation or other organization which on or since [July 8, 1963][10] has been owned or controlled directly or indirectly by the Government or authorities exercising control over a designated foreign country or by any specially designated national."

Opposer is a Luxembourg corporation, but it is 50% owned by the Cuban entity HR&L, and therefore, is a "designated national."[11] Because it is half owned, and therefore indirectly controlled, by a designated national, under Section 515.306, opposer is a specially designated national. As a specially designated national, opposer is validly deemed a "designated national" for purposes of Section 211. Consequently, because opposer's pending Section 44(e)

---

[10] This is the "effective date" established under 31 C.F.R. Section 515.201(d).

applications are for the same or a substantially similar mark as the mark confiscated by the Cuban government and because opposer has not provided any evidence of any express consent by the original owner of the mark, opposer's claimed rights to the pending applications at issue cannot be recognized, enforced, or validated under U.S. law.  Opposer's rights to ownership of these marks in the United States, therefore, fail despite the fact that these applications were filed before the mark being opposed.[12]

Additionally, we note that under 31 C.F.R. Section 515.528,[13] designated nationals are precluded from filing and prosecuting any applications for blocked trademarks.[14]  Thus, opposer's contention that the Cuban embargo regulations

---

[11] We note that the relevant restrictions of the Cuban embargo apply to a Cuban national or entity regardless of the degree or amount of ownership interest involved.  31 C.F.R. § 515.201(b).
[12] This decision has no practical effect on these pending applications because they are not within the Board's jurisdiction.  Our consideration of these applications falls only within the context of determining the issue of standing in this opposition proceeding.

[13] 31 C.F.R. Section 515.528 reads, in relevant part:

(a)  The following transactions by any person who is not a designated national are hereby authorized:

    (1)  The filing and prosecution of any application for a blocked foreign patent, trademark or copyright, or for the renewal thereof;
    (2)  The receipt of any blocked foreign patent, trademark, or copyright;
    (3)  The filing and prosecution of opposition or infringement proceedings with respect to any blocked foreign patent, trademark, or copyright, and the prosecution of a defense to any such proceedings....

14

"expressly" invest opposer with the right to file and prosecute applications and "thus with the precise predicate for standing" in this proceeding also fails as a matter of law given opposer's status as a "designated national."

Although Section 13 of the Trademark Act[15] establishes a broad class of persons who may be considered proper opposers, we find that no material issue exists as to whether opposer falls within said class as a person capable of filing an opposition in this instance.  With regard to opposer's claim, under Section 2(e)(3) of the Trademark Act, that applicant's mark "HAVANAS AND BANANAS" is primarily geographically deceptively misdescriptive of rum drinks not originating from Cuba, it is clear that opposer has no standing to pursue this claim just as it had no standing to pursue its false designation of origin claim under Section 43(a) in *Galleon V*. The Second Circuit affirmed the District Court's holding that opposer had no standing because the Cuban embargo prevented opposer from selling its rum in the United States, and thereby

---

[14] 31 C.F.R. Section 515.528 states that the term "blocked foreign patent, trademark, or copyright" as used in the section means "any patent, petty patent, design patent, trademark or copyright issued by any foreign country in which a designated foreign country or national thereof has an interest, including any patent, petty patent, design patent, trademark, or copyright issued by a designated foreign country."

[15] Section 13 of the Act, which provides:

    Any person who believes that he would be damaged by the registration of a mark upon the principal register may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor....

15

PAGE 23/25 * RCVD AT 6/27/2006 4:48:27 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/13 * DNIS:2738950 * CSID:212 8087533 * DURATION (mm-ss):06-48

A190
JA246

from suffering commercial injury because of Bacardi's actions;
and quoted the District Court, as saying:  "Any competitive
injury plaintiffs will suffer based upon their intent to enter
the U.S. market once the embargo is lifted is simply too
remote and uncertain to provide them with standing."  *Galleon
V* at 122; *cf. The Joint Stock Society v. UDV North America*,
266 F.3d 164, 60 USPQ2d 1258 (3rd Cir. 2001).

    As to its claim of dilution, the absence of a proprietary
right to the HAVANA CLUB trademark weighs against standing.
Section 43(c)(1) states that "[t]he owner of a famous
trademark shall be entitled...to obtain such...relief as is
provided in this subsection."  Because opposer has no
ownership rights to the mark, any attempt to calculate the
dilution to said mark is unwarranted.

    Similarly, with regard to the its claim involving Section
2(a), opposer's attempts to assert that applicant's use of the
HAVANAS AND BANANAS mark may disparage or falsely suggest a
connection with opposer's persona or identity is ill founded.
Opposer's lack of proprietary rights to the HAVANA CLUB mark
having thus been established, we are aware of no reason why
the creation of a name or identity brought about by the mere
addition of an entity designator (Holding, S.A.) to a
trademark owned by another should, in effect, confer standing
on opposer in this instance.

16

Opposer cannot demonstrate any real interest in the outcome of this proceeding and lacks standing to assert the claims alleged in this proceeding.  Accordingly, applicant's motion for summary judgment is granted and the opposition is dismissed.[16]

---

[16] In view of our finding regarding opposer's lack of standing we need not address the issues with respect to opposer's substantive claims.

17

A192
JA248

KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

IOI PARK AVENUE

NEW YORK, NEW YORK IOI78

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

June 27, 2006

**Via Facsimile (571-273-8950) and Express Mail**

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314

06-28-2006

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

Re:     HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

This letter responds to the letter of June 14, 2006 submitted by Mr. Palladino on behalf of Cubaexport.  Mr. Palladino's letter misrepresents the law and ignores crucial facts in the service of reaching an erroneous conclusion.  The Lanham Act does not require that the HAVANA CLUB Registration be renewed.  On the contrary, no such renewal can occur under the Lanham Act unless Cubaexport can submit a complete application for renewal prior to July 27, 2006.  Absent such renewal the Registration must expire on that date.  *See In re Michaels Stern & Co.*, 199 U.S.P.Q. 382 (Comm.'s Pats. & TMs 1978).  No application for the renewal of the HAVANA CLUB Registration can be complete unless it includes a specific license from the Office of Foreign Assets Control (OFAC) authorizing all transactions incident to the renewal of the HAVANA CLUB Registration, including the payment of the renewal fee.  In the absence of such a specific OFAC license, the renewal of the HAVANA CLUB Registration is prohibited by the Cuban Assets Control Regulations (CACR), which are binding on all persons and entities subject to U.S. jurisdiction, including the PTO.

Cubaexport's application to renew the HAVANA CLUB Registration is incomplete because it does not include a valid specific license from OFAC authorizing all transactions incident to such renewal, including the payment of the corresponding fees.  The specific license invoked by Cubaexport in its December 13, 2005 renewal application (License No. CU-74488) does not authorize any such renewal, as OFAC has expressly ruled on April 6, 2006.  Cubaexport has applied for a specific license to authorize such transactions from OFAC, but OFAC has not yet acted on that application.  In the absence of a specific license authorizing all transactions

NY01/GOLDW/1118782.3

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Two

related to such a renewal, the renewal application is incomplete and must be denied as such. Further, as Cubaexport concedes, the PTO has no authority to waive a requirement of the Lanham Act or to suspend compliance with the statute.

Cubaexport erroneously asserts that it has paid the fee connected with the renewal. As noted, OFAC has ruled that such payment is not authorized under license No. CU-74488 and has not yet acted on Cubaexport's request for a new specific license to authorize the renewal. Consequently, any tender of monies by Cubaexport or its counsel was not authorized by OFAC and did not and could not serve as payment of the required fee. Section 515.203(a) of the CACR provides that any transfer in violation of any provision of the CACR "is null and void."

Furthermore, payment of the license fee is not the only transaction at issue under the CACR, despite Cubaexport's assumption to the contrary. The CACR prohibit not only payment of the renewal fee but also the renewal itself. More precisely, the CACR prohibit any transaction related to the renewal of the HAVANA CLUB Registration, unless authorized by a specific license from OFAC. Section 515.201(b) of the CACR prohibits (in the absence of an OFAC license) certain transactions referred to below if they involve "property" in which Cuba or a Cuban national has had, at any time since 8 July 1963, "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. §515.201(b). The HAVANA CLUB Registration is "property" (as this term is defined in 31 C.F.R. §515.311(a)) in which Cuba or a Cuban national has an interest, because Cubaexport, the registrant, is a Cuban person as well as an agency of the Cuban government.

The transactions prohibited by the CACR include "[a]ll dealings in, including, without limitation, transfers . . . of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States." 31 C.F.R. §515.201(b)(1). The term "transfer" refers to "any actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, transfer or alter, directly or indirectly, any right, remedy, power, privilege or interest with respect to any property . . ." 31 C.F.R. §515.310. Accordingly, any acts or transactions related to the renewal of the HAVANA CLUB Registration are "dealings" and "transfers" of property in which Cuba or a Cuban person has an interest. They are therefore prohibited absent an OFAC license.

Cubaexport argues in its letter of June 14, 2006 that payment of the renewal fee for the HAVANA CLUB Registration is authorized by the general license set forth in 31 C.F.R. §515.527(a). This argument, which is inconsistent with Cubaexport's application for a *specific* license to the same effect, is foreclosed by §515.527(a) on its face. The generic authorization of 31C.F.R. §515.527(a)(1) is expressly restricted by 31 C.F.R. §515.527(a)(2), which was added to the CACR in 1999 in compliance with Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998) ("Section 211").

**KELLEY DRYE & WARREN LLP**

Commissioner for Trademarks
June 27, 2006
Page Three

Section 211(a)(1) excluded certain transactions or payments from the generic license of 31 C.F.R. §515.527 (as it was in effect at the time the statute was enacted) and in so doing it overrode "any other provision of law." Section 211(a)(1) provides:

> Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Section 515.527 was accordingly amended to include paragraph (a)(2), which provides:

> No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark . . . that is the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated, as that term is defined in §515.336, unless the original owner of the mark . . . or the bona fide successor-in-interest has expressly consented.

The renewal of the HAVANA CLUB Registration falls squarely within the prohibition of section 515.527(a)(2):

- The Registration concerns a mark (HAVANA CLUB) that is the same as a mark (HAVANA CLUB) that was used in connection with the business and assets of Jose Arechabala S.A. (JASA). *See Havana Club Holding S.A. v. Galleon, S.A.*, 203 F.3d 116, 119 (2d Cir. 2000) ("Before the Cuban revolution, Jose Arechabala S.A. ('JASA'), a Cuban corporation owned principally by members of the Arechabala family, produced 'Havana Club' rum and owned the trademark 'Havana Club' for use with its rum").

- The business or assets of JASA were confiscated by the Cuban Government after 1 January 1959, within the meaning of 31 C.F.R. §515.336. JASA's business and assets were seized, expropriated, and nationalized and no compensation was ever paid. *Id.* at 119-20. ("JASA exported its rum to the United States until 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets. Neither JASA nor its owners ever received compensation for the seized assets from the Cuban government.").

- Neither JASA nor Bacardi (JASA's bona fide successor in interest) has ever consented to the renewal of the HAVANA CLUB trademark nor has Cubaexport ever alleged any such consent.

NY01/GOLDW/1118782.3

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Four

As the renewal of the HAVANA CLUB Registration falls within Section 211(a)(1) and the express exception of 31 C.F.R. §515.527(a)(2), it is not covered by the general license of 31 C.F.R. §515.527(a)(1).  Therefore, it is prohibited by section 31 C.F.R. §515.201(b)(1) in the absence of a specific OFAC license.

Cubaexport asks the PTO to renew the Registration without considering "the applicability of the CACR to the registration renewal process."  The CACR, however, are binding on all agencies of the federal government as well as on any other person subject to the jurisdiction of the United States.  The PTO does not have the power to ignore applicable federal law just because it is outside the Lanham Act.  Nor may the PTO ignore the CACR because it may have less experience applying these regulations than applying its own.  Cubaexport raises the specter of the PTO having to "interpret" the general license of section 515.527(a)(1) and the exception of section 515.527(a)(2) as if the relationship between these two provisions were somehow in need of "interpretation."  On the contrary, it is plain on the face of these provisions that paragraph (a)(2) is a carve-out of paragraph (a)(1), just as it is plain on the face of the CACR and Section 211 that they apply to any person subject to U.S. jurisdiction and notwithstanding any other provision of law.  In any event, if the PTO has any doubt about how these rules should be applied, it should consult OFAC – not ignore the CACR altogether, as Cubaexport urges it to do.

Cubaexport argues, apparently in the alternative, that the CACR do not prohibit renewal of the HAVANA CLUB Registration.  Cubaexport's arguments in this regard ignore the plain meaning of the regulations and try to introduce issues of fact that are either irrelevant or have been resolved in prior legal actions.  We respond to Cubaexport's arguments in the order in which they are stated.

*First*, the purpose of the CACR is not merely to preserve assets owned by Cuban nationals, but to implement the general trade embargo against Cuba.  One purpose of the CACR (expressly reflected in section 515.527(a)(2)) is to prevent the Cuban government from acquiring and maintaining U.S. property that it could not acquire or have acquired but for the confiscation of property from its legitimate owners.

*Second*, applying section 515.527(a)(2) of the CACR to the renewal of the HAVANA CLUB Registration would not be a retroactive application.  Applying that provision would not invalidate the last renewal of the Registration in 1996, nor would failure to renew the Registration in 2006 cancel the Registration *nunc pro tunc*.  The requirement of a specific license for the renewal of trademarks such as HAVANA CLUB has no retroactive effect; it applies only to prospective renewals following the enactment of Section 211 and the adoption of Section 515.527(a)(2).

*Third*, applying 31 C.F.R. §515.527(a)(2) would not "repeal" section 9 of the Lanham Act.  The Lanham Act would of course remain in effect and would continue to govern the federal registration of trademarks.  Section 211 and §515.227(a) of the CACR merely introduced

NY01/GOLDW/1118782.3

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Five

additional requirements for the registration and renewal of certain trademarks, such as
HAVANA CLUB, that are the same as or substantially similar to those confiscated by the Cuban
government. Those requirements are either (i) the express consent of the original owner or its
bona fide successor-in-interest or (ii) a specific license from OFAC. Nor can there be any doubt
that Section 211, being a later statute, and §515.527(a)(2) issued thereunder, are fully effective to
add conditions to acts regulated by the Lanham Act.

    *Fourth*, while it is true that in *Havana Club Holding S.A. v. Galleon S.A.* the District
Court did not decide whether §515.527(a)(2) applied to the renewal of the HAVANA CLUB
Registration, that fact has no significance, because the issue was not before the court. This is the
first time that Cubaexport has attempted to renew the HAVANA CLUB Registration since
Section 211 was enacted in 1998 and 31 C.F..R. §515.527(a)(2) was adopted in 1999.

    *Fifth*, there can be no reasonable question that JASA's assets, including the HAVANA
CLUB trademark, were confiscated, that is, expropriated or nationalized by the Cuban
government without compensation. As already noted, that issue was decided in *Havana Club
Holding, S.A. v. Galleon, S.A.,* 203 F.3d at 119-120 ("Neither JASA nor its owners ever received
compensation for the seized assets from the Cuban government."). The Trademark Trial and
Appeal Board, in a proceeding involving the same HAVANA CLUB mark, adopted those
findings and granted summary judgment. *Havana Club Holding, S.A. v. Buffett*, Opposition No.
91/116,754 (T.T.A.B. Mar. 13, 2003) (a copy of this decision is annexed hereto as Exhibit "A.")

    Nor can there be any question that Bacardi is JASA's successor in interest. Bacardi
acquired in 1997 all of JASA's right and interest in the HAVANA CLUB trademark (with an
intermediate transfer to JASA's affiliate Jose Arechabala International Ltd.). In any event, this
purported factual issue is a red herring. If Cubaexport truly believed that Bacardi is not the bona
fide successor to JASA, under §515.527(a)(2) Cubaexport should have produced the express
consent of JASA, which was the original owner of the confiscated assets, as determined by the
Second Circuit and the TTAB. Of course, Cubaexport has not produced and cannot produce any
such consent.

    Cubaexport closes by asserting that Bacardi lacks any rights to intervene in this renewal
process. This is an unusual renewal process, for it is subject to the CACR prohibitions and has
been characterized by Cubaexport's repeated attempts to evade them. Bacardi is the party whose
express consent is needed under §515.527(a)(2) to obviate a specific OFAC license. Bacardi is
also the owner of a pending application to register the HAVANA CLUB trademark. For these
reasons, Bacardi, as an interested party, should be allowed the right to protest Cubaexport's
multitude of misrepresentations of law and fact.

    For all the foregoing reasons, the PTO should decline to accept Cubaexport's incomplete
application to renew the HAVANA CLUB Registration until and unless OFAC issues a license
authorizing all transactions related to the renewal of that registration. If no such license issues

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
June 27, 2006
Page Six

before July 27, 2006, the Registration will lapse for failure to file a complete renewal application before the required date.

Sincerely,

William R. Golden, Jr.

cc:   Vincent N. Palladino, Esq.
      David W. Mills, OFAC
      Matthew Tuchband, Office of Legal Counsel, OFAC
      Clara David, Licensing Division, OFAC

NY01/GOLDW/1118782.3

THIS OPINION IS NOT CITABLE
AS PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**2900 Crystal Drive**
**Arlington, Virginia 22202-3513**

NLO/AKL

Mailed:  March 13, 2003

Opposition No.

HAVANA CLUB HOLDING S.A.

v.

JIMMY BUFFETT

Before Quinn, Walters, and Drost,
Administrative Trademark Judges.

By the Board:

Jimmy Buffett ("applicant"), seeks to register the mark
HAVANAS AND BANANAS on the Principal Register for "menu items,
namely, prepared alcoholic cocktails."[1]  Havana Club Holding,
S.A. ("opposer") has opposed registration on the grounds that
the mark:  (1) is primarily geographically deceptively
misdescriptive under Section 2(e)(3) of the Trademark Act
because the goods do not originate from Cuba; (2) disparages
and suggests a false connection with opposer within the
meaning of Section 2(a); and (3) dilutes opposer's HAVANA CLUB

---

[1] Application Serial No. 75/720,955, filed November 30, 1999,
reciting February 4, 1999 as the date of first use and first use
in commerce.

trademark[2] in violation of Sections 43(c) and 13.  Applicant, in his answer, denied the salient allegations of the Notice of Opposition.

This case now comes up for consideration of applicant's motion for summary judgment.  The motion has been fully briefed.  In his motion, applicant argues that opposer lacks standing in this proceeding and cannot make a sufficient showing to establish the essential elements of any of its claims that applicant's mark is primarily geographically deceptively misdescriptive, disparages or falsely suggests a connection with opposer, or dilutes opposer's HAVANA CLUB trademark.

Summary judgment is appropriate in cases where the moving party establishes that there is no genuine issue of material fact which requires resolution at trial and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is material when its resolution would affect the outcome of the proceeding under governing law.

---

[2] Opposer, through its predecessors-in-interest, claims ownership of the mark HAVANA CLUB for rum manufactured exclusively in Cuba, and owns Luxembourg Registration No. 032424 (dated May 13, 1971) for same.  Opposer also claims ownership of two pending applications in the United States Patent and Trademark Office (USPTO) which were filed under Section 44(e) of the Trademark Act:  (1) Serial No. 74/673,898 for HAVANA CLUB for "rums produced exclusively in the Province of La Havana, Cuba"; and (2) Serial No. 75/409,541 for HAVANA CLUB and design for "rums produced exclusively in the Province of La Havana, Cuba."  Action on both applications is currently suspended.

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is genuinely in dispute if the evidence of record is such that a reasonable fact finder could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. Under Fed. R. Civ. P. 56, the nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all reasonable inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

In support of his motion for summary judgment, applicant argues that opposer lacks standing to bring the instant opposition because opposer's claims to the HAVANA CLUB mark are void in the United States as a matter of law. Specifically, applicant alleges that due to the existence of the Cuban embargo imposed by the United States government in 1963 and the finding of the court in *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000) ("*Galleon V*"), opposer has no claim to the HAVANA CLUB mark. Further, applicant asserts that, despite ownership of its Luxembourg registration, opposer's attempts to claim standing through ownership of its two pending U.S. applications under

3

Section 44(e) are invalid under U.S. law because these
applications are for marks that are the same as or
substantially similar to a mark that was used in connection
with a business that was confiscated by the Cuban government.

Opposer contends that its two pending applications filed
under Section 44(e) of the Trademark Act provide standing in
this proceeding because they were filed prior to the
application being opposed herein. Opposer also contends that,
pursuant to the law of the case doctrine, the Board
"implicitly decided the issue of standing in favor of opposer"
when it denied applicant's previous motion to dismiss under
Fed. R. Civ. P. 12(b)(6). Additionally, opposer asserts that
because it is a Luxembourg corporation, and not a "designated
national" under statutory law, it is not subject to the Cuban
embargo prohibitions found in U.S. law. Moreover, opposer
argues U.S. law expressly invests opposer with the right to
file and prosecute applications.

In reply, applicant argues that the Board never reached
the issue, nor entered a decision regarding opposer's standing
in this matter and, hence, the law of the case doctrine is
inapplicable. Applicant recounts that the Board merely denied
applicant's motion to dismiss following the submission of
opposer's amended notice of opposition and applicant's lack of
objection to the amended pleading. Also, applicant asserts
that opposer "hopes to out-fox this Board" into believing that

4

it does not fall within the purview of regulations implementing the Cuban embargo by claiming it is "...merely an innocent Luxembourg corporation...."

Applicant's contention with regard to the court's ruling in *Galleon V*[3] is essentially a claim that res judicata, in particular, issue preclusion, is appropriate in this case.

Under the doctrine of issue preclusion (collateral estoppel), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is normally conclusive in a subsequent suit involving the parties to the prior litigation. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017 (Fed. Cir. 1984). The underlying rationale is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again. *Mother's Restaurant Incorporated v. Mama's Pizza, Inc.*, 723 F.2d 1566, 221 USPQ 394 (Fed. Cir. 1983).

In order for issue preclusion to apply, the following requirements must be met: 1) the issue to be determined must

---

[3] *See also  Havana Club Holding, S.A. v. Galleon, S.A.*, 961 F. Supp. 498 (S.D.N.Y. 1997) ("*Galleon I*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302 (S.D.N.Y. 1997) ("*Galleon II*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 49 USPQ2d (BNA) 1296 (S.D.N.Y. 1998) ("*Galleon III*"); *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085 (S.D.N.Y. 1999) ("*Galleon IV*").

5

be identical to the issue involved in the prior litigation; 2) the issue must have been raised, litigated and actually adjudged in the prior action; 3) the determination of the issue must have been necessary and essential to the resulting judgment; and 4) the party precluded must have been fully represented in the prior action. *Polaroid Corp. v. C & E Vision Services Inc.*, 52 USPQ2d 1954 (TTAB 1999); *Mother's Restaurant, supra.*

   Issue preclusion is applicable in the instant proceeding. The ownership rights of opposer to the HAVANA CLUB mark was an issue actually litigated in *Galleon V.* This issue was raised, litigated and actually adjudged in that case and opposer's ownership rights to HAVANA CLUB were necessary and essential to the resulting judgment of the Second Circuit. Moreover, absent any reason to assume otherwise, we find that opposer was fully represented in the prior action. Accordingly, we adopt the following factual findings of the Second Circuit Court of Appeals regarding opposer's mark and assignments as recited in *Galleon V.*

   Prior to the Cuban revolution, Jose Arechabala, S.A. ("JASA"), a Cuban corporation formed by members of the Arechabala family, produced HAVANA CLUB rum and owned the trademark for use therewith. JASA exported the rum to the United States until 1960, when Fidel Castro's government

6

confiscated JASA's assets, including the HAVANA CLUB mark.[4]  In 1963, the United States government imposed an embargo on Cuba.

Beginning in 1972, Empresa Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban state-run organization established by the Cuban Ministry of Foreign Commerce, exported HAVANA CLUB rum to Eastern Europe and the Soviet Union.  This state enterprise registered the HAVANA CLUB and design mark with USPTO in 1976 under Registration No. 1,031,651.

Following an effort to reorganize, Cubaexport became Havana Rum & Liquors, S.A. ("HR&L") in 1993 and entered into a joint venture agreement with the French company Pernod Ricard, S.A., an international liquor distributor.  An agreement between these entities in 1993 created the opposer herein, Havana Club Holding, S.A. ("HCH") and Havana Club International, S.A. ("HCI").  HCH is a Luxembourg corporation and HCI is a joint-stock company organized under the laws of Cuba.

In 1994, Cubaexport assigned U.S. Registration No. 1,031,651 (for the mark HAVANA CLUB and design) to HR&L, and in a subsequent agreement HR&L assigned this registration to

---

[4] On October 15, 1960, Cuban Law No. 890 ("Law No. 890") was issued, expropriating for the Cuban government the physical assets, property, accounts and business records of JASA. See DX 573A ("Law No 890") ("Nationalization is ordered by the forced expropriation of all industrial and commercial corporations, as well as the factories, stores, warehouses and other assets and rights of same and the properties of the following natural persons or companies").

HCH.  After the reorganization, upon application by HCH in June 1996, the USPTO renewed the registration of the HAVANA CLUB mark for a term of ten years.  In 1995, the Office of Foreign Assets Control ("OFAC") of the U.S. Department of Treasury issued a license to Cubaexport approving the assignments from Cubaexport to HR&L and from HR&L to HCH (opposer).  These assignments were nullified, however, when OFAC revoked the license in 1997, pursuant to Section 515.805 of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515.[5]

The Second Circuit in *Galleon V* affirmed a holding of the lower court that HCH (opposer herein)[6] did not have standing to assert trademark rights in HAVANA CLUB against another rum producer because the specific license to assign the mark to

---

[5] On April 17, 1997, OFAC issued a Notice of Revocation stating that "as a result of facts and circumstances that have come to the attention of this Office which were not included in the application of October 5, 1995, License No. C-18147 . . . is hereby revoked retroactive to the date of issuance."  *See Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F. Supp. 302, 306 (S.D.N.Y. 1997).

[6] Opposer acknowledges that it was in the position as plaintiff in *Galleon* through the following statement:  "…the reason why Opposer amended its Notice of Opposition was to interpose paragraphs 4 and 5, thus providing a Section 44(e) basis for standing that is independent of Opposer's old registration of the HAVANA CLUB mark, whose assignment to Opposer was rejected in the Galleon decision."  Opp. Brief, p. 5.

8

opposer was nullified by OFAC's revocation of the license and because the Cuban embargo did not authorize the assignment.[7]

Turning to the issue of standing before us in this case, we note that standing is a threshold inquiry directed solely to establishing a plaintiff's interest in the proceeding.[8] The purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff is no more than an intermeddler. *American Vitamin Products, Inc. v. DowBrands, Inc.,* 22 USPQ2d 1313 (TTAB 1992). To establish standing, it must be shown that a plaintiff has a "real interest" in the outcome of a proceeding; that is, plaintiff must have a direct and personal stake in the outcome of the opposition. *See Ritchie v. Simpson,* 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.,* 823 F.2d 490, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987) ("it is in the pleading stage of the opposition proceeding that the opposer must plead facts

---

[7] *Galleon V,* 53 USPQ2d at 1611.  The Board notes that as a result of the *Galleon V* decision, the recordation of assignments of U.S. Registration No. 1,031,651 from Cubaexport to HRL and from HRL to HCH have been invalidated by the Commissioner for Trademarks. Current PTO records indicate that ownership of said registration remains with Cubaexport [i.e., the original registrant]. *See* Trademark Assignment Records, Reel 2398 Frame 0855.

[8] Section 13 of the Trademark Act, 15 U.S.C. § 1063, sets forth the foundation for establishing standing in an opposition proceeding, stating in relevant part:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register ... may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office.

9

sufficient only to show a personal interest in the outcome of the case beyond that of the general public").

As a preliminary matter, we determine that applicant is correct in stating that the Board never reached the issue of standing, nor entered a decision regarding opposer's standing in this matter. Hence, the law of the case doctrine is inapplicable.

The most common way to demonstrate standing is by proving ownership of a relevant U.S. trademark registration or a common law mark. Opposer's standing may be rooted in enforceable rights despite the existence of the strictures of the Cuban embargo and the relevant regulations surrounding its implementation.

The CACR, 31 C.F.R. Part 515, implements the U.S. embargo against Cuba.[9] Unless authorized, the embargo prohibits, with respect to property in which a Cuban national or entity has an interest, (1) "all dealings in, including, without limitation, transfers, withdrawals, or exportations of, any property . . . or evidences of ownership of property by any person subject to the jurisdiction of the United States"; (2) "all transfers outside the United States with regard to any property or

---

[9] The CACR was implemented in 1963 under Section 5(b) of the Trading with the Enemy Act of 1917, as amended, 50 U.S.C. App. 1-44.  The Cuban Liberty and Democratic Solidarity Act ("LIBERTAD Act"), Pub. L. No. 104-114, 110 Stat. 785 (1996), was passed by Congress in 1996, which subsequently codified the regulations implementing the embargo.

10

property interest subject to the jurisdiction of the United States"; and (3) "any transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions [above]." Id. at Section 515.201(b) and (c).  The embargo defines "property" to include trademarks.  *See* id. at Section 515.311.

In the *Galleon V* decision, the court found that the party who is opposer herein has no rights to U.S. Registration No. 1,031,651 for the mark HAVANA CLUB and design because the specific license granted to Cubaexport to assign the mark to opposer was nullified by the OFAC's revocation of the specific license and because CACR does not authorize the assignments. Thus, opposer cannot have standing based on that registration.

Similarly, opposer's standing based on claims of ownership of the Luxembourg registration for the mark and its two pending United States applications fails as a matter of law.  Opposer is explicitly barred by statute from bringing this opposition based upon a trademark that is the same or substantially similar to a trademark used in connection with a business that was confiscated by the Cuban government. We note that on October 21, 1998, Congress passed Section 211 of the Department of Commerce Appropriations Act 1999, as included in the Omnibus Consolidated and Emergency Supplemental Appropriations Act 1999 [hereinafter "Section 211].  See Pub. Law 105-277, 112 Stat. 2681.

This statute limits the registration and renewal of, and the assertion of trademark and trade name rights in, marks that were used in connection with property confiscated by the Cuban government.  The statute, in relevant part, provides:

> (2)(b) No U.S. court shall recognize, enforce or otherwise validate any assertion of treaty rights by a designated national or its successor-in-interest under sections 44(b) or (e) of the Trademark Act of 1946 (15 U.S.C. 1126(b) or (e)) for a mark, trade name or commercial name that is the same or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of such mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

Opposer argues that because the Board is not a "U.S. court," we are not bound by the restrictions of this provision.  We disagree.  While it is true that the Board is not a "U.S. court," it is also true that any judicial review of our decision will be to a "U.S. court."  See Section 21 of the Trademark Act.  If opposer would be barred from asserting its rights in that court, it would not have standing to assert them before the Board.  It would make no sense to ignore opposer's statutorily imposed inability to assert its rights in any judicial review and render a decision that opposer could not appeal or defend on the merits.

Opposer also contends that it does not fall within the parameters of subsection (b) of Section 211 because it is not by definition a "designated national or its successor-in-interest."  We again disagree.  Section 211 states:

12

**A211**
JA267

> The term "designated national" has the
> meaning given such term in section 515.305
> of title 31, Code of Federal Regulations, as
> in effect on September 9, 1998, and includes
> a national of any foreign country who is a
> successor-in-interest to a designated
> national.

We turn to 31 C.F.R. Section 515.305 which defines a

"designated national" as "Cuba and any national thereof

including any person who is a specially designated national."

A "specially designated national" is defined in 31 C.F.R.

Section 515.306 and includes "any partnership, association,

corporation or other organization which on or since [July 8,

1963][10] has been owned or controlled directly or indirectly by

the Government or authorities exercising control over a

designated foreign country or by any specially designated

national."

Opposer is a Luxembourg corporation, but it is 50% owned

by the Cuban entity HR&L, and therefore, is a "designated

national."[11]  Because it is half owned, and therefore

indirectly controlled, by a designated national, under Section

515.306, opposer is a specially designated national.  As a

specially designated national, opposer is validly deemed a

"designated national" for purposes of Section 211.

Consequently, because opposer's pending Section 44(e)

---

[10] This is the "effective date" established under 31 C.F.R.
Section 515.201(d).

13

applications are for the same or a substantially similar mark as the mark confiscated by the Cuban government and because opposer has not provided any evidence of any express consent by the original owner of the mark, opposer's claimed rights to the pending applications at issue cannot be recognized, enforced, or validated under U.S. law.  Opposer's rights to ownership of these marks in the United States, therefore, fail despite the fact that these applications were filed before the mark being opposed.[12]

Additionally, we note that under 31 C.F.R. Section 515.528,[13] designated nationals are precluded from filing and prosecuting any applications for blocked trademarks.[14]  Thus, opposer's contention that the Cuban embargo regulations

---

[11] We note that the relevant restrictions of the Cuban embargo apply to a Cuban national or entity regardless of the degree or amount of ownership interest involved.  31 C.F.R. § 515.201(b).

[12] This decision has no practical effect on these pending applications because they are not within the Board's jurisdiction.  Our consideration of these applications falls only within the context of determining the issue of standing in this opposition proceeding.

[13] 31 C.F.R. Section 515.528 reads, in relevant part:

   (a)  The following transactions by any person who is not a designated national are hereby authorized:

      (1)  The filing and prosecution of any application for a blocked foreign patent, trademark or copyright, or for the renewal thereof;
      (2)  The receipt of any blocked foreign patent, trademark, or copyright;
      (3)  The filing and prosecution of opposition or infringement proceedings with respect to any blocked foreign patent, trademark, or copyright, and the prosecution of a defense to any such proceedings....

14

**A213**
JA269

"expressly" invest opposer with the right to file and prosecute applications and "thus with the precise predicate for standing" in this proceeding also fails as a matter of law given opposer's status as a "designated national."

Although Section 13 of the Trademark Act[15] establishes a broad class of persons who may be considered proper opposers, we find that no material issue exists as to whether opposer falls within said class as a person capable of filing an opposition in this instance.  With regard to opposer's claim, under Section 2(e)(3) of the Trademark Act, that applicant's mark "HAVANAS AND BANANAS" is primarily geographically deceptively misdescriptive of rum drinks not originating from Cuba, it is clear that opposer has no standing to pursue this claim just as it had no standing to pursue its false designation of origin claim under Section 43(a) in *Galleon V.* The Second Circuit affirmed the District Court's holding that opposer had no standing because the Cuban embargo prevented opposer from selling its rum in the United States, and thereby

---

[14] 31 C.F.R. Section 515.528 states that the term "blocked foreign patent, trademark, or copyright" as used in the section means "any patent, petty patent, design patent, trademark or copyright issued by any foreign country in which a designated foreign country or national thereof has an interest, including any patent, petty patent, design patent, trademark, or copyright issued by a designated foreign country."

[15] Section 13 of the Act, which provides:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor....

15

from suffering commercial injury because of Bacardi's actions; and quoted the District Court, as saying:  "Any competitive injury plaintiffs will suffer based upon their intent to enter the U.S. market once the embargo is lifted is simply too remote and uncertain to provide them with standing."  *Galleon V* at 122; *cf. The Joint Stock Society v. UDV North America*, 266 F.3d 164, 60 USPQ2d 1258 (3rd Cir. 2001).

As to its claim of dilution, the absence of a proprietary right to the HAVANA CLUB trademark weighs against standing. Section 43(c)(1) states that "[t]he owner of a famous trademark shall be entitled...to obtain such...relief as is provided in this subsection."  Because opposer has no ownership rights to the mark, any attempt to calculate the dilution to said mark is unwarranted.

Similarly, with regard to the its claim involving Section 2(a), opposer's attempts to assert that applicant's use of the HAVANAS AND BANANAS mark may disparage or falsely suggest a connection with opposer's persona or identity is ill founded. Opposer's lack of proprietary rights to the HAVANA CLUB mark having thus been established, we are aware of no reason why the creation of a name or identity brought about by the mere addition of an entity designator (Holding, S.A.) to a trademark owned by another should, in effect, confer standing on opposer in this instance.

16

**A215**
JA271

Opposer cannot demonstrate any real interest in the outcome of this proceeding and lacks standing to assert the claims alleged in this proceeding.  Accordingly, applicant's motion for summary judgment is granted and the opposition is dismissed.[16]

---

[16] In view of our finding regarding opposer's lack of standing we need not address the issues with respect to opposer's substantive claims.

17

**A216**
JA272



ROPES & GRAY LLP

**FACSIMILE TRANSMISSION**

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
| --- | --- | --- | --- |
| Commissioner for Trademarks | Trademark Assistance Center 600 Dulany Street, Madison East Concourse Level, Room C55 Alexandria, VA 22314 | 571.273.8950 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
| --- | --- | --- | --- |
| Vincent N. Palladino | June 29, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
| --- | --- | --- | --- |
| 001214.0001 | HAVANA CLUB & Design | | 5 |

MESSAGE

3178364_1

s communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON DC

**PAGE 1/5 * RCVD AT 6/29/2006 3:51:50 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-1/8 * DNIS:2738950 * CSID: * DURATION (mm-ss):02-08**

 FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

June 29, 2006                          Vincent N. Palladino
                                       212-596-9070
                                       Vincent.Palladino@ropesgray.com

**BY FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Trademark Assistance Center
600 Dulany Street, Madison East
Concourse Level, Room C55
Alexandria, Virginia  22314

<u>HAVANA CLUB & Design Registration No. 1,031,651</u>

Dear Sir/Madam:

This letter responds to William R. Golden's June 27, 2006 letter. Bacardi's latest attempt to litigate Cubaexport's right to renew the HAVANA CLUB Registration *confirms* that the registration should be renewed for the reasons set forth in Cubaexport's June 14, 2006 letter.

Bacardi does not dispute that Cubaexport has complied with the renewal requirements of Lanham Act § 9 and the PTO's implementing regulations by submitting a complete application and remitting the required renewal fee within the statutory renewal period. On the contrary, Bacardi says that the PTO *must apply the CACR in order to conclude* that the registration may not be renewed. However, the applicability of the CACR to the PTO's statutory duty to renew registrations is precisely the issue the PTO should *not* decide. *See* Cubaexport's June 14, 2006 Letter pages 2-3.

Bacardi's reliance on *In re Michael Stern & Company, Limited*, 199 U.S.P.Q. 382 (Comm'r. 1978), is entirely misplaced. In that case the Commissioner ruled that the registration expired because the renewal applicant did not *remit* within the statutory renewal period the *fee required by Lanham Act § 9 and the PTO's implementing regulations*. Here, in accordance with Lanham Act § 9 and the PTO's regulations, Cubaexport remitted the fee when it filed its renewal application within the statutory renewal period on December 13, 2005. There is nothing *in Lanham Act § 9 or the PTO's regulations* that prohibits the PTO from *accepting* that timely payment or permits the PTO to refuse it.

It is only by looking *beyond* Lanham Act § 9 and the PTO's regulations to the CACR that Bacardi can claim the fee should not be accepted. By endorsing Bacardi's intervention in the *ex parte* renewal process on such grounds, the PTO would set an unfortunate precedent. Third parties, eager to see a registration expire to further their own commercial

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 29, 2006

interests, could insist that the PTO hear any number of objections to the alleged insufficiency of a renewal applicant's submission, including supposed conflicts with other federal laws, e.g., the renewal applicant allegedly must pay the fee money to the federal government pursuant to an IRS decree or to an alleged creditor in a federal bankruptcy proceeding including the third party itself.

That is a road the PTO has avoided and should continue to avoid. *See, e.g., Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 *46, *63 (T.T.A.B. 2004) (rejecting Bacardi's construction of PTO renewal regulations and argument that violation of the CACR required cancellation of registration); *Time Warner Entertainment Co.* v. *Jones*, 65 USPQ2d 1651, 1653 n.4 (T.T.A.B. 2002) (declining to hear antitrust defense in opposition because "the Board has no jurisdiction over such issues"). In doing so, the PTO is not "ignor[ing] applicable federal law" as Bacardi contends. It is properly declining to consider whether other laws outside its area of expertise are applicable to the execution of its statutory mandate.

There is no reason to depart from this practice and permit Bacardi to intervene in the renewal process because Bacardi is supposedly JASA's successor in interest and has filed its own application. "There is no provision in the Trademark Act or Rules of Practice for intercession by a third party in an *ex parte* matter." *See* TMEP § 1705.01. And the only thing that makes "[t]his an unusual renewal process" is Bacardi's decision to violate the statute and break the rules. Like any other party whose application is barred by a registration, Bacardi's remedy is cancellation of the registration on the grounds set forth in the Lanham Act. Bacardi's unsuccessful pursuit of that remedy gives it no standing to intervene in the *ex parte* renewal process.

Bacardi's letter highlights why the PTO should not engage in that exercise. Because Bacardi wants to eliminate the HAVANA CLUB Registration as a bar to its own pending application, it says the PTO must assume the role of a court, consider a host of complex issues that the PTO is not equipped to decide and resolve them in Bacardi's favor. These include Bacardi's contentions that:

- CACR § 515.201(b) precludes the PTO from applying Lanham Act § 9 and its own regulations. CACR § 515.201(b) says nothing of the kind. Moreover, Bacardi's unsupported reading of that section of the CACR is plainly inconsistent with CACR § 515.527(a)(1), which provides for the renewal of registrations. If as Bacardi's claims CACR § 515.201(b) requires every renewal applicant to obtain a specific OFAC license, the general license provisions of CACR § 515.527(a)(1) would be read out of the CACR.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 29, 2006

- Applying CACR § 515.527(a)(2) to invalidate the *1976* HAVANA CLUB Registration would not be a retroactive application because it would not invalidate the 1996 renewal of the registration. This non-sequitur – Bacardi's only response to the obviously retroactive effect of applying a 1999 regulation to an asset created in 1976 – is no response at all.

- The PTO should not read the CACR and the Lanham Act in a way that reconciles them. Instead, it should conclude – in the absence of any support whatsoever – that CACR § 515.527(a)(2) is "fully effective to add conditions to acts regulated by the Lanham Act" when of course Lanham Act § 9 and the PTO's implementing regulations remain unchanged.

- The PTO should refuse to renew the HAVANA CLUB Registration although Bacardi concedes that the applicability of the CACR to *renewal* of a registration has *not* hitherto been decided by a court because "[t]his is the first time Cubaexport has attempted to renew the HAVANA CLUB Registration since ... 31 C.F.R. § 515.527(a)(2) was adopted."

Bacardi also says the PTO may not renew the HAVANA CLUB Registration under CACR § 515.527(a)(1) because only CACR § 515.527(a)(2) applies to the registration. Even if the PTO could make that determination, Bacardi has failed to show why it should. Among the reasons it should *not* are: (1) JASA's consent to renewal under CACR § 515.527(a)(2) is not required because JASA relinquished whatever claim it had to the HAVANA CLUB mark when it purported to assign it to Bacardi in 1997; and (2) Bacardi's consent is not required because (a) Bacardi has not proven that it acquired any trademark rights in the primarily geographically deceptively misdescriptive term HAVANA CLUB as JASA's alleged successor in interest and (b) JASA owned no trademark rights in HAVANA CLUB when it purported to assign them in 1997 – decades after it stopped using HAVANA CLUB in 1960 and allowed its Supplemental Registrations of HAVANA CLUB to expire in 1973. Indeed, as the PTO well knows, those registrations were not evidence that JASA had any valid trademark rights in HAVANA CLUB even *before* they expired because a Supplemental Registration is evidence that the mark has "not ... acquired trademark significance." 2 *McCarthy on Trademarks* § 19:32 at 19-124 (4th ed. 2006).[1]

---

[1] The decision in *Havana Club Holding S.A.* v. *Jimmy Buffett*, Opposition No. 91116754 (T.T.A.B. 2003), including its reliance on the New York HAVANA CLUB litigation, plainly does not show that Cubaexport needs Bacardi's consent. The case was a contested, not an *ex parte*, matter. The decision is not citable as precedent. Cubaexport was not a party to either the opposition or the New York litigation and, therefore, is not bound by them. And the opposition did not conclude that Bacardi has any rights in HAVANA CLUB as JASA's alleged successor or address the statutory renewal process in which Cubaexport is now engaged. On the contrary, the Board specifically stated that its decision concerned only "the issue of [Havana Club Holding S.A.'s] standing in this opposition proceeding." Page 14, note 12. Nor does it matter that JASA did not consent to Cubaexport's renewal of the registration. JASA has no rights in HAVANA CLUB. And its failure to give Cubaexport consent does not mean Cubaexport must obtain Bacardi's consent when Bacardi has no rights in HAVANA CLUB.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 29, 2006

      Finally, Bacardi contends that the PTO must accept its unsupported assertion that one purpose of the CACR "is to prevent the Cuban government from ... maintaining U.S. property that it could not ... have acquired but for the confiscation of property from its legitimate owners", conclude that this alleged purpose applies to the HAVANA CLUB Registration, conclude that Bacardi has standing to invoke the CACR to serve its own interests and decide that effectuating that purpose outweighs the CACR's undisputed purpose to *preserve* Cuban assets including trademark registrations. The PTO should decline Bacardi's invitation to promote Bacardi's commercial interest in destroying the HAVANA CLUB Registration in the face of the CACR's purpose to preserve Cuban assets. *Cf. De Arellano* v. *Weinberger*, 788 F.2d 762, 746 (D. C. Cir. 1986) (where a decision "may seriously embarrass the accomplishment of important government ends, a court ... acts with caution and only upon a clear showing that its intervention is necessary").

      By Bacardi's own admission, the PTO can refuse to renew the HAVANA CLUB Registration only if, taking on the role of a court, it applies the CACR, resolves numerous issues outside its area of expertise and does so in Bacardi's favor. Bacardi has no standing to ask the PTO to do this and gives no reason why the PTO should other than Bacardi's own desire to be rid of the HAVANA CLUB Registration. Even if the PTO decided to head down this road as it has wisely declined to do until now, it should rule *against* Bacardi for the reasons discussed above.

      The PTO should refuse Bacardi's invitation to set an unfortunate precedent, which will open the door to unwanted and unauthorized third party intervention in *ex parte* proceedings, and should carry out it statutory mandate by renewing Registration No. 1,031,651.

                Respectfully submitted,

                Vincent N. Palladino

VNP:emf

cc:    Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
       Ms. Liz Farrow, OFAC
       William R. Golden, Jr., Esq.
       (Each Via Facsimile and FedEx)



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

June 29, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**BY FACSIMILE/CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
Trademark Assistance Center
600 Dulany Street, Madison East
Concourse Level, Room C55
Alexandria, Virginia 22314

HAVANA CLUB & Design Registration No. 1,031,651

06-30-2006
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #34

Dear Sir/Madam:

This letter responds to William R. Golden's June 27, 2006 letter. Bacardi's latest attempt to litigate Cubaexport's right to renew the HAVANA CLUB Registration *confirms* that the registration should be renewed for the reasons set forth in Cubaexport's June 14, 2006 letter.

Bacardi does not dispute that Cubaexport has complied with the renewal requirements of Lanham Act § 9 and the PTO's implementing regulations by submitting a complete application and remitting the required renewal fee within the statutory renewal period. On the contrary, Bacardi says that the PTO *must apply the CACR in order to conclude* that the registration may not be renewed. However, the applicability of the CACR to the PTO's statutory duty to renew registrations is precisely the issue the PTO should *not* decide. *See* Cubaexport's June 14, 2006 Letter pages 2-3.

Bacardi's reliance on *In re Michael Stern & Company, Limited*, 199 U.S.P.Q. 382 (Comm'r. 1978), is entirely misplaced. In that case the Commissioner ruled that the registration expired because the renewal applicant did not *remit* within the statutory renewal period the *fee required by Lanham Act § 9 and the PTO's implementing regulations*. Here, in accordance with Lanham Act § 9 and the PTO's regulations, Cubaexport remitted the fee when it filed its renewal application within the statutory renewal period on December 13, 2005. There is nothing *in Lanham Act § 9 or the PTO's regulations* that prohibits the PTO from *accepting* that timely payment or permits the PTO to refuse it.

It is only by looking *beyond* Lanham Act § 9 and the PTO's regulations to the CACR that Bacardi can claim the fee should not be accepted. By endorsing Bacardi's intervention in the *ex parte* renewal process on such grounds, the PTO would set an unfortunate precedent. Third parties, eager to see a registration expire to further their own commercial

ROPES & GRAY LLP

Commissioner for Trademarks
Page 2
June 29, 2006

interests, could insist that the PTO hear any number of objections to the alleged insufficiency of a renewal applicant's submission, including supposed conflicts with other federal laws, e.g., the renewal applicant allegedly must pay the fee money to the federal government pursuant to an IRS decree or to an alleged creditor in a federal bankruptcy proceeding including the third party itself.

That is a road the PTO has avoided and should continue to avoid. *See, e.g., Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 *46, *63 (T.T.A.B. 2004) (rejecting Bacardi's construction of PTO renewal regulations and argument that violation of the CACR required cancellation of registration); *Time Warner Entertainment Co.* v. *Jones*, 65 USPQ2d 1651, 1653 n.4 (T.T.A.B. 2002) (declining to hear antitrust defense in opposition because "the Board has no jurisdiction over such issues"). In doing so, the PTO is not "ignor[ing] applicable federal law" as Bacardi contends. It is properly declining to consider whether other laws outside its area of expertise are applicable to the execution of its statutory mandate.

There is no reason to depart from this practice and permit Bacardi to intervene in the renewal process because Bacardi is supposedly JASA's successor in interest and has filed its own application. "There is no provision in the Trademark Act or Rules of Practice for intercession by a third party in an *ex parte* matter." *See* TMEP § 1705.01. And the only thing that makes "[t]his an unusual renewal process" is Bacardi's decision to violate the statute and break the rules. Like any other party whose application is barred by a registration, Bacardi's remedy is cancellation of the registration on the grounds set forth in the Lanham Act. Bacardi's unsuccessful pursuit of that remedy gives it no standing to intervene in the *ex parte* renewal process.

Bacardi's letter highlights why the PTO should not engage in that exercise. Because Bacardi wants to eliminate the HAVANA CLUB Registration as a bar to its own pending application, it says the PTO must assume the role of a court, consider a host of complex issues that the PTO is not equipped to decide and resolve them in Bacardi's favor. These include Bacardi's contentions that:

- CACR § 515.201(b) precludes the PTO from applying Lanham Act § 9 and its own regulations. CACR § 515.201(b) says nothing of the kind. Moreover, Bacardi's unsupported reading of that section of the CACR is plainly inconsistent with CACR § 515.527(a)(1), which provides for the renewal of registrations. If as Bacardi's claims CACR § 515.201(b) requires every renewal applicant to obtain a specific OFAC license, the general license provisions of CACR § 515.527(a)(1) would be read out of the CACR.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 3
June 29, 2006

- Applying CACR § 515.527(a)(2) to invalidate the *1976* HAVANA CLUB Registration would not be a retroactive application because it would not invalidate the 1996 renewal of the registration. This non-sequitur – Bacardi's only response to the obviously retroactive effect of applying a 1999 regulation to an asset created in 1976 – is no response at all.

- The PTO should not read the CACR and the Lanham Act in a way that reconciles them. Instead, it should conclude – in the absence of any support whatsoever – that CACR § 515.527(a)(2) is "fully effective to add conditions to acts regulated by the Lanham Act" when of course Lanham Act § 9 and the PTO's implementing regulations remain unchanged.

- The PTO should refuse to renew the HAVANA CLUB Registration although Bacardi concedes that the applicability of the CACR to *renewal* of a registration has *not* hitherto been decided by a court because "[t]his is the first time Cubaexport has attempted to renew the HAVANA CLUB Registration since ... 31 C.F.R. § 515.527(a)(2) was adopted."

Bacardi also says the PTO may not renew the HAVANA CLUB Registration under CACR § 515.527(a)(1) because only CACR § 515.527(a)(2) applies to the registration. Even if the PTO could make that determination, Bacardi has failed to show why it should. Among the reasons it should *not* are: (1) JASA's consent to renewal under CACR § 515.527(a)(2) is not required because JASA relinquished whatever claim it had to the HAVANA CLUB mark when it purported to assign it to Bacardi in 1997; and (2) Bacardi's consent is not required because (a) Bacardi has not proven that it acquired any trademark rights in the primarily geographically deceptively misdescriptive term HAVANA CLUB as JASA's alleged successor in interest and (b) JASA owned no trademark rights in HAVANA CLUB when it purported to assign them in 1997 – decades after it stopped using HAVANA CLUB in 1960 and allowed its Supplemental Registrations of HAVANA CLUB to expire in 1973. Indeed, as the PTO well knows, those registrations were not evidence that JASA had any valid trademark rights in HAVANA CLUB even *before* they expired because a Supplemental Registration is evidence that the mark has "not ... acquired trademark significance." 2 *McCarthy on Trademarks* § 19:32 at 19-124 (4th ed. 2006).[1]

---

[1] The decision in *Havana Club Holding S.A.* v. *Jimmy Buffett*, Opposition No. 91116754 (T.T.A.B. 2003), including its reliance on the New York HAVANA CLUB litigation, plainly does not show that Cubaexport needs Bacardi's consent. The case was a contested, not an *ex parte*, matter. The decision is not citable as precedent. Cubaexport was not a party to either the opposition or the New York litigation and, therefore, is not bound by them. And the opposition did not conclude that Bacardi has any rights in HAVANA CLUB as JASA's alleged successor or address the statutory renewal process in which Cubaexport is now engaged. On the contrary, the Board specifically stated that its decision concerned only "the issue of [Havana Club Holding S.A.'s] standing in this opposition proceeding." Page 14, note 12. Nor does it matter that JASA did not consent to Cubaexport's renewal of the registration. JASA has no rights in HAVANA CLUB. And its failure to give Cubaexport consent does not mean Cubaexport must obtain Bacardi's consent when Bacardi has no rights in HAVANA CLUB.

ROPES & GRAY LLP

Commissioner for Trademarks
Page 4
June 29, 2006

       Finally, Bacardi contends that the PTO must accept its unsupported assertion that one purpose of the CACR "is to prevent the Cuban government from ... maintaining U.S. property that it could not ... have acquired but for the confiscation of property from its legitimate owners", conclude that this alleged purpose applies to the HAVANA CLUB Registration, conclude that Bacardi has standing to invoke the CACR to serve its own interests and decide that effectuating that purpose outweighs the CACR's undisputed purpose to *preserve* Cuban assets including trademark registrations. The PTO should decline Bacardi's invitation to promote Bacardi's commercial interest in destroying the HAVANA CLUB Registration in the face of the CACR's purpose to preserve Cuban assets. *Cf. De Arellano* v. *Weinberger*, 788 F.2d 762, 746 (D. C. Cir. 1986) (where a decision "may seriously embarrass the accomplishment of important government ends, a court ... acts with caution and only upon a clear showing that its intervention is necessary").

       By Bacardi's own admission, the PTO can refuse to renew the HAVANA CLUB Registration only if, taking on the role of a court, it applies the CACR, resolves numerous issues outside its area of expertise and does so in Bacardi's favor. Bacardi has no standing to ask the PTO to do this and gives no reason why the PTO should other than Bacardi's own desire to be rid of the HAVANA CLUB Registration. Even if the PTO decided to head down this road as it has wisely declined to do until now, it should rule *against* Bacardi for the reasons discussed above.

       The PTO should refuse Bacardi's invitation to set an unfortunate precedent, which will open the door to unwanted and unauthorized third party intervention in *ex parte* proceedings, and should carry out it statutory mandate by renewing Registration No. 1,031,651.

       Respectfully submitted,

       Vincent N. Palladino

VNP:emf

cc:   Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
     Ms. Liz Farrow, OFAC
     William R. Golden, Jr., Esq.
     (Each Via Facsimile and FedEx)

JUL 05 2006  4:55 PM FR KDW LLP      212 808 7897 TO *200435200249157 P.01

## KELLEY
### DRYE



2006 JUL -5 PM 4: 57

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Commissioner for Trademarks |
| **FIRM** | United States Patent and Trademark Office |
| **CITY** | Alexandria, VA |
| **FAX** | (571) 273-8950 |
| **PHONE** | |
| **NO. OF PAGES** | 3 (including this page) |
| **DATE** | July 5, 2006 |

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK 10178
(212) 808-7800
FAX (212) 808-7897

**MESSAGE:**

| | |
|---|---|
| **FROM** | William R. Golden Jr. |
| **PHONE** | (212) 808-7992 |
| **E-MAIL** | wgolden@kelleydrye.com |
| **TIMEKEEPER ID** | 00070 |
| **CLIENT NO.** | 004352.0024 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
BRUSSELS

AFFILIATE OFFICES
JAKARTA
MUMBAI

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

NY01/GOLDW/1120174.1

PAGE 1/3 * RCVD AT 7/5/2006 4:57:42 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-5/21 * DNIS:2738950 * CSID:212 808 7897 * DURATION (mm-ss):00-56

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

IOI PARK AVENUE

NEW YORK, NEW YORK IOI78

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM
HONG KONG

AFFILIATE OFFICES
BANGKOK, THAILAND
JAKARTA, INDONESIA
MUMBAI, INDIA
TOKYO, JAPAN

FACSIMILE
(212) 808-7897
www.kelleydrye.com
DIRECT LINE: (212) 808-7992
EMAIL: wgolden@kelleydrye.com

July 5, 2006

VIA FACSIMILE (571-273-8950) AND EXPRESS MAIL

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia 22314

Re:   HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

Bacardi is constrained to respond to the June 29 letter from counsel for Cubaexport, as Bacardi's position is misstated and the effect of the Cuban Asset Control Regulations ("CACR") is either misportrayed or misunderstood.

Plainly, Bacardi *does* dispute that the renewal requirements of Section 9 of the Lanham Act have been met. The Office of Foreign Assets Control ("OFAC") of the Treasury Department has addressed the purported December 13, 2005 HAVANA CLUB renewal, at Cubaexport's own insistence, and has advised both Cubaexport and the Commissioner for Trademarks of its determination that the renewal was not authorized by the license to Ropes & Gray to be paid for fees incurred in the federal court litigation. Without a specific OFAC license, the CACR rendered Cubaexport's renewal attempt void and of no legal force and effect.

There can be no doubt on this point since OFAC's letter clearly indicates that Cubaexport's only recourse was "to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO" (April 6, 2006 letter from Barbara C. Hammerle to Vincent N. Palladino). This is precisely what Cubaexport has done, conceding by its actions the need for a specific license from OFAC.

NY01/GOLDW/1119896.2

JUL 05 2006  4:56 PM FR KDW LLP        212 808 7897 TO *200435200249157 P.03

### KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
July 5, 2006
Page Two

 The continued badgering of the PTO to act on an invalid application verges on a deliberate attempt to evade the CACR.

 Sincerely,

 *William R. Golden Jr.*

 William R. Golden, Jr.


cc:  Vincent N. Palladino, Esq.
  David W. Mills, OFAC
  Matthew Tuchband, Office of Legal Counsel, OFAC
  Clara David, Licensing Division, OFAC

NY01/GOLDW/1119896.2



7-7-06           TM

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

—————

BRUSSELS, BELGIUM

HONG KONG

—————

AFFILIATE OFFICES

BANGKOK, THAILAND

JAKARTA, INDONESIA

MUMBAI, INDIA

TOKYO, JAPAN

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

July 5, 2006

**VIA FACSIMILE (571-273-8950) AND EXPRESS MAIL**

Commissioner for Trademarks
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, Virginia  22314



07-07-2006

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #30

Re:  HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Sir/Madam:

Bacardi is constrained to respond to the June 29 letter from counsel for Cubaexport, as Bacardi's position is misstated and the effect of the Cuban Asset Control Regulations ("CACR") is either misportrayed or misunderstood.

Plainly, Bacardi *does* dispute that the renewal requirements of Section 9 of the Lanham Act have been met.  The Office of Foreign Assets Control ("OFAC") of the Treasury Department has addressed the purported December 13, 2005 HAVANA CLUB renewal, at Cubaexport's own insistence, and has advised both Cubaexport and the Commissioner for Trademarks of its determination that the renewal was not authorized by the license to Ropes & Gray to be paid for fees incurred in the federal court litigation.  Without a specific OFAC license, the CACR rendered Cubaexport's renewal attempt void and of no legal force and effect.

There can be no doubt on this point since OFAC's letter clearly indicates that Cubaexport's only recourse was "to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO" (April 6, 2006 letter from Barbara C. Hammerle to Vincent N. Palladino).  This is precisely what Cubaexport has done, conceding by its actions the need for a specific license from OFAC.

NY01/GOLDW/1119896.2

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
July 5, 2006
Page Two

     The continued badgering of the PTO to act on an invalid application verges on a deliberate attempt to evade the CACR.

                    Sincerely,

                    William R. Golden, Jr.

cc:    Vincent N. Palladino, Esq.
       David W. Mills, OFAC
       Matthew Tuchband, Office of Legal Counsel, OFAC
       Clara David, Licensing Division, OFAC

NY01/GOLDW/1119896.2



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

Re:  Trademark Registration of          :
  Empresa Cubana Exportadora de          :
  Alimentos y Productos Varios  d/b/a    :
  Cubaexport                             :
Registration No.  1,031,651             :          On Petition
Registered:  January 27, 1976           :
Mark:  HAVANA CLUB and Design           :
Petition Filed: January 25, 2006        :


Bacardi & Company Limited and Bacardi USA, Inc. (collectively, petitioner) have petitioned the Director of the United States Patent and Trademark Office (Director) to deny renewal of the subject registration.  The Director has authority to review the request under 37 C.F.R. §2.146.  The petition is denied.

**FACTS**

The above-mentioned registration issued on January 27, 1976.  On December 14, 2005, Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport (registrant) filed a combined Section 8 declaration of excusable nonuse and Section 9 renewal application (combined filing) pursuant to 15 U.S.C. §§1058 and 1059.  This petition was filed on January 25, 2006.[1]

**ANALYSIS**

Petitioner seeks to introduce documents and information for the Director's consideration in regard to the combined filing submitted by the registrant.  The review of a combined filing is an *ex parte* matter.  Neither the Trademark Act nor the Trademark Rules of Practice provide for a third party to intervene in an *ex parte* matter.  Therefore, petitions filed by third parties to review actions taken in *ex parte* matters are generally denied.  *Trademark Manual of Examining Procedure* (TMEP) §1705.01.

Here, petitioner seeks to involve itself in the Director's review of a combined filing in connection with a registration of which petitioner is not the owner.  The Director will not consider the information or documents submitted with this petition because petitioner is a third party in this *ex parte* matter.

**DECISION**

The petition is denied.

---

[1] On July 19, 1994, petitioner instituted cancellation proceedings regarding the subject registration before the Trademark Trial and Appeal Board (TTAB).  While the proceedings were under way, the subject registration was granted a first renewal, on June 18, 1996, for a term of ten years.  In a decision issued January 29, 2004, the TTAB dismissed the petition to cancel.  On March 29, 2004, petitioner commenced a civil action in the United States District Court for the District of Columbia (District Court) seeking review of the TTAB decision.  The District Court has not yet issued a decision in this matter.

Sharon R. Marsh
Deputy Commissioner
  for Trademark Examination Policy

SRM:CPC

Date:

Attorney for Petitioner:

William R. Golden, Jr.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178

Attorney for Registrant:

Vincent N. Palladino
Fish & Neave IP Group
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY  10020-1104

-2-

**UNITED STATES PATENT AND TRADEMARK OFFICE**

REGISTRATION NO:     1,031,651

REGISTRANT:  EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

CORRESPONDENT ADDRESS:
    HERBERT SCHWARTZ
    ROPES & GRAY LLP
    1251 AVENUE OF THE AMERICAS
    NEW YORK, NY 10020

MARK:    HAVANA CLUB

CORRESPONDENT'S REFERENCE/DOCKET NO :  N/A

CORRESPONDENT EMAIL ADDRESS:

July 20, 2006

**\*1031651\***

RETURN ADDRESS:
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

Please provide in all correspondence:

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registration Division.
4. Your telephone number and e-mail address.

**POST REGISTRATION OFFICE ACTION**

Registration Number  1,031,651

The Sections 8 & 9 combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The owner must submit the filing fee of $500 for the Sections 8 & 9 combined filing.  37 C.F.R. §§ 2.161(d)(1) and 2.183(b).  The fee for filing a Section 8 & 9 combined filing is $500 per class.  37 C.F.R. §2.6.

The combined filing included authorization to charge the fee to the deposit account of Ropes and Gray LLP, attorney for registrant.  As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC")  on March 4, 2005.  However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee.  Therefore, the required fee for the combined filing has not been paid.[1]

It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration.  Registrant is required to notify the USPTO whether that specific license has been granted or denied.

RESPONSE TIME DEADLINE:  A complete response must be received within 6 months from the mailing date of this Office action.  The owner must respond by notifying the USPTO whether the specific license application filed on April 7, 2006 has been granted or denied.  If the owner informs the USPTO that the specific license has been granted, the fee or authorization to charge the fee must accompany the response.  If the owner informs the USPTO that the specific license has been denied, or if OFAC notifies the USPTO that the specific license has been denied, the registration will be deemed cancelled/expired.

DEFICIENCY SURCHARGE REQUIRED:  The owner also must submit a $100 deficiency surcharge with its response to this Office action.  37 C.F.R. §§2.6, 2.164(a)(1) and 2.185(a)(1); TMEP §1604.19.  **PLEASE NOTE THE ENCLOSED FEE SHEET WHICH SHOULD BE RETURNED ALONG WITH THE RESPONSE AND FEE.**

Sharon Granata
/Sharon Granata/
Trademark Specialist
Post Registration Division
Ph:  (571) 272-9167

**A233**
JA289

Direct Fax - 571-273-9167
sharon.granata@uspto.g

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's  Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

## PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

<u>Registration No.  1031651</u>

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____  Section 8 affidavit filing fee (fee code 372)

$_____  Section 8 affidavit grace period surcharge (fee code 381)

***$100.00    Section 8 affidavit deficiency surcharge (fee code 382)***

$_____  Section 9 renewal application filing fee (fee code 365)

$_____  Section 9 renewal application grace period surcharge (fee code 366)

$_____  Section 9 renewal application deficiency surcharge (fee code 380)

$_____  Section 15 affidavit filing fee (fee code 373)

$_____  Section 7 correction/amendment filing fee (fee code 369)

$_____  Section 7 issue new certificate of registration filing fee (fee code 368)

$_____  Deficiency surcharge—if response filed after _____ (fee code 382)

Date

$_____  Deficiency surcharge—if response filed after _____ (fee code 380)

Date

**PLEASE NOTE THAT A FEE OF $_____  WAS PREVIOUSLY REFUNDED BECAUSE THE FEE SUBMITTED WAS INSUFFICIENT TO COVER THE FILING FEE REQUIREMENT.  ALL FEES LESS THAN OR IN EXCESS OF THE AMOUNT PER FEE CODE ARE <u>ELECTRONICALLY</u> REFUNDED OR CREDITED TO A DEPOSIT ACCOUNT OR BANK CHECKING ACCOUNT.**

---

[1] The fee charged on December 21, 2005, for the combined filing will be refunded since it was not properly authorized.

Aug-01-06   02:52pm   From-ROPES & GRAY LLP                    +212 596 9096        T-678   P.001/011   F-174



ROPES & GRAY LLP

FACSIMILE TRANSMISSION

| TO | COMPANY/FIRM | RECIPIENT FAX | RECIPIENT PHONE |
|---|---|---|---|
| Commissioner for Trademarks Post Registration Division | Trademark Assistance Center 600 Dulany Street, Madison East Concourse Level, Room C55 Alexandria, VA 22314 | 571.273.9167 | |

| SENDER | DATE | SENDER'S FAX | SENDER'S PHONE |
|---|---|---|---|
| Vincent N. Palladino | August 1, 2006 | 646.728.2671 | 212.596.9070 |

| CLIENT | RE: | TIME | PAGES (INCLUDING COVER) |
|---|---|---|---|
| 001214.0001 | HAVANA CLUB & Design | | 11 |

MESSAGE

s communication is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that the unauthorized dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. If not completely received, please call back at 212.596.9300 as soon as possible.

1251 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 TEL 212.596.9000 FAX 212.596.9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON DC

PAGE 1/11 * RCVD AT 8/1/2006 2:54:13 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-5/22 * DNIS:2739167 * CSID:+2125969096 * DURATION (mm-ss):01-52

Aug-01-06   02:52pm   From-ROPES & GRAY LLP                +212 596 9096        T-678   P.002/011   F-174

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
POST REGISTRATION DIVISION

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |
| Specialist | : | Sharon Granata |

**VIA FACSIMILE: (571) 273-9167**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

**RESPONSE TO OFFICE ACTION**

This responds to the July 20, 2006 Office Action requiring registrant Cubaexport to "notify the USPTO whether ... [the] specific license [Cubaexport sought from OFAC] has been granted or denied." On July 28, 2006, OFAC declined to grant the specific license. A copy of the decision, which was also sent to the Commissioner for Trademarks, is enclosed.

Cubaexport respectfully requests that the HAVANA CLUB Registration be renewed notwithstanding OFAC's decision not to grant Cubaexport a specific license. First, Cubaexport filed a timely and complete renewal application together with the renewal fee prescribed by the PTO regulations that implement the Lanham Act. Accordingly, the PTO should carry out its statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a registrant submits a renewal application and tenders the prescribed renewal fee. Second, the PTO should not look beyond the Lanham Act and its own implementing regulations. Third, even

PAGE 2/11 * RCVD AT 8/1/2006 2:54:13 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-5/22 * DNIS:2739167 * CSID:+2125969096 * DURATION (mm-ss):01-52

Reg. No. 1,031,651
Post Registration
Sharon Granata

if the PTO were to take into account the Cuban Asset Control Regulations ("the CACR") and

OFAC's decision not to grant a specific license, it should not conclude in the absence of a Court

decision that the CACR prohibit renewal of the registration.

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits

within the statutory renewal period "the prescribed fee and ... a written application, in such form

as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual

Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This

statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-

183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the

PTO to consider the applicability of the CACR to the registration renewal process. Where as

here Cubaexport's renewal application was timely filed together with the fee prescribed by the

PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that

the application should be accepted and the registration renewed. *See, e.g.,* 3 *McCarthy on*

*Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a

requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S.*

*Treasury, OFAC,* 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own

regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").[1]

---

[1]     As an arm of the Treasury Department, OFAC stated that "[w]e have received guidance
from [the] State [Department] informing us that it would be inconsistent with U.S. policy to issue
a specific license." As an arm of the Commerce Department, the PTO should apply its own
regulations in carrying out the statutory mandate entrusted to it by Congress. That is particularly
the case because preserving the HAVANA CLUB Registration is consistent with United States
(Continued...)

2

Aug-01-06   02:52pm   From-ROPES & GRAY LLP          +212 596 9096       T-678   P.004/011   F-174

Reg. No. 1,031,651
Post Registration
Sharon Granata

### The PTO Should Not Look Beyond The Lanham
### Act And Its Own Implementing Regulations

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its

own implementing regulations for the foregoing reason and because the PTO has "little or no

experience in [construing]. . . regulations that do not directly concern registration of

trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 * 63 (T.T.A.B.

2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a

registration would be cancelled] based upon [an] alleged failure to comply with the requirements

of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for

doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965

(T.T.A.B. 1988).

Although OFAC has declined to grant Cubaexport a specific license, the PTO may not

refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license

provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal. The court in

*Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997),

explained that:

> The CACR creates both general licenses, which permit classes or
> categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542
> (authorizing "all transactions of common carriers incident to the receipt of mail

---

(...Continued)
policy. *See Banco National de Cuba* v. *Chemical Bank*, 658 F.2d 903, 909 (2d Cir. 1981)
(permitting suit by Cuban successor to nationalized banks "because that will assist in providing
funds in the United States" and thereby "further the goals of the United States"); *Havana Club
Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997) (a key purpose of the
CACR is to preserve "blocked assets [the HAVANA CLUB Registration] ... which ... would
function as bargaining chips in United States relations with Cuba").

3

Aug-01-06   02:52pm   From-ROPES & GRAY LLP                +212 596 9096        T-678   P.005/011   F-174

Reg. No. 1,031,651
Post Registration
Sharon Granata

between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC. See id. § 515.801. A general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ." 31 C.F.R. § 515.527(a).*

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)      No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face.  That is not an exercise in which the PTO should engage.

### The PTO Should Renew The Registration
### Even If The PTO Considers The CACR

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First,* amended 31 CACR § 515.227(a) should not and cannot properly be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the

4

Reg. No. 1,031,651
Post Registration
Sharon Granata

payment of the prescribed fee and the [timely] filing of a written application." In keeping with

the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed

fee. Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from

paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own

regulations with the CACR by accepting payment of the renewal fee pursuant to its own

regulations and 31 CACR § 515.227(a)(1). *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist.

LEXIS 17549 *15 (D.D.C. 2006), citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("when

two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed

congressional intention to the contrary, to regard each as effective"). This outcome is

particularly appropriate here because no court has yet ruled on the applicability of 31 CACR

§ 515.227(a) to renewal of the HAVANA CLUB Registration, and a statute trumps a regulation.

*Second,* it would be inappropriate to cancel the HAVANA CLUB Registration at this

time when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is

inapplicable to the renewal of its registration. *See Havana Club Holding, S.A.,* 974 F. Supp. at

1089 (cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court

would be "an inequitable adjudication"). That, in turn, involves two issues: whether there was a

confiscation within the meaning of 31 CACR § 515.227(a)(2) when Jose Arechebala, S.A.

("JASA") was nationalized in 1959 and, even if there was, whether Cubaexport is required to

obtain permission to renew its registration.

Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was

used in connection with a business or assets that were confiscated, as that term is defined in

§ 515.336." 31 CACR § 515.336 refers to the nationalization of property by the Cuban

government in 1959 without "adequate and effective compensation." Property includes

5

Reg. No. 1,031,651
Post Registration
Sharon Granata

trademarks. 31 CACR § 515.311. Cubaexport maintains that it should be entitled to prove that neither the HAVANA CLUB trademark nor a business or assets associated with the trademark, owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without compensation. Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the HAVANA CLUB Registration, the registration should be preserved through renewal until that determination is made in a case to which Cubaexport is a party.

That is particularly appropriate because the Trademark Trial and Appeal Board ("the Board") has already concluded that the registration should not be cancelled despite Bacardi's claim that the registration was obtained and maintained by fraud. In reaching that result, the Board observed that Cubaexport did not commit fraud because it had reason to believe that JASA did *not* have rights in HAVANA CLUB. Cubaexport knew that JASA had not used HAVANA CLUB in years and had allowed its HAVANA CLUB registrations to expire although it could have renewed them if Cuba's nationalization of its business in 1959, rather than an intent to abandon the mark, was the reason the mark was not in use in 1974. *See* Board Decision, 2004 TTAB LEXIS 38 *48-*56 (T.T.A.B. 2004).

Concerning the second issue, only Bacardi, as the alleged successor in interest to JASA's trademark rights, could be adjudicated a party whose permission is required by 31 CACR § 515.227(a)(2). No such adjudication has been made in any forum including the New York litigation referred to above. On the contrary, as the PTO Attorney examining Bacardi's application to register HAVANA CLUB observed in rejecting the application:

> [The New York litigation] reveals a few clearly decided points.... [T]he rights in the mark and . . . Registration no. 1,031,651 reside in Cuba Export.... Registration no. 1,031,651 was neither cancelled nor determined to be the property of [Bacardi].

6

Reg. No. 1,031,651
Post Registration
Sharon Granata

If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for renewal of the HAVANA CLUB Registration.

   *Third*, 31 CACR § 515.227(a)(2) was not promulgated until 1999 following the passage of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998.  It should not be applied retroactively to destroy an asset that was created in 1976 when the HAVANA CLUB Registration issued.  *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d 116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.")

   The PTO has the power, and the statutory obligation, to renew the HAVANA CLUB Registration in accordance with Lanham Act § 9 and its own implementing regulations.  For the foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31 CACR 515.227(a)(2), before Cubaexport has had its day in court.  If a court ultimately determines that the PTO should not have renewed the HAVANA CLUB Registration, the court can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119.  Accordingly,

7

Reg. No. 1,031,651
Post Registration
Sharon Granata

Cubaexport respectfully requests that the PTO charge Ropes & Gray's deposit account number

06-1075 in the amount set forth in the July 20, 2006 Office Action ($600) and approve

Cubaexport's renewal application.  A copy of the Notice of Deficiency Surcharge is enclosed.

Respectfully submitted,

Dated:  August 1, 2006                    By:  _VN Palladino_____
                                          Vincent N. Palladino
                                          ROPES & GRAY LLP
                                          1251 Avenue of the Americas
                                          New York, New York  10020
                                          Tel.: (212) 596-9000
                                          Fax: (212) 596-9090

cc:    Liz Farrow
       Assistant Director for Licensing, OFAC
       (Via Facsimile and FedEx)

8



## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Case No. CU-75835**

Vincent N. Palladino, Esquire                          JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue. We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly, your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

TOTAL P.02

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov/

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

### PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

<u>Registration No. 1031651</u>

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____ Section 8 affidavit filing fee (fee code 372)

$_____ Section 8 affidavit grace period surcharge (fee code 381)

*$100.00   Section 8 affidavit deficiency surcharge (fee code 382)*

$_____ Section 9 renewal application filing fee (fee code 365)

$_____ Section 9 renewal application grace period surcharge (fee code 366)

$_____ Section 9 renewal application deficiency surcharge (fee code 380)

$_____ Section 15 affidavit filing fee (fee code 373)

$_____ Section 7 correction/amendment filing fee (fee code 369)

$_____ Section 7 issue new certificate of registration filing fee (fee code 368)

$_____ Deficiency surcharge—if response filed after _____ (fee code 382)
Date

$_____ Deficiency surcharge—if response filed after _____ (fee code 380)
Date



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. CU-75835

Vincent N. Palladino, Esquire                    JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue.  We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark.  Accordingly, your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

TOTAL P.02

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
POST REGISTRATION DIVISION

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |
| Specialist | : | Sharon Granata |

**VIA FACSIMILE:  (571) 273-9167**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451



08-02-2006
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #04

**RESPONSE TO OFFICE ACTION**

This responds to the July 20, 2006 Office Action requiring registrant Cubaexport to

"notify the USPTO whether ... [the] specific license [Cubaexport sought from OFAC] has been

granted or denied."  On July 28, 2006, OFAC declined to grant the specific license.  A copy of

the decision, which was also sent to the Commissioner for Trademarks, is enclosed.

Cubaexport respectfully requests that the HAVANA CLUB Registration be renewed

notwithstanding OFAC's decision not to grant Cubaexport a specific license.  First, Cubaexport

filed a timely and complete renewal application together with the renewal fee prescribed by the

PTO regulations that implement the Lanham Act.  Accordingly, the PTO should carry out its

statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a

registrant submits a renewal application and tenders the prescribed  renewal fee.  Second, the

PTO should not look beyond the Lanham Act and its own implementing regulations.  Third, even

Reg. No. 1,031,651
Post Registration
Sharon Granata

if the PTO were to take into account the Cuban Asset Control Regulations ("the CACR") and

OFAC's decision not to grant a specific license, it should not conclude in the absence of a Court

decision that the CACR prohibit renewal of the registration.

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits

within the statutory renewal period "the prescribed fee and ... a written application, in such form

as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual

Property and Director of the United States Patent and Trademark Office.  15 U.S.C. § 1127.  This

statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-

183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the

PTO to consider the applicability of the CACR to the registration renewal process.  Where as

here Cubaexport's renewal application was timely filed together with the fee prescribed by the

PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that

the application should be accepted and the registration renewed.  *See, e.g.*, 3 *McCarthy on

Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a

requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc* v. *U.S.

Treasury, OFAC*, 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own

regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").[1]

---

[1]      As an arm of the Treasury Department, OFAC stated that "[w]e have received guidance
from [the] State [Department] informing us that it would be inconsistent with U.S. policy to issue
a specific license."  As an arm of the Commerce Department, the PTO should apply its own
regulations in carrying out the statutory mandate entrusted to it by Congress.  That is particularly
the case because preserving the HAVANA CLUB Registration is consistent with United States
(Continued…)

2

Reg. No. 1,031,651
Post Registration
Sharon Granata

### The PTO Should Not Look Beyond The Lanham
### Act And Its Own Implementing Regulations

In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its

own implementing regulations for the foregoing reason and because the PTO has "little or no

experience in [construing]. . . regulations that do not directly concern registration of

trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.,* 2004 TTAB LEXIS 38 * 63 (T.T.A.B.

2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a

registration would be cancelled] based upon [an] alleged failure to comply with the requirements

of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for

doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965

(T.T.A.B. 1988).

Although OFAC has declined to grant Cubaexport a specific license, the PTO may not

refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license

provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal.  The court in

*Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997),

explained that:

> The CACR creates both general licenses, which permit classes or
> categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542
> (authorizing "all transactions of common carriers incident to the receipt of mail

---

(...Continued)
policy.  *See Banco National de Cuba* v. *Chemical Bank*, 658 F.2d 903, 909 (2d Cir. 1981)
(permitting suit by Cuban successor to nationalized banks "because that will assist in providing
funds in the United States" and thereby "further the goals of the United States"); *Havana Club
Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997) (a key purpose of the
CACR is to preserve "blocked assets [the HAVANA CLUB Registration] ... which ... would
function as bargaining chips in United States relations with Cuba").

3

Reg. No. 1,031,651
Post Registration
Sharon Granata

between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC. See id. § 515.801. A general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]." 31 C.F.R. § 515.318. *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."* 31 C.F.R. § 515.527(a).

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)   No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face. That is not an exercise in which the PTO should engage.

**The PTO Should Renew The Registration
Even If The PTO Considers The CACR**

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

***First***, amended 31 CACR § 515.227(a) should not and cannot properly be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the

4

**A251**

Reg. No. 1,031,651
Post Registration
Sharon Granata

payment of the prescribed fee and the [timely] filing of a written application."  In keeping with

the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed

fee.  Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from

paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own

regulations with the CACR by accepting payment of the renewal fee pursuant to its own

regulations and 31 CACR § 515.227(a)(1).  *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist.

LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when

two statutes are capable of coexistence, it is the duly of the courts, absent a clearly expressed

congressional intention to the contrary, to regard each as effective").  This outcome is

particularly appropriate here because no court has yet ruled on the applicability of 31 CACR

§ 515.227(a) to renewal of the HAVANA CLUB Registration, and a statute trumps a regulation.

  *Second,* it would be inappropriate to cancel the HAVANA CLUB Registration at this

time when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is

inapplicable to the renewal of its registration.  *See Havana Club Holding, S.A.,* 974 F. Supp. at

1089 (cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court

would be "an inequitable adjudication").  That, in turn, involves two issues:  whether there was a

confiscation within the meaning of 31 CACR § 515.227(a)(2) when Jose Arechebala, S.A.

("JASA") was nationalized in 1959 and, even if there was, whether Cubaexport is required to

obtain permission to renew its registration.

  Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was

used in connection with a business or assets that were confiscated, as that term is defined in

§ 515.336."  31 CACR § 515.336 refers to the nationalization of property by the Cuban

government in 1959 without "adequate and effective compensation."  Property includes

5

Reg. No. 1,031,651
Post Registration
Sharon Granata

trademarks. 31 CACR § 515.311. Cubaexport maintains that it should be entitled to prove that

neither the HAVANA CLUB trademark nor a business or assets associated with the trademark,

owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without

compensation. Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the

HAVANA CLUB Registration, the registration should be preserved through renewal until that

determination is made in a case to which Cubaexport is a party.

That is particularly appropriate because the Trademark Trial and Appeal Board ("the

Board") has already concluded that the registration should not be cancelled despite Bacardi's

claim that the registration was obtained and maintained by fraud. In reaching that result, the

Board observed that Cubaexport did not commit fraud because it had reason to believe that

JASA did *not* have rights in HAVANA CLUB. Cubaexport knew that JASA had not used

HAVANA CLUB in years and had allowed its HAVANA CLUB registrations to expire although

it could have renewed them if Cuba's nationalization of its business in 1959, rather than an intent

to abandon the mark, was the reason the mark was not in use in 1974. *See* Board Decision, 2004

TTAB LEXIS 38 *48-*56 (T.T.A.B. 2004).

Concerning the second issue, only Bacardi, as the alleged successor in interest to JASA's

trademark rights, could be adjudicated a party whose permission is required by 31 CACR

§ 515.227(a)(2). No such adjudication has been made in any forum including the New York

litigation referred to above. On the contrary, as the PTO Attorney examining Bacardi's

application to register HAVANA CLUB observed in rejecting the application:

> [The New York litigation] reveals a few clearly decided points.... [T]he
> rights in the mark and . . . Registration no. 1,031,651 reside in Cuba Export....
> Registration no. 1,031,651 was neither cancelled nor determined to be the
> property of [Bacardi].

6

Reg. No. 1,031,651
Post Registration
Sharon Granata

If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not

a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for

renewal of the HAVANA CLUB Registration.

   *Third*, 31 CACR § 515.227(a)(2) was not promulgated until 1999 following the passage

of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998.  It

should not be applied retroactively to destroy an asset that was created in 1976 when the

HAVANA CLUB Registration issued.  *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d

116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994)

("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and

embodies a legal doctrine centuries older than our Republic.")

   The PTO has the power, and the statutory obligation, to renew the HAVANA CLUB

Registration in accordance with Lanham Act § 9 and its own implementing regulations.  For the

foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the

destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's

implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31

CACR 515.227(a)(2), before Cubaexport has had its day in court.  If a court ultimately

determines that the PTO should not have renewed the HAVANA CLUB Registration, the court

can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119.  Accordingly,

7

Reg. No. 1,031,651
Post Registration
Sharon Granata

Cubaexport respectfully requests that the PTO charge Ropes & Gray's deposit account number

06-1075 in the amount set forth in the July 20, 2006 Office Action ($600) and approve

Cubaexport's renewal application.  A copy of the Notice of Deficiency Surcharge is enclosed.

Respectfully submitted,

Dated:  August 1, 2006          By: _Vincent N. Palladino_____
                                    Vincent N. Palladino
                                    ROPES & GRAY LLP
                                    1251 Avenue of the Americas
                                    New York, New York  10020
                                    Tel.:  (212) 596-9000
                                    Fax:  (212) 596-9090

cc:     Liz Farrow
        Assistant Director for Licensing, OFAC
        (Via Facsimile and FedEx)

8



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Case No. CU-75835**

Vincent N. Palladino, Esquire                                   JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue. We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly, your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

TOTAL P.02

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov/

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

## PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

<u>Registration No. 1031651</u>

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____ Section 8 affidavit filing fee (fee code 372)

$_____ Section 8 affidavit grace period surcharge (fee code 381)

*$100.00 Section 8 affidavit deficiency surcharge (fee code 382)*

$_____ Section 9 renewal application filing fee (fee code 365)

$_____ Section 9 renewal application grace period surcharge (fee code 366)

$_____ Section 9 renewal application deficiency surcharge (fee code 380)

$_____ Section 15 affidavit filing fee (fee code 373)

$_____ Section 7 correction/amendment filing fee (fee code 369)

$_____ Section 7 issue new certificate of registration filing fee (fee code 368)

$_____ Deficiency surcharge—if response filed after _____ (fee code 382)
Date

$_____ Deficiency surcharge—if response filed after _____ (fee code 380)
Date

# UNITED STATES PATENT AND TRADEMARK OFFICE

**REGISTRATION NO**:      1,031,651

**REGISTRANT**: EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

**CORRESPONDENT ADDRESS**:
         HERBERT SCHWARTZ
         ROPES & GRAY LLP
         1251 AVENUE OF THE AMERICAS
         NEW YORK, NY 10020

**MARK**:      HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO** :   N/A

**CORRESPONDENT EMAIL ADDRESS**:

August 3, 2006

## *1031651*

**RETURN ADDRESS**:
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

Please provide in all correspondence:

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registration Division.
4. Your telephone number and e-mail address.

# POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The Office has received your letter of August 1, 2006, indicating that the specific license necessary to authorize the required fee for filing the combined document has been denied. Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

It is noted that your letter contains arguments in support of renewing the subject registration. You may file a petition to the Director requesting review of this decision. The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100. 37 C.F.R. §§2.6, 2.146(a)(2) and 2.176.

Sharon Granata
/Sharon Granata/
Trademark Specialist
Post Registration Division
PH: (571) 272-9167
FAX (571) 273-9167
sharon.granata@uspto.govov

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's  Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**



**ROPES & GRAY**

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9070
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

October 4, 2006

Vincent N. Palladino
212-596-9070
Vincent.Palladino@ropesgray.com

**VIA FEDEX (Label No. 791136992893**

Office of the Director
Commissioner for Trademarks
600 Dulaney Street, Concourse Level Room C55
Alexandria, Virginia  22314-1451

<u>Petition To Director-Registration No. 1,031,651</u>

Dear Sir/Madam:

Please find enclosed:

(1)  Cubaexport's Petition Pursuant To 37 C.F.R. § 2.146(a) including a request that the fee prescribed by 37 C.F.R. § 2.6 be charged to Fish & Neave IP Group of Ropes & Gray LLP's deposit account.

(2)  Cubaexport's Memorandum Of Law In Support Of Its Petition Pursuant To 37 C.F.R. § 2.146(a) including a statement of facts.

(3)  Declaration of Vincent N. Palladino In Support of Cubaexport's Petition Pursuant To 37 C.F.R. § 2.146(a).

Please charge Fish & Neave IP Group of Ropes & Gray LLP deposit account No. 06-1075, Order No. 001214-0001.

Kindly acknowledge receipt of this letter and its enclosures by stamping and returning the enclosed self-addressed postcard.

Respectfully submitted,

Vincent N. Palladino

**10-05-2006**
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #30

VNP:emf
Enclosures

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
ON PETITION TO THE DIRECTOR

In The Matter Of

Registration No.        :   1,031,651

Mark                    :   HAVANA CLUB & Design

Petitioner              :   Empresa Cubana Exportadora de Alimentos y Productos Varios

### CUBAEXPORT'S PETITION PURSUANT TO 37 C.F.R. § 2.146(a)

This petition seeks reversal of the August 3, 2006 decision of the Post Registration

Division ruling that the above registration "will be cancelled/expired" because the "fee for filing

the Sections 8 & 9 Combined filing has not been submitted."

A statement of facts is set forth in Cubaexport's Memorandum Of Law In Support Of Its

Petition Pursuant To 37 C.F.R. § 2.146(a), which accompanies this petition.

Please charge the fee prescribed by 37 C.F.R. § 2.6 to Ropes & Gray LLP deposit

account number 06-1075 (Order Number 001214-0001).

Respectfully submitted,

Dated:  October 4, 2006            By:   _Vincent N. Palladino_
                                         Herbert F. Schwartz
                                         Vincent N. Palladino
                                         Eric C. Hubbard
                                         Pablo D. Hendler
                                         ROPES & GRAY LLP
                                         1251 Avenue of the Americas
                                         New York, New York  10020
                                         Tel.:  (212) 596-9000
                                         Fax:  (212) 596-9090

                                         Attorneys for Petitioner

**A260**

JA316

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
ON PETITION TO THE DIRECTOR

In The Matter Of

Registration No. : 1,031,651

Mark : HAVANA CLUB & Design

Registrant : Empresa Cubana Exportadora de Alimentos y Productos Varios

### CUBAEXPORT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION PURSUANT TO 37 C.F.R. § 2.146(a)

Dated:  October 4, 2006

Herbert F. Schwartz
Vincent N. Palladino
Eric C. Hubbard
Pablo D. Hendler
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 596-9000
Fax:  (212) 596-9090

Attorneys for Petitioner

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.  THE POST REGISTRATION DIVISION SHOULD HAVE CARRIED OUT THE
    PTO'S STATUTORY MANDATE ........................................................................ 3

    A.  The Post Registration Division Should Have Applied The PTO's Regulations ....... 3

    B.  The Post Registration Division Erred In Not Applying The PTO's Regulations ...... 4

        1.  The Post Registration Division Improperly Allowed OFAC To Dictate
            The Outcome Of The Renewal Process ........................................................... 4

        2.  The Post Registration Division Improperly Embroiled The PTO In A
            Political And Policy Dispute ............................................................................ 5

        3.  The Post Registration Division Improperly Denied Cubaexport Its
            Day In Court And Created A New Ground For Cancellation ......................... 6

II. THE POST REGISTRATION DIVISION IMPROPERLY DECIDED THAT THE
    CACR PROHIBIT RENEWAL ............................................................................... 7

    A.  The Post Registration Division Should Not Have Construed The CACR ............... 7

    B.  The Post Registration Division Should Not Have Construed The CACR To
        Prohibit Renewal .................................................................................................. 8

        1.  The CACR Did Not Repeal The Lanham Act Or The PTO's Regulations ..... 8

        2.  The CACR Should Be Reconciled With The Lanham Act ............................... 9

        3.  The CACR Should Not Be Applied Retroactively ........................................... 9

III. AFFIRMING THE POST REGISTRATION DIVISION'S DECISION WOULD
     SET AN UNFORTUNATE PRECEDENT ............................................................ 11

CONCLUSION ............................................................................................................ 11

i

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Banco Nacional de Cuba* v. *Chem. Bank N.Y. Trust Co.*,
   658 F.2d 903 (2d Cir. 1981)...............................................................................6

*Black* v. *Romano*,
   471 U.S. 606 (1985).........................................................................................3

*Chennareddy* v. *Bowsher*,
   935 F.2d 315 (D.C. Cir. 1991).......................................................................3, 4

*In re Du Pont Merck Pharm. Co.*,
   34 U.S.P.Q. 2d 1778 (Comm'r Pats. & Trademarks 1995)..............................2

*Esch* v. *Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989).........................................................................3

*Galleon, S.A.*, v. *Havana Club Holding, S.A.*
   2004 TTAB Lexis 38 (T.T.A.B. Jan. 29, 2004)..........................................5, 7, 11

*Havana Club Holding, S.A.* v. *Galleon, S.A.*,
   203 F.3d 116 (2d Cir. 2000)........................................................................9, 10

*Havana Club Holding, S.A.* v. *Galleon S.A.*,
   961 F. Supp. 498 (S.D.N.Y. 1997) .................................................................6

*Havana Club Holding, S.A.* v. *Galleon S.A.*,
   974 F. Supp. 302 (S.D.N.Y. 1997) ...............................................................6, 7

*Landgraf* v. *USI Film Prods.*,
   511 U.S. 244 (1994)...................................................................................9, 10

*Morton* v. *Mancari*,
   417 U.S. 535 (1974).........................................................................................9

*In re Nielson*,
   816 F.2d 1567 (Fed. Cir. 1987)........................................................................4

*Sandoz, Inc.* v. *Leavitt*,
   427 F. Supp. 2d 29 (D.D.C. 2006) ...................................................................9

*United States ex rel. Accardi* v. *Shaughnessy*,
   347 U.S. 260 (1954)..........................................................................................3

ii

**A263**

# TABLE OF AUTHORITIES

Page

## FEDERAL STATUTES AND REGULATIONS

5 U.S.C. § 706(2) ....................................................................................................................3, 4

15 U.S.C. § 1058 .........................................................................................................................10

15 U.S.C. § 1059 ......................................................................................................................3, 10

15 U.S.C. § 1123 ...........................................................................................................................9

15 U.S.C. § 1127 ...........................................................................................................................3

31 C.F.R. § 515.527 ..........................................................................................................7, 8, 9, 11

37 C.F.R. § 2.6(a)(5) .....................................................................................................................3

37 C.F.R. § 2.182 ..........................................................................................................................3

37 C.F.R. § 2.183 ..........................................................................................................................3

TMEP § 1706 (4th ed. April 2005) ...............................................................................................2

## MISCELLANEOUS

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 6.9
(4th ed. 2006) ..........................................................................................................................5

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 21:9
(4th ed. 2006) ........................................................................................................................3, 4

iii

## **INTRODUCTION**

Petitioner Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport") respectfully requests that the Director reverse the August 3, 2006 decision of the Post Registration Division ("Division") of the United States Patent and Trademark Office ("PTO") in which the Division refused to renew Cubaexport's Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration").

The Division failed to carry out the PTO's statutory mandate to renew a registration when a registrant, such as Cubaexport, submits a proper renewal application and the prescribed renewal fee during the renewal period in accordance with the PTO's regulations. Instead, the Division improperly concluded that a decision by the Office of Foreign Assets Control ("OFAC") and the Cuban Asset Control Regulations ("CACR") preclude the PTO from doing so.

Further, the Division took this action although the PTO's own Trademark Trial and Appeal Board ("the Board") has said that the PTO is *not* authorized to make policy by resolving political questions, has determined that the HAVANA CLUB Registration should *not* be cancelled and has ruled that the PTO should *not* engage in inquiries that inject confusion and uncertainty into the renewal process. The Division's decision plainly should be reversed.

## **STATEMENT OF FACTS**

On December 13, 2005, Cubaexport filed with the PTO an application to renew the HAVANA CLUB Registration. Cubaexport's attorneys followed accepted PTO procedure when they requested that the PTO "use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee." Palladino Decl. Exh. 1.[1]

---

[1]   "Palladino Decl." refers to the Declaration of Vincent N. Palladino In Support of Cubaexport's Petition Pursuant to 37 C.F.R. § 2.146(a).

In a July 20, 2006 Office Action, the Division stated that because Ropes & Gray had asked OFAC to issue a "specific license for authorization of payment of the fees required for renewal of the subject registration ... Registrant is required to notify the USPTO whether that specific license has been granted or denied." Palladino Decl. Exh. 4.

Cubaexport complied with that directive on August 1, 2006 when it enclosed a copy of OFAC's July 28, 2006 letter, declining to grant a specific license, and urged the PTO to accept the tendered fee and renew the HAVANA CLUB Registration "notwithstanding OFAC's decision not to grant Cubaexport a specific licence." Palladino Decl. Exh. 5.

Two days later on August 3, 2006, the Division issued an Office Action in which it stated *"[b]ecause the specific license is necessary* for authorizing payment of the required fee, *and that license has been denied, the required fee* for filing the Section 8 and 9 combined filing *has not been submitted*; accordingly the registration will be cancelled/expired." Palladino Decl. Exh. 6 (emphasis added).

## ARGUMENT

"The Director reviews the actions of Post Registration examiners on ... renewal applications under 15 U.S.C. § 1059 ... to determine whether the judgment ... was correct." TMEP § 1706 (4th ed. April 2005). "This standard of review is to be distinguished from the standard of review ... which require[s] a petitioner to prove clear error or abuse of discretion." *In re Du Pont Merck Pharm. Co.*, 34 U.S.P.Q.2d 1778, 1781 (Comm'r Pats. & Trademarks 1995), although Cubaexport maintains that even under that standard the Division's decision should be reversed.

2

I.  **THE POST REGISTRATION DIVISION SHOULD HAVE
    CARRIED OUT THE PTO'S STATUTORY MANDATE**

    A.  **The Post Registration Division Should
    Have Applied The PTO's Regulations**

Lanham Act § 9, 15 U.S.C. § 1059, requires the PTO to renew a registration when the registrant submits within the statutory renewal period "the prescribed fee and ... a written application, in such form as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.  15 U.S.C. § 1127.  This statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-183 (prescribing requirements of application).

It is undisputed that within the statutory renewal period Cubaexport submitted the prescribed fee by requesting a charge against Ropes & Gray's account together with an application in the form prescribed by the Director.  Accordingly, the HAVANA CLUB Registration should have been renewed because the PTO "is bound by its own regulations." *Chennareddy v. Bowsher*, 935 F.2d 315, 322 (D.C. Cir. 1991), citing *Black v. Romano*, 471 U.S. 606 (1985); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) ("agency is legally bound to respect its own regulations, and commits procedural error if it fails to abide [by] them.").  *See also* 5 U.S.C. § 706(2)(C)("[a] court shall ... hold unlawful and set aside agency action ... found to be ... short of statutory right"); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 21:9, at 21-13 to 21-14 n.2 (4th ed. 2006) ("The Director has no authority to waive a requirement of the statute ... [or] to suspend compliance with the statute.").

It is not the case, as the Division maintained, that the renewal fee "has not been submitted."  Rather, the Division refused to *accept* the fee.  There is nothing in Lanham Act § 9

or the PTO's regulations that permits the Division to refuse payment of the prescribed renewal

fee.  And the Division erred in doing so.  *In re Nielson*, 816 F.2d 1567, 1570 (Fed. Cir. 1987):

> No statute, regulation or rule governing PTO proceedings contains such a
> requirement....  Neither *L.A. Tucker* nor the Labor Act can add a new procedural
> requirement to practice before the Patent and Trademark Office.  Practice before
> administrative agencies is controlled by each agency's own regulations, and
> "where the rights of individuals are affected, it is incumbent upon agencies to
> follow their own procedures."  *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S. Ct. 1055,
> 1074, 39 L.Ed.2d 270 (1974).

### B.   The Post Registration Division Erred In Not Applying The PTO's Regulations

By not applying the PTO's own regulations and instead deciding that a "specific license

is necessary for authorizing payment of the required fee," the Division plainly erred and

exceeded the authority granted to it by Congress.  *See* 5 U.S.C. § 706(2)(C) ("[a] court shall ...

hold unlawful and set aside agency action ... found to be ... in excess of statutory jurisdiction,

authority, or limitations").  In making this judgment, the Division permitted another agency to

dictate the conditions of renewal, embroiled the PTO in a political and policy dispute that is

beyond its jurisdiction and deprived Cubaexport of its day in court.

### 1.   The Post Registration Division Improperly Allowed OFAC To Dictate The Outcome Of The Renewal Process

As an arm of the Treasury Department, OFAC told the Division that "[w]e have received

guidance from [the] State [Department] informing us that it would be inconsistent with U.S.

policy to issue a specific license."  Palladino Decl. ¶ 5, Attachment 1.  As an arm of the

Commerce Department, the Division was bound to apply its own regulations and should not have

abrogated its responsibility by concluding that a specific license is needed to pay the renewal fee.

*See Chennareddy*, 935 F.2d at 322 ("GAO cannot seek refuge in regulations promulgated by the

EEOC.... Rather, GAO is bound by its own regulations").

4

**A268**

JA324

The August 3, 2006 decision offers no support for the Division's conclusion.  The closest the Division came to explaining its action is a statement in its July 20, 2006 Office Action, which "note[s] that ... Ropes & Gray filed an application for . . . [a] specific license for authorization of payment of the fees required for renewal of the subject registration."  Palladino Decl. Exh. 4.

That is no explanation at all.  By asking OFAC for a license, Ropes & Gray necessarily could not and did not alter the Lanham Act's renewal provisions or the PTO's regulations or authorize the PTO to disregard them.  Nor did Ropes & Gray intend that.  It advised the PTO that it had sought a specific license so that it could pay the renewal fee on Cubaexport's behalf *and be reimbursed for that expense* and stated that the registration should be renewed "notwithstanding OFAC's decision not to grant . . . a specific license" for the reasons set out in Ropes & Gray's August 1, 2006 letter.  Palladino Decl. Exh. 5.

### 2. The Post Registration Division Improperly Embroiled The PTO In A Political And Policy Dispute

As the Board has recognized, the PTO may not determine United States policy toward Cuba by resolving political questions.  *See Galleon, S.A., v. Havana Club Holding, S.A.,* 2004 TTAB LEXIS 38 at \*68-\*69 (T.T.A.B. Jan. 29, 2004) (whether Cubaexport is the "true and legitimate owner of the HAVANA CLUB mark . . . [is] a political question based on the premise that the Cuban government is not legitimate.  Obviously we, as a tribunal within the U.S. Department of Commerce, do not have the authority to answer this question.").  *See also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 6.9 at 6-14 (4th ed. 2006) (the "United States Patent and Trademark Office has been given the task of . . . registering trademarks").

That is what the Division's decision does by requiring the PTO to consider OFAC's view that granting a specific license in this matter "would be inconsistent with U.S. policy."  The one way the PTO can and should avoid such improper decision making – remaining neutral on

5

political and policy issues outside the scope of its authority – is to *apply its own regulations across the board*. That is not an abrogation of authority. It is an exercise of the only authority the PTO has been granted by Congress. Under the statute that governs PTO practice and the PTO's implementing regulations, the HAVANA CLUB Registration must be renewed.[2]

### 3. The Post Registration Division Improperly Denied Cubaexport Its Day In Court And Created A New Ground For Cancellation

It would be inappropriate to cancel the HAVANA CLUB Registration by not renewing it when Cubaexport has not had an opportunity to establish in court that the registration should not be cancelled. *See Havana Club Holding, S.A. v. Galleon S.A.,* 974 F. Supp. 302, 311 (S.D.N.Y. 1997) at 1089 (cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court would be "an inequitable adjudication"). The Division's decision deprives Cubaexport of that opportunity.

Cubaexport is entitled to challenge and has challenged in court the validity of 31 C.F.R. § 515.527(a)(2). Even if 31 C.F.R. § 515.527(a)(2) is valid, Cubaexport is entitled to prove that it does not apply to the HAVANA CLUB marks and business of Jose Arechebala, S.A. ("JASA") and, even if it does, JASA's failure to renew its HAVANA CLUB registrations constituted consent to Cubaexport's registration of HAVANA CLUB & Design. Indeed, the Board has already ruled that Cubaexport had reason to believe JASA did *not* have rights in HAVANA CLUB when Cubaexport applied to register HAVANA CLUB & Design in 1974. At that time, it

---

[2]      Even if the Division might properly have deferred to another agency, it should not have agreed with OFAC that granting a specific license "would be inconsistent with U.S. policy." Preserving, not destroying, the HAVANA CLUB Registration is consistent with United States policy. *See Banco Nacional de Cuba v. Chem. Bank N.Y. Trust Co.,* 658 F.2d 903, 909 (2d Cir. 1981) (permitting suit by Cuban successor to nationalized banks "because it will assist in providing funds in the United States" and thereby "further the goals of the United States"); *Havana Club Holding, S.A. v. Galleon S.A.,* 961 F. Supp. 498, 505 (S.D.N.Y. 1997) (a key purpose of the CACR is to preserve "blocked assets [the HAVANA CLUB Registration] ... which ... would function as bargaining chips in United States relations with Cuba"). On September 29, 2006, Cubaexport filed a lawsuit challenging OFAC's July 28, 2006 decision as well as the validity of the CACR regulation to which it refers and the statute pursuant to which the CACR regulation was exacted. *See* Palladino Decl. Exh. 7.

was known that JASA had not used HAVANA CLUB in years and had allowed its HAVANA CLUB registrations to expire either *before* nationalization or after nationalization, although it could have renewed its remaining registrations if non-use was due to nationalization, rather than an intent to abandon the mark. *See Galleon, S.A.*, 2004 TTAB LEXIS 38 at *48-*56.

Moreover, particularly where 31 C.F.R. § 515.527 provides no ground for cancelling a registration, the Board's refusal to cancel the registration should stand unless it is reversed on appeal. However, Bacardi has sought a stay of the litigation in which it has appealed the Board's decision because it believes that the Division's decision, if upheld, will provide the equivalent of relief Bacardi is seeking in that litigation, including reversal of the Board's decision. Palladino Decl. ¶ 10 and Exh. 8. Thus, the Division's decision effectively reverses the Board's decision, deprives Cubaexport of the opportunity to demonstrate in court that the Board's decision should be affirmed and creates a new cancellation ground that appears in neither the Lanham Act nor the CACR.

## II.   THE POST REGISTRATION DIVISION IMPROPERLY DECIDED THAT THE CACR PROHIBIT RENEWAL

### A.   The Post Registration Division Should Not Have Construed The CACR

Although OFAC declined to grant Cubaexport a specific license, the Division could not have refused to renew the HAVANA CLUB Registration unless it interpreted the *general* license provisions of 31 C.F.R. § 515.527(a) and decided that they prohibit renewal despite the PTO's regulations. The court in *Havana Club Holding, S.A.,* 974 F. Supp. at 306-07, explained that the CACR creates both general and specific licenses and that:

> The general license pertaining to United States intellectual property authorizes "[t]ransactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ." 31 C.F.R. § 515.527(a).

7

By the express terms set forth in this section, the general license allows for
the registration and renewal of trademarks.  (emphasis deleted)

Subsequent to that decision, 31 C.F.R. § 515.527(a) was amended.[3]  To conclude that
31 C.F.R. § 515.527(a) does not authorize the renewal of the HAVANA CLUB Registration, the
Division would have had to interpret 31 C.F.R. § 515.527(a) and decide that 31 C.F.R.
§ 515.527(a)(2) prohibits renewal of the registration despite 31 C.F.R. § 515.527(a)(1), which
provides for renewal on its face.  That is not an exercise in which the Division may engage.

### B.  The Post Registration Division Should Not Have Construed The CACR To Prohibit Renewal

Even if the Division had the authority to interpret 31 C.F.R. § 515.527(a), it should not
have concluded that it prohibits renewal of the HAVANA CLUB Registration for at least the
following reasons.

### 1.  The CACR Did Not Repeal The Lanham Act Or The PTO's Regulations

Amended 31 C.F.R. § 515.527(a) should not and cannot properly be read as a repeal of
Lanham Act § 9, which provides that a registrant may renew its registration "upon the payment
of the prescribed fee and the [timely] filing of a written application."  Equally unaffected are the
PTO's implementing regulations.  The Director is charged by Congress to "make rules and
regulations, not inconsistent with law, for the conduct of proceedings in the Patent and

---

[3]   As amended 31 C.F.R. § 515.527(a) provides:

(a)(1)   Transactions related to the registration and renewal in the United States Patent
and Trademark Office or the United States Copyright Office of patents, trademarks, and
copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)   No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this
section with respect to a mark, trade name, or commercial name that is the same as or substantially similar
to a mark, trade name, or commercial name that was used in connection with a business or assets that were
confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or
commercial name, or the bona fide successor-in-interest has expressly consented.

8

Trademark Office." 15 U.S.C. § 1123.  The Director has done so.  Neither Congress nor any

court has concluded that the PTO's renewal regulations are inconsistent with law.  The Division

was obligated to apply them.

> ### 2.    The CACR Should Be Reconciled
> ### With The Lanham Act

In keeping with the Lanham Act, Cubaexport filed a timely renewal application and

submitted the PTO's prescribed fee.  Unless or until it is determined that 31 C.F.R.

§ 515.527(a)(2) prohibits Cubaexport from paying the fee, the PTO should reconcile the Lanham

Act's renewal provisions and its own regulations with the CACR by accepting payment of the

renewal fee pursuant to its own regulations and 31 C.F.R. § 515.527(a)(1).  *See Sandoz, Inc. v.*

*Leavitt*, 427 F.Supp.2d 29, 35 (D.D.C. 2006) ("'when two statutes are capable of coexistence, it

is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to

regard each as effective'", *citing Morton v. Mancari*, 417 U.S. 535, 551 (1974)).  This is

particularly appropriate because no court has yet ruled on the applicability of 31 C.F.R.

§ 515.527(a) to renewal of the HAVANA CLUB Registration.

> ### 3.    The CACR Should Not Be Applied Retroactively

31 C.F.R. § 515.527(a)(2), which was promulgated in 1999 after passage of Section 211

of the Omnibus Consolidated and Supplemental Appropriations Act ("Section 211") in 1998,

should not be applied retroactively to destroy an asset that was created in 1976 when the

HAVANA CLUB Registration issued.  *See Havana Club Holding, S.A. v. Galleon, S.A.*, 203

F.3d 116, 126 n.9 (2d Cir. 2000) (distinguishing between retroactive and prospective application

of Section 211) (*citing Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("the presumption

against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal

doctrine centuries older than our Republic").

9

**A273**

JA329

The presumption against retroactivity reflects the basic notion that legislation should not be construed to upset a party's settled expectations, including vested "property rights ... in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271. When Cubaexport obtained the HAVANA CLUB Registration in 1976, it was with the expectation that the registration would remain in force in accordance with the provisions of the Lanham Act. Like the Lanham Act today, the statute guaranteed that Cubaexport's "registration *shall* remain in force" provided Cubaexport complied with Sections 8 and 9, 15 U.S.C. §§ 1058-1059 (emphasis added). Cubaexport complied with the requirements of Section 8 in 1982 and of Sections 8 and 9 in December 2005. The Division's decision improperly upsets Cubaexport's settled expectation by effectively holding that Section 211(a)(2) changed the Lanham Act in 1998, when plainly it did not, and that the change binds Cubaexport.

The presumption also recognizes that the "Legislature's ... responsivety to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Landgraf*, 511 U.S. at 266. It is no secret that Bacardi was instrumental in the passage of Section 211(a)(2). In ruling on HCH's request for prospective injunctive relief, the New York Court cautioned against the dangers of retroactive application of Section 211 to invalidate a registration. *See Havana Club Holding,* 203 F.3d at 126 n.9. The PTO should be equally circumspect.

Finally, in this case the "interest in avoiding the adjudication of constitutional questions ... counsel[s] against a retroactive application." *Landgraf*, 511 U.S. at 267 n.21. As noted above, construing Section 211(a)(2) to prohibit renewal of the registration raises constitutional questions that the PTO should not resolve.

10

III.   **AFFIRMING THE POST REGISTRATION DIVISION'S**
       **DECISION WOULD SET AN UNFORTUNATE PRECEDENT**

In declining to cancel the HAVANA CLUB Registration, the Board wisely refused to require the Division to engage in inquiries that "would inject confusion and uncertainty in the renewal process and administratively burden the Trademark Office." *Galleon, S.A.,* 2004 TTAB LEXIS 38 at *46. The Director should do the same. As discussed above, the policy implications and the complexity of the issues involved in construing 31 C.F.R. § 515.527(a) confirm that the Division should not, and should not be required to, engage in such inquiries. Opening the door to such inquiries can only sow confusion, burden the PTO and invite challenges by aggrieved registrants who will contend that some statute, decision, rule or regulation obligates the PTO to do something other than what the Lanham Act and the PTO's implementing regulations require and permit.

## CONCLUSION

The PTO has the power, and the statutory obligation, to renew the HAVANA CLUB Registration in accordance with Lanham Act § 9 and its own implementing regulations. For the foregoing reasons, Cubaexport respectfully requests that the Director reverse the Division's decision and renew the HAVANA CLUB Registration.

Respectfully submitted,

Dated: October 4, 2006            By:  _VN Palladino_

Herbert F. Schwartz
Vincent N. Palladino
Pablo D. Hendler
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 596-9000
Fax: (212) 596-9090

Attorneys for Petitioner

11

A275
JA331

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
ON PETITION TO THE DIRECTOR

In The Matter Of

Registration No.    :   1,031,651

Mark    :   HAVANA CLUB & Design

Petitioner    :   Empresa Cubana Exportadora de Alimentos y Productos Varios

### DECLARATION OF VINCENT N. PALLADINO IN SUPPORT OF CUBAEXPORT'S PETITION PURSUANT TO 37 C.F.R. § 2.146(a)

I, VINCENT N. PALLADINO, declare:

1.    I am a partner with the firm of Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020.  Ropes & Gray LLP is counsel for petitioner Cubaexport.

2.    I make this declaration in support of Cubaexport's petition pursuant to 37 C.F.R. § 2.146(a).  I have personal knowledge of the following facts and, if called upon to do so, would and could testify competently thereto.

3.    Attached hereto as Exhibit 1 is a true and correct copy of my December 13, 2005 letter to the Patent and Trademark Office ("PTO") enclosing Cubaexport's Combined Declaration and Application For Renewal Of Registration Under §§ 8 & 9.

4.    Attached hereto as Exhibit 2 is a true and correct copy of OFAC's April 6, 2006 letter to me.

5.    Attached hereto as Exhibit 3 is a true and correct copy of my April 7, 2006 letter to OFAC.

6.    Attached hereto as Exhibit 4 is a true and correct copy of the PTO Post Registration Division's July 20, 2006 Office Action.

7.     Attached hereto as Exhibit 5 is a true and correct copy of Cubaexport's August 1, 2006 response to the July 20, 2006 Office Action.

8.     Attached hereto as Exhibit 6 is a true and correct copy of the PTO Post Registration Division's August 3, 2006 Office Action.

9.     Attached hereto as Exhibit 7 is a true and correct copy of the Complaint that was filed on September 29, 2006 in the matter of *Empresa Cubana Exportadora de Alimentos y Productos Varios* v. *United States Department of Treasury et al.*, Civ. No. 1:06 CV01692 (ESH) (D.D.C. 2006).

10.     On September 15, 2006 plaintiffs in *Bacardi & Company Limited et al.* v. *Empresa Cubana Exportadora de Alimentos y Productos Varios et al.*, Civ. No. 1:04-CV-00519 (EGS) (D.D.C. 2004) filed a motion to stay *inter alia* Count I of the Complaint, which seeks reversal of the Trademark Trial and Appeal Board's January 29, 2004 decision refusing to cancel the HAVANA CLUB Registration.  Attached as Exhibit 8 is a true and correct copy of plaintiff's motion.  As grounds for that motion, plaintiffs argued that the refusal to renew the registration "will afford equivalent relief" to the relief sought in Count I.  *See* Exh. 8 at 2.  In the interest of judicial economy, Cubaexport did not oppose that part of plaintiffs' motion.  It urges reversal of the Division's August 3, 2006 decision, which will in turn lift the stay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 4, 2006, in New York, New York.

_____
Vincent N. Palladino



**FISH & NEAVE IP GROUP**

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON DC    www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia  22313-1451

<u>HAVANA CLUB & Design (Reg. No. 1,031,651)</u>

Dear Sir/Madam:

Enclosed is an original application for renewal of Registration No. 1,031,651, executed by the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport").  Please use Ropes & Gray deposit account number 06-1075 (Order Number 001214-0001) for the filing fee in this matter.  A duplicate copy of the application is included at Attachment 1 to this letter.

Payment of the filing fee is being made pursuant to License No. CU 74488 issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury on March 4, 2005 (the "License", Attachment 2) in order to maintain the *status quo* by maintaining Registration No. 1,031,651 until a decision regarding cancellation of the registration can be rendered in ongoing litigation, *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation").

For the benefit of the Patent and Trademark Office, Cubaexport is setting forth in this letter the circumstances under which it applied for and received from OFAC licenses concerning representation of Cubaexport in the Litigation, as well as the reasons Cubaexport believes the *status quo* should be maintained pending resolution of this dispute.

**The Dispute**

Cubaexport was joined as a respondent in a cancellation proceeding, *Galleon S.A., Bacardi-Martini U.S.A., Inc., and Bacardi Company Limited* v. *Havana Club*, No. 24108 (1995) (the "Cancellation Proceeding"), on January 21, 2003.  On January 29, 2004, the United States Trademark Trial and Appeal Board (the "Board") denied petitioners' ("Bacardi's") motion for

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 2

summary judgment and dismissed the Cancellation Proceeding (the "Board Decision", Attachment 3).

In reaching its decision, the Board stated:

we conclude that HCH [Havana Club Holding] was in compliance with PTO renewal rules and practice when it filed its renewal application in its name [in 1996], that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration [1,031,651] in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board. (Board Decision 39)

and went on to state:

Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation. Therefore, the supplemental and amended petition to cancel is DISMISSED. (Board Decision 56)

Bacardi appealed the Board Decision by instituting the Litigation on March 29, 2004. In its Complaint, Bacardi seeks among other relief reversal of the Board Decision and cancellation of Registration No. 1,031,651. The Court in the Litigation has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint and has ordered the parties to engage in discovery relating to those motions before the motions are filed. That discovery is currently being conducted by the parties.

**OFAC's Grant of Specific Authority**
**To Represent Cubaexport In The Dispute**

Since Cubaexport was joined as a respondent in the Cancellation Proceeding, the law firm of Ropes & Gray or its predecessor firm Fish & Neave has been retained to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark. Ropes & Gray and its predecessor firm Fish & Neave have sought and received a license from OFAC for this purpose.

In particular, on March 10, 2003 OFAC issued License No. CU-71416 authorizing:

All transactions ... to enable Fish & Neave (the "Licensee"), in connection with all matters related to *Galleon S.A.* v. *Havana Club Holding, S.A.,* Trademark Trial and Appeal Board Cancellation No. 24,108, to provide legal services to, receive payment for such services from and to receive reimbursement for expenses related to such services from Empresa

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 3

Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport"), a Cuban national. (Attachment 4).

That license was renewed on February 20, 2004 in License No. CT-1943, which authorized Fish & Neave to "provide legal services to, and to receive payment for such services from ... Cubaexport" until March 31, 2005 (Attachment 5). Following the merger of Fish & Neave and Ropes & Gray, on March 4, 2005 OFAC issued the current License authorizing until March 31, 2006:

> All transactions ... to enable the Licensee [Ropes & Gray], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holding S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark ... to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals. (Attachment 2)

It is pursuant to these licenses that Ropes & Gray currently represents Cubaexport in the Litigation in which Bacardi has appealed the Board Decision and requested cancellation of Registration No. 1,031,651 and, as part of that representation of Cubaexport, has applied herein for renewal of Registration No. 1,031,651. Ropes & Gray has advised OFAC of this renewal application in the enclosed letter dated December 13, 2005 (Attachment 6).

### Reasons To Maintain The *Status Quo*
### Pending Resolution Of The Dispute

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board Decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed the Cancellation Petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in the Cancellation Proceeding. In Bacardi's appeal

ROPES & GRAY LLP

Commissioner for Trademarks
December 13, 2005
Page 4

of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint.  Effectively overruling the Board Decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate.  On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the Board Decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might.  If Ropes & Gray were not to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the present Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport submits the enclosed renewal application to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

Kindly acknowledge receipt of this letter and attachments by stamping and returning the enclosed self-addressed postcard.

Sincerely,

Vincent N. Palladino

VNP:emf
Enclosures

cc:   David W. Mills, OFAC
      Matthew Tuchband, Office of Legal Counsel, OFAC
      Clara David, Licensing Division, OFAC
      (Each With Enclosures)

**A282**
JA338

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.      :    1,031,651

Mark                  :    HAVANA CLUB & Design

Registrant            :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued                :    January 27, 1976

International Class    :    33

Attachments to Ropes & Gray Letter To Commissioner
for Trademarks Concerning Renewal of Registration

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Registration No.    :    1,031,651

Mark    :    HAVANA CLUB & Design

Registrant    :    Empresa Cubana Exportadora de Alimentos y Productos Varios

Issued    :    January 27, 1976

International Class    :    33


Box Post Reg Fee
Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451


## COMBINED DECLARATION AND APPLICATION
## FOR RENEWAL OF REGISTRATION UNDER §§ 8 & 9

The above identified applicant for renewal requests that the above-

identified registration, granted to it on January 27, 1976, be renewed for all of the goods

listed in the registration in accordance with the provisions of Section 9 of the Trademark

Act of July 5, 1946, as amended, 15 U.S.C. § 1059, and 15 U.S.C. § 1058(b)(2),

37 C.F.R. §§ 2.161(f)(2), 2.166 and TMEP §§ 1604.11, 1604.19.

Francisco Santiago Pichardo declares as follows.  He is Director of the

registrant, a Cuban company having its principal offices at Calle 23 No. 55, 8 vo. Piso,

Vedado, Ciudad de La Habana Cuba CP: 10400, and is authorized to execute this

declaration and application on behalf of the registrant.  The registrant owns Registration

No. 1,031,651, issued on January 27, 1976.  The mark is not being used in commerce on

the goods recited in the registration due solely to special circumstances, namely, the

embargo on trade with Cuba instituted in 1963 and implemented by the Cuban Assets

Control Regulations, 31 C.F.R. § 515, which prohibit the importation, distribution or sale

in the United States of goods produced in Cuba.  Nonuse is not due to any intention to abandon the mark, and the registrant intends that the mark be used in commerce after the embargo is lifted.

He further declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both, under Section 1001 of Title 18 of the United States Code; and that such willful false statements may jeopardize the validity of said registration.

<u>CONTACT INFORMATION</u>

Applicant has appointed Herbert F. Schwartz, Vincent N. Palladino and Pablo D. Hendler, members of the bar of the State of New York, at Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020 (Telephone (212) 596-9000), its attorneys to file this combined declaration and application on its behalf, to prosecute this application for renewal, to transact all business in the Patent and Trademark Office in connection therewith, and to receive all documents in connection with the renewal of this registration.

Dated: _9, 12_____, 2005

2



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**

License No. CU-74488

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:   **Ropes & Gray LLP (the "Licensee")**
      700 12th Street, NW, Suite 900
      Washington, DC 20005-3948
      Attn:  Renee L. Stasio, Esq.

1.   Pursuant to an application dated **January 26, 2005**, the following transactions are hereby licensed:

**\*\*\*\*\*SEE REVERSE\*\*\*\*\***

2.   This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3.   The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4.   This license expires on **March 31, 2006**, and is not transferable, is subject to the provisions of Title 31, Part 515 of the Code of Federal Regulations, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5.   This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions(s) herein licensed, nor does it release Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

**OFFICE OF FOREIGN ASSETS CONTROL**

By  *Clara David*  3/4/05
    for  David W. Mills
    Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

License No. CU-74488                                                              **Page 2 of 2**
Licensee: Ropes & Gray LLP

**SECTION 1 - AUTHORIZATION:** **(a)** All transactions are authorized to enable the Licensee, in connection the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, as described in the application, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

**Authority: 31 C.F.R. § 515.801.**

**SECTION 2 – RECORDKEEPING REQUIREMENTS:** The Licensee is required to keep a record of all transactions engaged in pursuant to the authorization (Section 1) of this license. Such records shall be made available for examination, upon demand, by the Office of Foreign Assets Control for at least five years from the date of each transaction.

**SECTION 3 - WARNINGS: (a)** Except as authorized above, nothing in this license authorizes persons subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Cuban Assets Control Regulations, 31 C.F.R. Part 515, as amended.

**(b)** Nothing in this license authorizes the transfer of funds through methods which involves debits or credits to blocked accounts subject to the jurisdiction of the United States.

**SECTION 4 - PRECEDENCE:** The authorization contained in this license is limited to the facts and circumstances specific to the application.
**********************************************************************************

```
DIPOSITION
IS NOT CITABLE
AS PRECEDENT
OF THE TTAB
```

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

Zervas

Mailed:  January 29, 2004

Cancellation No. 92024108

Galleon S.A., Bacardi-
Martini U.S.A., Inc., and
Bacardi & Company Limited

v.

Havana Club Holding,
S.A., dba HCH, S.A., and
Empresa Cubana
Exportadora De Alimentos
y Productos Varios, S.A.,
dba Cubaexport, joined as
a defendant

**Before Sams, Chief Administrative Trademark Judge, and
Cissel and Walters, Administrative Trademark Judges.**

**By the Board.**

On January 21, 2003, the Board (i) resumed proceedings
and allowed the parties time to brief petitioners' motion
(filed March 15, 2002) for summary judgment; (ii) joined
Empresa Cubana Exportadora De Alimentos y Productos Varios,
S.A. ("Cubaexport") as a defendant along with Havana Club
Holding, S.A. ("HCH"); and (iii) denied HCH's "Motion
Pursuant to the Government in the Sunshine Act for (A) an
Order Requiring Petitioners to Show Cause Why Their Claims

Cancellation No. 92024108

Should Not be Dismissed Due to Improper Ex Parte Contacts

Concerning an Adjudicatory Proceeding, (B) Full Disclosure

by Petitioners, Governor Bush, USPTO Director James E. Rogan

and Deputy Director Jon Dudas of the Extent and Nature of

All Such Ex Parte Communications Related to This Proceeding,

and (C) Suspension of This Proceeding Pending Resolution of

the Foregoing" (filed September 10, 2002).

This case now comes up on the following motions:

1. Petitioners' motion (filed March 15, 2002) for summary judgment;

2. HCH's motion (filed February 19, 2003) for reconsideration of the Board's denial of HCH's "Motion Pursuant to the Government in the Sunshine Act …"; and

3. Cubaexport's motion (filed April 25, 2003) "For an Order (1) Dismissing Bacardi's Amended Petition to Cancel; (2) In the Alternative, Directing Bacardi To Show Cause Why Its Amended Petition Should Not Be Dismissed and Compelling Disclosure of All Ex Parte Communications; and (3) Suspending All Proceedings Pending Resolution of This Dispositive Motion."

Respondents have opposed petitioners' motion and petitioners

have opposed the motions filed by HCH and Cubaexport.  We

have exercised our discretion and considered all reply

briefs filed by the parties.  See Trademark Rule 2.127(a)

and TBMP § 502.02(b) (2d ed. 2003) and authorities cited

therein.

As requested by HCH and Cubaexport in their respective

motions, we first turn to their motions before considering

petitioners' motion for summary judgment.

2

Cancellation No. 92024108

**1.  *HCH's Motion for Reconsideration of Board's Denial of HCH's "Motion Pursuant to the Government in the Sunshine Act …."***

In our January 21, 2003 order, we found that if the Government in the Sunshine Act applies to this case, HCH's motion was without merit and denied the motion.  We explained that the evidence filed by HCH in support of its contention that there were improper *ex parte* contacts, namely, (a) a June 13, 2002 letter from Florida Governor Jeb Bush to former Under Secretary of Commerce for Intellectual Property and United States Patent and Trademark Office ("PTO") Director James Rogan[1] written on behalf of Florida-based Bacardi-Martini, USA, Inc.; (b) a response from Director Rogan to Governor Bush dated July 3, 2002; and (c) a letter dated July 16, 2002 from Governor Bush in which Governor Bush thanked Director Rogan for the information he "passed along regarding the Bacardi case," were not relevant to the *merits* of this proceeding, as required by the statutory provisions under which HCH based its motion.  We also addressed Governor Bush's statement in his July 16, 2002 letter that "[a]long with the continued assistance of Mr. Jon Dudas [formerly, Deputy Under Secretary of Commerce for Intellectual Property and PTO Deputy Director, now, acting Under Secretary of Commerce for Intellectual Property and acting PTO Director], your attention to this matter has

---

[1] Director Rogan departed the PTO on January 12, 2004.

3

Cancellation No. 92024108

been very helpful." HCH maintained that this statement
indicated that there were "other and further *ex parte*
communications." We stated that we were "unpersuaded by the
record before us that such [*ex parte*] communications have
occurred." Further, we noted that petitioners and
respondent HCH had not briefed the applicability of the
Government in the Sunshine Act to Board proceedings, and,
after a lengthy discussion of certain relevant statutory
provisions, expressed our reservations about the
applicability of the Government in the Sunshine Act to Board
*inter partes* proceedings.

HCH contends that our decision is erroneous in several
respects and has submitted "documents obtained subsequent to
the filing of the Motion - some 150 pages of letters, e-
mails, and other communications obtained from freedom of
information laws in Florida and the federal FOIA [i.e., the
Freedom of Information Act]."[2] According to HCH, the
documents "confirm what was already apparent from the slim -
but startling - factual material available when the motion
was filed: Bacardi set out to enlist Governor Bush to apply
political pressure to obtain the cancellation it was
seeking, and used that relationship to facilitate numerous
*ex parte* communications by its own staff, and by the

---

[2] HCH submitted the documents as a part of Charles Sims'
declaration, which was filed with HCH's motion for
reconsideration. (Mr. Sims is one of HCH's attorneys.)

4

Cancellation No. 92024108

Governor and his staff." Because a motion for reconsideration may not properly be used to introduce additional evidence, see TBMP Section 518 (2d ed. 2003), we do not consider the "some 150 pages of letters, e-mails, and other communications" submitted by HCH and its arguments based on such letters, emails and other communications.

We next turn to HCH's arguments that are not based on the "some 150 pages of letters, e-mails, and other communications," mindful that a motion for reconsideration should not be devoted simply to a reargument of the points presented in a brief on the original motion, but rather should be limited to a demonstration that, based on the facts before it and the applicable law, the Board's ruling is in error and requires appropriate change. *Id.*

> A. *Applicability of Government in the Sunshine Act to this Proceeding.*

We addressed this issue at length in our January 21, 2003 decision. Nevertheless, HCH maintains -- in a footnote nonetheless -- that it "need not address the [Board's] suggestion that the Government in the Sunshine Act does not apply to this proceeding, since the Board made no such holding and decided the Motion on its merits." HCH, however, cannot prevail on its original motion if we are not persuaded that the Government in the Sunshine Act indeed

5

Cancellation No. 92024108

applies to this proceeding.[3]  We are unaware of any
precedent holding that the Government in the Sunshine Act is
applicable to Board proceedings, and HCH has not cited any
such precedent in its motion for reconsideration, even after
we had raised questions about the statute's applicability to
this proceeding.  Thus, we remain unconvinced that the
Government in the Sunshine Act applies to this proceeding.[4]

> B.   *"The Showing In This Proceeding Was More Compelling
> Than In Every Reported Case Where Disclosure Was
> Required"*[5]

HCH complains that it "made a much stronger showing [in
this case] of *ex parte* contacts than in those cases [cited
by HCH] where disclosure was ordered"[6] in view of the
"actual *ex parte* communications, urging the Director (a

---

[3] The manner in which HCH has chosen to address this vital
concern regarding the viability of its motion, i.e., cursorily in
a footnote, without addressing 5 U.S.C. § 554(a) (which limits
the statute's application to particular proceedings), without
addressing prior court precedent, and without discussing the
statute's legislative history, suggests to us that HCH is aware
that the basis for its motion is questionable.
[4] HCH also contends that "[e]ven if the Act did not apply, due
process and basic norms of administrative law would effectively
require the same result here."  Cubaexport has made essentially
the same argument in its motion, which is discussed below.  This
argument is not well taken for the reasons identified below in
the discussion of Cubaexport's motion.
[5] Subsection heading, HCH's motion for reconsideration, at
p. 5.
[6] For example, HCH cites to the news articles of *Portland Audubon
Soc'y v. Endangered Species Comm.*, 984 F.2d 1534 (9th Cir. 1993)
and the "third-party declarations professing *suspicions* of *ex
parte* contacts" of *Professional Air Traffic Controllers
Organization v. Federal Labor Relations Authority*, 672 F.2d 109
(D.C. Cir. 1982) ("*PATCO I*").

6

Cancellation No. 92024108

statutory member of the PTO[7]) to grant Bacardi the ultimate relief it was seeking, and to do expeditiously [sic]." According to HCH, the cases cited in HCH's motion for reconsideration provide that disclosure is "mandatory … [and] require *a fortiori* that it be directed here."  Also, HCH argues that the Board committed plain error by "skipping over the first step required by the Government in the Sunshine Act, obtaining the full record – [and rushing] to the second step, evaluation of what remedy is required, when the factual basis to assess what had happened had not yet been compiled."

Initially, we advise HCH that this case must be decided on its record, and not by comparison to unrelated cases. But even if we consider HCH's contention that HCH "has made a much stronger showing of *ex parte* contacts than in those cases where disclosure was ordered," we do not agree.  HCH's "showing" was quite unpersuasive.  First, the correspondence in the record before us when we considered HCH's original motion was between Governor Bush and Director Rogan, not the actual decision-makers in this case.  Although Director Rogan was a statutory member of the Board, see 15 U.S.C. § 1067(b), his work at the PTO was not limited to Board matters, see 35 U.S.C. § 3(a), and he did not author any of

---

[7] We assume that HCH intended to refer to the Board and not the PTO.

7

Cancellation No. 92024108

the orders written thus far in this case.  Second, HCH filed
just *three* letters between Governor Bush and the PTO as
evidence of *ex parte* communications.  (HCH did not include
the "some 150 pages of letters, e-mails, and other
communications" filed with its motion for reconsideration.)
In these letters, HCH points to just two phrases; i.e.,
Governor Bush's statement in his June 13, 2002 letter
seeking cancellation and his statement in his July 16, 2002
letter thanking Director Rogan for the "continued
assistance" of Mr. Dudas.  Thus, HCH's evidence in support
of its original motion was limited.  Third, the three
letters that HCH did file with its motion do not discuss or
refer to petitioners' claims in this proceeding.  As we
noted in our January 21, 2003 decision, the statutory
sections under which HCH brought its motion all require that
the *ex parte* communications be *on the merits*.  See 5 U.S.C.
§§ 557(d)(1)(A)-(C).  HCH has failed to satisfy one of the
key requirements of a statute under which HCH bases its
motion.

     We also disagree with HCH's contention that we
committed plain error by evaluating "what remedy is
required, when the factual basis to assess what had happened
had not yet been compiled."  Assuming the Government in the
Sunshine Act empowers us to grant the relief HCH seeks, we
must first be satisfied that there is cause to believe that

8

Cancellation No. 92024108

an impermissible *ex parte* communication indeed has been made.  In this case, HCH has not persuaded us that there have been any *ex parte* communications on the merits, has not asserted that there have been any *ex parte* communications with any of the actual decision-makers in this case, and has not offered any evidence that there has been any *ex parte* communications with such actual decision-makers.  Simply put, the evidence submitted with HCH's original motion does not persuade us that there is cause to grant the relief HCH seeks, i.e., issuing a show cause order or requiring full disclosure by petitioners, Governor Bush, Director Rogan and Mr. Dudas – even assuming we have the authority to do so.[8]

> C. *"The Communications Already Presented To The Board Were Clearly Relevant To the Merits Of This Proceeding, And Cannot Be Dismissed As Mere Status Inquiries"*[9]

HCH's arguments are largely based on the statement in Governor Bush's letter of June 13, 2002 that "[t]he out-dated registration belongs to a company owned by Fidel Castro called CubaExport and should be cancelled immediately."  HCH contends that a "request that the relief one party seeks be granted cannot be construed as a mere

---

[8] In footnote no. 4 of our January 21, 2003 order, we noted that HCH did not cite to any authority under which the Board may compel Governor Bush to provide "full disclosure."  HCH has not informed us of any such authority in its motion for reconsideration.  In view thereof, we conclude that there is no authority for us to compel Governor Bush to provide "full disclosure."

[9] Subsection heading, HCH's motion for reconsideration, at p. 7.

9

**Cancellation No. 92024108**

procedural inquiry, regardless of the recipient's portrayal
of the request, and is plainly relevant to the merits."

HCH ignores that there is more to the letter than
simply the request for immediate cancellation of the
registration.  The letter also states that Bacardi-Martini,
USA, Inc. is headquartered in Miami, "has a workforce of
more then 300 Floridians," and has "faced … a process mired
in lengthy bureaucratic procedures, with no end in sight";
and invites contact with the Governor's Office if there are
further questions.  Thus, despite HCH's arguments, we still
conclude that if the letter is considered as a whole, it is
a complaint on behalf of a Florida-based business about
delays in the cancellation process with a request for status
information, rather than an *ex parte* communication on the
merits.

Also, in arguing that our decision was erroneous, HCH
addressed our citation to *Professional Air Traffic
Controllers Org. v. FLRA*, 685 F.2d 547 (D.C. Cir. 1982)
("*PATCO II*"), in which the court found, inter alia, that two
phone calls by the Secretary of Transportation to two
members of the Federal Labor Relations Authority ("FLRA")

10

Cancellation No. 92024108

were not *ex parte* communications on the merits.[10]   HCH
points out that unlike *PATCO II* where the Secretary of
Transportation limited his statements to procedural matters,
in this case, Governor Bush "expressly requested that this
proceeding be decided in Bacardi's favor."   HCH further
contends that the *PATCO II* court's treatment of a dinner
conversation between American Federation of Teachers
President Albert Shanker and a member of the FLRA is "more
similar to the type [of *ex parte* contact] at issue in this
proceeding."   HCH states that "the labor leader expressed
his views as to what type of punishment should be meted out
to a union that participates in an illegal strike … without
even directly referring to the pending proceeding"; and that
the court in *PATCO II* "found this communication clearly
improper, as it was a blatant attempt to influence the
member's decision."

    We are not persuaded by petitioners' arguments.   First,
we cited the court's conclusion concerning the Secretary's
phone calls in our discussion of Governor Bush's request for
"quick, decisive action" or declaration that "a swift
resolution to this matter is imperative" in his first letter

---

[10] The Secretary had stated in one phone call the "the Department
of Transportation would appreciate expeditious handling of the
case."   In the other phone call, he expressed "his concern that
the case not be delayed."   The court, after considering the
substance of the communications, commented that the Secretary
"did not in fact discuss the merits of the case."   *Id*. at 118.

11

Cancellation No. 92024108

-- we did not cite the case in addressing Governor Bush's statement that the "out-dated registration … should be cancelled." We dealt with Governor Bush's statement regarding cancellation separately in a subsequent paragraph in the order. Second, we note that in the cited case, Mr. Shanker's comments in his dinner meeting were not made in a vacuum; they came after repeated public advocacy on his views of the PATCO strike, in support of PATCO. According to the court, "[h]e spoke frequently on this subject, was interviewed about the PATCO strike on a nationally televised news program, and published a number of columns in the New York Times discussing the PATCO situation." *Id.* at 570. Thus, there was no secret as to Mr. Shanker's view on the *PATCO* case and his advocacy for a particular result, and it is not surprising that he took the opportunity to advocate for his views in a private dinner with a member of the FLRA who was involved in deciding the case. The court evidently realized this too, and advised that the FLRA member should have terminated his discussion with Mr. Shanker when the conversation turned to the discipline appropriate for a striking union.

The facts in the case at hand are remarkably different. Here, we consider statements made in an unsolicited *letter* (not in a private dinner meeting or similar encounter) complaining of bureaucratic delays in a matter involving a

12

Cancellation No. 92024108

Florida constituent, where Florida's Governor requested that the relief the constituent seeks be granted.  There is no evidence in the record of a history of public advocacy for petitioners by Governor Bush or his staff, or public statements made by him or his staff on this matter.  Thus, we are not persuaded that the court's treatment of a dinner conversation between a union head with a history of public advocacy of a pro-union position in a case before the FLRA with an actual decision-maker in the FLRA case is in any way analogous to the case before us.

> D.   *"Even If The Communications Presented To The Board Were Status Inquiries, They Were Still Improper Under The Government In The Sunshine Act"*[11]

HCH also argues that even if the communications were status inquiries, they still were improper because "even a procedural inquiry may be a subtle effort to influence an agency decision," citing the *PATCO II* decision.[12]  It adds that the communications in issue here are "more egregious than the communications found improper in *PATCO*" because in *PATCO II*, it was the Secretary of Transportation who made the status inquiries, but in this case, the communications came on behalf of a private party, seeking "a quick, favorable decision for Bacardi from the Director"; and that

---

[11] Subsection heading, HCH's motion for reconsideration, at p. 10.
[12] As HCH acknowledges, despite its statements regarding procedural inquiries, the *PATCO II* court did not remand the case for a new proceeding.

13

Cancellation No. 92024108

the "Director is a statutory member of the TTAB, with power
to select members of TTAB panels and substantial influence
over their work and careers."

Because HCH does not contend that any of the actual
decision-makers in this case, i.e., those individuals who
authored or participated in the decisions rendered thus far
in this case, were asked about the status of this case, or
that Director Rogan or Mr. Dudas contacted any of the actual
decision-makers in this case, HCH's argument is not well
taken.

In view of the foregoing, we find that HCH has not
demonstrated that our decision of January 21, 2003 was in
error based on the facts before us and the applicable law.
HCH's motion for reconsideration is therefore denied.

**2.   *Cubaexport's Motion to Dismiss or, in the Alternative,
for an Order to Show Cause and Compelling Disclosure, and to
Suspend.***

Before turning to the merits of the motion, we address
petitioners' objection on the basis that the Board's order
of April 15, 2003 did not encompass Cubaexport's filing the
instant motion.  Specifically, petitioners contend that our
order of April 15, 2003 only recognized the decision of the
Department of Treasury's Office of Foreign Assets Control
("OFAC") on Fish & Neave's (Cubaexport's attorneys in the
proceeding) application for a specific license to respond to
petitioners' summary judgment motion.  Because Eric Huang,

14

**Cancellation No. 92024108**

one of Cubaexport's attorneys employed by Fish & Neave,
states in his cover letter accompanying Cubaexport's motion
that the motion is made "pursuant to the Board's April 15,
2003 order allowing respondent Cubaexport to respond to the
motion for reconsideration filed by" HCH, and because the
motion is based, at least in part, on the same facts and
statute as HCH's motion, petitioners' objections are not
well taken and we proceed to consider Cubaexport's motion.

According to Cubaexport, from January 2002 through at
least September 2002, Governor Bush's office and petitioners
acted in concert and in secret to persuade the PTO to act in
petitioners' favor. As evidence, Cubaexport offers the
declaration of Mr. Huang, which encloses a duplicate copy of
(a) the declaration of Gregg Reed, one of HCH's attorneys,
filed with HCH's motion under the Government in the Sunshine
Act and enclosing, inter alia, a copy of the three
communications between Governor Bush and Director Rogan
discussed above, and (b) Mr. Sims' declaration which was
filed with HCH's motion for reconsideration and encloses a
copy of the "some 150 pages of letters, e-mails, and other
communications." From the documents submitted with Mr.
Huang's declaration, Cubaexport concludes as follows:

- Two of Governor Bush's aides, on February 20,
2002, met in secret with PTO attorney Eleanor
Meltzer [of the PTO's Office of Legislation and
International Affairs] to discuss Bacardi's
cancellation petition.

15

**Cancellation No. 92024108**

- On February 25, 2002, Bacardi Vice President Jorge Rodriguez-Marquez met secretly with PTO officials, including Deputy Director Jon Dudas and Ms. Meltzer, to discuss the cancellation and press Bacardi's case. That second meeting focused specifically on Bacardi's arguments as to why the HAVANA CLUB registration [that is, the registration which is the subject of this proceeding] should be cancelled.

- Bacardi later complained that, in the February 25 meeting, Ms. Meltzer revealed "personal negative feelings about [Bacardi's] case."

- On March 19, 2002, Governor Bush's office informed Deputy Director Dudas of [the] summary judgment motion that Bacardi filed.

- On March 20, 2002, Bacardi's vice president sent to Travis Thomas, Director of the Commerce Department's Office of Business Liaison, an e-mail with copies of Bacardi's summary judgment motion, along with Bacardi's arguments as to why Cubaexport is not entitled to the HAVANA CLUB registration. In his e-mail, Bacardi's vice president discussed "Bacardi's rights under the law" and argued (incorrectly) that Cubaexport allowed the registration to lapse. He argued that "Cubaexport willingly gave up all their rights in 1993 when they transferred them to HCH" and that "Cubaexport's 20 year registration ended in 1996 and they chose not to renew it…."

- On March 21, 2002, after speaking with Bacardi's vice president, [Mr.] Thomas forwarded to Deputy Director Dudas the March 20 e-mail. (Citations omitted.)

Further, Cubaexport maintains that petitioners, "seemingly frustrated with the progress of [their] *ex parte* efforts … decided to up the ante," and contends as follows:

- Bacardi's vice president requested that Governor Bush help put more pressure on the PTO "where possible." From April through the beginning of June 2002, Bacardi and the Governor's staff

16

Cancellation No. 92024108

prepared a letter from Governor Bush himself to "get this resolved." The decision was made by the Governor's staff to "move up the food chain" to the PTO Director James Rogan, a member of the Board.

- On June 13, 2002, Governor Bush personally demanded that the registration be cancelled in a letter to Director Rogan.

- On September 3, 2002, Deputy Director Dudas met with Bacardi representatives to discuss the cancellation proceeding. There is no information now available to respondents as to what was specifically discussed. (Citations omitted.)

Cubaexport represents that neither Cubaexport nor HCH were copied on any of these letters and e-mails, nor were they informed of, or invited to attend, the meetings mentioned above.

Cubaexport first maintains that "Bacardi's concerted effort to force a particular outcome in this action through secret meetings and correspondence with PTO officers violates the most basic concepts of fairness in adversary proceedings." In support, Cubaexport notes that the PTO Director and Deputy Director "have substantial influence over the Board members' work and careers"; that they both are statutory members of the Board; and that they both have the power to cancel a registration in a cancellation proceeding, citing 15 U.S.C. § 1067(b), 15 U.S.C. § 1068 and 35 U.S.C. § 3. Second, Cubaexport maintains that "Bacardi's *ex parte* communications" constitute improper *ex parte* communications under the Government in the Sunshine Act.

17

Cancellation No. 92024108

Cubaexport seeks dismissal, or, in the alternative, a show cause order why petitioners' supplemental and amended petition to cancel should not be dismissed.  Cubaexport also requests that petitioners be compelled to disclose fully the amount, context and impact of *ex parte* communications. According to Cubaexport, full disclosure will "afford the Board a more complete picture of exactly what transpired than even the current record, and will allow respondent to respond fully to the arguments presented *ex parte* to the PTO."

We have carefully considered each of Cubaexport's and petitioners' arguments in connection with Cubaexport's motion.[13]  Assuming we have the authority to grant what Cubaexport seeks, we are not persuaded that Cubaexport is entitled to the relief it requests.

First, Cubaexport is incorrect in contending that the Deputy Director is a statutory member of the Board.  Neither 15 U.S.C. § 1067(b) nor 35 U.S.C. § 3, cited by Cubaexport, nor any other statute, states that the Deputy Director is a member of the Board.  Even though 35 U.S.C. § 3 authorizes the Deputy Director to act in the capacity of the Director

---

[13] The Board has not received a response to Cubaexport's motion from HCH.

18

Cancellation No. 92024108

when the Director is absent, as Cubaexport contends, it does not state that the Deputy Director a member of the Board. Also, there is no evidence in this case that during relevant time periods, Director Rogan was absent from the PTO and Mr. Dudas was acting in the capacity of the Director.  Thus, we reject the implication in Cubaexport's argument that contact with Mr. Dudas was contact with the Board.

Second, Cubaexport has not provided evidence of any ex parte communications between petitioners and/or their "agents," and the actual decision makers in this case, and has not provided evidence of any communications between Director Rogan and Mr. Dudas and the actual decision-makers in this case.  Without any evidence of contact with the actual decision-makers in this case, we cannot agree that, if indeed the Government in the Sunshine Act applies to this proceeding,[14] petitioners have violated the Government in

---

[14] Cubaexport tries to persuade us that the Government in the Sunshine Act applies to Board inter partes proceedings, despite Section 554 thereof which exempts matters "subject to a subsequent trial of the law and the facts *de novo* in a court." Cubaexport argues that a court's review of Board decisions are "not a true *de novo* proceeding"; and the "Board's finding[s] of fact are 'given great weight' and are not upset unless new evidence is introduced which 'carries thorough conviction.'" However, courts regularly refer to a district court appeal from a Board decision as a *de novo* proceeding.  See, e.g., *Redken Laboratories, Inc. v. Clairol, Incorporated*, 501 F.2d 1403, 183 USPQ 84 (9th Cir. 1974) ("Title 15 U.S.C. § 1071 affords both parties to a completed cancellation proceeding before the Board the option of having all further proceedings conducted as a civil action in the district court.  That civil action is intended to be a trial de novo."); *Gold Seal Company v. Weeks*, 129 F.Supp. 928, 105 USPQ 407 (D.D.C. 1955) (The court stated "[t]his is a trial de novo" in a district court appeal of a Patent Office

19

**Cancellation No. 92024108**

the Sunshine Act or that the requested show cause order should be issued, or even that the "fairness and the integrity of the process" has been compromised.

In view of the foregoing, including the reasons set forth in our denial of HCH's motion for reconsideration, and for the reasons discussed in our January 21, 2003 order, Cubaexport's motion to dismiss, or, in the alternative, for a show cause order, under both the Government in the Sunshine Act and under "concepts of fairness in adversary proceedings," is denied.  Also, in view of our denial of Cubaexport's motion to dismiss, or, in the alternative, for a show cause order, Cubaexport's motion to suspend pending resolution of its motion is moot.

### 3. *Petitioners' Motion for Summary Judgment*

Before addressing the merits of petitioners' summary judgment motion, we provide a recitation of the underlying facts.  Because this matter is not a simple one, the information provided herein is lengthy.  We first describe the adoption, use, registration and transfers of the mark which is the subject of this proceeding; then describe the

decision refusing registration); J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 21:20 (4th ed. 1997)("If appeal is made to the Federal Circuit, the case proceeds on a closed record and no new evidence is permitted.  But if review is sought in a federal court, review is a form of 'de novo' scrutiny and new evidence is permitted."); and *Id.* at 21:21 ("Civil review in federal court is intended to be a trial 'de novo' of the Trademark Board decision.")  We therefore are not persuaded by Cubaexport's argument.

Cancellation No. 92024108

civil action between the parties; and conclude with a

description of petitioners' actions in the PTO.[15]

*Adoption, use, registration and transfer of mark*

Before the Cuban revolution, Jose Arechabala, S.A.

("JASA"), a Cuban corporation owned principally by members

of the Arechabala family, produced HAVANA CLUB rum.  JASA

obtained the following four United States trademark

registrations:

1. U.S. Reg. No. 324,385 for HAVANA CLUB for "ethyl alcohol, rum, etc." (registered May 14, 1935);

2. U.S. Registration No. 335,919 for HAVANA CLUB and Design for "rum, etc." (registered June 16, 1936);

3. U.S. Registration No. 578,679 for a second HAVANA CLUB and Design mark (lined for yellow-beige and red) for "rum" (registered August 11, 1953 on the Supplemental Register); and

4. U.S. Registration No. 578,680 for the second HAVANA CLUB and Design mark (without color lining) for "rum" (registered August 11, 1953 on the Supplemental Register).

These registrations expired after their initial twenty-year

terms for failure to renew the registrations.  JASA exported

its rum to the United States until 1960, when the Cuban

---

[15] The background information recited herein has been extracted from PTO records, the parties' briefs, the decision of the District Court in *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.Supp. 302 (S.D.N.Y. 1997), and the decision of the Second Circuit in *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d Cir. 2000), *cert. denied*, 531 U.S. 918 (2000).

21

**Cancellation No. 92024108**

government, under the leadership of Fidel Castro, seized and
expropriated JASA's assets.  Neither JASA nor its owners
ever received compensation for the seized assets from the
Cuban government.

Soon thereafter, Cubaexport began selling HAVANA CLUB
rum made in the JASA distillery.  On June 12, 1974,
Cubaexport applied to register the following trademark
(hereinafter "HAVANA CLUB and Design") for "rum" under
Section 44 of the Trademark Act, based on Cuban Registration
No. 110,353:



The resulting registration, i.e., Registration No.
1,031,651, issued on January 27, 1976 for an initial term of
twenty years.[16]

In 1963, the United States imposed an embargo on Cuba.
See Cuban Assets Control Regulations ("CACR"), 31 C.F.R.

---

[16] Registration No. 1,031,651 includes a disclaimer of "Havana"
and "Fundada en 1878," and is lined for the color gold.  The PTO
accepted a Section 8 declaration on April 12, 1982, and the
registration was renewed on June 18, 1996.

22

Cancellation No. 92024108

Part 515, promulgated pursuant to the Trading with the Enemy Act of 1917, 12 U.S.C. § 95a.[17]  In 1996, Congress enacted the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, Pub. L. No. 104-114 (1996), which, among other things, codified the regulations implementing the Cuban embargo, see 22 U.S.C. § 6032(h).  The Secretary of the Treasury has the authority to administer the Cuban embargo, which he has delegated to OFAC.  See 31 C.F.R. § 515.802.

From 1972 to 1993, Cubaexport, a Cuban state enterprise, exclusively exported HAVANA CLUB rum primarily to Eastern Europe and the Soviet Union.  In 1993, Cubaexport sought to reorganize and find a foreign partner for its "Havana Club" rum business.  Havana Rum & Liquors, S.A. ("HR & L"), a newly formed Cuban company, entered into a joint venture agreement with Pernod Ricard, S.A. ("Pernod"), a French company distributing liquor internationally.  Under a November 1993 agreement between Pernod and HR & L, Havana Club International, S.A. ("HCI") and HCH were formed.  HCH and HCI are entities organized under the laws of Luxembourg and Cuba, respectively.  In an agreement dated January 10, 1994, Cubaexport assigned the HAVANA CLUB and Design

---

[17] The CACR prohibit, inter alia, (i) the importation into the United States of merchandise from Cuba or merchandise of Cuban origin, and (ii) the use in U.S. commerce of any trademark in which Cuba or a Cuban national has, at any time since July 8, 1963, had any interest, direct or indirect.  See 31 C.F.R. §515.201 and §515.204, and 31 C.F.R. §515.201 and §515.311, respectively.

23

**Cancellation No. 92024108**

trademark and registration to HR & L, and in a subsequent
agreement dated June 22, 1994, HR & L assigned this
trademark and registration to HCH.[18]

After an October 5, 1995 application to OFAC for a
"specific" license authorizing the 1994 assignments of the
HAVANA CLUB and Design trademark from Cubaexport to HR & L,
and from HR & L to HCH, OFAC issued License No. C- 18147 on
November 13, 1995, which approved the two assignments and
authorized all necessary transactions incident to the
assignments of the mark.

Subsequently, on January 18, 1996, HCH filed a renewal
application for Registration No. 1,031,651, containing an
excusable nonuse declaration asserting that but for the
embargo, HCH would sell HAVANA CLUB rum in the United
States.  On June 18, 1996, U.S. Registration No. 1,031,651
was renewed for an additional term of ten years.

Almost one year later, on April 17, 1997, OFAC revoked
License No. C- 18147, stating:

> You are notified that, as a result of facts and
> circumstances that have come to the attention of
> this Office which were not included in the
> application of October 5, 1995, License No. C-
> 18147 ... is hereby revoked retroactive to the date
> of issuance.  The determination to revoke License
> No. C- 18147 is made pursuant to § 515.805 of the
> Cuban Assets Control Regulations, 31 C.F.R. Part
> 515.  Any action taken under this specific license

---

[18] The Assignment Branch of the PTO recorded the assignment from
Cubaexport to HR & L at Reel No. 1104, Frame No. 0046, on
February 10, 1994 and recorded the assignment from HR & L to HCH
at Reel No. 1219, Frame No. 0428, on September 13, 1994.

24

Cancellation No. 92024108

from the date of issuance until now is null and
void as to matters under the jurisdiction of the
Office of Foreign Assets Control.[19]

*Litigation Between the Parties.*

Beginning in 1995, petitioner Galleon S.A. ("Galleon")
produced rum in the Bahamas bearing the HAVANA CLUB name,
and distributed sixteen cases of this rum in the United
States.  From May 1996 to August 1996, petitioners
distributed an additional 906 cases of Galleon's HAVANA CLUB
rum in the United States.

In December 1996, HCH and HCI filed a civil action to
enjoin Galleon, Bacardi-Martini USA, Inc. and three other
entities (collectively "Bacardi") from using the HAVANA CLUB
trademark, alleging violations of sections 32 and 43(a) of
the Trademark Act.  One of Bacardi's defenses was that
OFAC's specific license to HCH, authorizing the assignments
of the U.S. trademark, was invalid because HCH obtained the
mark by fraud.  In March 1997, the District Court ruled that

---

[19] OFAC did not provide the reasons for the revocation of the
license.  However, the District Court, in its opinion, stated as
follows:

> [T]he "facts and circumstances" which later came to
> the attention of OFAC apparently concerned the
> incorporation of Pernod into the ownership of HC
> Holding and HCI.  Plaintiffs' October 19, 1995
> application, filed by Plaintiffs' counsel, stated that
> "each of the assignors and assignees are nationals of
> Cuba."  Plaintiffs' own papers indicate that Pernod,
> one of the parties involved in the reorganization, is
> not a national of Cuba.

*Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.Supp 302, n. 7
(S.D.N.Y. 1997) ("*Havana Club II*").

25

Cancellation No. 92024108

Bacardi lacked standing to challenge OFAC's specific license to HCH and that OFAC's decision to grant the specific license was unreviewable by the District Court.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 961 F.Supp 498 (S.D.N.Y. 1997) (*"Havana Club I"*).

In August 1997, the District Court ruled on Bacardi's summary judgment motion on its counterclaim for cancellation, finding that HCH had no rights to the HAVANA CLUB trademark because the specific license to assign the mark to HCH had been nullified by OFAC's revocation of the specific license and because the CACR's general license authority under 31 C.F.R. § 515.527(a) did not authorize the assignment.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 974 F.Supp 302 (S.D.N.Y. 1997) (*"Havana Club II"*).  Although acknowledging that the nullification of the assignment caused the rights in the mark to revert to Cubaexport, the assignor, the District Court did not cancel the United States registration for HAVANA CLUB and Design because Cubaexport was not a party to the litigation.  *Id.* at 311-12.

On February 4, 2000, the Second Circuit affirmed the decision of the District Court.  See *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 53 USPQ2d 1609 (2d. Cir. 2000), *cert. denied*, 531 U.S. 918 (2000).

26

Cancellation No. 92024108

*Actions taken in the PTO*

Petitioners commenced this cancellation proceeding seeking cancellation of Registration No. 1,031,651 on July 12, 1995 with the filing of their original petition to cancel.  On September 4, 1996, the Board granted petitioners' motion to amend the petition to cancel and the supplemental and amended petition to cancel (filed August 20, 1996) became petitioners' operative pleading in this case.  The supplemental and amended petition to cancel asserts the following claims; (i) fraud in obtaining the registration; (ii) fraud in maintaining the registration (with the filing of the Section 8 affidavit); (iii) fraud in renewing the registration; (iv) abandonment based on the legal effect of the assignments of the registration; and (v) misrepresentation of the source of the goods.

On March 17, 1997, the Board granted petitioners' motion to suspend proceedings due to the civil action between the parties.  The Board also deferred action on *HCH's* motion (filed October 18, 1996) for summary judgment; petitioners' motion (filed December 3, 1996) to extend the time to respond to HCH's motion for summary judgment; and petitioners' motion (filed January 6, 1997) under Fed. R. Civ. P. 56(f), which were pending at the time.

Several months after the Supreme Court of the United States denied a writ of certiorari of the Second Circuit's

27

**Cancellation No. 92024108**

decision, petitioners requested on March 1, 2001 that "the judgment of the United States District Court … canceling Havana Club Holding's rights in Registration No. 1,031,651 be given effect …." On July 6, 2001, the Board noted petitioners' request was not in accordance with 15 U.S.C. § 1119 providing that "[d]ecrees and orders [regarding cancellation of registrations] shall be certified by the court to the Director," and maintained the proceedings in suspended status.

Three and a half months later, on October 26, 2001, Acting PTO Director Nicholas Godici issued an order directing the parties to the District Court proceeding to show cause why the records of the PTO should not be rectified to reflect the District Court's order invalidating the assignments of the registration involved in this proceeding. After the parties responded, Commissioner of Trademarks Anne H. Chasser issued a notice on January 15, 2002 providing that PTO records "will be rectified to reflect the district court's order invalidating the recorded assignments" and that "registration records will also be rectified to conform with the assignment records." PTO assignment records at Reel No. 2398, Frame No. 0855 now show that Cubaexport is the owner of record of Registration No. 1,031,651, as does the PTO's automated database of registrations. On March 15, 2002, petitioners filed a

28

Cancellation No. 92024108

Petition for Review with the Federal Circuit, thereby "appealing" the Commissioner's decision.  On July 31, 2002, the Federal Circuit granted the PTO's motion to dismiss and dismissed the appeal, finding that the Federal Circuit's review of decisions concerning trademarks is limited to the "review [of] decisions of the Trademark Trial and Appeal Board with respect to applications for registration of marks, cancellation proceedings, and opposition proceedings."

Also on March 15, 2002, petitioners filed their combined motion for summary judgment and motion to resume proceedings which we address *infra*; noting that the civil action "has long since concluded, appeals have been taken, and a final decision on the merits has been entered."  On April 3, 2002, HCH sought continued suspension of the cancellation proceeding in view of petitioners' Federal Circuit appeal of the Commissioner's Notice, which we granted in an order mailed on April 24, 2002.[20]  We resumed proceedings and reset the time for further briefing of the summary judgment motion and motion for reconsideration on April 15, 2003, after the Federal Circuit had rendered its decision and after Fish & Neave had obtained permission from OFAC to represent Cubaexport in this proceeding.

---

[20] The Board made minor amendments to its April 24, 2002 order in an order mailed on May 13, 2002.

29

**Cancellation No. 92024108**

With the facts and events mentioned above in mind, we turn to the merits of petitioners' summary judgment motion.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law.  See Fed. R. Civ. P. 56(c).  The purpose of summary judgment is to avoid an unnecessary trial where additional evidence would not reasonably be expected to change the outcome.  See *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 222 USPQ 741 (Fed. Cir. 1984).  A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).  The evidence must be viewed in a light favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor.  See *Old Tyme Food, Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

Petitioners maintain that the District Court "Cancellation Order" cancelled HCH's rights in the registration, found that HCH never acquired any ownership rights in the registration and that the assignments from Cubaexport to HC & L and from HC & L to HCH were null and void.  Thus, according to petitioners, "the renewal

30

Cancellation No. 92024108

affidavit filed by HCH must also be treated as a nullity because if HCH was not the registrant and never acquired any ownership interest of any kind in the subject registration … then HCH could not as [a] matter of law renew that application [sic]."  They conclude that "HCH's renewal application was a dead letter just like the assignments, so the U.S. HAVANA CLUB Registration expired in 1996." Further, they maintain that "[o]nly Cubaexport, the putative owner of the U.S. HAVANA CLUB Registration in 1996, lawfully had the power to file the renewal affidavit"; that Cubaexport has not filed a renewal application; and if Cubaexport were allowed to file one now, it would not be "justifiable" because Cubaexport had transferred its rum business, including worldwide rights, its personnel and its files, and the time for filing a renewal affidavit has passed.  They argue that as a result, the registration has expired and must be cancelled.

In response, HCH and Cubaexport, in separate briefs, argue, inter alia, that because petitioners commenced this proceeding more than five years after the issuance of the registration, they may not challenge the registration except on one of the grounds set forth in Section 14(3) of the Trademark Act.  Noting that the motion for summary judgment is predicated on the argument that the registration should be canceled because HCH, not Cubaexport, filed the renewal

31

**Cancellation No. 92024108**

application, respondents contend that the motion must be
denied because "wrong-party renewal" is not a ground for
cancellation under Section 14(3).

Respondents also argue that cancellation would be
inequitable under the circumstances of this case.
Specifically, HCH contends in its response as follows:

> … HCH acted reasonably and in complete good faith
> in renewing the Havana Club Registration.  In
> fact, *only* HCH could have renewed the Havana Club
> Registration during the renewal period: throughout
> the 1996 renewal period, HCH was the owner of the
> registration from the perspective of all
> concerned, including without limitation (a)
> Cubaexport and HCH (both of which then reasonably
> believed the assignments from Cubaexport to HRL
> and from HRL to HCH to have been legally
> effective, based on, among other factors, the
> existence of the Specific License …); (b) OFAC
> (which had granted the then-effective Specific
> License); and (c) the PTO (which processed and
> accepted without question the renewal papers filed
> by HCH).
>
> In fact, during the renewal period, the PTO would
> have been obligated by law to reject any
> application to renew the Havana Club Registration
> filed by Cubaexport or any other person or entity
> other than HCH, because from the perspective of
> the PTO and all others concerned, it was HCH that
> then owned the registration.  It was not until
> April 1997 — long after the renewal period for the
> Havana Club Registration had closed — that OFAC
> revoked the Specific License retroactive to its
> date of issuance; … and it was not until October
> 1997 that the court directed the PTO to void the
> assignments, revest Cubaexport with ownership of
> the Havana Club Registration, and retroactively
> deem Cubaexport as the owner of the registration
> at all times since issuance of the registration in
> 1976.

In reply, petitioners argue that the "wrong-party
renewal" argument is a red herring because "the Lanham Act

32

A319

Cancellation No. 92024108

mandates that a lapsed registration be stricken automatically" and "[n]o formal cancellation proceeding is required." They add that "[e]ven if a cancellation proceeding were required to be brought, appropriate grounds for cancellation under Section 14(3) include abandonment and fraud, as may be asserted here." Further, petitioners reiterate that "[o]nly Cubaexport, the putative record owner of the HAVANA CLUB Registration in 1996, lawfully has the power to file the renewal affidavit" and it did not do so. Therefore, they conclude that the registration is "nothing more than 'dead wood' and the PTO must rectify the register to expunge that registration."

Further, in response to respondents' contention that the renewal application (filed by HCH) was timely and proper because it was accepted by the PTO, petitioners argue that the district court determined that HCH had no interest in the registration at the time HCH filed the renewal papers; that under Section 9(a) of the Trademark Act, the "true owner of the registration" must file a renewal application within a specific statutory time period; and that HCH was not that true owner.

In deciding petitioners' summary judgment motion, we begin with the decision of the District Court in *Havana Club II*, which stated as follows:

> Cubaexport's rights arise out of the invalid transfer of the rights to the mark. The abortive

33

Cancellation No. 92024108

the application for renewal filed by HCH satisfied all statutory and PTO requirements for a complete application." Petitioners have not challenged Cubaexport's argument. Thus, we assume that the renewal application is otherwise in accordance with "all statutory and PTO requirements for a complete application" and limit our inquiry to the questions raised by petitioners regarding the validity of the renewal registration in light of the District Court decision.

We now turn to the question which is at the heart of petitioners' motion, i.e., whether the District Court's opinions compel cancellation of the renewed HAVANA CLUB and Design registration.

A proper renewal application must be executed and filed by the owner of a registration.[23]   See 15 U.S.C. § 1059 (1988) and 15 U.S.C. § 1127 (1994); *In re Wella A.G.*, 787 F.2d 1549, 229 USPQ 274, n.1 (Fed. Cir. 1986); 37 C.F.R. §2.182; and TMEP §1605.03 (2d ed. 1993).  If the owner, as set forth in the application for renewal, is not the same person or the same legal entity as the registrant shown in

---

[23] Trademark Rule 2.182, at the time of the renewal, stated:

> An application for renewal may be filed by the registrant at any time within six months before the expiration of the period for which the certificate of registration was issued or renewed, or it may be filed within three months after such expiration …."

Pursuant to 15 U.S.C. § 1127, the term "registrant" includes both the original registrant and a person who has acquired ownership through proper transfer of title.

36

Cancellation No. 92024108

the registration, continuity of title from the registrant to the present owner must be shown. *Id.* The owner may establish its ownership of the registration by recording papers evidencing each change of ownership in the Assignment Division and specifying where such evidence is recorded in the PTO or submitting other proof of the change of ownership. *Id.*

In this case, well before the nine-month renewal period commenced,[24] it appeared that Cubaexport was no longer the owner of the registration. According to HCH and Cubaexport, all of the parties concerned considered HCH as the owner of the registration. Cubaexport had assigned the registration to HR & L, and HR & L had assigned the registration to HCH. The assignments from Cubaexport to HR & L and from HR & L to HCH had been recorded with the Assignment Branch of the PTO. Continuity of title to an assignee -- one of the renewal requirements noted above -- from the original registrant (Cubaexport) to HCH existed within the records of the PTO, and the renewal application was made in the name of HCH, the owner of record.

---

[24] The initial term of the HAVANA CLUB and Design registration expired on January 27, 1996. Thus, the applicable statutory renewal period spanned from July 27, 1995 to April 27, 1996. See Trademark Rule § 2.182; and 15 U.S.C. § 1059 (1988). HCH filed the renewal application on January 12, 1996, two weeks before the expiration date of the registration.

37

Cancellation No. 92024108

Petitioners contend that "[o]nly Cubaexport … lawfully had the power to file the renewal affidavit." However, if Cubaexport had tried to renew the registration during the applicable statutory renewal period, it would have been unsuccessful; the Post Registration Division would have properly refused the renewal application because the owner of record was not HCH. Additionally, because the mark had actually been transferred prior to the filing of the renewal application, a declaration by Cubaexport stating that Cubaexport was the owner of the registration would not have been truthful at that time, and therefore renewal of the registration in the name of Cubaexport would have been subject to challenge.

Two other considerations must be given great weight in our decision. First, in judging the validity of the renewal registration, we must focus on circumstances in effect when the renewal applicant filed its application, and not on the circumstances which existed years later. To do otherwise would inject confusion and uncertainty in the renewal process and administratively burden the Trademark Office. Second, there is no opportunity now for Cubaexport to file a new, substitute or amended renewal application. The statutory renewal period has long passed, and neither we, nor the parties, may extend or reopen that period.

38

Cancellation No. 92024108

In view of the foregoing, we conclude that HCH was in compliance with PTO renewal rules and practice when it filed its renewal application in its name, that it filed a proper renewal application, that the PTO acted properly in accepting the renewal application and renewing the registration in HCH's name, and that the resulting renewal registration is valid and must be so recognized by the Board. Therefore, and again mindful that the District Court has not specifically ordered the cancellation of the registration, but in fact concluded that Cubaexport "retained whatever rights it had in said mark and the related U.S. Registration as of said date, notwithstanding the invalid transfers" and noted that Cubaexport "may reform its agreement with Plaintiffs so that it is once again the company entitled to export the rum under the Havana Club mark after the embargo is lifted," we conclude that the District Court's order does not compel us to cancel the registration. Petitioners' summary judgment motion is therefore denied.

### 4. *Sufficiency of Claims in Petition to Cancel.*

We next consider the legal sufficiency of petitioners' complaint, i.e., whether petitioners have stated any claims in their supplemental and amended petition to cancel upon which the Board may grant relief. See Fed. R. Civ. P.

39

**Cancellation No. 92024108**

12(b)(6);[25] and *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir. 1989)(a court may dismiss a complaint under its own motion for failure to state a claim).  Petitioners' pleading need only allege such facts as would, if proven, establish that petitioners are entitled to the relief sought, that is, that (1) petitioners have standing to maintain the proceeding, and (2) a valid ground exists for petitioning to cancel the involved registration.  In undertaking our review, we accept all of petitioners' well-pleaded allegations as true, and we construe the complaint in the light most favorable to petitioners.  See TBMP § 503.02 (2d ed. 2003) and cases cited therein.

    We consider each of petitioners' allegations in turn below.  Because we find that petitioners have not alleged any valid ground for petitioning to cancel the involved registration, we need not consider petitioners' standing and have not done so.

*Fraud in Obtaining Registration.*

    The supplemental and amended petition to cancel pleads as follows in relevant part:

        21.  Cubaexport … was not the successor to Jose Arechabala, S.A. … The use of the statement "Fundado en 1878" as part of the HAVANA CLUB and DESIGN mark registered by Cubaexport was meant to be understood by the American public as an indication that Cubaexport's rum was somehow associated with or approved

_____

[25] Fed. R. Civ. P. 12(b)(6) is made applicable to the Board pursuant to Trademark Rule 2.116(a).

40

Cancellation No. 92024108

> by the original source of HAVANA CLUB rum in
> the United States and was of the same
> quality as the rum they had previously
> purchased and enjoyed.

22. Cubaexport was well aware at the time it
filed its application … that it was not the
owner of the mark HAVANA CLUB for rum in the
United States.

23. Cubaexport knew that the HAVANA CLUB and
DESIGN mark which it applied for in the
United States was still associated with Jose
Arechabala, S.A., the original Cuban company
which had previously imported and sold
HAVANA CLUB rum in the United States.
Moreover, the formula used to make ersatz
HAVANA CLUB rum by Cubaexport was materially
different from the formula used by the
original producers of HAVANA CLUB rum.  This
formula was changed surreptitiously in a
manner calculated to deceive purchasers of
HAVANA CLUB rum as to the changed nature of
the product.

                    *      *      *

44. These fraudulent acts and statements
include, but are not limited to, the
statement that the HAVANA CLUB and DESIGN
mark was owned by Cubaexport at the time of
the original application ….  [This statement
was] willfully false and fraudulent when
made and [was] done with the intention of
fraudulently obtaining … the registration of
the HAVANA CLUB and DESIGN mark on the
Principal Register of the PTO.

First, we address a misstatement in paragraph 44.

Petitioners allege that Cubaexport represented that it owned

the HAVANA CLUB and Design mark at the time of the original

application.  In actuality, Cubaexport merely represented

that it *believed* that it was the owner of the mark in the

original application.  Specifically, Cubaexport, by its

41

**A326**
JA382

Cancellation No. 92024108

Director, stated:

> … he believes said company to be the owner of the
> mark sought to be registered; that to the best of
> his knowledge and belief no other person, firm,
> corporation or association has the right to use
> said mark in commerce, either in the identical
> form or in such near resemblance thereto as may be
> likely, when applied to the goods or such other
> person, to cause confusion, or to cause mistake,
> or to deceive ….

See 35 U.S.C. § 1051(a)(1).  This difference is significant
because "[w]here there is reasonable doubt as to who is the
owner of a mark, it is not fraud to state in the application
oath that one 'believes himself, or the firm, corporation or
association in whose behalf he makes the verification, to be
the owner of the mark sought to be registered.'"  J. Thomas
McCarthy, *McCarthy on Trademarks & Unfair Competition*
§ 31:71 (4th ed. 1997).

Next, we consider whether paragraph 44 comports with
Fed. R. Civ. P. 9(b), which requires that fraud be pleaded
with particularity.[26]  Paragraph 44 states in part that
"[t]hese fraudulent acts and statements include, but are not
limited to, the statement that the HAVANA CLUB and DESIGN
mark was owned by Cubaexport at the time of the original
application …."  To the extent that paragraph 44 pleads

---

[26] Federal Rule 9(b) states:

> In all averments of fraud or mistake, the
> circumstances constituting fraud or mistake shall be
> stated with particularity.  Malice, intent, knowledge,
> and other condition of mind of a person may be averred
> generally.

42

Cancellation No. 92024108

unspecified "fraudulent acts and statements," it does not meet Federal Rule 9(b)'s requirement that fraud be pleaded with particularity.  We therefore only consider the specific "fraudulent acts and statements" mentioned in paragraph 44, i.e., "the statement that the HAVANA CLUB and DESIGN mark was [believed to be] owned by Cubaexport at the time of the original application …."

Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986).  See also *Smith International, Inc. v. Olin Corp.*, 209 USPQ 1033 (TTAB 1981).  The Trademark Act only imposes on an applicant the obligation that he will not make *knowingly* inaccurate or *knowingly* misleading statements in the verified declaration forming a part of the application for registration.  See 35 U.S.C. § 1051(a)(1) (1988).  Thus, an applicant need only verify a statement that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive." *Bart Schwartz International Textiles, Ltd. v. F.T.C.*, 289 F.2d 665, 129 USPQ 258 (CCPA 1961).  When a claim of fraudulent misrepresentation is made regarding a

43

Cancellation No. 92024108

registrant's sworn declaration as to its ownership of the mark and as to the rights of others to use the mark -- which essentially is petitioners' claim in this proceeding -- a plaintiff must prove that "at the time of the application for registration, the registrant knew that others had the right to use and were using the word [in question] as the name of the product."[27] *Id.* at 260.

Petitioners have alleged that JASA, of Cardenas, Cuba, had first used the HAVANA CLUB mark in commerce in the United States as early as the 1930s (paragraph 19); that the mark "was still associated with" JASA when Cubaexport filed its application (paragraph 23); that JASA was "the original Cuban company which had previously imported and sold HAVANA CLUB rum in the United States" (paragraph 23); that in 1963, the CACR imposed a total embargo on all trade between the

---

[27] C.f., *Intellimedia Sports, Inc. v. Intellimedia Corporation*, 43 USQP2d 1203 (TTAB 1997), in which we stated:

> [A] plaintiff claiming that the declaration or oath in defendant's application for registration was executed fraudulently, in that there was another use of the same or a confusingly similar mark at the time the oath was signed, must allege particular facts which, if proven, would establish that: (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled.

44

Cancellation No. 92024108

United States and Cuba (paragraph 31); and that since the effective date of the CACR, "no rum produced in Cuba has been lawfully imported into and sold in the United States" (paragraph 31). Also, petitioners have alleged that JASA owned four United States trademark registrations containing the term "Havana Club" (paragraph 19). (We note that by June 12, 1974, the filing date of Cubaexport's U.S. application, all of JASA's U.S. registrations had expired.)

Petitioners have *not* made out a legally sufficient claim of fraud. First, petitioners have not alleged that there was any use of HAVANA CLUB in the United States by JASA at the time when Cubaexport filed its U.S. application.[28] (JASA's use in the 1930s, which petitioners have alleged, is deemed too distant in time from when Cubaexport filed its application to satisfy this element of a fraud claim.) Second, the pleaded facts, even when construed in a light most favorable to petitioners, do not support a key element of petitioners' claim, i.e., that Cubaexport *knew* when it filed its application that JASA had the *right to use* the mark in the United States. JASA's

---

[28] N.b., *King Automotive, Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008, 212 USPQ 801 (CCPA 1981)(holding that a pleading of fraud (in connection with a statement in an application that no one else had the right to use the same or a confusingly similar mark in commerce) requires averments of fact supportive of plaintiff's belief that registrant knew of a third party's right to use a mark in commerce when it filed its application in the United States.)

45

Cancellation No. 92024108

right to use HAVANA CLUB in 1974 was not by any means clear.
JASA's four United States trademark registrations which
included the HAVANA CLUB mark had all expired prior to 1974,
and eleven years had passed since the Cuban embargo
commenced, barring the importation of any Cuban rum.
Additionally, petitioners' pleading only alleges an
*association* of the mark with JASA, not actual use of the
mark in the United States by JASA.  An association with an
entity does not allow an entity to indefinitely claim
trademark rights once it has stopped using the mark.
Rather, at some point, the mark is deemed abandoned.  Third,
Cubaexport, consistent with the Trademark Act, merely
represented in its application that it *believed* no other
entity had the right to use the applied-for mark in the
United States.  Fraud "will not lie if it can be proven that
the statement [to the PTO], though false, was made with a
reasonable and honest belief that it was true."  *Smith
International, supra* at 1044.

Thus, the pleaded facts do not support petitioners'
claim of fraud and, consequently, petitioners have failed to
state a claim of fraud upon which relief may be granted.
Petitioners' claim of fraud in obtaining the registration is
therefore dismissed.

*Fraud in Maintaining Registration*.

As facts underlying this claim, petitioners have

46

Cancellation No. 92024108

pleaded the following:

28. On or about January 12, 1982, a Section 8
Declaration was filed in the PTO in
connection with Registration No. 1,031,651.
On information and belief, that declaration
… wilfully [sic] and falsely stated that the
mark [HAVANA CLUB] "is still in use on goods
and services in each class as evidenced by
the attached specimen for each class showing
the mark as currently used."

29. The Declaration further falsely averred that
Cubaexport was the owner of said mark and
registration. As alleged aforesaid,
Cubaexport, at all relevant times, knew said
mark HAVANA CLUB and DESIGN was not owned by
Cubaexport in the United States.

Turning first to the allegation in paragraph 28, we

note that at the time Cubaexport filed its Section 8

declaration, the practice of the Patent and Trademark Office

Post Registration Section was that any use, even use only in

a foreign country, was sufficient to meet the requirements

of Section 8. See *Cerveceria India, Inc. v. Cerveceria*

*Centroamericana, S.A.*, 10 USPQ2d·1064 (TTAB 1989), *aff'd*,

892 F.2d 1021, 13 USPQ2d 1307 (Fed. Cir. 1989); and H. Rep.

542, accompanying H. R. 6260, 97th Cong., 2d Sess. 10

(1982), regarding amendment of Section 8 from "still in use"

to "use in commerce."[29]   See also, 2 *Notes From the Patent*

---

[29] When Cubaexport filed the Section 8 declaration on January 12,
1982, Section 8 stated as follows, in relevant part:

[T]he registration of any mark under the provisions of
this Act shall be canceled by the Commissioner at the
end of 6 years following its date, unless within 1
year next preceding the expiration of such 6 years the
registrant shall file in the Patent and Trademark

47

A332

Cancellation No. 92024108

*Office,* Section 4, Part 3, Note 8-1 (July, 1965)("[T]he policy followed is to accept an allegation that the mark is 'in use' as being sufficient to comply with the requirements of Sec. 8, without a statement of use in commerce.  It is considered significant that the words 'in use' in Sec. 8 are not modified by the words 'in commerce' as they are in Secs. 9 and 15.")  Thus, Cubaexport's declaration complied with the applicable statute and PTO Section 8 practice. Petitioners therefore have not asserted a legally sufficient claim regarding Cubaexport's statement on use in its Section 8 declaration.

Turning next to petitioners' allegation in paragraph 29 that the Section 8 declaration "falsely averred that Cubaexport was the owner of the mark," petitioners must show that Cubaexport's statement of ownership was a false, material misrepresentation made knowingly.  See *Torres, supra;* and *McCarthy on Trademarks and Unfair Competition, supra* at § 20:15 ("It is relatively clear that fraud made in affidavits under sections 8 and 15, to continue a registration and obtain incontestability, also constitute fraud in 'obtaining' a registration sufficient for

_____

Office an affidavit showing that said mark is still in use or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark ….

Section 8 was amended to add the "use in commerce" requirement on August 27, 1982.  See Pub. L. No. 97-247 (1982).

48

Cancellation No. 92024108

cancellation."). For the reasons set forth in the previous
section of this order, including petitioners' failure to
allege use of HAVANA CLUB in the United States when
Cubaexport filed its application, we conclude that
Cubaexport could not have knowingly made a misrepresentation
as to ownership of the mark in its Section 8 declaration.

Petitioners' claims of fraud in connection with
maintaining the HAVANA CLUB and Design registration are
therefore dismissed.

*False and Fraudulent Renewal by Respondent Havana Club
Holding, S.A.*

As another claim, petitioners allege as follows:

47. The rights, if any subsisted, to the HAVANA
    CLUB and DESIGN mark in the United States
    and U.S. Registration 1,031,651 on or about
    January 12, 1996, still resided in
    Cubaexport, not Respondent Havana Club
    Holdings, S.A. Nonetheless, Havana Club
    Holdings, S.A. purported to renew said
    registration on said date. The purported
    attempts by Cubaexport and Respondents to
    transfer said mark and registration were, in
    addition to being assignments-in-gross, null
    and void ab initio pursuant to 31 CFR
    515.203(a) and cannot serve as the basis for
    recognizing any rights to said mark in
    Respondent Havana Club Holdings, S.A.
    Alternatively, since Cubaexport never sought
    to renew Reg. No. 1,031,651 of said HAVANA
    CLUB and DESIGN mark, the requirements of 15
    U.S.C. 1059(a) and (e) were not met, and the
    registration thereof in the United States
    PTO expired, and said registration must be
    cancelled and expunged.

48. Cubaexport, Respondent Havana Club Holdings,
    S.A., and Respondent Havana Rum & Liquors,
    S.A., were at all relevant times aware of
    the fact that the purported transfers of the

49

**Cancellation No. 92024108**

government agency having competent jurisdiction under the CACR has found that Cubaexport, HCH and/or HR & L have willfully violated the CACR, or that the attempted transfer of the HAVANA CLUB and Design registration was fraudulent or part of a fraudulent scheme, petitioners have failed to state a proper claim of false and fraudulent renewal upon which the Board may grant relief. Petitioners' claim of false and fraudulent renewal is therefore dismissed.
*Abandonment.*

Petitioners' allegations regarding abandonment of the mark underlying the HAVANA CLUB and DESIGN registration are as follows:

37. By Assignment, dated January 10, 1994, Cubaexport purportedly assigned the rights to the HAVANA CLUB and DESIGN trademark in the United States and U.S. Reg. No. 1,031,651 thereof to Respondent Havana Rum & Liquors, S.A., a Cuban company, with its address at 305 Miramar, Havana Cuba. … No goodwill or related assets were conveyed with the purported trademark, so this assignment-in-gross destroyed any rights of the purported assignee in or to said HAVANA CLUB and DESIGN mark or the registration thereof in the United States.

38. By Assignment, dated June 22, 1994, Havana Rum and Liquors, S.A., a Cuban company, purportedly assigned the rights to the trademark HAVANA CLUB and DESIGN in the United States and U.S. Reg. No. 1,031,651 thereof to Respondent Havana Club Holdings, S.A. …. The assignment recited that the transfer was for $10 and other good and valuable consideration received by Havana Rum & Liquors, S.A., from Havana Club Holdings, S.A. … No goodwill or related assets were conveyed with the purported

52

Cancellation No. 92024108

> trademark, so this assignment-in-gross
> destroyed any rights of the purported
> assignee in or to said mark or the
> registration thereof in the United States.

Because of the Cuban embargo, Cubaexport, HCH and HR & L
could not have imported, distributed, sold or maintained any
assets in the United States, and it was impossible for them
to separate the mark from the business assets.  In view
thereof, we conclude, as the District Court did in *Havana
Club II*, that the principle of assignment-in-gross is
inapplicable to this case.[31]  Petitioners' claim of
abandonment is therefore dismissed.

*Misrepresentation of Source*.

> Petitioners allege as follows:

> 54.   Respondents and Cubaexport have prepared and
>       caused advertisements for their ersatz
>       HANANA CLUB rum to appear in magazines and
>       publications distributed through the
>       channels of interstate commerce in the
>       United States and have paid promotional fees

---

[31] The District Court in *Havana Club II, supra*, addressed this
issue in its opinion at footnote no. 9, stating:

> Defendants additionally argue that the separation of
> the trademark from the appurtenant business, the hard
> assets in Cuba, resulted in an assignment in gross. …
> As a general matter, Defendants are correct in
> asserting that such a situation may lead to an
> assignment in gross.  However, the principle is
> inapplicable to the unique circumstances of this
> matter.  Cubaexport and Plaintiffs never had assets in
> the United States.  While the Havana Club trademark
> may be recognizable by U.S. consumers, the embargo has
> prevented Plaintiffs and Cubaexport from importing,
> distributing, selling, or maintaining any assets in
> this country.  Thus, it was impossible for the
> Plaintiffs and Cubaexport to have separated the mark
> from the business assets when no assets existed in the
> United States.

53

**Cancellation No. 92024108**

or given other inducements to movie producers to cause their HAVANA CLUB rum and their purported HAVANA CLUB and DESIGN mark to be depicted in movies distributed in interstate commerce in the United States, including the film "The Firm". These advertisements and the use and depiction of said mark in films are designed to induce American consumers into buying Respondents' ersatz HAVANA CLUB rum abroad and to build up a demand for said product when it becomes legally available for sale in the United States.

55. The aforesaid actions of Respondents, including their use of the labeling statement incorporated as a component of the DESIGN portion of the aforesaid mark that falsely indicates that the producer was "founded in 1878" is part of a deliberate scheme by Respondents to pass off their ersatz HAVANA CLUB rum as being somehow approved by the producer of, or as being the same quality as, the only HAVANA CLUB rum ever sold legally in the United States which was produced by Jose Arechabala, S.A.

56. Furthermore, said advertising and promotional use of said HAVANA CLUB and DESIGN mark and Respondents' other aforesaid acts and omissions are intended to confuse the American public into wrongly believing that Respondents are somehow the legitimate successor to the original producer of the HAVANA CLUB rum sold in the United States, Jose Arechabala, S.A. Indeed, the use of the statement "founded in 1878" as part of the Design portion of the mark can have no other purpose.

Petitioners conclude that respondents "have used the purported HAVANA CLUB and DESIGN mark as a vehicle for fraud and said mark is being used in violation of 15 U.S.C. § 1064(3) to misrepresent the source of Respondents' ersatz HAVANA CLUB rum."

54

Cancellation No. 92024108

Section 14(3) of the Trademark Act recognizes a claim of misrepresentation of source if "the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used." We have stated in the past that "application [of Section 14(3)] under the decisional law has … been limited to cases involving deliberate and blatant misrepresentation of source wherein the registration is merely a vehicle for the misuse rather than evidence of even a colorable ownership claim, and where the mark is intentionally displayed in such a manner as to facilitate passing off the goods as those of another." *Global Maschinen GmbH v. Global Banking Systems, Inc.*, 227 USPQ 862 (TTAB 1985). See also *McCarthy on Trademarks and Unfair Competition*, *supra* at § 20.60 (a Section 14(3) cancellation claim for misrepresentation "requires a pleading that registrant deliberately sought to pass off its goods as those of petitioner.") Thus, if Cubaexport has "even a colorable claim of ownership," there is no misuse and hence no misrepresentation of source.

Petitioners' claim is premised on the assumption that Cubaexport is not the true and legitimate owner of the HAVANA CLUB mark, which can only be regarded as a political question based on the premise that the Cuban government is not legitimate. Obviously, we, as a tribunal within the

55

**A338**
JA394

**Cancellation No. 92024108**

U.S. Department of Commerce, do not have the authority to answer this question.  Thus, petitioners have not stated a claim of misrepresentation as to source upon which we may grant relief and the claim is dismissed.

**4.   *Summary***

HCH's motion for reconsideration is denied; Cubaexport's motion is denied; and petitioners' motion for summary judgment is denied.  In view thereof, HCH's motion for summary judgment; petitioners' motion to extend the time to respond to the motion for summary judgment; and petitioners' motion under Fed. R. Civ. P. 56(f), which have been pending for some time, are denied as moot.  Also, we have found that none of the allegations of the supplemental and amended petition to cancel state a claim for cancellation.  Therefore, the supplemental and amended petition to cancel is DISMISSED.

56



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

Cuban Assets Control Regulations                              License No. CU-71416

LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a), 22 U.S.C. 6001 et
seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

   To:  Fish & Neave (the ''Licensee'')
        1251 Avenue of the Americas
        New York, New York 10020
        Attn: Herbert F. Schwartz

   1.  Pursuant to your letter dated January 29, 2003, the following is hereby
licensed:

                    *****SEE REVERSE*****
   2.  This license is granted upon the statements and representations made in your
application, or otherwise filed with or made to the Treasury Department as a supplement to
your application, and is subject to the conditions, among others, that you comply in all
respects with all regulations, rulings, orders and instructions issued by the Secretary of
the Treasury under the authority of Section 620(a), Public Law 87-195, or under the
authority of section 5(b) of the Act of October 6, 1917, as amended, and the terms of this
license.

   3.  The licensee shall furnish and make available for inspection any relevant
nformation, records or reports requested by the Secretary of the Treasury or any duly
authorized officer or agency of the Secretary.

   4.  This license is not transferable, is subject to the provisions of Title 31, Parts
501 and 515 of the Code of Federal Regulations, and any regulations and rulings issued
pursuant thereto and may be revoked or modified at any time at the discretion of the
Secretary of the Treasury acting directly or through the agency through which the license
was issued, or any other agency designated by the Secretary of the Treasury.  If this
license was issued as a result of willful misrepresentation on the part of the applicant or
his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be
declared void from the date of its issuance, or from any other date.

   5.  This license does not excuse compliance with any law or regulation administered
by the Office of Foreign Assets Control or another agency (including reporting
requirements) applicable to the transactions(s) herein licensed, nor does it release
Licensee(s) or third parties from civil or criminal liability for violation of any law or
regulation.

   Issued by direction and on behalf of the Secretary of the Treasury:

                         OFFICE OF FOREIGN ASSETS CONTROL

                         By
                              R. Richard Newcomb, Director
[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
 50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

SECTION 1 - AUTHORIZATIONS: All transactions are authorized to enable
Fish & Neave (the ``Licensee''), in connection with all matters related
to Galleon S.A. v. Havana Club Holding, S.A., Trademark Trial and Appeal
Board Cancellation No. 24,108, to provide legal services to, receive
payment for such services from and to receive reimbursement for expenses
related to such services from Empresa Cubana Exportadora De Alimentos y
Productos Varios (``Cubaexport''), a Cuban national.

Authority: 31 CFR 515.801.

SECTION 2 - CONDITIONS: (a) It is a condition of this License that
Licensee shall keep a full and accurate record of each transaction
undertaken pursuant to this License, and that each such record shall be
available for examination for at least five years after the date of such
transaction.

SECTION 3 - REPORTING REQUIREMENT: Pursuant to 31 CFR 501.605 Licensee is
directed to provide all required reports, notices, copies and facsimiles.

SECTION 4 - WARNINGS: (a) Except as explicitly authorized in Section 1
·ove, nothing in this license authorizes persons subject to the
·urisdiction of the United States to engage in any transaction or
activity prohibited by the Regulations.

SECTION 5 - WARNINGS: (b) Nothing in this License authorizes any debit or
credit from any blocked account.

SECTION 6 - PRECEDENCE:  This License is issued on a nonprecedential
basis.

     *************************************************************

FEB-24-2004  12:44      OFAC                                      P.01/02



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    **License No. CT-1943**

## LICENSE

(Granted under the authority of 50 U.S.C. App. 5(b), 22 U.S.C. 2370(a),
22 U.S.C. 6001 et seq., Proclamation 3447, and 31 CFR Parts 501 and 515)

To:  **Fish & Neave** (the "Licensee")
1251 Avenue of the Americas
New York, NY 10020
ATTN: Martin A. Leroy

1.  Pursuant to your application dated **February 11, 2004**, the following is hereby licensed:

### *****SEE REVERSE*****

2. This license is granted upon the statements and representations made in your application, or otherwise filed with or made to the Treasury Department as a supplement to your application, and is subject to the conditions, among others, that you comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **March 31, 2005**, is not transferable, is subject to the provisions of 31 C.F.R. Parts 501 and 515, and any regulations and rulings issued pursuant thereto and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury. If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirement) applicable to the transaction(s) herein licensed, nor does it release the Licensee(s) or third parties from civil or criminal liability for violation of any law or regulation.

Issued by direction and on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

By *Clara David* 2/20/04
for David W. Mills
Chief of Licensing

[Attention is directed to 19 U.S.C. 1592 and 1595a, 18 U.S.C. 545, 18 U.S.C. 1001,
50 U.S.C. App. 16, and 31 CFR 515.701 et seq. for provisions relating to penalties.]

**A342**
JA398

FEB-24-2004  12:44        OFAC                                        P.02/02

**License No. CT-1943**                                    **Page 2 of 2**
**Licensee:  Fish & Neave**

**SECTION 1 – AUTHORIZATION:  (a)** This license authorizes the Licensee to engage in travel-related transactions involving Cuba set forth in 31 CFR 515.560(c) of the Cuban Assets Control Regulations (the "Regulations") and such additional transactions as are directly incident to professional research relevant to legal proceedings in the United States, including but not limited to conducting interviews and depositions, and creating written and other records, as described in your application, subject to the conditions set forth in Section 2 below.

**(b)**  This license authorizes the Licensee to provide legal services to, and to receive payment for such services from Empresa Cuban Exportatiora de Alimentos y Productos Varios ("Cubaexports"), a Cuban national.

**(c)** This license authorizes **multiple trips** during the validity period of the license.

**Authority:  31 CFR 515.560(c), 515.564(b) and 515.801**

**SECTION 2 – CONDITIONS:  (a)** The Licensee must provide each traveler with a letter confirming that the named individual will engage in authorized activities on behalf of the Licensee and cite the number of this license.

**(b)** It is a condition of this license that the Licensee inform each traveler of his/her responsibilities under the Regulations, by, for example, providing each traveler with OFAC's "Travel Restrictions" brochure or other document providing information concerning the travel-related transactions authorized by 31 CFR 515.560(c) of the Regulations prior to travel.

**SECTION 3 - WARNINGS:  Except as explicitly authorized in Section 1 above, nothing in this license authorizes any person subject to the jurisdiction of the United States to engage in any transaction or activity prohibited by the Regulations.  This license only authorizes travel-related transactions consistent with a full-time schedule of activities authorized by this license.**

**SECTION 4 - RECORDKEEPING REQUIREMENTS:**  The Licensee is required to keep a list of individuals whose travel transactions were authorized under this license and their actual dates of travel.  Each individual traveler must also retain records related to his/her travel transactions.  Such records shall be made available for examination upon demand for at least 5 years from the date of each transaction.  A report from the Licensee is required on activities undertaken pursuant to this license in conjunction with an application to renew or extend this license.

**SECTION 5 – INFORMATION:  (a)** For information concerning the categories of travel for which licenses may be issued, please refer to our *Comprehensive Guidelines for License Applications to Engage in Travel-Related Transactions Involving Cuba* on our Internet website at www.treas.gov/ofac (Sanctions Programs & Country Summaries – Cuba, Guidelines and Information).

**(b)** The Department of State publishes consular information sheets (and, when necessary, travel warnings) on every country and territory in the world, including Cuba, which are available on the Internet at http://travel.state.gov, or through the State Department's fax-on-demand service at (202) 647-3000.  An abridged version of consular information sheets can be heard by calling (202) 647-5225.

**SECTION 6 - PRECEDENCE:**  The authorization contained in this license is limited to the facts and circumstances specific to the application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

                                                                  TOTAL  P.02

# ROPES &GRAY

FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL  212.596.9070
DIRECT FAX  646.728.2671
E-MAIL  VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

       We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

       On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport.  Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding,* 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation.  In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

       While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled.  Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends. That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair. The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding. In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions. Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate. On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might. If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

        We appreciate this office's continued attention to this matter.  If we can be of further assistance, please do not hesitate to call me.

        Sincerely,

        Vincent N. Palladino

VNP:emf
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
       Clara David, Licensing Division, OFAC (encl.)
       Commissioner for Trademarks





**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

FAC No. CU-268932

APR  6 2006

Vincent N. Palladino
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY  10020-1104

        Re:   License No. CU-74488

Dear Mr. Palladino:

The purpose of this letter is to clarify that License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005, does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO")  for renewal of Registration No.1,031,651 (the "HAVANA CLUB trademark") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport").  In a December 13, 2006, letter to PTO, Ropes & Gray LLP applied for renewal of the HAVANA CLUB trademark and requested that PTO deduct the filing fee from a Ropes & Gray LLP deposit account, arguing that License No. CU-74488 authorizes payment of the filing fee.

License No. CU-74488 pertains to a cancellation proceeding.  It states that it is issued "Pursuant to an application dated January 26, 2005."  The authorization section of License No. CU-74488, quoted in full (with emphasis added), states:

> All transactions are authorized to enable the Licensee [Ropes & Gray LLP], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

The only legal proceeding described in your firm's January 26, 2005 application was "a complaint [] currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A."  This complaint is an appeal from the dismissal of a cancellation proceeding before the United States Trademark Trial and Appeal Board concerning the HAVANA CLUB trademark.

In your letter to PTO dated December 13, 2005, you present a number of arguments why the renewal fee for the HAVANA CLUB trademark should be allowed to

be paid, including the following:  (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal. These arguments do not extend the limited authorization contained in License No. CU-74488, which covers only those transactions in connection with the pending District Court litigation, to those transactions that are external to the pending District Court litigation, such as the payment of a renewal fee to initiate a separate action before the PTO.

In your letter of December 13, 2005, you also argue that the failure of the District Court to reach a reasoned decision, which allegedly will result from the failure to pay the trademark registration renewal fee, will deprive Cubaexport of the representation that OFAC has authorized Ropes & Gray LLP to provide.  We disagree with that argument. In issuing License No. CU-74488, OFAC authorized Ropes & Gray LLP to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court.  OFAC is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation, and, in any event, License No. CU-74488 does not purport to authorize any transactions related to such other proceedings.

We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO.  If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division.  Should you have any further questions, please contact the Deputy Chief Counsel (Foreign Assets Control) at 202-622-2410.

Sincerely,

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control


cc:  Commissioner for Trademarks, PTO





FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS   NEW YORK, NY 10020-1104   212-596-9000   F 212-596-9090
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

**VINCENT N. PALLADINO**
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

April 7, 2006

## VIA FACSIMILE - CONFIRMATION BY FEDEX

Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W. - Annex
Washington, DC  20220

**Attn:  Licensing Division**

### License To Pay HAVANA CLUB Registration Renewal Fee

Dear Sir/Madam:

This letter is prompted by Ms. Barbara C. Hammerle's April 6, 2006 letter (copy enclosed).

Ropes & Gray was granted License No. CU-74488 authorizing it to receive payment for services rendered and expenses incurred in connection with representing Cubaexport in a dispute with Bacardi regarding among other issues cancellation of Cubaexport's United States Registration No. 1,031,651 of HAVANA CLUB & Design ("the HAVANA CLUB Registration"). Ropes & Gray interpreted that license to authorize it to incur the expense of renewing the HAVANA CLUB Registration, which is at issue in the litigation, by paying the United States Patent and Trademark Office ("PTO") registration renewal filing fee and to receive payment for that expense.

Ms. Hammerle's letter states that License No. CU-74488 does not authorize Ropes & Gray to incur and receive payment for the expense of renewing the registration.  The letter invites Ropes & Gray to seek a license authorizing Ropes & Gray to do so.  Ropes & Gray respectfully requests that such a license be granted.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 2

Ropes & Gray respectfully submits that in light of OFAC's willingness to grant License No. CU-74488, authorizing payment for large legal and other expenses incurred on Cubaexport's behalf in maintaining the HAVANA CLUB Registration, it would be reasonable to authorize Ropes & Gray to incur and be paid for the minor expense ($500 or less) of maintaining the registration through payment of the renewal fee.

In addition, Ropes & Gray submits that the grant of this further limited license is reasonable in light of the following reasons discussed in our December 13, 2005 letter (copy enclosed) and summarized in Ms. Hammerle's letter:

(1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal.

As we stated in our December 13, 2005 letter, we believe that "outcome would be and would be perceived to be unfair." Although we appreciate that OFAC has determined these reasons do not support payment of the renewal fee under License No. CU-74488, we believe they offer further support for the grant of the additional limited license Ropes & Gray hereby requests.

Finally, Ropes & Gray wishes to point out that renewing the HAVANA CLUB Registration before it would otherwise expire on July 27, 2006 does not mean the Court hearing the litigation will affirm the PTO's Trademark Trial and Appeal Board decision that the HAVANA CLUB Registration should not be cancelled. That issue will remain to be resolved by the Court, along with Bacardi's additional claims for declaratory and injunctive relief.

If the additional license is granted *nunc pro tunc* to December 13, 2005 when Ropes & Gray submitted Cubaexport's renewal application, the renewal fee will be $400. If the additional license is not granted *nunc pro tunc*, the fee will be $500.

ROPES & GRAY LLP

Office of Foreign Assets Control
April 7, 2006
Page 3


       Because the renewal period for the HAVANA CLUB Registration will expire on
July 27, 2006, Ropes & Gray respectfully requests that any new license be issued well before that
date so that the PTO may be so advised.  We appreciate OFAC's attention to this matter and
respectfully request that the additional license be granted.

                        Sincerely yours,

                        *Vincent N. Palladino*
                        Vincent N. Palladino

VNP:emf
Enclosure

cc:      Commissioner for Trademarks
          Matthew Tuchband, Esq., Office of Legal Counsel, OFAC
          Liz Farrow, OFAC
          (each via facsimile and FedEx)



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

FAC No. CU-268932

APR  6 2006

Vincent N. Palladino
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020-1104

      Re:   License No. CU-74488

Dear Mr. Palladino:

     The purpose of this letter is to clarify that License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005, does not authorize Ropes & Gray LLP to pay a filing fee to the U.S. Patent and Trademark Office ("PTO") for renewal of Registration No.1,031,651 (the "HAVANA CLUB trademark") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). In a December 13, 2006, letter to PTO, Ropes & Gray LLP applied for renewal of the HAVANA CLUB trademark and requested that PTO deduct the filing fee from a Ropes & Gray LLP deposit account, arguing that License No. CU-74488 authorizes payment of the filing fee.

     License No. CU-74488 pertains to a cancellation proceeding. It states that it is issued "Pursuant to an application dated January 26, 2005." The authorization section of License No. CU-74488, quoted in full (with emphasis added), states:

> All transactions are authorized to enable the Licensee [Ropes & Gray LLP], in connection [with] the legal representation of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), and Havana Club Holdings S.A. in legal proceedings in the United States related to the HAVANA CLUB trademark, *as described in the application*, to receive payment for such services and reimbursement for expenses related to such services from Cuban nationals through banking channels, provided the funds are routed from Cuba to the United States via a third-country bank.

The only legal proceeding described in your firm's January 26, 2005 application was "a complaint [] currently pending in the U.S. District Court for the District of Columbia against our clients Cubaexport and Havana Club Holdings S.A." This complaint is an appeal from the dismissal of a cancellation proceeding before the United States Trademark Trial and Appeal Board concerning the HAVANA CLUB trademark.

     In your letter to PTO dated December 13, 2005, you present a number of arguments why the renewal fee for the HAVANA CLUB trademark should be allowed to

HAR-06-2006  09:42       US TREASURY                          104815    P.03

be paid, including the following: (1) paying the fee is necessary to maintain the *status quo* by maintaining the HAVANA CLUB trademark registration, (2) failure to pay the fee will result in cancellation of the registration, (3) if the registration is not maintained, the District Court will be denied an opportunity to reach a reasoned decision in the pending litigation, and (4) failure to maintain the registration will effectively overrule the decision of the United States Trademark Trial and Appeal Board while it is on appeal. These arguments do not extend the limited authorization contained in License No. CU-74488, which covers only those transactions in connection with the pending District Court litigation, to those transactions that are external to the pending District Court litigation, such as the payment of a renewal fee to initiate a separate action before the PTO.

In your letter of December 13, 2005, you also argue that the failure of the District Court to reach a reasoned decision, which allegedly will result from the failure to pay the trademark registration renewal fee, will deprive Cubaexport of the representation that OFAC has authorized Ropes & Gray LLP to provide. We disagree with that argument. In issuing License No. CU-74488, OFAC authorized Ropes & Gray LLP to engage in transactions necessary to provide Cubaexport representation only in the litigation pending before the District Court. OFAC is not in a position to gauge the extent to which any other administrative or judicial proceedings may have some effect on that litigation, and, in any event, License No. CU-74488 does not purport to authorize any transactions related to such other proceedings.

We note that this discussion does not in any way prejudice the ability of Ropes & Gray LLP to request separate authorization from OFAC to engage in transactions related to the renewal of the HAVANA CLUB trademark registration at the PTO. If you wish to request such a specific license or further guidance from OFAC, you may do so by writing directly to OFAC's Licensing Division. Should you have any further questions, please contact the Deputy Chief Counsel (Foreign Assets Control) at 202-622-2410.

Sincerely,

*Barbara C. Hammerle*

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, PTO



FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

VINCENT N. PALLADINO
DIRECT DIAL 212.596.9070
DIRECT FAX 646.728.2671
E-MAIL VINCENT.PALLADINO@ROPESGRAY.COM

December 13, 2005

**VIA FEDEX**

Mr. David W. Mills
Chief of Licensing
U.S. Department of Treasury
Office of Foreign Assets Control
1500 Pennsylvania Office, N.W.
Washington, DC  20220

Dear Mr. Mills:

We are enclosing a copy of our December 13, 2005 letter addressed to the Commissioner for Trademarks in connection with an application filed by Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") to renew United States Trademark Registration No. 1,031,651 of the HAVANA CLUB & Design trademark and the attachments to that letter.

On behalf of our client Cubaexport, Ropes & Gray has prepared the renewal application and undertaken to pay the filing fee that is required in order to maintain the registration and intends to recover those expenses from Cubaexport. Ropes & Gray has taken these steps pursuant to License No. CU 74488, which Ropes & Gray understands authorizes the firm to represent Cubaexport in all matters related to legal proceedings concerning the HAVANA CLUB trademark, including *Bacardi & Company Limited* v. *Cubaexport and Havana Club Holding,* 1:04-CV-00519 (EGS) (D.D.C. 2004) (the "Litigation"), and to be paid for the services it renders and expenses it incurs in the course of that representation. In the Litigation, Bacardi & Company Limited ("Bacardi") has appealed a decision of the Trademarks Trial and Appeal Board (the "Board") and requested cancellation of Registration No. 1,031,651.

While the Litigation is ongoing, Cubaexport seeks to maintain the *status quo* by maintaining Registration No. 1,031,651 until the Court can decide whether the Board's decision should be affirmed or reversed and the registration maintained or cancelled. Given the current posture of the Litigation, no final unappealable decision on those issues will be rendered before Registration No. 1,031,651 must be renewed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 2

If Registration No. 1,031,651 is not maintained, the Court will be denied an opportunity to reach a reasoned decision as to whether the registration should be cancelled, as Bacardi claims, or whether the Board correctly dismissed Bacardi's cancellation petition, as Cubaexport contends.  That will, moreover, deprive Cubaexport of the representation Ropes & Gray has been authorized to provide by cancelling the registration before the Court can decide whether it should be cancelled or maintained.

That outcome would be and would be perceived to be unfair.  The Board has determined that the registration was properly maintained in 1996 and that Bacardi failed to plead any legal basis for cancelling the registration in its cancellation proceeding.  In Bacardi's appeal of that ruling, the Court has ordered Cubaexport and its co-defendant HCH to file renewed motions to dismiss the Complaint, and the parties are currently engaged in Court ordered discovery concerning those motions.  Effectively overruling the Board's decision while it is on appeal to the Court by declining to maintain the *status quo* would be inappropriate.  On the other hand, if the registration is maintained during the Litigation, the Court remains free to decide whether the decision should be affirmed or reversed.

Paying the renewal fee will not dictate the outcome of the Litigation, but failing to pay it might.  If Ropes & Gray were deemed not authorized under the License (or otherwise) to incur on Cubaexport's behalf the expense of renewing Registration No. 1,031,651 in the course of its authorized representation of Cubaexport, Ropes & Gray would be unable to provide Cubaexport effective representation, and Cubaexport would be denied effective representation, in connection with the Litigation (which has been commenced by Bacardi), and the Court would be denied the opportunity to decide whether or not the registration should or should not be maintained.

To avoid that unfair result, to meet its ongoing obligation to represent its client, and to affirm the Court's traditional authority to decide cases pending before it, Ropes & Gray on behalf of Cubaexport has relied on License No. CU 74488 to maintain the *status quo* until a decision in the Litigation is rendered by the Court or by any court to which such a decision may finally be appealed.

ROPES & GRAY LLP

Mr. David W. Mills
December 13, 2005
Page 3

       We appreciate this office's continued attention to this matter.  If we can be of further
assistance, please do not hesitate to call me.

                    Sincerely,

                    Vincent N. Palladino

VNP:emf
Enclosures

cc:    Matthew Tuchband, Office of Legal Counsel, OFAC (encl.)
       Clara David, Licensing Division, OFAC (encl.)
       Commissioner for Trademarks

. 07-28-06    10:25    From-ROPES & GRAY LLP                              T-183   P.004/007   F-891

# UNITED STATES PATENT AND TRADEMARK OFFICE

REGISTRATION NO:     1,031,651

REGISTRANT: EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

July 20, 2006

**\*1031651\***

CORRESPONDENT ADDRESS:
    HERBERT SCHWARTZ
    ROPES & GRAY LLP
    1251 AVENUE OF THE AMERICAS
    NEW YORK, NY 10020

RETURN ADDRESS:
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

MARK:     HAVANA CLUB

CORRESPONDENT'S REFERENCE/DOCKET NO:  N/A

CORRESPONDENT EMAIL ADDRESS:

Please provide in all correspondence:

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registration Division.
4. Your telephone number and e-mail address.

## POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The owner must submit the filing fee of $500 for the Sections 8 & 9 combined filing.  37 C.F.R. §§ 2.161(d)(1) and 2.183(b).  The fee for filing a Section 8 & 9 combined filing is $500 per class.  37 C.F.R. §2.6.

The combined filing included authorization to charge the fee to the deposit account of Ropes and Gray LLP, attorney for registrant.  As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005.  However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee.  Therefore, the required fee for the combined filing has not been paid [1]

It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration.  Registrant is required to notify the USPTO whether that specific license has been granted or denied.

PLEASE NOTE THAT A FEE OF $_____ WAS PREVIOUSLY REFUNDED BECAUSE THE FEE SUBMITTED WAS INSUFFICIENT TO COVER THE FILING FEE REQUIREMENT.  ALL FEES LESS THAN OR IN EXCESS OF THE AMOUNT PER FEE CODE ARE ELECTRONICALLY REFUNDED OR CREDITED TO A DEPOSIT ACCOUNT OR BANK CHECKING ACCOUNT.

---

[1] The fee charged on December 21, 2005, for the combined filing will be refunded since it was not properly authorized.

**RESPONSE TIME DEADLINE:** A complete response must be received within 6 months from the mailing date of this Office action. The owner must respond by notifying the USPTO whether the specific license application filed on April 7, 2006 has been granted or denied. If the owner informs the USPTO that the specific license has been granted, the fee or authorization to charge the fee must accompany the response. If the owner informs the USPTO that the specific license has been denied, or if OFAC notifies the USPTO that the specific license has been denied, the registration will be deemed cancelled/expired.

**DEFICIENCY SURCHARGE REQUIRED:** The owner also must submit a $100 deficiency surcharge with its response to this Office action. 37 C.F.R. §§2.6, 2.164(a)(1) and 2.185(a)(1); TMEP §1604.19. **PLEASE NOTE THE ENCLOSED FEE SHEET WHICH SHOULD BE RETURNED ALONG WITH THE RESPONSE AND FEE.**

Sharon Granata

/Sharon Granata/

Trademark Specialist

Post Registration Division

Ph: (571) 272-9167

Direct Fax - 571-273-9167

sharon.granata@uspto.g

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov/

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

## PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

**Registration No. 1031651**

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____ Section 8 affidavit filing fee (fee code 372)

$_____ Section 8 affidavit grace period surcharge (fee code 381)

*$100.00   Section 8 affidavit deficiency surcharge (fee code 382)*

$_____ Section 9 renewal application filing fee (fee code 365)

$_____ Section 9 renewal application grace period surcharge (fee code 366)

$_____ Section 9 renewal application deficiency surcharge (fee code 380)

$_____ Section 15 affidavit filing fee (fee code 373)

$_____ Section 7 correction/amendment filing fee (fee code 369)

$_____ Section 7 issue new certificate of registration filing fee (fee code 368)

$_____ Deficiency surcharge—if response filed after _____ (fee code 382)
Date

$_____ Deficiency surcharge—if response filed after _____ (fee code 380)
Date

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
POST REGISTRATION DIVISION

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |
| Specialist | : | Sharon Granata |

**VIA FACSIMILE:  (571) 273-9167**
**CONFIRMATION VIA FEDEX**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

## RESPONSE TO OFFICE ACTION

This responds to the July 20, 2006 Office Action requiring registrant Cubaexport to "notify the USPTO whether ... [the] specific license [Cubaexport sought from OFAC] has been granted or denied." On July 28, 2006, OFAC declined to grant the specific license. A copy of the decision, which was also sent to the Commissioner for Trademarks, is enclosed.

Cubaexport respectfully requests that the HAVANA CLUB Registration be renewed notwithstanding OFAC's decision not to grant Cubaexport a specific license. First, Cubaexport filed a timely and complete renewal application together with the renewal fee prescribed by the PTO regulations that implement the Lanham Act. Accordingly, the PTO should carry out its statutory mandate under Lanham Act § 9, 15 U.S.C. § 1059, to renew a registration when a registrant submits a renewal application and tenders the prescribed renewal fee. Second, the PTO should not look beyond the Lanham Act and its own implementing regulations. Third, even

**A365**

Reg. No. 1,031,651
Post Registration
Sharon Granata

if the PTO were to take into account the Cuban Asset Control Regulations ("the CACR") and OFAC's decision not to grant a specific license, it should not conclude in the absence of a Court decision that the CACR prohibit renewal of the registration.

### The PTO Should Carry Out Its Statutory Mandate

Lanham Act § 9 requires the PTO to renew a registration when the registrant submits within the statutory renewal period "the prescribed fee and ... a written application, in such form as may be prescribed by the Director," who is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. 15 U.S.C. § 1127. This statutory mandate is implemented by 37 C.F.R. § 2.6(a)(5) (setting fee) and 37 C.F.R. §§ 2.182-183 (prescribing requirements of application).

Neither Lanham Act § 9 nor the PTO's implementing regulations require or permit the PTO to consider the applicability of the CACR to the registration renewal process. Where as here Cubaexport's renewal application was timely filed together with the fee prescribed by the PTO regulations that implement the Lanham Act's renewal provisions, Cubaexport submits that the application should be accepted and the registration renewed. *See, e.g.*, 3 *McCarthy on Trademarks* § 21:9 at 21-13 to 21-14 (4th ed. 2006) ("The Director has no authority to waive a requirement of the statute ... [or] to suspend compliance with the statute."); *Consarc v. U.S. Treasury, OFAC*, 71 F.3d 909, 915 (D.C. Cir. 1995) ("an agency's application of its own regulations . . . receives 'an even greater degree of deference than the *Chevron* standard.'").[1]

---

[1]    As an arm of the Treasury Department, OFAC stated that "[w]e have received guidance from [the] State [Department] informing us that it would be inconsistent with U.S. policy to issue a specific license." As an arm of the Commerce Department, the PTO should apply its own regulations in carrying out the statutory mandate entrusted to it by Congress. That is particularly the case because preserving the HAVANA CLUB Registration is consistent with United States
(Continued...)

2

**A366**

Reg. No. 1,031,651
Post Registration
Sharon Granata

**The PTO Should Not Look Beyond The Lanham
Act And Its Own Implementing Regulations**

      In renewing the registration, the PTO should not look beyond Lanham Act § 9 and its

own implementing regulations for the foregoing reason and because the PTO has "little or no

experience in [construing]. . . regulations that do not directly concern registration of

trademarks." *Galleon S.A.* v. *Havana Club Holding, S.A.*, 2004 TTAB LEXIS 38 * 63 (T.T.A.B.

2004) (declining to construe the CACR). "[N]owhere is this more true than in a case where [a

registration would be cancelled] based upon [an] alleged failure to comply with the requirements

of a statute which is outside of [the PTO's] area of expertise. . . . [There] must [be] no room for

doubt . . . or interpretation." *Santine Societa* v. *P.A.B. Products*, 209 U.S.P.Q. 958, 965

(T.T.A.B. 1988).

      Although OFAC has declined to grant Cubaexport a specific license, the PTO may not

refuse to renew the HAVANA CLUB Registration unless it interprets the *general* license

provisions of 31 CACR § 515.227(a) and decides that they prohibit renewal.  The court in

*Havana Club Holding, S.A.* v. *Galleon S.A.*, 974 F. Supp. 302, 306-07 (S.D.N.Y. 1997),

explained that:

> The CACR creates both general licenses, which permit classes or
> categories of transactions with Cuban nationals, see, e.g., 31 C.F.R. §515, 542
> (authorizing "all transactions of common carriers incident to the receipt of mail

---

(...Continued)
policy. *See Banco National de Cuba* v. *Chemical Bank*, 658 F.2d 903, 909 (2d Cir. 1981)
(permitting suit by Cuban successor to nationalized banks "because that will assist in providing
funds in the United States" and thereby "further the goals of the United States"); *Havana Club
Holding, S.A.* v. *Galleon S.A.*, 961 F. Supp. 498, 505 (S.D.N.Y. 1997) (a key purpose of the
CACR is to preserve "blocked assets [the HAVANA CLUB Registration] ... which ... would
function as bargaining chips in United States relations with Cuba").

3

Reg. No. 1,031,651
Post Registration
Sharon Granata

between the United States and Cuba"), and specific licenses, which require individualized determinations and approval by OFAC.  See id.  § 515.801.  A general license, furthermore, "is any license or authorization the terms of which are set forth [in the CACR]."  31 C.F.R. § 515.318.  *The general license pertaining to United States intellectual property authorizes "transactions related to the registration and renewal in the United States Patent and Trademark Office ... of ... trademarks, ... in which the Government of Cuba or a Cuban national has an interest . . . ."  31 C.F.R. § 515.527(a).*

*By the express terms set forth in this section, the general license allows for the registration and renewal of trademarks* (emphasis added).

Subsequent to that decision, 31 CACR § 515.227(a) was amended to provide:

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

(2)      No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

To conclude that 31 CACR § 515.227(a) does not authorize the renewal of the HAVANA CLUB Registration, the PTO would have to interpret 31 CACR § 515.227(a) and decide that 31 CACR § 515.227(a)(2) prohibits renewal of the registration despite 31 CACR § 515.227(a)(1), which provides for renewal on its face.  That is not an exercise in which the PTO should engage.

**The PTO Should Renew The Registration
Even If The PTO Considers The CACR**

Even if the PTO elects to interpret 31 CACR § 515.227(a), it should not conclude that it prohibits renewal of the HAVANA CLUB Registration for at least the following reasons.

*First*, amended 31 CACR § 515.227(a) should not and cannot properly be read as a repeal of Lanham Act § 9, which provides that a registrant may renew its registration "upon the

4

Reg. No. 1,031,651
Post Registration
Sharon Granata

payment of the prescribed fee and the [timely] filing of a written application."  In keeping with

the statute, Cubaexport has filed a timely renewal application and tendered the PTO's prescribed

fee.  Unless or until it is determined that 31 CACR § 515.227(a)(2) prohibits Cubaexport from

paying the fee, the PTO should reconcile the Lanham Act's renewal provisions and its own

regulations with the CACR by accepting payment of the renewal fee pursuant to its own

regulations and 31 CACR § 515.227(a)(1).  *See Sandoz, Inc.* v. *Michael Leavitt*, 2006 U.S. Dist.

LEXIS 17549 *15 (D.D.C. 2006), citing *Morton* v. *Mancari*, 417 U.S. 535, 551 (1974) ("when

two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed

congressional intention to the contrary, to regard each as effective").  This outcome is

particularly appropriate here because no court has yet ruled on the applicability of 31 CACR

§ 515.227(a) to renewal of the HAVANA CLUB Registration, and a statute trumps a regulation.

*Second,* it would be inappropriate to cancel the HAVANA CLUB Registration at this

time when Cubaexport has not had an opportunity to show that 31 CACR § 515.227(a)(2) is

inapplicable to the renewal of its registration.  *See Havana Club Holding, S.A.,* 974 F. Supp. at

1089 (cancelling the HAVANA CLUB Registration before Cubaexport has had its day in court

would be "an inequitable adjudication").  That, in turn, involves two issues:  whether there was a

confiscation within the meaning of 31 CACR § 515.227(a)(2) when Jose Arechebala, S.A.

("JASA") was nationalized in 1959 and, even if there was, whether Cubaexport is required to

obtain permission to renew its registration.

Regarding the first issue, 31 CACR § 515.227(a)(2) applies only to a "mark ... that was

used in connection with a business or assets that were confiscated, as that term is defined in

§ 515.336."  31 CACR § 515.336 refers to the nationalization of property by the Cuban

government in 1959 without "adequate and effective compensation."  Property includes

5

Reg. No. 1,031,651
Post Registration
Sharon Granata

trademarks. 31 CACR § 515.311. Cubaexport maintains that it should be entitled to prove that

neither the HAVANA CLUB trademark nor a business or assets associated with the trademark,

owned by a party referred to in 31 CACR § 515.527(a)(2), were nationalized without

compensation. Even if 31 CACR § 515.227(a)(2) is ultimately determined to apply to the

HAVANA CLUB Registration, the registration should be preserved through renewal until that

determination is made in a case to which Cubaexport is a party.

That is particularly appropriate because the Trademark Trial and Appeal Board ("the

Board") has already concluded that the registration should not be cancelled despite Bacardi's

claim that the registration was obtained and maintained by fraud. In reaching that result, the

Board observed that Cubaexport did not commit fraud because it had reason to believe that

JASA did *not* have rights in HAVANA CLUB. Cubaexport knew that JASA had not used

HAVANA CLUB in years and had allowed its HAVANA CLUB registrations to expire although

it could have renewed them if Cuba's nationalization of its business in 1959, rather than an intent

to abandon the mark, was the reason the mark was not in use in 1974. *See* Board Decision, 2004

TTAB LEXIS 38 *48-*56 (T.T.A.B. 2004).

Concerning the second issue, only Bacardi, as the alleged successor in interest to JASA's

trademark rights, could be adjudicated a party whose permission is required by 31 CACR

§ 515.227(a)(2). No such adjudication has been made in any forum including the New York

litigation referred to above. On the contrary, as the PTO Attorney examining Bacardi's

application to register HAVANA CLUB observed in rejecting the application:

> [The New York litigation] reveals a few clearly decided points.... [T]he
> rights in the mark and . . . Registration no. 1,031,651 reside in Cuba Export....
> Registration no. 1,031,651 was neither cancelled nor determined to be the
> property of [Bacardi].

6

A370
JA426

Reg. No. 1,031,651
Post Registration
Sharon Granata

If JASA had no rights in HAVANA CLUB that it could have assigned to Bacardi, Bacardi is not

a "bona fide successor-in-interest" whose consent is required under 31 CACR 515.227(a)(2) for

renewal of the HAVANA CLUB Registration.

*Third*, 31 CACR § 515.227(a)(2) was not promulgated until 1999 following the passage

of Section 211 of the Omnibus Consolidated and Supplemental Appropriations Act in 1998.  It

should not be applied retroactively to destroy an asset that was created in 1976 when the

HAVANA CLUB Registration issued.  *Cf. Havana Club Holding, S.A.* v. *Galleon S.A.*, 203 F.3d

116, 126 n.9 (2d Cir. 2000), citing *Landgraf* v. *USI Film Products*, 511 U.S. 244, 265 (1994)

("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and

embodies a legal doctrine centuries older than our Republic.")

The PTO has the power, and the statutory obligation, to renew the HAVANA CLUB

Registration in accordance with Lanham Act § 9 and its own implementing regulations.  For the

foregoing reasons, Cubaexport respectfully submits that the PTO should not permit the

destruction of the HAVANA CLUB Registration in contravention of Lanham Act § 9, the PTO's

implementing regulations and a basic purpose of the CACR by giving retroactive effect to 31

CACR 515.227(a)(2), before Cubaexport has had its day in court.  If a court ultimately

determines that the PTO should not have renewed the HAVANA CLUB Registration, the court

can issue an order consistent with that judgment pursuant to 15 U.S.C. § 1119.  Accordingly,

7

Reg. No. 1,031,651
Post Registration
Sharon Granata

Cubaexport respectfully requests that the PTO charge Ropes & Gray's deposit account number

06-1075 in the amount set forth in the July 20, 2006 Office Action ($600) and approve

Cubaexport's renewal application.  A copy of the Notice of Deficiency Surcharge is enclosed.

Respectfully submitted,

Dated:  August 1, 2006          By:  *Vincent N. Palladino*
                                     Vincent N. Palladino
                                     ROPES & GRAY LLP
                                     1251 Avenue of the Americas
                                     New York, New York  10020
                                     Tel.: (212) 596-9000
                                     Fax: (212) 596-9090

cc:     Liz Farrow
        Assistant Director for Licensing, OFAC
        (Via Facsimile and FedEx)

8

**A372**

JA428

JUL-28-2006  13:33      US TREASURY                              104815    P.02



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. CU-75835

Vincent N. Palladino, Esquire                    JUL 2 8 2006
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Dear Mr. Palladino:

This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").

Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.

OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue. We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly, your request is hereby denied.

Sincerely,

J. Robert McBrien
Acting Director
Office of Foreign Assets Control

cc: Commissioner for Trademarks, USPTO

TOTAL P.02

07-26-06   10:26   From-ROPES & GRAY LLP                     T-183  P.006/007  F-991

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov/

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**

## PLEASE ENCLOSE THIS FORM WITH YOUR RESPONSE
**\*\*This form must be included with your response to ensure proper fee processing.\*\***

<u>Registration No. 1031651</u>

The Post Registration Paralegal has determined that the amounts indicated below are outstanding:

$_____ Section 8 affidavit filing fee (fee code 372)

$_____ Section 8 affidavit grace period surcharge (fee code 381)

*$100.00   Section 8 affidavit deficiency surcharge (fee code 382)*

$_____ Section 9 renewal application filing fee (fee code 365)

$_____ Section 9 renewal application grace period surcharge (fee code 366)

$_____ Section 9 renewal application deficiency surcharge (fee code 380)

$_____ Section 15 affidavit filing fee (fee code 373)

$_____ Section 7 correction/amendment filing fee (fee code 369)

$_____ Section 7 issue new certificate of registration filing fee (fee code 368)

$_____ Deficiency surcharge—if response filed after _____ (fee code 382)
Date

$_____ Deficiency surcharge—if response filed after _____ (fee code 380)
Date



# UNITED STATES PATENT AND TRADEMARK OFFICE

**REGISTRATION NO:**    1,031,651

August 3, 2006

**REGISTRANT:** EMPRESA CUBANA EXPORTADORA DE ALIMENTOS ETC.

**\*1031651\***

**CORRESPONDENT ADDRESS:**
      HERBERT SCHWARTZ
      ROPES & GRAY LLP
      1251 AVENUE OF THE AMERICAS
      NEW YORK, NY 10020

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:**    HAVANA CLUB

**CORRESPONDENT'S REFERENCE/DOCKET NO:**  N/A

Please provide in all correspondence:

**CORRESPONDENT EMAIL ADDRESS:**

1. Registration date, registration number, mark and registrant's name.
2. Date of this Office Action.
3. Examiner's name and Post Registration Division.
4. Your telephone number and e-mail address.

## POST REGISTRATION OFFICE ACTION

Registration Number  1,031,651

The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.

The Office has received your letter of August 1, 2006, indicating  that the specific license necessary to authorize the required fee for filing the combined document has been denied.  Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

It is noted that your letter contains arguments in support of renewing the subject registration.  You may file a petition to the Director requesting review of this decision.  The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100.  37 C.F.R. §§2.6, 2.146(a)(2) and 2.176.

Sharon Granata

/Sharon Granata/

Trademark Specialist

Post Registration Division

PH:  (571) 272-9167

FAX (571) 273-9167

sharon.granata@uspto.govov

**How to respond to this Office Action:**

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the registration number, the words 'Post Registration' and the examiner's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINER.**



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EMPRESA CUBANA EXPORTADORA | ) | |
| DE ALIMENTOS Y PRODUCTOS | ) | |
| VARIOS d/b/a CUBAEXPORT | ) | |
| Calle 24, n 55, edif. MINCEX, 8vo, piso, | ) | |
| Havana, Cuba, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NUMBER  1:06CV01692 |
| | ) | |
| v. | ) Civi. | JUDGE: Ellen Segal Huvelle |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | DECK TYPE: Administrative Agency Review |
| TREASURY, OFFICE OF FOREIGN | ) | |
| ASSETS CONTROL, HENRY M. | ) | DATE STAMP: 09/29/2006 |
| PAULSON, JR., as Secretary of Treasury, | ) | |
| ADAM J. SZUBIN, as Director of the | ) | |
| Office of Foreign Assets Control; and THE | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

### SUMMARY OF ACTION

1.     This is an action for declaratory and injunctive relief pursuant to 5 U.S.C. § 701 *et seq.* and 28 U.S.C. § 2201 and the United States Constitution by Plaintiff, Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport"). This action arises out of certain administrative actions by Defendant Office of Foreign Asset Control ("OFAC") concerning a United States trademark registration owned by Cubaexport for the trademark HAVANA CLUB & Design. That registration is the subject of long-running administrative and judicial proceedings in which a third party has sought to have the Patent and Trademark Office ("PTO") cancel the registration. Exercising its authority under the Trading With the Enemy Act, 50 U.S.C. App. § 1 *et seq.* and the Cuban Asset Control Regulations

7230480_2

**A379**

("CACR"), 31 C.F.R. 515 *et seq.*, OFAC previously had authorized Cubaexport to retain U.S. counsel and take all necessary actions to defend its trademark registration in these proceedings, which Cubaexport has done. This year, however, with those proceedings still unresolved, OFAC erroneously and unlawfully advised the PTO that a routine renewal of Cubaexport's trademark registration, necessary to maintain the registration in force pending resolution of the cancellation proceedings, was "prohibited" in the absence of specific authorization by OFAC. OFAC then erroneously and unlawfully refused to grant such authorization, citing unspecified "U.S. policy." On the basis of OFAC's actions, the PTO now has notified Cubaexport that "the registration will be cancelled/expired."

2.      The cancellation of Cubaexport's registration as a result of OFAC's actions means the extinguishment of all Cubaexport's rights in and to the HAVANA CLUB trademark in the United States conferred by registration, causing Cubaexport substantial and grievous injury. OFAC's actions have deprived Cubaexport of valuable property rights without due process of law and without just compensation, in violation of the Fifth Amendment of the United States Constitution. OFAC's actions also are arbitrary and capricious: after repeatedly authorizing the defense of Cubaexport's trademark registration before the PTO and the courts, OFAC has now contradictorily decided that the routine renewal of that registration is "prohibited" by "U.S. policy," thus rendering moot the very subject matter of the trademark cancellation proceedings that OFAC consistently had authorized.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1361, 1651 and 2201.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

2

## PARTIES

5.      Cubaexport is a Cuban state-owned enterprise located at Calle 23 No. 55 8vo.

piso, Vedado Ciudad de La Habana, Cuba.  Cubaexport was established in 1965 by the Cuban

Ministry of Foreign Commerce for the purpose of exporting food and other products.

6.      Defendant United States Department of Treasury ("Treasury") is an executive

branch of the United States government.

7.      Defendant OFAC is an administrative division of the Treasury, and, as such, acts

on behalf of the Secretary of Treasury.  OFAC is charged with formulating, promulgating,

implementing, and administering the rules and regulations at issue.  These include the CACR,

which implement the United States embargo on trade between the United States and Cuba.

8.      Defendant Henry M. Paulson, Jr. ("Paulson") is named in his official capacity as

the United States Secretary of Treasury.

9.      Defendant Adam J. Szubin ("Szubin") is named in his official capacity as the

Director of OFAC.

10.     Defendants Paulson and Szubin exercise overall responsibility for the

administration of OFAC, and are the officers who, purportedly under color of legal authority,

formulate, promulgate, implement and administer the rules and regulations at issue.

### FACTS ENTITLING PLAINTIFF TO RELIEF

### Cubaexport's U.S. HAVANA CLUB Trademark Registration

11.     On February 12, 1974, Cubaexport adopted an original HAVANA CLUB &

Design label and applied to register it as its trademark in Cuba in connection with rum.  This

application was granted and Cuban Registration No. 110,352 issued to Cubaexport.

12.     In 1976, Cubaexport filed an application with the PTO to register its HAVANA

CLUB & Design trademark in the United States in accordance with the provisions of the United

3

States Trademark Act § 44 ("Lanham Act"), 15 U.S.C. § 1126, based on Cubaexport's 1974

Cuban registration. U.S. Trademark Application, attached as Exhibit 1. Although the United

States' embargo on trade with Cuba precluded Cubaexport from selling rum under the

HAVANA CLUB & Design trademark in this country, Section 44 of the Lanham Act permits

registration of a mark in the U.S. based on a foreign registration, without the prerequisite of

actual use of the mark in commerce. 15 U.S.C. § 1126.

13.     On January 27, 1976, the PTO granted Cubaexport's application to register its

U.S. HAVANA CLUB & Design trademark as U.S. Registration No. 1,031,651 (the "U.S.

HAVANA CLUB Registration"). U.S. HAVANA CLUB Registration, attached as Exhibit 2.

14.     The issued U.S. HAVANA CLUB Registration gave Cubaexport a vested right in

its U.S. HAVANA CLUB & Design trademark in the United States as of January 27, 1976.

Such right is exclusive to Cubaexport and, *inter alia*, precludes the registration of any

confusingly similar mark by a third party under the Lanham Act. 15 U.S.C. § 1052(d).

15.     The Lanham Act provides for an initial 10-year term for all trademark

registrations, subject only to the requirement that an affidavit of continuing use or excusable

non-use be filed during the sixth year following issuance of the registration. 15 U.S.C. § 1058.

The Lanham Act further provides that "each registration may be renewed for periods of 10 years

at the end of each successive 10-year period following the date of registration upon payment of

the prescribed fee and the filing of a written application, in such form as may be prescribed by

the Director," *Id.* § 1059(a), who is the Under Secretary of Commerce for Intellectual Property

and Director of the United States Patent and Trademark Office. *Id.* § 1127. PTO regulations

implement the statutory provision for renewal of trademark registrations. *See* 37 C.F.R. §

2.6(a)(5) (setting fee); *id.* §§ 2.182-183 (prescribing requirements of application). Neither the

Lanham Act nor the regulations provides for any discretion on the part of the PTO with respect

4

to the maintenance or renewal of trademark registrations: if the statutory requirements are met, a registration must be maintained and renewed.

16.     On January 12, 1982, Cubaexport filed an affidavit pursuant to Lanham Act § 8 with the PTO in order to maintain its U.S. HAVANA CLUB Registration. Section 8 Affidavit (Jan. 12, 1982), attached as Exhibit 3.

17.     The PTO accepted Cubaexport's affidavit under Lanham Act § 8 and maintained the U.S. HAVANA CLUB Registration as mandated by the PTO's rules and regulations. PTO Acknowledgement of Section 8 Affidavit, attached as Exhibit 4.

18.     On October 29, 1993, Cubaexport sold the entire HAVANA CLUB rum business and transferred the worldwide rights to the HAVANA CLUB & Design trademarks to Havana Rum Liquors ("HRL"), another Cuban entity. On November 23, 1993, HRL transferred all of Cubaexport's trademarks, including the U.S. HAVANA CLUB Registration, to Havana Club Holdings, Ltd. ("HCH").

19.     In January 1996, HCH, as the owner of record of the U.S. HAVANA CLUB Registration, renewed the registration for a term of ten years, through July 27, 2006. Renewal Application (Jan. 1996), attached as Exhibit 5; PTO Notice of Removal (June 1996), attached as Exhibit 6. In the ordinary course, such registration would have been renewable prior to that date for another 10 years, as a routine matter.

<u>Unsuccessful Challenges To The Registration</u>

20.     Following the 1996 renewal of the U.S. HAVANA CLUB Registration, HCH initiated an action in the United States District Court for the Southern District of New York against Bacardi-Martini, U.S.A. and affiliated companies ("Bacardi") to enjoin Bacardi's recently-commenced sales of rum under an infringing HAVANA CLUB trademark. *Havana Club Holding, S.A., v. Galleon, S.A., Bacardi-Martini, U.S.A., Inc. et al.*, 96-Civ-9655 (SAS)

5

(S.D.N.Y. filed Dec. 24, 1996) ("S.D.N.Y. Litigation"). In that action, the court found that Cubaexport's transfer of its U.S. HAVANA CLUB Registration to HRL and HCH was in violation of the CACR, nullified that transaction, and restored the "*status quo ante*," reaffirming Cubaexport's ownership of the U.S. HAVANA CLUB Registration and holding that HCH lacked standing to pursue an infringement claim against Bacardi. *Havana Club Holding, S.A., v. Galleon, S.A.,* 974 F. Supp. 302 (S.D.N.Y. 1997). Although Bacardi had contended that the U.S. HAVANA CLUB Registration should be cancelled because of the invalid transfer to HRL and HCH, the court rejected that contention, concluding that cancellation would lead to an "inequitable adjudication" of the "substantial rights" of Cubaexport, which was not a party to the action. *Id.* at 311. The court found that Cubaexport had "significant business interests in maintaining the registration of the mark." *Id.*

  21. While disputing the validity of the U.S. HAVANA CLUB Registration in the S.D.N.Y. Litigation, Bacardi also instituted in the PTO's Trademark Trial and Appeal Board ("TTAB") a proceeding against HCH to cancel the U.S. HAVANA CLUB Registration ("TTAB Cancellation Proceeding") on the ground, *inter alia*, that it had not been properly renewed. *Galleon S.A. v. Havana Club Holdings, S.A.*, Cancellation No. 92024108 (T.T.A.B. Jan. 29, 2004), *available at* http://ttabvue.uspto.gov/ttabvue/v?pno=92024108&pty=CAN&eno=93. Following the issuance of the decision in the S.D.N.Y. Litigation reinstating Cubaexport as the owner of the U.S. HAVANA CLUB Registration, Cubaexport was joined as a defendant in the TTAB Cancellation Proceeding.

  22. On January 29, 2004, the TTAB dismissed Bacardi's cancellation petition, holding as follows:

> [W]e conclude that HCH was in compliance with PTO renewal
> rules and practice when it filed its renewal application in its name,
> that it filed a proper renewal application, that the PTO acted
> properly in accepting the renewal application and renewing the

6

> registration in HCH's name, and that the resulting renewal
> registration is valid and must be so recognized by the Board.

*Galleon S.A., et al.*, Cancellation No. 92024108, at 39.

23.    On March 29, 2004, Bacardi appealed the TTAB decision by filing an action in United States District Court for the District of Columbia. *Bacardi & Company Limited v. Cubaexport and Havana Club Holding*, 1:04-CV-00519 (EGA) (D.D.C. filed Mar. 29, 2004) (the "Bacardi Appeal"). That appeal remains pending.

### The OFAC Regulations And Section 211

24.    Pursuant to the CACR, transactions in the United States involving Cuban-owned property are prohibited unless a transaction is authorized by OFAC, acting under a delegation from the Secretary of the Treasury. 31 C.F.R. pt. 515, subpt. B. Such authorization may take one of two forms: a "general license" or a "specific license." 31 C.F.R. §§ 515.317-.318. A general license is one stated in the regulations and covering a type or category of transactions. Specific licenses are granted by OFAC for specific transactions, on a case-by-case basis, upon the filing of an application.

25.    While the CACR have effectively prohibited the use in U.S. commerce of any trademark owned by a Cuban entity, the CACR did not override, and historically were not interpreted to override, the Lanham Act's provisions regarding registration of marks based on foreign registrations or the provisions regarding maintenance or renewal of such registrations. Thus, over the years, the PTO has registered a number of such marks, including Cubaexport's HAVANA CLUB & Design mark, and has approved the maintenance and renewal of such marks as required by law, without objection by, or the need for any license from, OFAC.

26.    In 1995, OFAC formalized its hands-off policy regarding registration and renewal of Cuban-owned trademarks, by issuing, via regulation, a general license expressly authorizing "[t]ransactions related to the registration and renewal in the United States Patent and Trademark

7

Office . . . of . . . trademarks . . . in which the Government of Cuba or a Cuban national has an interest." 60 Fed. Reg. 54,194, 54,196 (Oct. 20, 1995). This general license, which was promulgated as 31 C.F.R. § 515.527, was in place when the HAVANA CLUB Registration was renewed in 1996 by HCH.

27.    On October 21, 1998, after the U.S. HAVANA CLUB Registration had been renewed and while the S.D.N.Y Litigation was pending, Congress, at the behest of Bacardi, enacted a provision directing OFAC to reverse its policy regarding the registration of Cuban-owned trademarks. Omnibus Consolidation and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998). This provision, enacted as Section 211 of an otherwise unrelated omnibus appropriations bill ("Section 211"), limited the applicability of the general license set forth in OFAC's regulation 515.527, as follows:

> (a)(1) Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.

112 Stat at 2688. Section 211 also provided, *inter alia*, that "[t]he Secretary of the Treasury shall promulgate such rules and regulations as are necessary to carry out the provisions of this section." *Id.*

28.    Section 211 was passed without debate in the Senate. There is no official legislative history surrounding its enactment.

29.    Following passage of Section 211, OFAC amended its regulations to include a virtually identical provision. *See* 64 Fed. Reg. 25,808, 25,813 (May 13, 1999). The original 31 C.F.R. § 515.527 was retained as Paragraph (a)(1) of the amended regulation:

8

(a)(1)   Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

However, a Paragraph (a)(2) was added to comply with Section 211(a)(1):

(2)   No transaction or payment is authorized or approved pursuant to paragraph (a)(1) of this section with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated, as that term is defined in § 515.336, unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consent.

30.   Neither Section 211 nor the OFAC regulations prescribe any process for determining whether a trademark registration or renewal is subject to the "general license" set forth in 31 C.F.R. § 515.527(a)(1) or the prohibition set forth in Section 211 and 31 C.F.R. § 515.527(a)(2) of the regulations. Thus, no procedure is specified for determining whether, for example, a trademark that is the subject of a specific registration or renewal application is "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated" or whether "the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented" to the registration or renewal of the registration.

31.   Neither Section 211 nor 31 C.F.R. § 515.527(a)(2) provides for cancellation of an existing trademark registration, amends the Lanham Act, or changes the PTO rules and regulations regarding renewal, expiration, or cancellation of a registration. Nothing in the Lanham Act or the PTO's implementing regulations requires or even authorizes the PTO to consider the applicability of Section 211 or the CACR to the registration renewal process.

9

**A387**
JA443

**The Specific Licenses Issued By OFAC In Connection With
The Defense Of The U.S. HAVANA CLUB Registration**

32.     In January 2003, in connection with the then-pending TTAB Cancellation

Proceeding, Cubaexport's law firm, Fish & Neave, applied to OFAC for a license to enable it to

defend Cubaexport's U.S. HAVANA CLUB Registration in that proceeding (the "Registration

Defense License") and a license to travel to Cuba in connection with that engagement (the

"Travel License").  Application for Registration of Defense and Travel Licenses (Jan. 29, 2003),

attached as Exhibit 7.

33.     In March 2003, OFAC granted both licenses.  The Registration Defense License

provided as follows:

> SECTION 1 - AUTHORIZATIONS:  All transactions are
> authorized to enable Fish & Neave (the "Licensee"), in connection
> with all matters related to Galleon S.A. v. Havana Club Holding,
> S.A., Trademark Trial and Appeal Board Cancellation No. 24,108,
> to provide legal services to, receive payment for such services
> from and to receive reimbursement for expenses related to such
> services from Empresa Cubana Exportadora De Alimentos y
> Productos Varios ("Cubaexport"), a Cuban national.

The Registration Defense License contained no expiration date.  The Travel License was issued

for a one-year period.  Registration of Defense and Travel Licenses (Mar. 10, 2003), attached as

Exhibit 8.

34.     In February 2004, Fish & Neave requested renewal of the Travel License, which

request was granted.  Exhibit 5;  Request for Renewal of Travel License (Feb. 11, 2004),

attached as Exhibit 9; Renewal of Travel License (Feb. 20, 2004), attached as Exhibit 10.

35.     Effective January 1, 2005, Fish & Neave merged with Ropes & Gray LLP.  By

letter dated January 5, 2005, Ropes & Gray advised OFAC of that merger and requested renewal

or re-issuance of the Registration Defense License and the Travel License in the name of Ropes

& Gray.  Letter Regarding Law Firm Merger (Jan. 5, 2005), attached as Exhibit 11.  By letter

10

dated January 11, 2005, OFAC requested additional information from Ropes & Gray.  OFAC

Letter (Jan. 11, 2005), attached as Exhibit 12.  By letter dated January 26, 2005, Ropes & Gray

responded to that request.  Ropes & Gray Letter (Jan. 26, 2005), attached as Exhibit 13.

36.     On March 4, 2005, OFAC issued a new Registration Defense License and a new

Travel License, both having expiration dates of March 31, 2006.  Renewal of Registration of

Defense and Travel Licenses (Mar. 4, 2005), attached as Exhibit 14.  The Registration Defense

License authorization was similar to, but broader than, the original license, in that it stated as

follows:

> SECTION 1 - AUTHORIZATIONS:  (a) All transactions are
> authorized to enable the Licensee, in connection [with] the legal
> representation of Empresa Cubana Exportadora de Alimentos y
> Productos Varios ("Cubaexport"), and Havana Club Holding S.A.
> in legal proceedings in the United States related to the HAVANA
> CLUB trademark, as described in the application, to receive
> payment for such services and reimbursement for expenses related
> to such services from Cuban nationals through banking channels,
> provided the funds are routed from Cuba to the United States via a
> third-country bank.

37.     In February of this year, Ropes & Gray requested renewal of the Registration

Defense License and the Travel License (Ropes & Gray Request for Renewal of OFAC Licenses

(Feb. 27, 2006), attached as Exhibit 17) and on April 10, 2006, OFAC granted that request.

Renewal of Registration of Defense and Travel Licenses (Apr. 10, 2006), attached as Exhibit 20.

Both licenses remain in effect as of the filing of this action.

38.     Pursuant to the Registration Defense License and the Travel License, Cubaexport

has incurred substantial sums in the defense of its U.S. HAVANA CLUB Registration against

Bacardi's attack in the TTAB Cancellation Proceeding and the Bacardi Appeal.  To date, that

defense has been successful, and the registration remains in force, although the Bacardi Appeal

remains pending.

11

**A389**

JA445

## OFAC Intervenes In The Trademark Registration Renewal Process

39.     On December 13, 2005, Ropes & Gray sent a letter to the PTO enclosing an application for renewal of U.S. HAVANA CLUB Registration executed by Cubaexport pursuant to Lanham Act §§ 8 and 9, and, in accordance with PTO practice, submitted the renewal fee by requesting that the fee be charged against Ropes & Gray's account.  Letter to PTO for Trademark Renewal (Dec. 13, 2005), attached as Exhibit 15.

40.     In its December 13, 2005 letter to the PTO (Exhibit 15) and in a concurrent letter to OFAC (Letter to OFAC (Dec. 13, 2005), attached as Exhibit 16), Ropes & Gray stated that payment of the filing fee was being made pursuant to the Registration Defense License authorizing "[a]ll transactions" in connection with the legal representation of Cubaexport "in legal proceedings in the United States related to the HAVANA CLUB trademark," and in order to preserve the *status quo* in those proceedings by maintaining the U.S. HAVANA CLUB Registration until a decision regarding cancellation of the registration could be rendered in the Bacardi Appeal.

41.     On April 6, 2006, OFAC intervened in the registration renewal process, by issuing a letter to Ropes & Gray and the PTO (the "April 6, 2006 OFAC Letter") in which OFAC stated that it did not consider the Registration Defense License to "authorize Ropes & Gray LLP to pay a filing fee to the PTO for renewal of Registration No. 1,031,651 . . . on behalf of Cubaexport." April 6, 2006 OFAC Letter, attached as Exhibit 18.  Rather, OFAC stated, the Registration Defense License "covers only those transactions in connection with the pending District Court litigation," although the license itself did not so state.

42.     In the April 6, 2006 OFAC Letter, OFAC also stated that Ropes & Gray could apply for a specific license to renew the U.S. HAVANA CLUB Registration on behalf of

Cubaexport at the PTO.  OFAC thereby implied that it had the authority and discretion to issue

such a license.  Exhibit 18.

     43.    The April 6, 2006 OFAC Letter did not explicitly address whether it considered

renewal of the U.S. HAVANA CLUB Registration to be authorized by the "general license" for

trademark registrations and renewals set forth in 31 C.F.R. § 515.527(a)(1) or to be excluded

from that general license by Section 211 and 31 C.F.R. § 515.527(a)(2).  Indeed, the April 6,

2006 OFAC Letter did not even mention Section 211 or 31 C.F.R. § 515.527(a)(2).  The fact that

OFAC invited Ropes & Gray to apply for a specific license for the renewal of the U.S.

HAVANA CLUB Registration, however, suggests that as of April 6, 2006, OFAC had concluded

that the general license did not provide authorization for that trademark renewal.

     44.    In response to the April 6, 2006 OFAC Letter, Ropes & Gray, on April 7, 2006,

submitted an application for a specific license authorizing it to "incur and be paid for the minor

expense ($500 or less) of maintaining [U.S. Registration No. 1,031,651] through payment of the

renewal fee."  Ropes & Gray stated that its request was being made, *inter alia*, to preserve the

*status quo* in the ongoing legal proceedings by maintaining the U.S. HAVANA CLUB

Registration until a final decision regarding cancellation of the registration could be rendered in

the Bacardi Appeal.  Application for Specific License for Renewal (Apr. 7, 2006), attached as

Exhibit 19; Exhibit 20.

     45.    On July 20, 2006, the PTO formally responded to Cubaexport's December 2005

application for renewal of the U.S. HAVANA CLUB Registration as follows (PTO's July 20,

2006 Office Action, attached as Exhibit 21):

> [I]n a letter dated April 6, 2006 from the Department of Treasury,
> the USPTO was informed that License No. CU-74488 does not
> authorize Ropes & Gray LLP to pay the renewal fee.  Therefore,
> the required fee for the combined filing has not been paid. . . .
> Registrant is required to notify the USPTO whether [the] specific

13

**A391**<br>JA447

license [Ropes & Gray requested on April 7, 2006] has been granted or denied.

46.     On July 28, 2006, OFAC denied Ropes & Gray's April 7, 2006 request for a

license in a one page letter (the "July 28, 2006 OFAC Letter") to Ropes & Gray, with a copy to

the PTO.  July 28, 2006 OFAC Letter, attached as Exhibit 22.  That letter stated, in its entirety,

as follows:

> This is in response to your letter dated April 7, 2006, on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), requesting a license authorizing transactions related to the renewal at the United States Patent and Trademark Office of Registration No. 1,031,651 of HAVANA CLUB & Design (the "HAVANA CLUB trademark").
>
> Pursuant to the Cuban Asset Control Regulations, 31 C.F.R. Part 515, administered by the US Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.
>
> OFAC has been engaged in consultation with the relevant agencies in the U.S. Government, including the Department of State ("State"), on this issue.  We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark.  Accordingly, your request is hereby denied.

47.     The July 28, 2006 OFAC Letter thus constitutes a two-part determination.  It is a

denial of the request for a specific license to renew the U.S. HAVANA CLUB Registration.  But

it also makes explicit OFAC's position that "renewal of the HAVANA CLUB trademark under

these circumstances would be prohibited unless *specifically* licensed."  Thus, the July 28, 2006

OFAC letter embodies the determination that renewal of the U.S. HAVANA CLUB Registration

is *not* authorized pursuant to the "general license" for trademark registrations and renewals set

forth in 31 C.F.R. § 515.527(a)(1), but rather is excluded from the general license by Section 211

and 31 C.F.R. § 515.527(a)(2).

14

48.     In this latter regard, the July 28, 2006 OFAC Letter necessarily represents a factual finding, pursuant to Section 211 and 31 C.F.R. § 515.527(a)(2), that Cubaexport's HAVANA CLUB & Design trademark is "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated" and that "the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest" has not expressly consented to the renewal of the registration.

49.     This factual finding was made without notice to Cubaexport or any opportunity to be heard. Thus, for example, Cubaexport has never had an opportunity to litigate or gather evidence as to the inapplicability of Section 211 and 31 C.F.R. § 515.527(a)(2) to Cubaexport's U.S. HAVANA CLUB Registration and to show that its trademark is *not* "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated."

50.     OFAC's denial of authorization for the renewal of Cubaexport's U.S. HAVANA CLUB Registration not only was made without affording Cubaexport due process of law, but it also is inconsistent with OFAC's prior grant of authorization to Cubaexport to defend that very same registration in the TTAB Cancellation Proceeding and the Bacardi Appeal.

51.     On August 1, 2006, Cubaexport filed a response to the PTO's July 20, 2006 Office Action noting (as the PTO already had been advised directly by OFAC) that OFAC had denied Ropes & Gray's request for a license on July 28, 2006. Response to Office Action (Aug. 1, 2006), attached as Exhibit 23. Cubaexport requested renewal of the U.S. HAVANA CLUB Registration notwithstanding OFAC's decision not to grant a license.

52.     Two days later, on August 3, 2006, the PTO issued a formal notice denying Cubaexport's application for renewal of the U.S. HAVANA CLUB Registration and stating as follows (PTO's August 3, 2006 Office Action, attached as Exhibit 24):

15

Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.

### The Effect Of OFAC's Actions On Cubaexport's Rights

53.    The direct and sole cause of the cancellation of the U.S. HAVANA CLUB Registration is the April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter, (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the registration.

54.    Those determinations were made without affording Cubaexport due process of law.

55.    In addition, as the United Stated District Court for the Southern District of New York previously observed, cancellation of Cubaexport's U.S. HAVANA CLUB Registration would deprive Cubaexport of "substantial rights" and "significant business interests in maintaining the registration of the mark." *Havana Club Holding, S.A.*, 974 F. Supp. at 311.

56.    Furthermore, the April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the U.S. HAVANA CLUB Registration were unreasonable in light of OFAC's prior decision to permit Cubaexport to defend, at substantial cost, its U.S. HAVANA CLUB Registration in the TTAB Cancellation Proceeding and Bacardi Appeal. The denial of authorization for Cubaexport to renew the U.S. HAVANA CLUB Registration will render moot the subject matter of the cancellation claims that Bacardi has asserted in those proceedings and which OFAC repeatedly has authorized Cubaexport to oppose. Indeed, Bacardi has advised Cubaexport that it intends to seek a stay of the Bacardi Appeal because it believes that it will obtain equivalent relief if the U.S. HAVANA CLUB Registration is cancelled through non-renewal by the PTO. The April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC

16

Letter (Exhibit 22) and the determinations set forth therein, coming while that appeal is pending, thus will deprive Cubaexport of its right to a final judgment by the United States courts concerning Bacardi's cancellation petition.

57.    The April 6, 2006 OFAC Letter (Exhibit 18) and the July 28, 2006 OFAC Letter, (Exhibit 22) and the determinations set forth therein regarding whether Cubaexport is authorized to renew the U.S. HAVANA CLUB Registration are unreasonable also because they are inconsistent with the underlying purposes of the CACR.  Those regulations are intended, *inter alia*, to preserve assets owned by Cuban nationals such as Cubaexport, including the U.S. HAVANA CLUB Registration.  OFAC's actions will result in the destruction of the U.S. HAVANA CLUB Registration and all attendant rights and interests.  The additional goals of the CACR include using blocked assets, like trademark registrations, as a negotiating tool with the Cuban government and retaining control over blocked funds for possible use or vesting in settlement of American claims.  OFAC's actions are inconsistent with these purposes as well.

## CLAIMS FOR RELIEF

### COUNT I:  DEFENDANTS' ACTIONS HAVE DEPRIVED CUBAEXPORT OF PROCEDURAL DUE PROCESS

58.    Paragraph 1 through 57 are incorporated herein by reference.

59.    The actions of defendants Paulson, Szubin, the Department of the Treasury, and OFAC (collectively, "Defendants") violated Cubaexport's right to Due Process under the Fifth Amendment to the United States Constitution.

60.    A federal statute vested Cubaexport with a protected property interest in the U.S. HAVANA CLUB Registration.

61.    That protected property interest has been confirmed by federal agencies, and has been deemed a "substantial right" by a federal court.

17

62.   By determining that Cubaexport is not authorized to renew its U.S. HAVANA CLUB Registration and effectively directing the PTO to cancel that registration by refusing to renew it, Defendants have deprived Cubaexport of its protected property interest.

63.   Defendants deprived Cubaexport of its protected property interest without allowing Cubaexport the opportunity to be heard on the applicability of Section 211 and its implementing regulation 31 C.F.R. § 515.527, as well as on the core factual issues of whether Cubaexport's HAVANA CLUB & Design trademark is "the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated" and whether "the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest" has not expressly consented to the renewal of the registration.  Further, Defendants' justification for its actions lacks any reference to evidence or findings of fact, and provides Cubaexport with insufficient notice of the basis of its decision.

64.   The process by which Defendants deprived Cubaexport of its protected property interest is therefore constitutionally inadequate.

## COUNT II: DEFENDANTS' ACTIONS HAVE DEPRIVED CUBAEXPORT OF SUBSTANTIVE DUE PROCESS

65.   Paragraph 1 through 57 are incorporated herein by reference.

66.   Cubaexport registered its HAVANA CLUB & Design trademark in 1976.  The registration was maintained in 1982 and renewed in 1996 and was not cancelled in the N.Y. Litigation or the TTAB Cancellation Proceeding pursuant to the Lanham Act.  Section 211 was enacted in 1998, OFAC regulation 31 C.F.R. § 515.527 was modified in compliance with Section 211 in 1999, and OFAC issued its determinations regarding their applicability to Cubaexport's renewal of its U.S. HAVANA CLUB Registration on April 6, 2006 and July 28, 2006.  Throughout the period from enactment of Section 211 to July 28, 2006, Cubaexport had a vested right in its U.S. HAVANA CLUB Registration and the right to renew that registration in

18

perpetuity, subject only to the "payment of the prescribed fee and the filing of a written application, in such form as may be prescribed by the Director." 15 U.S.C. § 1059(a).

67.     Accordingly, Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter and July 28, 2006 OFAC Letter, retroactively deprived Cubaexport of its protected property interest, in violation of the Due Process Clause of the Fifth Amendment.

68.     Further, Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter and July 28, 2006 OFAC Letter, are inconsistent with the underlying purposes of the CACR and the TWEA, which include the *preservation* and not the confiscation or destruction of Cuban assets held in this country.  Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22) thus are arbitrary and capricious, in violation of the Due Process Clause of the Fifth Amendment.

### COUNT III:  DEFENDANTS' ACTIONS HAVE WORKED A TAKING OF CUBAEXPORT'S PROPERTY WITHOUT DUE COMPENSATION

69.     Paragraphs 1 through 57 are incorporated herein by reference.

70.     Section 211 and 31 C.F.R. § 515.527, on their face or as applied by OFAC in its April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 Letter (Exhibit 22) constitute a regulatory taking of Cubaexport's protected property interest.

71.     Cubaexport received no compensation for this taking.

### COUNT IV:  DEFENDANTS' ACTIONS ARE UNLAWFUL UNDER 5 U.S.C. § 706

72.     Paragraphs 1 through 71 are incorporated herein by reference.

73.     The determinations set forth in the April 6, 2006 OFAC Letter (Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22) regarding whether Cubaexport is authorized to renew

19

the U.S. HAVANA CLUB Registration constitute final agency action for which there is no other

adequate remedy in a court, pursuant to, *inter alia*, 31 C.F.R. § 501.802.

74.     The determinations set forth in the April 6, 2006 OFAC Letter (Exhibit 18) and

July 28, 2006 OFAC Letter (Exhibit 22) regarding whether Cubaexport is authorized to renew

the U.S. HAVANA CLUB Registration were arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law; contrary to constitutional right, power, privilege, or

immunity; without observance of procedure required by law; and unwarranted by the facts.

75.     Pursuant to 5 U.S.C. § 706(2), Cubaexport is entitled to have this Court review,

hold unlawful, and set aside the determinations set forth in the April 6, 2006 OFAC Letter

(Exhibit 18) and July 28, 2006 OFAC Letter (Exhibit 22).

### **PRAYER FOR RELIEF**

WHEREFORE, Cubaexport respectfully requests that this Court enter an order:

(a)   declaring unlawful and setting aside OFAC's July 28, 2006 (Exhibit 22)

determination and notification to the PTO that renewal of the U.S. HAVANA CLUB

Registration is "prohibited" absent the grant of a specific license authorizing such renewal;

(b)   declaring unlawful and setting aside OFAC's April 6, 2006 (Exhibit 18) and

July 28, 2006 (Exhibit 22) denials of a specific license to renew the U.S. HAVANA CLUB

Registration;

(c)   declaring that Section 211 and 31 C.F.R. § 515.527(a)(2), on their face and/or

as applied to the U.S. HAVANA CLUB Registration by OFAC in the April 6, 2006 OFAC

Letter and July 28, 2006 OFAC Letter (Exhibit 22) are unconstitutional, null and void;

(d)   declaring that Plaintiff, and its legal representatives, are not prohibited from

engaging in any and all transactions necessary or incident to the renewal of the U.S. HAVANA

CLUB Registration or, in the alternative, directing Defendants, including Paulson and Szubin, to

20

**A398**

JA454

grant a specific license authorizing the renewal of Cubaexport's U.S. HAVANA CLUB

Registration and any and all transactions necessary or incident to such renewal;

(e)  permanently enjoining Defendants from interfering, directly or indirectly,

with any renewal of the U.S. HAVANA CLUB Registration; and

(f)  awarding any additional or other relief as this Court deems proper.


Dated:  September 29, 2006

Peter M. Brody (D.C. Bar No. #398717)
ROPES & GRAY LLP
One Metro Center
700 12th Street, N.W.
Washington, D.C.  20005
(202) 508-4600

Herbert F. Schwartz
Vincent N. Palladino
Eric R. Hubbard
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Attorneys for Plaintiff,
EMPRESA CUBANA EXPORTADORA
DE ALIMENTOS Y PRODUCTOS
VARIOS d/b/a CUBAEXPORT

21

**A399**
JA455



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BACARDI & COMPANY LIMITED, | ) |
| and | ) |
| BACARDI U.S.A., INC., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:04-CV-00519 (EGS) |
| EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS d/b/a CUBAEXPORT | ) |
| and | ) |
| HAVANA CLUB HOLDING, S.A. d/b/a HCH, S.A., | ) |
| Defendants. | ) |

**PARTIALLY-CONSENTED MOTION TO STAY
PENDING FINAL RESOLUTION OF PATENT AND TRADEMARK OFFICE
POST REGISTRATION OFFICE ACTION**

Plaintiffs Bacardi & Company Limited and Bacardi U.S.A., Inc. ("Bacardi")
request that the Court stay this action pending final resolution of any available appeals from the
Post Registration Office Action of the Patent and Trademark Office ("PTO") dated August 3,
2006 ("the PTO Action"). A copy of the PTO Action is attached as Exhibit A to the
accompanying Declaration of Emily Johnson Henn ("Henn Decl."). Defendants Havana Club
Holding, S.A. d/b/a HCH, S.A. ("HCH") and Empresa Cubana Exportadora de Alimentos y
Productos Varios d/b/a Cubaexport ("Cubaexport") have consented to a stay of Counts I and V

of the complaint, but they oppose a stay of Counts II-IV. The parties have agreed to suspend discovery pending the Court's ruling on this motion. For the reasons set forth below, the Court should grant Bacardi's request for a stay of this action in its entirety.

### STATEMENT OF FACTS

In this action Bacardi seeks (i) review of the decision of the Trademark Trial and Appeal Board ("TTAB") dismissing Bacardi's petition to cancel U.S. Registration No. 1,031,651 of the trademark HAVANA CLUB & DESIGN for rum (the "Extant Registration"); (ii) rectification of the PTO records by striking or canceling the Extant Registration; and (iii) declaratory and injunctive relief concerning related rights.

On August 3, 2006, the PTO Action ruled that the Extant Registration "will be cancelled/expired." (Henn Decl. Ex. A at 1.) The cancellation or expiration of the Extant Registration will afford equivalent relief to the primary relief that Bacardi has been seeking in this case and may in a practical sense make it unnecessary to litigate the disputes over related rights. Pernod Ricard (the owner of fifty percent of Defendant HCH's stock) has announced that it will seek review of the PTO Action.

The background leading to the PTO Action is as follows. Cubaexport's Extant Registration was due to expire on January 27, 2006, with a statutory six-month grace period for renewal running to July 27, 2006.[1] On December 14, 2005, Mr. Vincent N. Palladino of Ropes & Gray LLP submitted to the PTO an application for renewal of the Extant Registration. (Henn Decl. Ex. B.) In the ensuing months, there were communications between the PTO and Mr.

---

[1] Under Section 9(a) of the Lanham Act, 15 U.S.C. § 1059(a), a registration must be renewed every ten years through filing of a written application and payment of a prescribed fee. Under the Trademark Rules, "an application for renewal must be filed within one year before the expiration date of the registration, or within the six-month grace period after the expiration date of the registration. If no renewal application is filed within this period, the registration will expire." T.M.R.P. § 2.182.

2

Palladino concerning whether Cubaexport possessed sufficient authority to seek renewal of the registration under licenses issued by the Office of Foreign Assets Control ("OFAC").[2] On April 6, 2006, OFAC determined that there was no such authority under existing OFAC licenses and on the following day Cubaexport applied for a specific license authorizing the renewal of the registration.

On July 20, 2006, the PTO issued a "Post Registration Office Action" stating that the application for renewal of the Extant Registration could not be accepted and directing "Registrant . . . to notify the USPTO" whether the necessary specific OFAC license "has been granted or denied." (Henn Decl. Ex. C. at 1.) The PTO warned that "[i]f the owner . . . or if OFAC notifies the USPTO that the specific license has been denied, the registration will be deemed cancelled/expired." (*Id.* at 2.)

In a letter dated July 28, 2006, Mr. J. Robert McBrien, Acting Director of OFAC notified Mr. Palladino that the necessary specific license had not been and would not be granted:

> "Pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), renewal of the HAVANA CLUB trademark under these circumstances would be prohibited unless specifically licensed.
>
> OFAC has been engaged in consultation with relevant agencies in the U.S. Government, including the Department of State ('State'), on this issue. We have received guidance from State informing us that it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark. Accordingly, your request is hereby denied." (Henn Decl. Ex. D.)

---

[2] Transactions related to the renewal of a U.S. trademark registration in which Cuba or a Cuban national has an interest are forbidden by the general prohibitions of 31 C.F.R. §515.201(b) in the absence of a license from OFAC. While a general license is provided in 31 C.F.R. § 515.527(a)(1), certain transactions are excluded from that general license by 31 C.F.R. § 515.527(a)(2) and are prohibited in the absence of a specific license from OFAC. *See* 31 C.F.R. § 515.527(a).

Having received OFAC's notice of denial, Cubaexport notified the PTO on August 1, 2006, that OFAC had "declined to grant the specific license." (Henn Decl. Ex. E at 1.) Cubaexport requested that the Extant Registration be renewed "notwithstanding OFAC's decision not to grant Cubaexport a specific license." (*Id.*)

On August 3, 2006, the PTO issued another Post Registration Office Action ("the PTO Action") stating: "Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee . . . has not been submitted; accordingly, the registration will be cancelled/expired." (Henn Decl. Ex. A.) The PTO Action noted that Cubaexport "may file a petition to the Director requesting review of this decision." (*Id.*)

On August 8, 2006, Bacardi announced the relaunch of its HAVANA CLUB rum in Florida. After stating its intent to contest the PTO Action, Pernod Ricard acting through Pernod Ricard USA, LLC ("Pernod USA") filed suit in U.S. District Court for the District of Delaware on August 15, 2006. (Henn Decl. Ex. F.) Pernod USA — which is represented in Delaware by the same counsel representing Cubaexport in this case — asserts that Bacardi has made representations that are likely to mislead consumers into buying Bacardi's HAVANA CLUB rum, thereby diverting sales from Pernod USA's own spirits. (*Id.* ¶¶ 21-24, 30-33.) In particular, Pernod USA claims that it is harmed by Bacardi's allegedly false claims that it has rights to the HAVANA CLUB brand. (*Id.* ¶¶ 30-34.)

## ARGUMENT

This Court has broad discretion to stay all proceedings in this action pending the resolution of proceedings elsewhere. *Naegele v. Albers*, 355 F. Supp. 2d 129, 140 (D.D.C. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its

4

docket with economy of time and effort for itself, for counsel, and for litigants." *Landis,* 299 U.S. at 254. "Indeed, '[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *IBT/HERE Employee Representatives' Council v. Gate Gourmet Div. Americas,* 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (quoting *Leyva v. Certified Grocers of Cal., Ltd,* 593 F.2d 857, 863-64 (9th Cir. 1979)).

The PTO Action ruling that Cubaexport's HAVANA CLUB registration is cancelled or expired affords relief equivalent to a key objective that Bacardi has been seeking in this case. A stay of this case pending final resolution of any appeals of the PTO Action will therefore economize judicial resources and save time and effort for the Court and the parties in this case. The parties are currently engaged in discovery related to renewed dispositive motions that Defendants have indicated they intend to file, but such motions will likely be moot in whole or in part if the PTO Action stands. Further discovery and efforts to prepare and argue dispositive motions may be unnecessary, and the resources of the Court and parties should not be spent unless it becomes clear that the claims must be litigated. Because the resolution of any available PTO appeals will likely affect any remaining questions in this case, a stay of all claims is appropriate. *See Naegele,* 355 F. Supp. 2d at 141.

Defendants will suffer no harm from a stay in this case. As they have filed no counterclaims, the effect of the stay operates entirely on Bacardi's claims. The parties have already agreed to suspend discovery pending the resolution of this motion. The parties also agree that Counts I and V of Bacardi's complaint (Bacardi's appeal of the TTAB's decision and Treaty/Constitutional claims) should be stayed. While Defendants maintain their position that this Court should dismiss Counts II, III, and IV, the posture of the case after resolution of any

available PTO appeals may eliminate the need for this Court to entertain dispositive motions.  As in *IBT/HERE Employee Representatives' Council*, the resolution of the related proceeding "may affect the parties' understanding of the scope of this case going forward, may reorient the parties' arguments, may catalyze a settlement of this matter, may moot the defendants' motion to dismiss, or may resolve the issues raised in this lawsuit in their entirety." 402 F. Supp. 2d at 293.

   *Count II.*   In Count II, Bacardi seeks a declaration that it has common law rights in the HAVANA CLUB mark and that Defendants have no rights in any mark incorporating the words HAVANA CLUB. (Compl. ¶¶ 142-45.)  Bacardi alleges, *inter alia*, that Defendants' claimed trademark rights are contrary to the public policy of the United States (*id.* ¶¶ 144-45) — which was borne out by OFAC's letter of July 28 stating that "it would be inconsistent with U.S. policy to issue a specific license authorizing transactions related to the renewal of the HAVANA CLUB trademark." (Henn Decl. Ex. D.)  The PTO's decision that the Extant Registration is cancelled or expired — assuming it withstands appeal — undermines Defendants' principal basis for claiming rights in the HAVANA CLUB mark.  Defendants moved to dismiss Counts II-IV on the ground, *inter alia*, that "Cubaexport has a valid registration for trademark 'Havana Club.'" (Cubaexport Mot. to Dismiss at 34.)  If the PTO Action stands, this argument will no longer be available to Defendants, and the parties' arguments will be reoriented if there is any further basis for the parties to litigate Count II. *See IBT/HERE Employee Representatives' Council*, 402 F. Supp. 2d at 293.  Indeed, affirmation of the PTO Action may catalyze settlement or otherwise eliminate the need to continue litigation over Count II. *See id.*

   *Counts III & IV.*   Bacardi also seeks declarations that its use of the HAVANA CLUB mark does not violate any rights purportedly held by Defendants under federal trademark laws (Count III) or state laws (Count IV).  (Compl. ¶¶ 149-50, 153-54.)  The cancellation or

expiration of the Extant Registration pursuant to the stated policy of the United States necessarily affects the resolution of these counts. As in the case of Count II, Defendants moved to dismiss Counts III and IV on the ground, *inter alia*, that "Cubaexport has a valid registration for trademark 'Havana Club,'" (Cubaexport Mot. to Dismiss at 34) and these arguments must necessarily be abandoned or changed if Cubaexport's registration is cancelled or expired. Moreover, it is difficult to understand how Defendants could assert rights under federal or state law that are inconsistent with U.S. policy established by the State Department and recognized in the PTO Action.

Other developments between the parties and their affiliates also counsel in favor of a stay of all claims in this action. As previously noted, Bacardi relaunched its HAVANA CLUB rum in Florida on August 8, 2006, and one week later, Pernod USA (whose parent, Pernod-Ricard, owns a 50% interest in Defendant HCH (Compl. ¶¶ 17, 19)) filed suit against Bacardi. *See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 06-505 (SLR) (D. Del. 2006). (*See* Henn Decl. Ex. F.) Pernod USA is represented in that case by the same counsel at Ropes & Gray who represent Cubaexport in this case. Pernod USA alleges in that suit that it is harmed by Bacardi's use of the HAVANA CLUB name — even though Pernod USA itself asserts no interest in the trademark and despite the PTO's determination that Pernod Ricard S.A.'s joint venture partner, Cubaexport, has lost any rights it may have had in the HAVANA CLUB registration. Bacardi's rights to the HAVANA CLUB mark are being litigated in that proceeding, brought by an affiliate of Defendants HCH and Cubaexport, which may affect or resolve the issues raised in Counts II-IV. *See IBT/HERE Employee Representatives' Council*, 402 F. Supp. 2d at 293.

7

In these circumstances, a stay of Bacardi's remaining claims will ensure that the Court and the parties need not expend resources dealing with allegations and arguments that will likely be moot. *Cf. In re Lorazepam & Clorazepate Antitrust Litigation*, 208 F.R.D. 1 (D.D.C. 2002) (concluding that a stay pending an appellate decision was warranted where "proceeding headlong with discovery and other matters before this Court has the very real potential of unnecessarily wasting significant resources of all parties . . . and the Court, because two significant issues are currently pending before the Court of Appeals, one of which could dispose of the litigation while the other could substantially reshape it").

Respectfully submitted,

/s/
Eugene D. Gulland (D.C. Bar No. 175422)
Oscar M. Garibaldi (D.C. Bar No. 251330)
Emily Johnson Henn (D.C. Bar No. 471077)
Jenny C. Ellickson (D.C. Bar No. 489905)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

William R. Golden, Jr.
Michelle Graham
KELLEY DRYE & WARREN
101 Park Avenue
New York, NY  10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

September 15, 2006            *Attorneys for Plaintiffs*

8

## CERTIFICATE OF SERVICE

The undersigned member of the bar of this court hereby certifies that true and correct copies of the Partially-Consented Motion To Stay Pending Final Resolution of Patent and Trademark Office Post Registration Action, Declaration of Emily Johnson Henn, and Proposed Order were served upon:

| | |
|---|---|
| Peter M. Brody (D.C. Bar No. 398717)<br>ROPES & GRAY LLP<br>One Metro Center<br>700 12th Street, NW, Suite 900<br>Washington, DC 20005-3948<br>Telephone: (202) 508-4600<br>Facsimile: (202) 508-4650 | Mark J. Biros (D.C. Bar No. 181719)<br>PROSKAUER ROSE LLP<br>1001 Pennsylvania Avenue, N.W.<br>Suite 400 South<br>Washington, DC 20004<br>Telephone: (202) 778-1104<br>Facsimile: (202) 416-6899 |
| Herbert F. Schwartz<br>Vincent N. Palladino<br>Pablo D. Hendler<br>Michele M. Winneker<br>ROPES & GRAY LLP<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br><br>*Attorneys for Defendant Cubaexport* | Charles S. Sims<br>Jenifer deWolf Paine<br>PROSKAUER ROSE LLP<br>1585 Broadway<br>New York, NY  10036<br><br>*Attorneys for Defendant HCH* |

by electronic filing under the Rules of this Court.

September 15, 2006

_____
Emily Johnson Henn



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

Re:  Trademark Registration of             :
  Empresa Cubana Exportadora de Alimentos y Productos Varios   :
Registration No.  1031651               :       On Petition
Registered:  January 27, 1996            :
Mark:  HAVANA CLUB               :
Petition Filed: October 5, 2006           :

The Petition to the Director, filed on October 5, 2006, to reverse the decision of the Post Registration Division denying renewal of the above-captioned registration is noted.

After review of the petition and its attachments, the Office has determined that suspension of action on this petition pending disposition of the complaint filed by petitioner against the United States Department of the Treasury, et al., is appropriate because the decision therein may have a bearing on this petition decision.  (Petition Attachment No. 7.)

Accordingly, matters with respect to this petition are suspended.  Petitioner has thirty (30) days from the date of any disposition of the above-referenced civil action to notify the Office, including any appeals.

Sharon R. Marsh
Deputy Commissioner
  for Trademark Examination Policy

SRM:JL

Date: December 6, 2006

Attorney for Petitioner:

Vincent N. Palladino, Esq.
Ropes & Gray LLP
1251 Avenue Of The Americas
New York, NY 10020



**ROPES & GRAY LLP**

ONE METRO CENTER   700 12TH STREET, NW   SUITE 900   WASHINGTON, DC 20005-3948   202-508-4600   F 202-508-4650
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

January 18, 2007

Amy E. Craig
202-508-4736
Amy.Craig@ropesgray.com

| | | |
|---|---|---|
| Registration No. | : | 1,031,651 |
| Mark | : | HAVANA CLUB & Design |
| Registrant | : | Empresa Cubana Exportadora de Alimentos y Productos Varios |
| Issued | : | January 27, 1976 |
| International Class | : | 33 |
| Specialist | : | Sharon Granata |

VIA FACSIMILE/CONFIRMATION VIA FEDEX

Commissioner for Trademarks
P.O. Box 1451
Alexandria, Virginia 22313-1451

Subject:   Notice of Address Change for Correspondence

Dear Ms. Granata:

Please take notice that effective January 22, 2007, the address of Ropes & Gray LLP, the law firm serving as counsel of record for Empresa Cubana Exportadora de Alimentos y Productos Varios, will be:  1211 Avenue of the Americas, New York, NY  10036.  The telephone numbers of the firm will remain the same.

Sincerely,

Amy E. Craig
Not admitted in the District of Columbia.  Supervised by Ropes & Gray partners who are members of the District of Columbia bar.

01-19-2007

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #37

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

⎯⎯⎯⎯

BRUSSELS, BELGIUM

⎯⎯⎯⎯

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

WILLIAM R. GOLDEN  JR.

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

February 20, 2007

**VIA FACSIMILE AND UPS OVERNIGHT**

Audrey Twyman
United States Patent and Trademark Office
Madison Building East
600 Dulany Street
Alexandria VA 22314
FAX:  (571) 273-8950
TEL:  (571) 272-9581

> Re:   <u>Freedom of Information Act Request</u>

Dear Ms. Twyman:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I request access to and copies of the following:

1.       All documents dated or created after January 29, 2004, concerning United States Trademark Registration No. 1,031,651 for the mark HAVANA CLUB (the "HAVANA CLUB Registration"), including any renewal thereof, including, but not limited to, documents concerning or comprising communications with any law firms concerning the HAVANA CLUB Registration.

2.       All documents dated or created after October 21, 1998 concerning any application (whether granted or denied) for a license from the United States Department of Treasury Office of Foreign Assets Control ("OFAC"), in connection with the registration, renewal, or assignment of the HAVANA CLUB Registration.

3.       All other documents dated or created after October 21, 1998 containing or concerning any communication between the United States Patent and Trademark Office ("PTO") and other brand, depart, or agency of the United States Government, any brand, department, or agency of the government of any State or foreign country, or any private party, regarding the HAVANA CLUB Registration.

NY01/MARCM/1159641.1

02-21-2007

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

KELLEY DRYE & WARREN LLP

Audrey Twyman
February 20, 2007
Page Two

4.      All documents dated or created after October 21, 1998 concerning or comprising any application (whether granted or denied) for a license from OFAC in connection with the registration, assignment, or renewal of any mark owned or claimed to be owned by a Cuban national, as that term is defined at 31 C.F.R. § 515.302, other than the HAVANA CLUB Registration.

5.      All other documents dated or created after October 21, 1998 containing or concerning any communication between the PTO and any other branch, department or agency of the United States Government, any brand, department, or agency of the government of any State or foreign country, or any private party, regarding any United States registration or application for registration of any mark owned or claimed to be owned by a Cuban national, as that term is defined at 31 C.F.R. § 515.302 other than the HAVANA CLUB Registration.

6.      The Certificate of Registration of any mark registered or renewed since July 9, 1963, by or on behalf of a Cuban national, as that term is defined in 31 C.F.R. § 515.302, other than the HAVANA CLUB Registration.

7.      All documents concerning Section 211 of the Omnibus Consolidation and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998) ("Section 211"), including, but not limited to, the enactment, implementation, application or interpretation of Section 211.

8.      All documents concerning any United States governmental policy, practice, or position regarding any or all marks, registrations, or renewals owned or claimed to be owned by any Cuban national, as that term is defined at 31 C.F.R. § 515.302.

I would like to receive the information in paper format. I agree to pay reasonable duplication fees for the processing of this request in an amount not to exceed $2,000.00. However, please notify me prior to your incurring any expenses in excess of that amount.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

NY01/MARCM/1159641.1

KELLEY DRYE & WARREN LLP

Audrey Twyman
February 20, 2007
Page Three

I look forward to your reply within 20 business days, as the statute requires.

Sincerely,

*[signature]*

William R. Golden, Jr.

NY01/MARCM/1159641.1

04/05/2007  17:55    2026266110                                    PAGE  01/06



**ROPES & GRAY**

ROPES & GRAY LLP
ONE METRO CENTER  700 12TH STREET, NW  SUITE 900  WASHINGTON, DC 20005-3948  202-508-4600  F 202-508-4650
BOSTON  NEW YORK  SAN FRANCISCO  WASHINGTON, DC

## FAX TRANSMITTAL LETTER

IMPORTANT: PLEASE DELIVER THIS DOCUMENT IMMEDIATELY!

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: (202) 508-4660

TOTAL NUMBER OF PAGES INCLUDING THIS TRANSMITTAL LETTER:

| **Name** | **Firm/Company** | **Fax Number** | **Phone Number** |
|---|---|---|---|
| To: Robert Fawcett | FOIA OFFICE USPTO | 571-273-8950 | 571-272-70 |
| From: Amy Craig | | | |

Comments:

PLEASE COMPLETE WHEN SUBMITTING TO FAX DEPARTMENT

| Date: | | Time: |
|---|---|---|
| File Symbol: | | Personal ID Number: |
| Submitted By: | | Phone: |

THIS FAX MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE.
IT IS INTENDED FOR USE ONLY BY THOSE TO WHOM IT IS ADDRESSED. IF THIS FAX IS NOT ADDRESSED TO
YOU, OR IF YOU RECEIVED IT IN ERROR, YOU MAY NOT DISCLOSE, DISTRIBUTE, COPY OR USE THIS FAX OR ANY
INFORMATION IN IT.  INSTEAD, PLEASE CALL US COLLECT AT (202) 508-4600 TO ARRANGE FOR ITS
DESTRUCTION OR RETURN.

PAGE 1/6 * RCVD AT 4/5/2007 5:56:20 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-5/5 * DNIS:2738950 * CSID:2026266110 * DURATION (mm-ss):01-06

# ROPES & GRAY

ROPES & GRAY LLP

ONE METRO CENTER  700 12TH STREET, NW  SUITE 900  WASHINGTON, DC 20005-3948  202-508-4600  F 202-508-4650
BOSTON  NEW YORK  PALO ALTO  SAN FRANCISCO  WASHINGTON, DC  www.ropesgray.com

April 5, 2007

Amy E. Craig
202-508-4736
Amy.Craig@ropesgray.com

## VIA FACSIMILE/E-MAIL

Robert Fawcett
FOIA Officer
United States Patent and Trademark Office
FOIA OFFICE
P.O. Box 1450
Alexandria, VA 22313-1450
FAX:  (571) 273-8950
TEL:  (571) 272-7006

Re:    Freedom of Information Act (FOIA) Request No. 07-128

Dear Mr. Fawcett:

Per your request, this letter confirms the content of the March 29, 2007 conversation between
you, Peter Brody and myself.  In our March 29, 2007 conversation, you asked that we provide
you with a written response to your query regarding documents relating to the COHIBA
litigation and a letter summarizing the status of our FOIA requests. In regards to your query, we
do not request any materials relating to the COHIBA mark.  Accordingly, any materials relating
solely to the COHIBA mark may be excluded from the scope of the PTO's response to our FOIA
request. In regards to your request for a letter detailing the "status quo" of our FOIA requests, I
have summarized the points of our March 29, 2007 conversation in relation to each of the
requests we made.

**Status of Our Requests:**  (our original requests are attached)

Requests 1-3: requests specific to the Havana Club Mark:
Your office has pulled the documents specific to the Havana Club mark.  So far, those
documents total around 1500 pages.

Requests 4 & 5:  requests concerning licenses for other Cuban marks:
You stated that the only responsive materials that have turned up relate to the PTO's coordination
with the DOJ in drafting the amicus brief in the COHIBA litigation. These materials would
double the scope of the PTO's response to our requests as the COHIBA documents number
around 1500 pages.  You indicated your belief that most of these documents consisted of drafts

ROPES & GRAY LLP

- 2 -                                                              April 5, 2007

of the amicus brief. As these would constitute attorney work product, Mr. Brody told you that we could exclude such drafts from our request. We also told you that we would consult with our team and determine if any of the other COHIBA materials would be of interest to us. As per your request, I left you a voicemail message and submitted an electronic letter to efoia@uspto.gov on Friday, March 30, 2007, indicating that we do not have an interest in receiving any materials that relate solely to the COHIBA mark. This letter confirms those messages.

Request 6: Certificate of Registrations registered or renewed on behalf of a Cuban national:
You said that this information is a matter of public record and thus does not fall within FOIA.

Request 7: Documents concerning Section 211:
You indicated that the materials uncovered so far consist of reference materials, including public records, case summaries from Westlaw, the legislative record, etc. You did indicate that there may also be some internal communications. Mr. Brody told you that we would be interested in any internal communications, including any communications (other than privileged communications) concerning any public documents.

Request 8: U.S. governmental policy, practice, or position regarding Cuban marks:
You were unsure what we meant by "positions" in the request. We clarified that we are seeking any statements regarding whether, and under what circumstances, to allow registration or renewal of registration of Cuban marks, including documents that may have at one time been publicly available, but are no longer easily accessible.

**Time Frame:**

You told us that you estimate that it will take your office two months to go through the documents uncovered and segregate factual materials from "deliberative" materials, which are exempt from disclosure. Additionally, you stated that you are required to "consult" with the various other agencies whose comments are included in the documents. This consultation process applies in our situation as many of the responsive documents include communications between the PTO and one or more other agencies, including: the State Department; Justice Department; Treasury Department; ITA and the USTR (Office of the United States Trade Representative). Disclosure of an e-mail chain with comments from various agencies requires the approval of all parties. Given the foreseeable delay this entails, you stated that you would be willing to release such e-mail communications with temporary redactions of the other agency's portions, pending their review.

In sum, you stated that you will release all of the PTO-reviewed materials to us at the same time (in roughly two months) with the other agency's contributions redacted pending their approval.

ROPES & GRAY LLP

- 3 -                                   April 5, 2007

**Payment:**

We submitted a check in the amount of $2,680.00 to your office on March 14, 2007 pursuant to your response letter dated February 16, 2007 requesting payment of the approximate processing cost of our FOIA request.

Should you have any further questions concerning this request, please contact me at 202-508-4736 or Peter Brody at 202-508-4612.

Sincerely,

Amy E. Craig

Enclosure



ROPES & GRAY LLP
ONE METRO CENTER  700 12TH STREET, NW  SUITE 900  WASHINGTON, DC 20005-3948  202-508-4600  F 202-508-4650
BOSTON  NEW YORK  SAN FRANCISCO  WASHINGTON, DC

January 12, 2007

Peter M. Brody
(202) 508-4612
pbrody@ropesgray.com

VIA FACSIMILE/CONFIRMATION VIA FEDERAL EXPRESS

Audrey Twyman
United States Patent and Trademark Office
600 Delaney Street
Alexandria, VA 22313
FAX: (571) 273-8950
TEL: (571) 272-9581

Re:     Freedom of Information Act Request

Dear Ms. Twyman:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended, I request the following documents:

    (1)    All documents dated or created after January 29, 2004, concerning United States Trademark Registration No. 1,031,651, including any renewal thereof.

    (2)    All documents dated or created after October 21, 1998, concerning any application (whether granted or denied) for a license from the United States Department of Treasury, Office of Foreign Assets Control ("OFAC"), in connection with the registration or renewal of United States Trademark Registration No. 1,031,651.

    (3)    All other documents dated or created after October 21, 1998, containing or concerning any communication between the United States Patent & Trademark Office ("PTO") and any other branch, department, or agency of the United States Government, any branch, department, or agency of the government of any State, or any private party, regarding United States Trademark Registration No. 1,031,651.

    (4)    All documents dated or created after October 21, 1998, concerning any application (whether granted or denied) for a license from OFAC, in connection with the registration or renewal of any mark owned or claimed to be owned by a Cuban national, as that term is defined at 31 C.F.R. § 515.302, other than Registration No. 1,031,651.

ROPES & GRAY LLP

(5)    All other documents dated or created after October 21, 1998, containing or concerning any communication between the PTO and any other branch, department, or agency of the United States Government, any branch, department, or agency of the government of any State, or any private party, regarding any United States registration of any mark owned or claimed to be owned by a Cuban national, as that term is defined at 31 C.F.R. § 515.302, other than Registration No. 1,031,651.

(6)    The Certificate of Registration of any mark registered or renewed since July 9, 1963, by or on behalf of a Cuban national, as that term is defined at 31 C.F.R. § 515.302, other than Registration No. 1,031,651.

(7)    All documents concerning Section 211 of the Omnibus Consolidation and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, 112 Stat. 2681 (1998), including without limitation the enactment, implementation, application or interpretation of Section 211.

(8)    All documents concerning any United States governmental policy, practice, or position regarding any or all marks, registrations, or renewals owned or claimed to be owned by any Cuban national, as that term is defined at 31 C.F.R. § 515.302.

We understand that there may be concern over disclosure of information relating to individuals on the ground that disclosure might cause an unwarranted invasion of personal privacy. To avoid this potential (without acknowledging that such an unwarranted invasion would in fact be caused by disclosure), we agree to the deletion of any individual's names or identifiers before the information is disclosed.

We are willing to pay costs and expenses not exceeding $1,000. If you expect that the costs associated with responding to this request will exceed this amount, please contact me to discuss the size and scope of your search. We would also like to receive responses to our requests on a rolling basis, rather than wait for compilation of all responsive documents.

Please do not hesitate to contact me at (202) 508-4612 if you have any questions about this request.

Sincerely,

Peter M. Brody

May-15-2009  03:01pm  From-2124973662                    +                    T-398  P.001/004  F-061



**ROPES & GRAY LLP**
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

## FAX TRANSMITTAL LETTER

**IMPORTANT:** PLEASE DELIVER THIS DOCUMENT IMMEDIATELY!

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: 212-596-9000

TOTAL NUMBER OF PAGES INCLUDING THIS TRANSMITTAL LETTER:  4

| **Name** | **Firm/Company** | **Fax Number** | **Phone Number** |
|---|---|---|---|
| To:  Mr. John J. Doll | United States Patent and Trademark Office | (571) 273-0464 | (571) 272-8600 |

FROM:   Vincent N. Palladino

Comments:

---

### PLEASE COMPLETE WHEN SUBMITTING TO FAX DEPARTMENT

Date: May 15, 2009
File Symbol: 001214-0001
Submitted By: Vincent N. Palladino

Time:  3:00 PM
Personal ID Number: 40510
Phone: 212-596-9070

THIS FAX MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE. IT IS INTENDED FOR USE ONLY BY THOSE TO WHOM IT IS ADDRESSED. IF THIS FAX IS NOT ADDRESSED TO YOU, OR IF YOU RECEIVED IT IN ERROR, YOU MAY NOT DISCLOSE, DISTRIBUTE, COPY OR USE THIS FAX OR ANY INFORMATION IN IT. INSTEAD, PLEASE CALL US COLLECT AT 212-596-9000 TO ARRANGE FOR ITS DESTRUCTION OR RETURN.

May-15-2009  03:01pm  From-2124973662                      +                    T-398  P.002/004  F-061

 **ROPES & GRAY**

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

May 15, 2009

Vincent N. Palladino
212-596-9070
646-728-2671 fax
vincent.palladino@ropesgray.com

**VIA FACSIMILE AND FEDEX**

Mr. John J. Doll
Acting Director of the United States Patent and
Trademark Office
Trademark Assistance Center
Madison East, Concourse Level Room C 55
600 Dulany Street
Alexandria, Virginia 22314

Re:   Trademark Registration of Empresa Cubana Exportadora
        de Alimentos y Products Varios
        Registration No.: 1031651
        Registered:  January 27, 1996
        Mark:  HAVANA CLUB
        Petition Filed:  October 5, 2006

Dear Mr. Doll:

    We represent Petitioner Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport").  This letter responds to the May 4, 2009 letter from counsel for Bacardi & Company Limited and Bacardi U.S.A., Inc. ("Bacardi"), enclosing a copy of the March 30, 2009 decision of the United States District Court for the District of Columbia in *Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport")* v. *U.S. Dep't of Treasury, et al.*, Case No. 06-cv-1692 (D.D.C.) (RCL).

    Cubaexport respectfully requests that consideration not be given at this time to the above-referenced Petition to the Director, which is suspended pending the disposition of the above case. The December 6, 2006 Order (copy enclosed) provides that Cubaexport (not Bacardi) has 30 days from the "disposition of the above-referenced civil action ... including any appeals" to notify the

May-15-2009  03:02pm  From-2124973662                    +                    T-398  P.003/004  F-061

ROPES & GRAY LLP

Mr. John J. Doll
Page 2
May 15, 2009

Office of the outcome of the case. Cubaexport has until May 29, 2009 to file a notice of appeal
pursuant to Fed. R. App. Proc. 4(a)(1)(B) and intends to file such an appeal. Accordingly,
consideration of the suspended Petition to the Director is premature.

Respectfully yours,

Vincent N. Palladino

VNP:emf
Enclosure

cc:     Oscar M. Garibaldi, Esq.



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

Re:  Trademark Registration of                                    :
  Empresa Cubana Exportadora de Alimentos y Productos Varios      :
  Registration No. 1031651                                        :        On Petition
  Registered: January 27, 1996                                    :
  Mark:  HAVANA CLUB                                              :
  Petition Filed: October 5, 2006                                 :

The Petition to the Director, filed on October 5, 2006, to reverse the decision of the Post
Registration Division denying renewal of the above-captioned registration is noted.

After review of the petition and its attachments, the Office has determined that suspension of
action on this petition pending disposition of the complaint filed by petitioner against the
United States Department of the Treasury, et al., is appropriate because the decision therein
may have a bearing on this petition decision.  (Petition Attachment No. 7.)

Accordingly, matters with respect to this petition are suspended.  Petitioner has thirty (30) days
from the date of any disposition of the above-referenced civil action to notify the Office,
including any appeals.

Sharon R. Marsh
Deputy Commissioner
  for Trademark Examination Policy

SRM:JL

Date: December 6, 2006

Attorney for Petitioner:

Vincent N. Palladino, Esq.
Ropes & Gray LLP
1251 Avenue Of The Americas
New York, NY 10020



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

May 29, 2009

Vincent N. Palladino, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

Re:   Trademark Registration of Empresa Cubana Exportadora
     de Alimentos y Productos Varios
     Registration Number: 1,031,651
     Registered: January 27, 1976
     Mark: HAVANA CLUB
     Petition Filed: October 5, 2006

Dear Mr. Palladino:

This acknowledges receipt of your letter dated May 15, 2009 to John Doll, Acting Director of the United States Patent and Trademark Office.  In your letter, you request that the above-referenced petition to the Director remain suspended pending the final disposition of Case No. 06-cv-1692 in the United States District Court for the District of Columbia.

The petition will remain suspended until after the civil action has been finally determined, *i.e.*, after a dispositive ruling ending the litigation on the merits has been rendered, any appeals therefrom concluded, and any remands decided.  As indicated in the December 6, 2006 letter suspending action on the petition, petitioner should inform the Office within thirty (30) days from the date of any such final determination of the civil action.  At that time a decision on the petition will be rendered, as appropriate.

Please let me know if you have any further questions.

Sincerely,

*Janis Long*

Janis Long
Office of the Commissioner
   for Trademarks
571-272-9573

Prepared by:  Janis Long/USPTO/TM's 5-27-09

cc. Director's File EDMS Folder No.13980
    Commissioner for Trademarks
    Janis Long

-2-

| **Trademark Snap Shot Prosecution History for Review Correspondence** | | | |
|---|---|---|---|
| (Table presents the data on Prosecution History for Review Correspondence) | | | |

### OVERVIEW

| SERIAL NUMBER | 73023981 | FILING DATE | 06/12/1974 |
|---|---|---|---|
| REG NUMBER | 1031651 | REG DATE | 01/27/1976 |
| REGISTER | PRINCIPAL | MARK TYPE | TRADEMARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | TM ATTORNEY NOT ASSIGNED | L.O. ASSIGNED | NONE |

### PUB INFORMATION

| RUN DATE | 07/11/2009 |
|---|---|
| PUB DATE | N/A |
| STATUS | 973-PENDING PETITION/COURT DECISION |
| STATUS DATE | 12/06/2006 |
| LITERAL MARK ELEMENT | HAVANA CLUB |

| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
|---|---|---|---|
| SECTION 2F | NO | SECTION 2F IN PART | NO |
| SECTION 8 | YES | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | YES | RENEWAL DATE | 01/27/1996 |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | NO | 1 (a) | NO | 1 (a) | NO |
| 1 (b) | NO | 1 (b) | NO | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | YES | 44E | YES | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| STANDARD CHARACTER MARK | NO |
|---|---|
| LITERAL MARK ELEMENT | HAVANA CLUB |
| MARK DRAWING CODE | 3-AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/LETTER(S)/NUMBER(S) |
| COLOR DRAWING FLAG | NO |

### CURRENT OWNER INFORMATION

**A427**

| PARTY TYPE | 42-SUBSEQUENT OWNER AFTER REGISTRATION |
|---|---|
| NAME | EMPRESA CUBANA EXPORTADORA DE ALIMENTOSY PRODUCTOS VARIOS |
| ADDRESS | CALLE 23 N. 55, 8 VO.<br>PISO VEDADO<br>CIUDAD DE LA HABANA 10400, |
| ENTITY | 11-COMPANY |
| CITIZENSHIP | Cuba |
| DBA/AKA | DBA CUBA EXPORT |
| ASSIGNEE OF | BY COURT ORDER |

## GOODS AND SERVICES

| U.S. CLASS | 033 |
|---|---|
| DESCRIPTION TEXT | RUM |

## GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 033 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

## MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|
| DISCLAIMER | APPLICANT DISCLAIMS THE WORDS "HAVANA" AND "FUDNADA EN 1878" APART FROM THE MARK AS A WHOLE. |
| LINING & STIPPLING STMT | THE DRAWING IS LINED FOR THE COLOR GOLD. |

## FOREIGN INFORMATION

| PRIORITY CLAIMED | N/A |
|---|---|
| APPLICATION NO. | N/A |
| APPLICATION FILING DATE | N/A |
| FOREIGN REG NO. | 110353 |
| FOREIGN REG DATE | 02/12/1974 |
| FOREIGN RNWL NUM | N/A |
| DATE OF FOREIGN RNWL | N/A |
| FOREIGN EXPIRATION | N/A |
| FOREIGN RNWL EXPIRATION | N/A |

## PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 07/10/2009 | CORV | P | REVIEW OF CORRESPONDENCE COMPLETE | 054 |
| 05/15/2009 | MAIL | I | PAPER RECEIVED | 053 |
| 04/05/2007 | FAXX | I | FAX RECEIVED | 052 |
| 02/21/2007 | MAIL | I | PAPER RECEIVED | 051 |
| 01/19/2007 | MAIL | I | PAPER RECEIVED | 050 |

**A428**

| 12/06/2006 | PPCD | O | PENDING PETITION/COURT DECISION | 049 |
|---|---|---|---|---|
| 12/05/2006 | APET | A | ASSIGNED TO PETITION STAFF | 048 |
| 10/05/2006 | PCRC | I | PETITION TO DIRECTOR RECEIVED | 047 |
| 10/05/2006 | MAIL | I | PAPER RECEIVED | 046 |
| 08/03/2006 | PR89 | O | POST REGISTRATION ACTION MAILED - SEC. 8 & 9 | 045 |
| 08/02/2006 | MAIL | I | PAPER RECEIVED | 044 |
| 08/01/2006 | FAXX | I | FAX RECEIVED | 043 |
| 07/20/2006 | PR89 | O | POST REGISTRATION ACTION MAILED - SEC. 8 & 9 | 042 |
| 07/20/2006 | PLGL | A | ASSIGNED TO PARALEGAL | 041 |
| 12/14/2005 | 89AF | I | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | 040 |
| 07/17/2006 | PCDE | O | PETITION TO DIRECTOR DENIED | 039 |
| 07/07/2006 | MAIL | I | PAPER RECEIVED | 038 |
| 06/30/2006 | MAIL | I | PAPER RECEIVED | 037 |
| 06/28/2006 | MAIL | I | PAPER RECEIVED | 036 |
| 07/05/2006 | FAXX | I | FAX RECEIVED | 035 |
| 06/29/2006 | FAXX | I | FAX RECEIVED | 034 |
| 06/27/2006 | FAXX | I | FAX RECEIVED | 033 |
| 06/15/2006 | MAIL | I | PAPER RECEIVED | 032 |
| 06/14/2006 | FAXX | I | FAX RECEIVED | 031 |
| 05/09/2006 | FAXX | I | FAX RECEIVED | 030 |
| 04/07/2006 | FAXX | I | FAX RECEIVED | 029 |
| 04/07/2006 | FAXX | I | FAX RECEIVED | 028 |
| 04/07/2006 | FAXX | I | FAX RECEIVED | 027 |
| 02/21/2006 | MAIL | I | PAPER RECEIVED | 026 |
| 02/17/2006 | FAXX | I | FAX RECEIVED | 025 |
| 02/17/2006 | FAXX | I | FAX RECEIVED | 024 |
| 02/15/2006 | MAIL | I | PAPER RECEIVED | 023 |
| 02/14/2006 | FAXX | I | FAX RECEIVED | 022 |
| 02/02/2006 | FAXX | O | FAX SENT | 021 |
| 02/02/2006 | FAXX | I | FAX RECEIVED | 020 |
| 01/25/2006 | PCRC | I | PETITION TO DIRECTOR RECEIVED | 019 |
| 01/31/2006 | MAIL | I | PAPER RECEIVED | 018 |
| 01/30/2006 | FAXX | I | FAX RECEIVED | 017 |
| 01/25/2006 | FAXX | I | FAX RECEIVED | 016 |
| 12/14/2005 | MAIL | I | PAPER RECEIVED | 015 |
| 01/29/2004 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 014 |
| 07/30/1997 | ABND | Z | ABANDONMENT DELETED BY TTAB | 013 |
| 07/30/1997 | CCCN | T | COUNTERCLAIM CANC. NO. 999999 | 012 |
| 07/30/1997 | ABND | Z | ABANDONMENT DELETED BY TTAB | 011 |
| 06/18/1996 | RNL1 | Q | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 010 |
| 02/10/1993 | 9.AF | I | REGISTERED - SEC. 9 FILED/CHECK RECORD FOR SEC. 8 | 009 |
| 04/17/1996 | CANT | T | CANCELLATION TERMINATED NO. 999999 | 008 |
| 04/17/1996 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 007 |
| 01/18/1996 | 9.AF | I | REGISTERED - SEC. 9 FILED/CHECK RECORD FOR SEC. 8 | 006 |
| 10/19/1995 | CAND | T | CANCELLATION DISMISSED NO. 999999 | 005 |

| 08/15/1995 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 004 |
| 08/15/1995 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 003 |
| 07/19/1994 | PETC | T | CANCELLATION INSTITUTED NO. 999999 | 002 |
| 04/12/1982 | 8.OK | O | REGISTERED - SEC. 8 (6-YR) ACCEPTED | 001 |

## CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | HERBERT F. SCHWARTZ |
| CORRESPONDENCE ADDRESS | Herbert Schwartz<br>Fish & Neave IP Group, Ropes & Gray LLP<br>1211 Avenue of the Americas<br>NEW YORK, NY 10036 |
| DOMESTIC REPRESENTATIVE | ROPES & GRAY |

## PRIOR OWNER INFORMATION

| PARTY TYPE | 41-SUBSEQUENT OWNER AFTER REGISTRATION |
| NAME | HAVANA CLUB HOLDING, S.A. |
| ADDRESS | 6 RUE HEINE<br>L-1720, |
| ENTITY | 11-COMPANY |
| CITIZENSHIP | Luxembourg |
| PARTY TYPE | 30-ORIGINAL REGISTRANT |
| NAME | EMPRESA CUBANA EXPORTADORA DE ALIMENTOSY PRODUCTOS VARIOS |
| ADDRESS | 55, 23RD ST.<br>VEDADO HAVANA, |
| ENTITY | 11-COMPANY |
| CITIZENSHIP | Cuba |





### UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF THE GENERAL COUNSEL

OFFICE OF THE SOLICITOR

September 3, 2009

**VIA INTERNATIONAL MAIL**

Empresa Cubana Exportadora de Alimentos y Productos Varios
d/b/a Cuba Export
Calle 23, N. 55, 8 VO.
Piso Vedado
Cuidad De La Habana
10400 CUBA

      Re:    *Hausler v. The Republic of Cuba, et. al.*
              Case No. 02-12475 CA 09, (11th Judicial Circuit, Miami-Dade County, FL)

Dear Sir or Madam:

        The Director of the United States Patent and Trademark Office ("USPTO") has received the following documents in connection with this action:

      1.  Plaintiff In Execution/Judgment Creditor's Motion For Proceedings Supplementary To Execution And Impleader, and Spanish translation of same, and

      2.  Order For Proceedings Supplementary To Execution And Impleader, and Spanish translation of same.

        The certificates of service indicate that these documents were already forwarded to the registrant Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cuba Export in Registration No. 1031651 for the mark HAVANA CLUB.  The certificates of service also indicate that a copy was sent to the following correspondent of record with the USPTO for the registration:  Herbert Schwartz, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

        A copy of this letter will be placed in the subject registration file.

Litigation Address: Office of the Solicitor, P.O. Box 15667, Arlington, Virginia 22215

For all other correspondence:
P.O. Box 1450, Alexandria, Virginia 22313-1450 – www.uspto.gov

**A432**

Page 2

Very Truly Yours,

Christina J. Hieber/kab

Christina J. Hieber
Associate Solicitor
Phone: 571-272-9035
Fax: 571-273-0373

CJH/kab

cc:   Herbert Schwartz, Esq.
      Ropes & Gray LLP
      1211 Avenue of the Americas
      New York, NY 10036

      Roberto Martinez, Esq.
      Colson Hicks Eidson
      255 Aragon Avenue
      2nd Floor
      Coral Gables, FL 33104-5008

**D E B E V O I S E   &   P L I M P T O N   LLP**

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
Fax  212 909 6836
www.debevoise.com

May 16, 2012

<u>BY EXPRESS MAIL</u>

Ms. Deborah Cohn
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

Re:   **Trademark Registration of Empresa Cubana Exportadora de Alimentos y
         Productos Varios
         Registration Number: 1,031,651
         Registered: January 27, 1976
         Mark: HAVANA CLUB
         Petition Filed: October 5, 2006**

Dear Ms. Cohn:

       We now represent Empresa Cubana Exportadora de Alimentos y Productos
Varios ("Cubaexport") in this matter.

       We will be submitting a response to your Office's letters of December 6, 2006,
and May 29, 2009, in the above-captioned matter by no later than June 13, 2012.  We
expect that, at that time, we will supplement Cubaexport's October 5, 2006 Petition to the
Director.

       Please do not hesitate to contact me if you have any questions.

                                        Very truly yours,

                                        *David H. Bernstein /cm*

                                        David H. Bernstein

cc:    Vincent N. Palladino, Esq.

**05-17-2012**

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #72

23663259v1

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**David H. Bernstein**
Partner
Tel  212 909 6696
Fax  212 521 7696
dhbernstein@debevoise.com

June 8, 2012

<u>BY EXPRESS MAIL</u>

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

06-11-2012

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #72

Re:   **Trademark Registration of Empresa Cubana Exportadora
de Alimentos y Productos Varios
Registration Number: 1,031,651
Registered: January 27, 1976
Mark: HAVANA CLUB
Petition Filed: October 5, 2006**

Dear Ms. Cohn:

As noted in my letter of May 16, 2012, we now represent Empresa Cubana
Exportadora de Alimentos y Productos Varios ("Cubaexport") in connection with the
above-referenced Petition to the Director (the "Petition").  We write in response to the
USPTO's letters of December 6, 2006 and May 29, 2009, and to supplement
Cubaexport's Petition relating to Cubaexport's HAVANA CLUB trademark registration.
For the reasons stated below, the USPTO may not cancel the HAVANA CLUB
trademark registration; rather, the Cuban Assets Control Regulations ("CACR"), 31
C.F.R. Part 515, require that Cubaexport's HAVANA CLUB trademark registration
remain frozen while the embargo of Cuba is in place.

As you may recall, by letter dated July 28, 2006, the Treasury Department's
Office of Foreign Assets Control ("OFAC") determined that no general or specific
license applied to transactions related to Cubaexport's trademark registration, and that a
new specific license for transactions related to the registration would be denied.  By
office action dated August 3, 2006, the Post-Registration Division of the USPTO
declared Cubaexport's registration "cancelled/expired" because, based on OFAC's view,
the Office could not accept Cubaexport's payment of the renewal fee.  Cubaexport filed a

New York • Washington, D.C • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

Ms. Deborah Cohn                              2                              June 8, 2012

timely Petition to the Director on October 5, 2006 challenging that office action, and filed a civil action in U.S. District Court for the District of Columbia challenging OFAC's determination. The Petition was suspended pending the outcome of the litigation.

On March 30, 2009, the District Court granted summary judgment in favor of OFAC. On March 29, 2011, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the District Court's judgment. Cubaexport filed a timely petition for rehearing, which the Court of Appeals denied on August 31, 2011, followed by a timely petition for certiorari, which the Supreme Court denied on May 14, 2012. *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 606 F. Supp. 2d 59 (D.D.C. 2009), *aff'd*, 638 F.3d 794 (D.C. Cir. 2011), *cert. denied*, No. 11-945, 2012 WL 297171 (U.S. May 14, 2012) (the "*Cubaexport* litigation").

As explained below, notwithstanding the conclusion of the *Cubaexport* litigation, the USPTO may not cancel the HAVANA CLUB registration because such cancellation would be a "transaction" in, and "transfer" of, "property" in which a "Cuban national" has an interest. OFAC regulations, and the decisions in the *Cubaexport* litigation, all confirm that no general license authorizes such a transaction, and OFAC has not issued any specific license authorizing any such transaction.

Cubaexport, the owner of Registration No. 1,031,651, is a corporation organized under the laws of the Republic of Cuba and is therefore a "Cuban national." 31 C.F.R. § 515.302. A trademark registration is "property," *id.* § 515.311, and because Cubaexport has an interest in the property in question, that property is blocked unless a general or specific license applies. 31 C.F.R. § 515.201(b). The courts in the *Cubaexport* litigation have upheld OFAC's determination that the general license in 31 C.F.R. 515.527(a)(1) does not apply to Cubaexport's HAVANA CLUB trademark registration, and that no specific license applies to a transaction involving the HAVANA CLUB registration.

Because the registration is blocked property, any "transfer" of the property in which a Cuban national has an interest is prohibited. 31 C.F.R. § 515.201(b)(1). Specifically, 31 C.F.R. § 515.201(b) provides:

> All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury … if such transactions involve property in which … any national [of Cuba], has at any time on or since [July 9, 1963] had any interest of any nature whatsoever, direct or indirect:
>
> (1) All … transfers … of, any property … by any person subject to the jurisdiction of the United States…; and

23663300v6

Ms. Deborah Cohn                    3                    June 8, 2012

(2) All transfers outside the United States with regard to
any property or property interest subject to the jurisdiction
of the United States.

The Court of Appeals held in the *Cubaexport* litigation, and OFAC agreed, that the
CACR blocks not only the payment of the renewal fee, but also the renewal itself. *See*
638 F.3d at 797-98; Brief for the Respondents in Opposition, at 7, No. 11-945 (U.S. April
2, 2012).  That is because the renewal itself would be a "transfer" of property, regardless
of whether the renewal fee is paid.

That same reasoning means that the registration also cannot be "canceled" or
"expired."  That is because, under the CACR, canceling the registration or recording it as
expired would also be a "transfer" of property that cannot take place without an OFAC
license.  "Transfer" is broadly defined as

any actual or purported act or transaction … the purpose,
intent or effect of which is to create, *surrender, release*,
transfer or *alter*, directly or indirectly, any right, remedy,
power, privilege, or interest with respect to any property
and without limitation upon the foregoing shall include …
the issuance, docketing, or the levy of or under any
judgment, decree, attachment, execution or other judicial or
*administrative process or order*….

31 C.F.R. § 515.310 (emphasis added).  In other words, an administrative agency action
that terminates a Cuban national's property right—no less than an action that creates or
extends that right—constitutes a "transfer" that is blocked by the CACR.  Thus, to the
same extent that USPTO cannot renew Cubaexport's registration, it also cannot cancel
the registration or declare it expired.

The fact that the USPTO declares registrations expired upon the passage of time,
but requires submission of an application and payment of a fee to record a renewal, is of
no moment under the CACR.  The CACR make clear that even a transfer by operation of
law cannot take place without a general or specific license. *See, e.g.,* 31 C.F.R.
§ 515.525(b).  For example, the U.S. Court of Appeals for the Second Circuit held in the
COHIBA case that a Cuban-owned trademark cannot acquire "famous mark" status in the
United States without an OFAC license. *Empresa Cubana del Tabaco v. Culbro Corp.*,
399 F.3d 462, 474-75 (2d Cir. 2005), *cert. denied sub nom. Empresa Cubana del Tabaco
v. General Cigar Co.*, 547 U.S. 1205 (2006).  The Second Circuit held that giving effect
to the "famous mark" status would constitute a prohibited "transfer," because the
provisions of the CACR make clear that the CACR applies not only to voluntary transfers
but also to transfers by operation of law, and that a transfer involving a party in Cuba is a
transfer outside the United States with regard to property subject to the jurisdiction of the

23863300v6

Ms. Deborah Cohn                    4                    June 8, 2012

United States. *Id.* In an amicus brief, the U.S. government made the additional argument (which the Second Circuit did not reach) that the District Court's order recognizing the mark as famous would be a transfer by a person (the District Judge) who is subject to the jurisdiction of the United States. *See id.* at 475 n.5. In a further amicus brief to the Supreme Court, the U.S. government also endorsed the view that the CACR prohibit transfers by operation of law. *See* Brief for the United States as Amicus Curiae, at 8, No. 05-417 (May 19, 2006).

By exactly the same reasoning, the cancellation of Cubaexport's trademark, or the recognition of the mark as expired by the USPTO, would also constitute a prohibited transfer. The definition of "transfer" includes not only an act or transaction to "create" a property right but also an act or transaction to "surrender, release ... or alter" a property right. 31 C.F.R. § 515.310. It explicitly includes "administrative" as well as "judicial" orders. *Id.* And the fact that the transfer occurs by action of a government agency or by operation of law, upon expiration of the term of the trademark registration, does not take it outside the scope of the CACR. *See Empresa Cubana del Tabaco*, 399 F.3d at 474-75.

In view of the developments that have occurred since 2006, particularly the decisions of the courts in the *Cubaexport* litigation, it has now been established that neither the general license in 31 C.F.R. § 515.527(a) nor any specific license authorizes transactions related to the HAVANA CLUB registration. Thus, it is clear that the Post-Registration Division's office action dated August 3, 2006, changing the HAVANA CLUB registration's status to "cancelled/expired" was not authorized by any general or specific license under the CACR. As an unlicensed "transfer" of property in which a Cuban national has an interest, the office action is "null and void" by the terms of the CACR *Id.* § 515.203(b). As a result of these provisions of the CACR and the courts' decisions in the *Cubaexport* litigation, Cubaexport's registration remains frozen in its previously existing state—neither renewed nor canceled nor expired—for the duration of the U.S. embargo of Cuba in the absence of an applicable general or specific license from OFAC.

For these reasons, Cubaexport requests that either (1) the Petition be granted to the extent of setting aside the August 3, 2006 office action, or (2) the Petition remain suspended as long as Cubaexport's HAVANA CLUB trademark registration remains blocked under the CACR. Please do not hesitate to contact me if you have any questions concerning this letter or Cubaexport's Petition.

Respectfully submitted,

David H. Bernstein

cc:    Vincent N. Palladino, Esq.

23663300v6

D E B E V O I S E   &   P L I M P T O N   LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**Carl Micarelli**
Counsel
Tel  212 909 6813
Fax  212 521 7813
cmicarelli@debevoise.com

June 22, 2012

<u>BY EXPRESS MAIL</u>

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

Re:     **Trademark Registration of**
        **Empresa Cubana Exportadora**
        **de Alimentos y Productos Varios**
        **Registration Number: 1,031,651**
        **Mark: HAVANA CLUB & Design**
        **Registered: January 27, 1976**
        **Petition Filed: October 5, 2006**
        **Petition Supplemented: June 8, 2012**

Dear Ms. Cohn:

        Enclosed is a copy of a power of attorney executed by Cubaexport, appointing
David H. Bernstein and me as its attorneys in the above-captioned matter.

                        Respectfully submitted,

                        *Carl Micarelli*

                        Carl Micarelli

cc:     Vincent N. Palladino, Esq.

Enclosure

06-25-2012

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

23690184v1

New York  •  Washington, D.C.  •  London  •  Paris  •  Frankfurt  •  Moscow  •  Hong Kong  •  Shanghai

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
ON PETITION TO THE DIRECTOR

In the Matter of
Registration No.            : 1,031,651
Mark                        : HAVANA CLUB & Design
Mark Registered             : January 27, 1976
Petition Filed              : October 5, 2006
Petition Supplemented: June 8, 2012
Petitioner                  : Empresa Cubana Exportadora
                              de Alimentos y Productos Varios

To:   Commissioner for Trademarks
      P.O. Box 1451
      Alexandria , VA 22313-1451

### REVOCATION OF PREVIOUS POWER OF ATTORNEY; APPOINTMENT OF NEW ATTORNEYS

Petitioner hereby revokes all previous powers of attorney filed in connection with the

above-referenced Registration and Petition and hereby appoints David H. Bernstein, a member of

the Bar of the State of New York, and Carl Micarelli, a member of the Bar of the State of New

York, with offices at Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York

10022, (212) 909-6000, as its attorneys, with full power of substitution and revocation, to

prosecute the above-referenced Petition and transact all business in the Patent and Trademark

Office in connection with the above-referenced Registration and Petition.

Empresa Cubana Exportadora
de Alimentos y Productos Varios

By: _____
    Name: Carolina Gilda Prieto Serra
    Title: Directora General

Dated: June 18, 2012

CUBAEXPORT

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

IOI PARK AVENUE

NEW YORK, NEW YORK IOI78

(212) 808-7800

WASHINGTON, DC

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7992

EMAIL: wgolden@kelleydrye.com

August 6, 2012

**VIA FACSIMILE AND EXPRESS MAIL**

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
PO Box 1451
Alexandria, Virginia  22313-1451

08-07-2012

U.S. Patent & TMOFc/TM Mail Rcpt Dt. #72

Re:   Reg. No. 1,031,651

Dear Commissioner Cohn:

This letter is written on behalf of Bacardi & Company Limited ("Bacardi") concerning the letter, dated June 8, 2012, by the new attorneys for Empresa Cubana Exportadora De Alimentos y Productos Varios ("Cubaexport") supposedly supplementing Cubaexport's October 5, 2006 Petition (the "2006 Petition").  Cubaexport's June 8th letter asks the USPTO to somehow retroactively freeze the Cubaexport Registration until the Cuban trade embargo is lifted. Cubaexport's convoluted rationale, which makes no sense, appears to be that the PTO needs an OFAC license to record as cancelled a registration that has already expired by operation of law.

Bacardi, which has been selling HAVANA CLUB rum in the United States for years, acquired the U.S. rights to the HAVANA CLUB trademark and related goodwill from Jose Arechabala, S.A. ("JASA"), a family-owned Cuban company.  Cubaexport is an arm of the Cuban government that in 1960 seized JASA's rum distillery, trademarks, and other assets without payment of any compensation.  Bacardi owns an application to register the trademark HAVANA CLUB for "rum" that has been suspended since 1994 awaiting cancellation of U.S. Trademark Registration No. 1,031,651 of HAVANA CLUB & Design, which the United States Patent and Trademark Office ("USPTO") transferred to Cubaexport's name ("Cubaexport Registration").

Since at least as early as 1993, Cubaexport has tried to unlawfully bypass or otherwise evade the strictures of the Cuban Assets Control Regulations ("CACRs") implementing the embargo on trade with Cuba imposed by President Kennedy in 1963.  The Cubaexport Registration (assuming, for argument's sake, that it was still extant) expired on July 27, 2006, the

NY01/MARCM/1554581.20

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
August 6, 2012
Page Two

statutory deadline by which a completed renewal application had to be filed.  The Office of
Foreign Assets Control ("OFAC") on July 24, 2006, denied Cubaexport's application for a
specific OFAC license retroactively authorizing the renewal of the Cubaexport Registration.  The
Post Registration Division, accordingly, issued an Office Action, dated August 3, 2006 (the
"August 3rd Office Action"), confirming the PTO's earlier advice to Cubaexport that a specific
OFAC license was necessary to authorize renewal.  The August 3rd Office Action stated:[1]

> Because the specific license is necessary for authorizing payment
> of the required fee, and that license has been denied, the required
> fee for filing the Section 8 and 9 combined filing has not been
> submitted; accordingly the registration will be cancelled/expired.

The 2006 Petition asked the Commissioner to reverse the August 3rd Office Action.
Cubaexport's 2006 Petition was filed over 60 days after the expiration of the grace period for
renewal of the Cubaexport Registration.  Its apparent purpose was to delay the PTO from
performing the ministerial act of cancelling that registration, before Cubaexport had its day in
court challenging OFAC's denial of a specific license authorizing the renewal.[2]  In its
submissions to the PTO and OFAC leading up to the *Cubaexport* litigation and to the court
during the litigation, Cubaexport repeatedly argued that the consequence of OFAC's refusal to

---

[1]      The PTO's determination that the Cubaexport Registration had expired was mandated by 37
C.F.R. § 515.527(a)(2), which unambiguously states:

> No transaction or payment is authorized or approved pursuant to paragraph (a)(1)
> of this section with respect to a mark, trade name, or commercial name that is the
> same as or substantially similar to a mark, trade name, or commercial name that
> was used in connection with a business or assets that were confiscated, as that
> term is defined in §515.336, unless the original owner of the mark, trade name, or
> commercial name, or the bona fide successor-in-interest has expressly consented.

[2]      Cubaexport and Pernod Ricard, S.A., its joint venture partner in the production and
distribution outside the United States of an ersatz version of HAVANA CLUB rum, have,
for nearly two decades, doggedly, but entirely without success, attempted to convince
U.S. courts and federal agencies to recognize the claim to rights in the U.S. HAVANA
CLUB trademark concocted by Cubaexport.  *Havana Club Holding S.A. v. Galleon S.A.,*
961 F. Supp. 498 (S.D.N.Y. 1997) (OFAC agency action held unreviewable); 974 F.
Supp. 302 (S.D.N.Y. 1997) (partial summary judgment granted to Bacardi rejecting
plaintiff's claim of ownership of the Cubaexport Registration); 49 U.S.P.Q. 2d 1296
(motion to dismiss counterclaims granted in part), 62 F.Supp.2d 1085 (S.D.N.Y. 1999)
(judgment for Bacardi after trial), *aff'd,* 203 F.3d 116 (2d Cir. 2000) *cert. den.,* 531 U.S.
918 (2000).

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
August 6, 2012
Page Three

retroactively authorize payment of the renewal fee was the cancellation of the Cubaexport Registration.[3]

Cubaexport has had its day in court and lost. *Empresa Cubana Exportadora De Alimentos Y Productos Varios v. Dep't of Treasury*, 606 F.Supp.2d 59 (D.D.C. 2009) (rejecting challenge to OFAC's denial of specific license), *aff'd* 638 F.3d 794 (D.C. Cir. 2011), *cert. den.* ___ U.S. ___ (May 14, 2012) ("*Cubaexport*"). The PTO has no authority to extend the July 27, 2006 statutory renewal deadline. *See, e.g., In re Holland American Wafer Co.*, 737 F.2d 1015, 1018 (Fed. Cir. 1984) ("Timeliness set by statute is not a minor technical defect which can be waived by the Commissioner"); *Checkers Drive-In Restaurants, Inc. v. Comm'r of Pats. & Trademarks*, 51 F.3d 1078, 1085 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 866 (1995) ("Commissioner had no discretion to do other than cancel Checkers's service mark registration" when complete renewal was not timely filed); TMEP § 1606.03 ("The director has no authority to waive the deadline for filing a proper § 9 renewal application.").

No authority is cited in support of the relief requested or its confused rationale for that relief, because no such authority exists. Granting Cubaexport's requested relief would require the USPTO to violate federal law and defy the decisions of OFAC and the federal courts upholding OFAC's refusal to authorize the renewal transaction. *See e.g., Cubaexport, supra; see also Empresa Cubana Del Tabaco v. Culbro Corp.*, 399 F.3d 462, 476 (2d Cir. 2005) (OFAC specific license allowing its attorneys to pursue judicial relief did not authorize transactions prohibited by CACR's). The sole discernible purpose of the June 8th letter is, once again, to delay resolution of the litigation over the HAVANA CLUB mark, which Judge Lambeth noted "has now traversed two federal circuits, two federal agencies and two decades." *Cubaexport*, 606 F.Supp.2d at 63. Now that the judgment upholding OFAC's denial of Cubaexport's application for a specific license is final, the PTO is obligated to deny the 2006 Petition and cancel the Cubaexport Registration.

Bacardi's interest in being heard on this matter is confirmed by a cursory perusal of the various actions initiated by Cubaexport and its affiliates relating to the HAVANA CLUB Registration, which are cited, in part, above. Furthermore, an action brought by Bacardi seeking review *de novo* of the TTAB's decision excusing Cubaexport's failure to file the first renewal of the Cubaexport Registration in 1996 is pending in federal court in Washington, D.C., *Bacardi & Co. Ltd. v. Empresa Cubana Exportadora de Alimentos y Productos Varias*, 1:04-CV-00519 (EGS) (D.D.C.), and has been suspended. The cancellation by the USPTO of the Cubaexport Registration, as is required by law, should moot the issue before the District Court of whether the earlier renewal was unlawful.

---

[3]    In a letter from the Acting Director of OFAC dated April 6, 2006, responding to a December 13, 2005 Cubaexport letter, OFAC summarized one of Cubaexport's principal arguments as being that "failure to pay the [renewal] fee will result in the cancellation of the [Cubaexport R]egistration."

KELLEY DRYE & WARREN LLP

Commissioner for Trademarks
August 6, 2012
Page Four

In sum, Cubaexport's 2006 Petition should be denied without any further delay, and the Cubaexport Registration cancelled.

Respectfully submitted,

William R. Golden, Jr.



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

August 29, 2012

William R. Golden, Jr.
Kelley Drye & Warren LLP.
101 Park Ave.
New York, NY 10178

     Re:    U.S. Trademark Registration No. 1031651

Dear Mr. Golden:

This acknowledges receipt of your letter dated August 6, 2012 to Deborah Cohn, Commissioner for Trademarks of the United States Patent and Trademark Office (USPTO) concerning a pending petition to the Director of the USPTO for the above identified trademark registration filed pursuant to Trademark Rule 2.146.  37 C.F.R. §2.146.

The petition to the Director concerning this registration is an *ex parte* matter.  Neither the Trademark Act nor the Trademark Rules of Practice provide for a third party to intervene in an *ex parte* matter. Therefore, the Director will not consider the arguments made or relief requested in this letter because your client is a third party whose opinion cannot be considered in this *ex parte* matter.

The pending petition will be decided in due course.  All documents in the trademark registration record are publicly available in the USPTO's Trademark Status and Document Retrieval (TSDR) database (at www.uspto.gov, look for TSDR under "Popular Links") under the registration number. When the USPTO acts on the petition, the decision will appear in the TSDR database.

Sincerely,


*/Janis C. Long/*
Janis C. Long
Attorney Advisor
Office of the Deputy Commissioner
  for Trademark Examination Policy
janis.long@uspto.gov
(571) 272-9573 (work)
(571-273-8957 (fax)



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

AUG 3 1 2012

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

Dear Commissioner Cohn:

This letter is to apprise you of a request made to the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") on behalf of Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"). In a letter dated July 11, 2012, Cubaexport informed OFAC that the U.S. Patent and Trademark Office ("USPTO") is considering the status of the HAVANA CLUB trademark registration; enclosed a copy of a letter dated June 8, 2012, that Cubaexport had send to the USPTO explaining Cubaexport's views on the matter; and asked for the opportunity to discuss the matter with OFAC. OFAC has granted Cubaexport's request, and a meeting is scheduled to occur on September 28, 2012.

Cubaexport's letter suggests that certain USPTO actions regarding Cubaexport's registration would be prohibited unless licensed under the Cuban Assets Control Regulations, 31 C.F.R. part 515. In preparation for the meeting, we would very much appreciate if USPTO could provide us with more information regarding the actions at issue, including an explanation of any applicable statutory requirements, rules, and procedures. Thank you for your assistance.

Sincerely,

: *Barbara Hammele*

Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control

cc:    David H. Bernstein, Esq.
       Debevoise & Plimpton LLP
       (Counsel to Cubaexport)

**A446**
JA502



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

〔SEP 27 2012〕

Ms. Barbara C. Hammerle
Acting Director
Office of Foreign Assets Control
Department of the Treasury
Washington, DC 20220

Re:   Information Requested for OFAC's Meeting with Cubaexport
      U.S. Trademark Registration No. 1031651
      Mark: HAVANA CLUB and design

Dear Ms. Hammerle:

Thank you for your letter dated August 31, 2012, requesting information from the USPTO regarding the actions discussed in Cubaexport's June 11, 2012 letter to me.

Attached is a memorandum providing information regarding provisions of the Trademark Act, the Trademark Rules of Practice, and the Trademark Manual of Examining Procedure (TMEP) applicable to the USPTO actions at issue, as well as specific information about the USPTO actions and procedures regarding Cubaexport's trademark registration.

Please contact me if you have any questions or would like any additional information.

Sincerely,

Deborah S. Cohn
Commissioner for Trademarks


Encl:   Memorandum

cc:    David H. Bernstein, Esq.
       Debevoise & Plimpton LLP
       (Counsel to Cubaexport)

MEMORANDUM

To:    Office of Foreign Assets Control, U.S. Department of the Treasury

From:  United States Patent and Trademark Office

Date:  September 27, 2012

Re:    Information Regarding U.S. Trademark Registration Maintenance and Renewal
       Requirements and USPTO Record Keeping Procedures

---

I.     EXPLANATION OF TRADEMARK REGISTRATION MAINTENANCE AND
       RENEWAL REQUIREMENTS

       A.     REGISTRATION AND RENEWAL TERMS

Prior to November 16, 1989, federal trademark registrations were issued or renewed for a
twenty-year term. All registrations are now issued or renewed for a ten-year term pursuant to the
Trademark Law Revision Act of 1988, Pub. L. No. 100-667, 102 Stat. 3935. *See* 15 U.S.C.
§ 1058(a) ("Each registration shall remain in force for 10 years . . . .") and 15 U.S.C. § 1059(a)
("[E]ach registration may be renewed for periods of 10 years at the end of each successive 10-
year period following the date of registration . . . .").

       B.     REGISTRATION MAINTENANCE REQUIREMENTS

In order to maintain a federal registration, owners are required to file an acceptable affidavit or
declaration of use or excusable nonuse, "accompanied by the fee prescribed by the Director"
during the statutorily prescribed periods pursuant to section 8 of the Trademark Act, 15 U.S.C.
§ 1058 ("§8").[1] An acceptable §8 affidavit must be filed between the fifth and sixth year after
registration or during the six-month grace period immediately following ("6-Year §8 Affidavit").
15 U.S.C. § 1058(a)(1); 37 C.F.R. § 2.160. The owner of the registration also must file an
acceptable affidavit of use or excusable nonuse between the ninth and tenth year after
registration and each successive ten-year period following registration, or during the six-month
grace period immediately following ("10-Year §8 Affidavit"). 15 U.S.C. § 1058(a)(3); 37 C.F.R.
§ 2.160.

Both the 6-Year and 10-Year §8 Affidavits have the same legal requirements. The owner of the
registration must pay the prescribed fee for each class of goods and services and (i) if use of the
mark in commerce is being claimed, file an affidavit stating that the mark is in use in commerce,

---

[1] The holder of a registered extension of protection of an international registration to the United
States must periodically file affidavits of use or excusable nonuse pursuant to § 71 of the
Trademark Act, 15 U.S.C. § 1141(k).

1

set forth the goods and services with which the mark is in use in commerce, and include a specimen showing current use of the mark in commerce, or (ii) if excusable nonuse is being claimed, file an affidavit setting forth the goods and services with which the mark is not in use in commerce, and include a showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. 15 U.S.C. § 1058(b); 37 C.F.R. § 2.161; TMEP § 1604.05. The current fee for filing a §8 affidavit is $100 per class with an additional charge of $100 per class if filed during the grace period. 37 C.F.R. § 2.6.

If the 6-Year or 10-Year §8 Affidavit is not filed within the time periods set by statute, or if the §8 Affidavit is timely filed but unacceptable because it does not meet the statutory requirements, the registration is "canceled." 15 U.S.C. § 1058(a) ("[T]he registration of any mark shall be canceled by the Director for failure to comply with the provisions of subsection (b) of this section, upon expiration of the following time periods, as applicable . . . ."); 37 C.F.R. § 2.160.

### C.   RENEWAL REQUIREMENTS

Pursuant to section 9 of the Trademark Act, 15 U.S.C. § 1059 ("§9"), registrations may be renewed at the end of each successive ten-year period following the date of registration.[2] Renewal requires "payment of the prescribed fee" for each class of goods and services and the timely "filing of a verified application" signed by the registrant or the registrant's representative. 15 U.S.C. § 1059; 37 C.F.R. § 2.183. Renewal applications must be filed within the one-year period before the end of each successive ten-year period for which the registration was issued or renewed, or within the six-month grace period immediately following. 15 U.S.C. § 1059; 37 C.F.R. § 2.182. The current fee for renewing a registration is $400 per class with an additional charge of $100 per class if filed during the grace period.

If the renewal application is not filed within the time periods set by statute, or if it is timely filed but unacceptable because it does not meet the statutory requirements, *see* 15 U.S.C. § 1059(a), the registration "expires" as of the end of its term. 37 C.F.R. §§ 2.182-2.186.

### D.   COMBINED 10 YEAR SECTION 8 AND SECTION 9 RENEWAL FILINGS

Because the deadline for filing a §9 renewal application coincides with the deadline for filing the 10-Year §8 affidavit—both are due at the end of each successive ten-year period following the date of registration—registrants generally file a combined §8 declaration of use and/or excusable nonuse and a §9 application for renewal ("combined §8/9 filing"). The statutory requirements of maintenance and renewal, however, are distinct, as are the consequences of an untimely or unacceptable filing. As noted above, if the requirements of §8 are not met, the Director is required by that provision to cancel the registration as of the end of its term. If the requirements of §9 are not met, the registration expires as of the end of its term.

---

[2] Section 9 does not apply to Extensions of Protection of International Registrations to the United States. Renewals of international registrations must be made at the International Bureau of the World Intellectual Property Organization, in accordance with Article 7 of the Madrid Protocol. 37 C.F.R. § 7.41(a).

2

II.   USPTO RECORD KEEPING AND ACTIONS REGARDING MAINTENANCE AND
      RENEWAL OF TRADEMARK REGISTRATIONS

The Trademark Act requires the Director of the United States Patent and Trademark Office
("USPTO") to maintain a public record of all registered trademarks. 15 U.S.C. § 1057(a) ("[A]
record [of issued registrations] shall be kept in the United States Patent and Trademark Office").
Previously kept in paper files, the USPTO's registration records are now electronic and available
for searching on the USPTO's website. When the status of a registration changes, the USPTO
updates its electronic records to indicate the status change.

If no §9 renewal application is filed before the end of the grace period, the registration expires
and the USPTO records are updated to indicate that the registration is expired. *See* 37 C.F.R.
§ 2.182; TMEP § 1611. Likewise, if no §8 affidavit is filed before the end of the grace period,
the registration is canceled, and the USPTO records are updated to indicate that the registration is
canceled. *See* 37 C.F.R. § 2.160; TMEP § 1611.

When the USPTO updates the registration records to accurately reflect their legal status, the
USPTO performs a ministerial record-keeping function. A registration that has been renewed
and maintained remains designated as "live" in the USPTO's records, while a registration that
has expired under §9 and/or been canceled under §8 is designated as "dead." Specifically, when
a registration cancels/expires for failure to meet both the 10-year statutory maintenance and
renewal requirements, the status field in the registration record is updated to show
CANCELLED, the prosecution history is updated to show CANCELLED SEC. 8 (10-
YR)/EXPIRED SECTION 9, and the "Live/Dead Indicator" field is updated to indicate that the
registration is "DEAD." The "Cancellation Date" field shown in the USPTO's records indicates
the date the records were updated, but the registration's actual cancellation/expiration date is the
end of the registration term as set by statute. The USPTO's updating of its registration records in
this way does not alter the registration's legal status. The legal status of the registration changes
because the term of the registration or renewal ends without the owner meeting the requirements
of §8 and/or §9.[3]

If a §8 affidavit and/or §9 renewal is filed, the prosecution history of the registration in the
electronic records of the USPTO is updated to show the filing of the document(s). By statute,
the USPTO Director must notify the registration owner if the §8 affidavit and/or §9 renewal are
refused and the reasons for refusal. 15 U.S.C. § 1058(e) and § 1059(b); 37 C.F.R. §§ 2.163 and
2.184. In the case of a combined §8/9 filing, the USPTO issues a single Office action stating the
reason(s) for refusal. If the deficiency identified in the Office action is not corrected or the
registrant fails to respond to the Office action, and no time remains in the grace period in which
to file a new document, the registration simultaneously will be both canceled for failure to

---

[3] Similarly, the USPTO updates registration records to reflect changes to their status when
ordered to do so by a court pursuant to 15 U.S.C. § 1119, which instructs that the Director "shall
make appropriate entry upon the records of the Patent and Trademark Office." When the
USPTO updates its records pursuant to a § 1119 order, the date indicated in the records is not the
date of the court order, but rather the date the records were updated by the USPTO.

3

comply with the requirements of §8 and it will expire under §9.  The owner of the registration may file a petition to the Director for review of the action under 37 C.F.R. §§ 2.146(a)(2) and 2.165(b).  The decision on a petition under 37 C.F.R. § 2.146 is the final action of the USPTO.

The Director has no discretion to waive the requirements of §§8 and 9.[4]  Thus, if a §8 affidavit, §9 renewal, or combined §8/9 filing is not accompanied by the prescribed fees, the Director has no discretion but to issue a refusal stating that the registration will be canceled and/or has expired.

III.    THE "HAVANA CLUB" REGISTRATION (Reg. No. 1031651)

Pursuant to OFAC's regulations in effect at the time, which permitted registration, maintenance, and renewal fees to be paid pursuant to the general license provision of the Cuban Assets Control Regulations (CACR), the original registration for HAVANA CLUB was issued on January 27, 1976 and remained in force until 1996 for an initial term of twenty years.  A 6-Year §8 Affidavit of excusable nonuse was filed and the required fees paid on January 13, 1982, and subsequently accepted on April 12, 1982.  The first renewal application was filed and required fees paid on January 18, 1996 and granted on June 18, 1996, for a period of ten years, i.e., until January 27, 2006.

At the time the second renewal application was filed on December 14, 2005 as a combined §8/9 filing, OFAC's regulations had changed as a result of the 1998 enactment of Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681, which eliminated the ability of Cuban companies to rely on the general license provisions to register or renew certain trademarks, including the HAVANA CLUB registration.  The combined filing included authorization to charge the required fees to the USPTO deposit account of Ropes and Gray LLP, attorney for Cubaexport at the time of the combined §8/9 filing.  Ropes and Gray indicated in the cover letter accompanying the combined filing that authorization to pay the fee was given pursuant to OFAC License No. CU-74488, issued on March 4, 2005.

---

[4] *See Checkers Drive-In Restaurants, Inc. v. Comm'r of Patents and Trademarks.*, 51 F.3d 1078, 1085, 34 USPQ2d 1574, 1581 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 866 (1995) ("[I]n establishing cancellation as the penalty for failure to file the required affidavit [under 15 U.S.C. §1058], Congress made no exception for the innocent or the negligent.  Thus, the Commissioner had no discretion to do other than cancel Checkers's service mark registration in this case"); *In re Mother Tucker's Food Experience (Canada) Inc.*, 925 F.2d 1402, 1405, 17 USPQ2d 1795, 1798 (Fed. Cir. 1991) ("The history of Section 8 supports the view that compliance with the statutory requirements is mandatory" and "[i]t was not within the Commissioner's discretionary authority to waive [the] requirement" to show use in commerce.); *In re Culligan Int'l Co.*, 915 F.2d 680, 16 USPQ2d 1234 (Fed. Cir. 1990) (affirming that an applicant's failure to pay the late renewal fee under Section 9 during the three month period allowed in the statute for late renewal applications "on payment of the additional fee", 15 U.S.C. § 1059(a), could not be waived by the Commissioner since it was an express requirement of the statute): *In re Holland American Wafer Co.*, 737 F.2d 1015, 1018, 222 USPQ 273, 275 (Fed. Cir. 1984) ("Timeliness set by statute is not a minor technical defect which can be waived by the Commissioner.").

4

Although Cubaexport's attorney had authorized payment of the fee from the law firm's deposit account, the USPTO was informed by OFAC in a letter dated April 6, 2006 that payment of the fee was not authorized under License No. CU-74488.  Because payment of the fee is required by statute and cannot be waived, the USPTO issued an Office action on July 21, 2006, notifying Cubaexport that the combined filing was refused because the fee had not been paid:

> "The combined filing included authorization to charge the fee to the deposit account of Ropes and Gray LLP, attorney for registrant.  As indicated in the cover letter accompanying the combined filing, this authorization was given pursuant to License No. CU-74488, issued by the Office of Foreign Assets Control ("OFAC") on March 4, 2005.  However, in a letter dated April 6, 2006 from the Department of the Treasury, the USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee.  Therefore, the required fee for the combined filing has not been paid.
>
> It is noted that in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration.  Registrant is required to notify the USPTO whether that specific license has been granted or denied."

The Office action provided Cubaexport six months to submit the required fees. 37 C.F.R. §§ 2.161(d)(1), 2.183(b).  On August 2, 2006, Cubaexport's attorney submitted a response to the Office action notifying the USPTO that OFAC declined to grant Cubaexport a specific license to pay the required fee and requested that the registration be renewed nonetheless.  In an Office action dated August 3, 2006, refusal of the combined filing was continued because the required fees were not paid:

> "The Sections 8 & 9 Combined filing submitted on December 14, 2005, cannot be accepted for the reasons set forth below.
>
> The Office has received your letter of August 1, 2006, indicating that the specific license necessary to authorize the required fee for filing the combined document has been denied.  Because the specific license is necessary for authorizing payment of the required fee, and that license has been denied, the required fee for filing the Sections 8 & 9 Combined filing has not been submitted; accordingly, the registration will be cancelled/expired.
>
> It is noted that your letter contains arguments in support of renewing the subject registration.  You may file a petition to the Director requesting review of this decision.  The petition must be filed within six months from the mailing date of this letter and must be accompanied by a fee of $100.  37 C.F.R. §§2.6, 2.146(a)(2) and 2.176."

Cubaexport filed a petition to the Director on October 5, 2006 seeking review of the refusal to renew the registration.  Action on the petition was suspended on December 6, 2006 pending disposition of the federal court litigation that Cubaexport filed against Treasury/OFAC regarding OFAC's decision to refuse to grant the specific license for the renewal fee payment.  The petition

suspension order provided Cubaexport 30 days from the date of the final disposition of the litigation against OFAC to notify the USPTO.

In a decision issued on March 29, 2011, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the district court's ruling upholding OFAC's decision to deny Cubaexport's request for a specific license to pay the prescribed fee. *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794 (D.C. Cir. 2011). The appeals court decision held that: the 1998 law prohibited Cubaexport from renewing the registration when it sought to do so in 2006; OFAC is required to follow the 1998 law; authorization in the form of a specific license from OFAC to pay the prescribed fee was a necessary prerequisite to renewal of the registration; and OFAC's decision to deny such license was appropriate. The court's decision thus confirms that the fees required to maintain and renew the registration are not authorized to be paid. On May 14, 2012, the U.S. Supreme Court denied Cubaexport's petition for certiorari, and the appeals court decision became final.

Cubaexport filed a submission with the USPTO on June 11, 2012 notifying the USPTO of the final disposition of the litigation against OFAC and raising new arguments that the petition should be granted (or in the alternative, that the registration should remain frozen in its previously existing state for the duration of the Cuban embargo) because the USPTO's actions of refusing the combined maintenance and renewal filing for failure to pay the prescribed fees and of updating the USPTO's records to reflect the expired and canceled status of the registration would be prohibited under the CACR unless licensed by OFAC. Cubaexport thereafter contacted OFAC to request a meeting to discuss the issues raised in the June 11th letter to the USPTO. The USPTO will not act to decide the petition until OFAC has the opportunity to consider whether the USPTO actions at issue require a license.

6



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

NOV 3 0 2012

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

Re: U.S. Trademark Registration No. 1031651

Dear Commissioner Cohn:

Thank you for your letter dated September 27, 2012, providing information regarding provisions
of certain laws and procedures applicable to actions of the United States Patent and Trademark
Office ("USPTO"), as well as specific information about the USPTO actions and procedures
regarding a trademark registration of Empresa Cubana Exportadora de Alimentos y Productos
Varios ("Cubaexport").

As you know, in a letter dated July 11, 2012, Cubaexport informed the Office of Foreign Assets
Control ("OFAC") that the USPTO is considering the status of the HAVANA CLUB trademark
registration, and enclosed a copy of a letter dated June 8, 2012, that Cubaexport had sent to the
USPTO explaining Cubaexport's views on the matter. Cubaexport's letter suggests that certain
USPTO actions regarding Cubaexport's registration would be prohibited unless licensed under
the Cuban Assets Control Regulations, 31 C.F.R. part 515 ("CACR"). OFAC granted
Cubaexport's request for a meeting, which took place on September 28, 2012.

After careful consideration of the information in your letter dated September 27, 2012,
information provided to OFAC by Cubaexport, and other information available to OFAC, we
have determined that no license is required under the CACR for the USPTO actions at issue.

In particular, we understand that registrations may be renewed at the end of each successive ten-
year period following the date of registration. Renewal requires payment of a prescribed fee and
filing of a verified application within the one year period before the end of each successive ten-
year period for which the registration was issued or renewed, or within the 6-month grace period
immediately following. If the renewal application is not filed within the time periods set by
statute, or if timely filed but unacceptable because it does not meet the statutory requirements,
the registration expires as of the end of its term, and USPTO records are updated to indicate that
the registration is expired. When the USPTO updates its registration records to accurately reflect
a registration's legal status, it performs a ministerial record-keeping function. The USPTO's
updating of its registration records does not alter the registration's legal status. The legal status
of the registration changes because the term of the registration ends without the owner meeting
the statutory requirements for renewal.

Accordingly, it is our view that no authorization is required under the CACR either for the

NOV-30-2012  10:29     US TREASURY                    00000000    P.02

expiration of a blocked Cuban trademark registration or for the USPTO to update its records to reflect such an expiration.  Specifically, neither the expiration of the registration nor the USPTO's actions to update its records involves a "transfer" as defined in the CACR.  *See* 31 C.F.R. § 515.310.

We hope this information is useful to you.  Please do not hesitate to contact us if you have any questions regarding this response or the sanctions programs administered by OFAC.

Sincerely,

Adam J. Szubin
Director
Office of Foreign Assets Control

cc:    David H. Bernstein, Esq.
       Debevoise & Plimpton LLP
       (Counsel to Cubaexport)

PAGE 2/2 * RCVD AT 11/30/2012 9:33:46 AM [Eastern Standard Time] * SVR:W-PTOFAX-002/33 * DNIS:2738950 * CSID:00000000 * DURATION (mm-ss):00-46

TOTAL  P.02



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

NOV 3 0 2012

Ms. Deborah Cohn
Commissioner for Trademarks
United States Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

12-03-2012

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #23

Re: U.S. Trademark Registration No. 1031651

Dear Commissioner Cohn:

Thank you for your letter dated September 27, 2012, providing information regarding provisions
of certain laws and procedures applicable to actions of the United States Patent and Trademark
Office ("USPTO"), as well as specific information about the USPTO actions and procedures
regarding a trademark registration of Empresa Cubana Exportadora de Alimentos y Productos
Varios ("Cubaexport").

As you know, in a letter dated July 11, 2012, Cubaexport informed the Office of Foreign Assets
Control ("OFAC") that the USPTO is considering the status of the HAVANA CLUB trademark
registration, and enclosed a copy of a letter dated June 8, 2012, that Cubaexport had sent to the
USPTO explaining Cubaexport's views on the matter. Cubaexport's letter suggests that certain
USPTO actions regarding Cubaexport's registration would be prohibited unless licensed under
the Cuban Assets Control Regulations, 31 C.F.R. part 515 ("CACR"). OFAC granted
Cubaexport's request for a meeting, which took place on September 28, 2012.

After careful consideration of the information in your letter dated September 27, 2012,
information provided to OFAC by Cubaexport, and other information available to OFAC, we
have determined that no license is required under the CACR for the USPTO actions at issue.

In particular, we understand that registrations may be renewed at the end of each successive ten-
year period following the date of registration. Renewal requires payment of a prescribed fee and
filing of a verified application within the one year period before the end of each successive ten-
year period for which the registration was issued or renewed, or within the 6-month grace period
immediately following. If the renewal application is not filed within the time periods set by
statute, or if timely filed but unacceptable because it does not meet the statutory requirements,
the registration expires as of the end of its term, and USPTO records are updated to indicate that
the registration is expired. When the USPTO updates its registration records to accurately reflect
a registration's legal status, it performs a ministerial record-keeping function. The USPTO's
updating of its registration records does not alter the registration's legal status. The legal status
of the registration changes because the term of the registration ends without the owner meeting
the statutory requirements for renewal.

Accordingly, it is our view that no authorization is required under the CACR either for the

expiration of a blocked Cuban trademark registration or for the USPTO to update its records to reflect such an expiration. Specifically, neither the expiration of the registration nor the USPTO's actions to update its records involves a "transfer" as defined in the CACR. *See* 31 C.F.R. § 515.310.

We hope this information is useful to you. Please do not hesitate to contact us if you have any questions regarding this response or the sanctions programs administered by OFAC.

Sincerely,

Adam J. Szubin
Director
Office of Foreign Assets Control

cc:     David H. Bernstein, Esq.
        Debevoise & Plimpton LLP
        (Counsel to Cubaexport)

**Debevoise**
**& Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

January 12, 2016

Ms. Mary Boney Dennison
Commissioner for Trademarks
600 Dulany Street
Alexandria, Virginia 22314

Re:   2016 Renewal of HAVANA CLUB & Design (Reg. No. 1,031,651)

Dear Ms. Dennison:

We represent Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport") in connection with Registration No. 1,031,651. Enclosed is a combined declaration of excusable non-use and application for renewal of the registration for the 2016-2026 renewal period. Please charge Debevoise & Plimpton LLP's Deposit Account Number 501997 for the applicable fee. I am an authorized user of the account.

This transaction is authorized by an OFAC specific license, a copy of which is enclosed for your reference. We have written to you separately regarding Cubaexport's petition in connection with its renewal for the 2006-2016 renewal period.

Please do not hesitate to contact me if you have any questions or need any additional information.

Respectfully submitted,

David H. Bernstein

Enclosures

TRADEMARK PROCESS
RECEIVED

JAN 12 2016

US PATENT &
TRADEMARK OFFICE

01-12-2016
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

www.debevoise.com

*Received by Norvill Johnatt*
*Assistant to the Commissioner for Trade—*
*1/12/16*

## COMBINED DECLARATION OF EXCUSABLE NON-USE AND APPLICATION FOR RENEWAL OF REGISTRATION OF A MARK UNDER §§ 8 AND 9

**To the Commissioner of Trademarks:**

Registration No.      :   1,031,651

Registration Date   :   January 27, 1976

Mark                         :   HAVANA CLUB & Design

Registrant                 :   Empresa Cubana Exportadora de Alimentos y Productos Varios

International Class :   33

  The registrant identified above, having an address at Calle 23 No. 55, 8vo piso, Vedado, Ciudad de la Habana, CP 10400, Cuba, is filing this Combined Declaration of Excusable Non-Use and Application for Renewal of Registration of a Mark under Sections 8 and 9.  The registrant is making the excusable non-use claim identified in the declaration below in connection with all goods listed in the existing registration.  A fee payment for one class will be submitted with this declaration and application.

  The registrant appoints David H. Bernstein, of Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022, telephone (212) 909-6000, as its attorney to submit this declaration and application on behalf of the registrant, and to receive all correspondence and other documents in connection with the renewal of this registration.

### Declaration

  I, David H. Bernstein, declare as follows.  I am an attorney admitted to the practice of law in the State of New York, and I hold a power of attorney executed by the registrant identified above.  I am authorized to execute this declaration and application on behalf of the registrant. The registrant owns Registration No. 1,031,651, issued on January 27, 1976.  The mark is not

being used in commerce on any of the goods recited in the registration due solely to special circumstances, namely the embargo on trade with Cuba implemented by the Cuban Assets Control Regulations, 31 C.F.R. Part 515, which have been in force since 1963 and which prohibit the importation, distribution or sale in the United States of goods produced in Cuba.  Nonuse is not due to any intention to abandon the mark and, on information and belief, the registrant intends that the mark will be used in commerce as soon as practicable after the embargo is lifted.

The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true.

The registrant requests that the registration be renewed for the goods identified above.

Dated:  January 12, 2016

_____
David H. Bernstein

TRADEMARK PROCESS
RECEIVED

JAN 1 2 2016

US PATENT &
TRADEMARK OFFICE

2



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**                    License No. **CU-2015-323837-1**

## LICENSE

(Granted under the authority of one or more of the following: 50 U.S.C. App. 5(b), 22 U.S.C. § 2370(a),
22 U.S.C. §§ 6001 et seq., Proclamation 3447, and 31 C.F.R. Parts 501 and 515)

To:  **Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport**
**c/o Debevoise & Plimpton LLP**
**919 Third Avenue**
**New York, NY  10022**
**Attn: David H. Bernstein, Esq.**

1. Pursuant to your request dated **November 10, 2015** to the Office of Foreign Assets Control **(the "Application")**, the following transactions are hereby licensed:  **See Page 2.**

2. This license is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the condition, among others, that the Licensee comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury or his designees under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **the earlier of January 31, 2018 or the date of completion of the authorized transactions**, is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury.  If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury or his designees, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation (including reporting requirements) administered by the Office of Foreign Assets Control or another agency applicable to the transactions(s) herein licensed, nor does it release the Licensee or third parties from civil or criminal liability for violation of any law or regulation.

Issued on behalf of the Secretary of the Treasury:

TRADEMARK PROCESS
RECEIVED

JAN 12 2016

US PATENT &
TRADEMARK OFFICE

                              **OFFICE OF FOREIGN ASSETS CONTROL**

                              By _____          January 11, 2016
                                   **David J. Blackborow**                    **Date**
                                   **Assistant Director for Licensing**

[Attention is directed to, *inter alia*, 18 U.S.C. 1001,
50 U.S.C. App. 16, 31 C.F.R. 501.701 et seq. and 31 C.F.R. 515.701 et seq. for provisions relating to penalties.]

**License No. CU-2015-323837-1**                                      **Page 2 of 2**

**SECTION 1 – AUTHORIZATION:**  Subject to the conditions and limitations stated herein, **Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport** (the "Licensee") is hereby authorized to engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States Patent and Trademark Office (USPTO), including those related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein, as described in the Application.

**Authority:  31 C.F.R. § 515.801.**

**SECTION  2 – WARNINGS:  (a)** Any transfer of funds through the U.S. financial system pursuant to the authorization in **SECTION 1** above should reference the number of this License to avoid the blocking or rejection of the transfer.

**(b)** Except as authorized in **SECTION 1** above, nothing in this License authorizes any transaction otherwise prohibited by the Cuban Assets Control Regulations, 31 C.F.R. Part 515, or by any other laws and regulations administered by the Office of Foreign Assets Control.

**SECTION 3 – RECORDKEEPING AND REPORTING REQUIREMENTS:**  The Licensee shall keep a record of the transactions under this License.  Such records shall be made available for examination upon demand for at least five years from the date of each transaction.  *See* 31 C.F.R. §§ 501.601 and 501.602.

**SECTION 4 – PRECEDENTIAL EFFECT:**  The authorization contained in this License is limited to the facts and circumstances specific to the Application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Debevoise
&Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

January 12, 2016

Ms. Mary Boney Dennison
Commissioner for Trademarks
600 Dulany Street
Alexandria, Virginia 22314

Re:   **Deposit Account Information for December 13, 2005 Renewal Application
and October 4, 2006 Petition Regarding HAVANA CLUB & Design
(Reg. No. 1,031,651)**

Dear Ms. Dennison:

Enclosed is a letter supplementing our petition filed October 4, 2006, in regard to the
December 13, 2005 renewal application for the HAVANA CLUB trademark
registration held by Empresa Cubana Exportadora de Alimentos y Productos Varios
("Cubaexport").

We have been informed by Cubaexport's former counsel, Ropes & Gray LLP, that
the deposit account referenced in their prior correspondence with the USPTO is no
longer active.  Accordingly, to the extent that any fees tendered by Ropes & Gray in
connection with the 2005 renewal application or the 2006 petition remain to be
collected by USPTO, we request that the USPTO charge Debevoise & Plimpton
LLP's Deposit Account No. 501997.  I am an authorized user of that account.

Please let us know if you have any questions or concerns.

Respectfully submitted,

David H. Bernstein

Enclosure

TRADEMARK PROCESS
RECEIVED

JAN 12 2016

US PATENT &
TRADEMARK OFFICE

01-12-2016

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

www.debevoise.com

*Received by Nevill Jennett 1/12/16
Assistant to the Commissioner for
Trademarks*

January 12, 2016

Ms. Mary Boney Dennison
Commissioner for Trademarks
600 Dulany Street
Alexandria, Virginia 22314

Re:  **Petition Pursuant to 37 C.F.R. § 2.146(a)**
     **Petition Filed:**    **October 4, 2006**
     **Registration No.:**    **1,031,651**
     **Mark:**    **HAVANA CLUB & Design**
     **Registration Date:**    **January 27, 1976**
     **Petitioner:**    **Empresa Cubana Exportadora de**
                      **Alimentos y Productos Varios ("Cubaexport")**

Dear Ms. Dennison:

We represent Cubaexport in connection with the above-referenced Petition to the Director (the "Petition"). We write to supplement the Petition and our letter of June 8, 2012 addressed to your predecessor in reference to the Petition.

By way of background, on December 13, 2005, Cubaexport submitted a timely combined § 8 declaration and § 9 renewal application (the "Renewal Application") with respect to its HAVANA CLUB trademark registration. It simultaneously tendered payment of the fee from the deposit account of Ropes & Gray (who were then its attorneys). The U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") subsequently advised that no existing general or specific license applied to transactions related to the renewal and that a new specific license for transactions related to the registration would be denied. By office action dated August 3, 2006, the Post-Registration Division of the USPTO (the "Division") declared Cubaexport's registration "cancelled/expired" on the sole ground that OFAC had advised it that the USPTO could not accept Cubaexport's payment of the renewal fee. Cubaexport filed a timely Petition to the Director on October 5, 2006 challenging the Division's action pursuant to 37 C.F.R. § 2.146(a). That Petition remains pending.

OFAC has now granted Cubaexport a specific license, No. CU-2015-323837-1, authorizing all transactions necessary to renew and maintain the trademark, including any transactions related to Cubaexport's combined § 8 declaration and § 9 renewal as submitted in December 2005. A copy of the license is enclosed. (We are separately

Ms. Mary Boney Dennison                    2                    January 12, 2016

submitting a declaration and application for the renewal currently due on January 27, 2016.)

OFAC, which has been delegated licensing authority by the Secretary of the Treasury, has the authority to specifically license the renewal of the HAVANA CLUB trademark. *See* 31 C.F.R. §§ 501.801(b), 515.501; *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of the Treasury*, 638 F.3d 794, 802 (D.C. Cir. 2011). OFAC also has the authority to make its license apply retroactively. *See* 31 C.F.R. §§ 515.203(c), 515.502(a). Under the governing regulations,

> [A]n appropriate license or other authorization issued by or pursuant to the direction or authorization of the Secretary of the Treasury *before, during or after* a transfer shall validate such transfer or render it enforceable to the same extent as it would be valid or enforceable but for the provisions of [the Cuba embargo laws].

*Id.* § 515.203(c) (emphasis added). "Transfer" is defined broadly to include any act or transaction transferring or altering a right in property, *see id.* § 515.310, and it would include acceptance of the Renewal Application and the accompanying fee.

In light of these developments, the sole basis for the Division's prior refusal to accept Cubaexport's renewal has been removed. Cubaexport's submission of the Renewal Application on December 13, 2005 is now valid and effective as of that date. It follows that Cubaexport is entitled to the relief requested in the Petition, namely to set aside the Division's office action and to direct that the Renewal Application be accepted, effective as of the date it was submitted. Accordingly, Cubaexport respectfully requests that the Petition be granted and the Renewal Application accepted without further delay.

Please do not hesitate to contact me if you have any questions or need any additional information.

Respectfully submitted,

David H. Bernstein

Enclosure

TRADEMARK PROCESS
RECEIVED

JAN 12 2016

US PATENT &
TRADEMARK OFFICE



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**Cuban Assets Control Regulations**

License No. CU-2015-323837-1

### LICENSE

(Granted under the authority of one or more of the following: 50 U.S.C. App. 5(b), 22 U.S.C. § 2370(a),
22 U.S.C. §§ 6001 et seq., Proclamation 3447, and 31 C.F.R. Parts 501 and 515)

To:   **Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport**
**c/o Debevoise & Plimpton LLP**
**919 Third Avenue**
**New York, NY  10022**
**Attn: David H. Bernstein, Esq.**

1. Pursuant to your request dated **November 10, 2015** to the Office of Foreign Assets Control **(the "Application")**, the following transactions are hereby licensed:  **See Page 2.**

2. This license is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the condition, among others, that the Licensee comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury or his designees under the authority cited above and the terms of this license.

3. The Licensee shall furnish and make available for inspection any relevant information, records or reports requested by the Secretary of the Treasury or any duly authorized officer or agency of the Secretary.

4. This license expires on **the earlier of January 31, 2018 or the date of completion of the authorized transactions,** is not transferable, is subject to the provisions of Title 31, Parts 501 and 515 of the Code of Federal Regulations and any regulations and rulings issued pursuant thereto, and may be revoked or modified at any time at the discretion of the Secretary of the Treasury acting directly or through the agency through which the license was issued, or any other agency designated by the Secretary of the Treasury.  If this license was issued as a result of willful misrepresentation on the part of the applicant or his duly authorized agent, it may, in the discretion of the Secretary of the Treasury or his designees, be declared void from the date of its issuance, or from any other date.

5. This license does not excuse compliance with any law or regulation (including reporting requirements) administered by the Office of Foreign Assets Control or another agency applicable to the transactions(s) herein licensed, nor does it release the Licensee or third parties from civil or criminal liability for violation of any law or regulation.

Issued on behalf of the Secretary of the Treasury:

TRADEMARK PROCESS
RECEIVED

JAN 12 2016

US PATENT &
TRADEMARK OFFICE

OFFICE OF FOREIGN ASSETS CONTROL

By _____       January 11, 2016
   **David J. Blackborow**                           **Date**
   **Assistant Director for Licensing**

[Attention is directed to, *inter alia*, 18 U.S.C. 1001,
50 U.S.C. App. 16, 31 C.F.R. 501.701 et seq. and 31 C.F.R. 515.701 et seq. for provisions relating to penalties.]

**A466**
JA522

License No. CU-2015-323837-1                                    **Page 2 of 2**

**SECTION 1 – AUTHORIZATION:** Subject to the conditions and limitations stated herein, **Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport** (the "Licensee") is hereby authorized to engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States Patent and Trademark Office (USPTO), including those related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein, as described in the Application.

**Authority: 31 C.F.R. § 515.801.**

**SECTION 2 – WARNINGS:** **(a)** Any transfer of funds through the U.S. financial system pursuant to the authorization in **SECTION 1** above should reference the number of this License to avoid the blocking or rejection of the transfer.

**(b)** Except as authorized in **SECTION 1** above, nothing in this License authorizes any transaction otherwise prohibited by the Cuban Assets Control Regulations, 31 C.F.R. Part 515, or by any other laws and regulations administered by the Office of Foreign Assets Control.

**SECTION 3 – RECORDKEEPING AND REPORTING REQUIREMENTS:** The Licensee shall keep a record of the transactions under this License. Such records shall be made available for examination upon demand for at least five years from the date of each transaction. *See* 31 C.F.R. §§ 501.601 and 501.602.

**SECTION 4 – PRECEDENTIAL EFFECT:** The authorization contained in this License is limited to the facts and circumstances specific to the Application.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# UNITED STATES PATENT AND TRADEMARK OFFICE

**U. S. APPLICATION SERIAL NUMBER:** 73/023981

**U. S. REGISTRATION NUMBER:** 1,031,651

**CORRESPONDENCE ADDRESS:**

> David H. Bernstein
> Debevoise & Plimpton LLP
> 919 Third Avenue
> New York, NY 10022

**RETURN ADDRESS:**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:**
HAVANA CLUB and Design

**ISSUE/MAILING DATE:**
January 13, 2016

**APPLICANT/REGISTRANT:**
Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
N/A

**CORRESPONDENT'S EMAIL ADDRESS:**
dhbernstein@debevoise.com

## PETITION TO DIRECTOR GRANTED

On October 5, 2006, Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport" or "petitioner") petitioned the Director of the United States Patent and Trademark Office ("Director") to reverse the August 3, 2006 decision of the Post Registration examiner refusing the combined filing petitioner submitted on December 14, 2005, pursuant to sections 8 and 9 of the Trademark Act, 15 U.S.C. §§ 1058 and 1059 ("combined §8/9 filing"). The filing was refused because petitioner could not legally pay the filing fee without a specific license issued by the Office of Foreign Assets Control, and thus the fee submitted with the filing was deemed not to have been paid. On January 12, 2016, petitioner supplemented its petition by providing a license that specifically authorizes the combined §8/9 filing fee payment made on December 14, 2005, as well as all other transactions necessary to renew and maintain the registration. The Director has the authority to review petitioner's request. *See* 37 C.F.R. §§2.146(a)(2), 2.146(a)(3), 2.165(b), 2.186.[1] The petition is GRANTED.

---

[1] The Director's authority to decide trademark-related petitions has been delegated to the Commissioner for Trademarks. *See* 37 C.F.R. § 2.146(h); *Trademark Manual of Examining Procedure* (TMEP) § 1709 (Oct. 2015).

**FACTS**

As a Cuban entity, petitioner is subject to the terms of the Cuban embargo and is also subject to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, which is administered by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). The Cuban Asset Control Regulations ("CACR") do not authorize trademark registration maintenance and renewal fees to be paid for this registration unless specifically licensed by OFAC. 31 C.F.R. § 515.527(a); *see generally Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 796-798, 802 (D.C. Cir. 2011) ("*Empresa Cubana*") (explaining that Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 211(a)(1), 112 Stat. 2681, eliminated the ability of Cubaexport to rely on the CACR's general license provision to renew the registration for the HAVANA CLUB mark and required Cubaexport to obtain a specific license from OFAC authorizing the transaction).

Petitioner's December 14, 2005 combined §8/9 filing included authorization to charge the required filing fee to the United States Patent and Trademark Office ("USPTO") deposit account of the law firm representing petitioner at the time of the filing. The cover letter accompanying the combined filing indicated that authorization to pay the required fee was given pursuant to OFAC License No. CU-74488, issued on March 4, 2005. The USPTO was informed by OFAC in a letter dated April 6, 2006, that payment of the fee was not authorized under License No. CU-74488.

The Post Registration examiner assigned to review the filing issued an Office action on July 21, 2006, notifying petitioner that the combined §8/9 filing could not be accepted because the required fee was not authorized to be paid and thus was deemed not to have been paid. The Office action noted that petitioner had filed, on April 7, 2006, an application with OFAC for a specific license authorizing payment of the fees. The Office action provided a response time of six months to notify the USPTO whether that request for a specific license was granted or denied. On August 2, 2006, petitioner submitted a response to the Office action notifying the USPTO that OFAC had denied petitioner's request for a specific license to pay the fee for the combined §8/9 filing. In an Office action dated August 3, 2006, the Post Registration examiner maintained the refusal of the combined §8/9 filing. The Office action noted that the owner "may file a petition to the Director requesting review of this decision" and that such petition must be filed within six months from the August 3, 2006 action date.

This petition was filed on October 5, 2006. Action on the petition was suspended for approximately six years pending the final disposition of petitioner's litigation against the Treasury Department challenging OFAC's decision to deny Cubaexport a specific license to pay the prescribed fee. On June 11, 2012, petitioner submitted a letter notifying the USPTO of the final disposition of the litigation against OFAC, which upheld OFAC's decision. *See generally Empresa Cubana.* Petitioner also submitted supplemental arguments why the petition should be granted even in the absence of a specific license, which resulted in an exchange of correspondence between the USPTO and OFAC.

On January 12, 2016, petitioner submitted a letter supplementing its petition and including a copy of specific license number CU-2015-323837-1, issued by OFAC on January 11, 2016. The OFAC license specifies that "Cubaexport is hereby authorized to engage in all transactions necessary to renew and maintain the HAVANA CLUB trademark registration No. 1,031,651 at the United States Patent and Trademark Office (USPTO), including those related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein . . . ." By its terms, the "license expires on the earlier of January 31, 2018 or the

2

date of completion of the authorized transactions." Petitioner argues that the sole basis for the prior refusal to accept the combined §8/9 filing has been removed and requests that the petition be granted and the filing accepted. Petitioner authorizes the USPTO to charge the USPTO deposit account of its current counsel to the extent any fees need to be collected by the USPTO in connection with the 2005 combined §8/9 filing or the 2006 petition.

**DISCUSSION**

The Trademark Act provides that registrations are issued and can be renewed for ten year terms, provided that the required documents and fees are timely submitted to the USPTO. 15 U.S.C. §§ 1058, 1059; 37 C.F.R. §§ 2.160, 2.182, 2.183. Petitioner timely submitted its combined §8/9 filing and proffered payment of the fee via charge to its counsel's USPTO deposit account on December 14, 2005, within the statutory period for making the filing. But without OFAC authorization to pay the fee for the combined §8/9 filing, petitioner could not comply with the requirements of §§ 8 and 9. Thus, when petitioner's combined §8/9 filing was reviewed by the Post Registration examiner in 2006, she was constrained to refuse the filing because petitioner lacked an OFAC license authorizing the fee payment.

The Director may exercise supervisory authority on petition in appropriate circumstances. 37 C.F.R. § 2.146(a)(3). The facts here support the invocation of supervisory authority to accept petitioner's combined §8/9 filing.

Petitioner has provided an OFAC license that specifically authorizes petitioner's December 14, 2005 combined §8/9 filing and fee payment. Thus, the fee payment is effective as of December 14, 2005, and the combined §8/9 filing is considered complete and acceptable as of that date.

Moreover, even if the OFAC license did not specifically authorize Petitioner's December 14, 2005 fee payment, the license authorizes "all transactions necessary to renew and maintain" the registration. Non-payment or insufficient payment of the fee for a combined §8/9 filing is a deficiency that can be corrected, even after the statutory time period, as long as the correction occurs within the time prescribed after notification of the deficiency. *See* 15 U.S.C. §§1058(c) and 1059(a); 37 C.F.R. §§ 2.164 and 2.185; *see generally Trademark Manual of Examining Procedure* §§ 1604.06, 1604.17, 1604.19, 1606.05, 1606.13 (October 2015 version and 4th ed. April 2005). Petitioner was notified in two Office actions issued by the Post-Registration examiner that the fee it had proffered for its December 14, 2005 combined §8/9 filing could not be accepted in the absence of an OFAC license, and was further notified that it could seek review of the post-registration decision by filing a petition to the Director. Petitioner filed a timely petition. Petitioner has satisfied the fee requirement by obtaining an OFAC license that authorizes petitioner's payment of the fee for the combined §8/9 filing, providing the license to the USPTO as a timely supplement to its petition, and authorizing the USPTO to charge any uncollected fees to its counsel's USPTO deposit account. All required fees have been collected.

3

**DECISION**

The petition is granted.  The combined §8/9 filing is accepted.  The registration is renewed and the USPTO's records will be updated accordingly.  The registration file will be forwarded to the Post Registration Division for action consistent with this decision.


/Mary Boney Denison/
Commissioner for Trademarks

For general and other useful information about trademarks, you are encouraged to visit the USPTO web site at **http://www.uspto.gov/main/trademarks.htm**.

4

Side - 1



### NOTICE OF ACCEPTANCE OF §8 DECLARATION AND §9 RENEWAL
### MAILING DATE: Jan 13, 2016

The declaration and renewal application filed in connection with the registration identified below meets the requirements of Sections 8 and 9 of the Trademark Act, 15 U.S.C. §§1058 and 1059.  The declaration is accepted and renewal is granted.  The registration remains in force.

For further information about this notice, visit our website at: http://www.uspto.gov.  To review information regarding the referenced registration, go to http://tarr.uspto.gov.

**REG NUMBER:**  **1031651**
**MARK:**  **HAVANA CLUB(STYLIZED/DESIGN)**
**OWNER:**  **EMPRESA CUBANA EXPORTADORA DE ALIMENTOS, ETC.**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

David H. Bernstein
Debevoise & Plimpton LLP
919 Third Avenue
NEW YORK, NY  10022

**RENEWAL**

| REG. NO. | MARK | SER. NO. 13/0 25981 |
|---|---|---|
| 1031651 | HAVANA CLUB AND DESIGN | Examiner |
| Registered (date) JAN 2 7 1976 | Type of Mark | 33 STRICKMAN |

PRINCIPAL REGISTER

| Class | Filed Complete | Serial No. |
|---|---|---|
| 33 | JUNE 12, 1974 | 23 981 |

Amended ..........................................................

Applicant and Post Office

EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y
PRODUCTOS VARIOS, D.B.A. CUBAEXPORT, 55, 23
STREET, VEDADO, HAVANA, CUBA . CUBAN CO.

*See Inside*

Parts Filed
- Application ..........................
- Verification ..........................
- Specimens ..........................
- Drawings ..........................
- Fee ..........................

☐ Assignee of
☐ By change of name from

Mark
HAVANA CLUB AND DESIGN

U.S. Cl. 49

L. STRICKMAN

SUPERVISORY EXAMINER

Send Correspon
HASELTI
19 W. 4
NEW YOR

Peter Weiss
Weiss, Dawid, Fross,
750 3rd Avenue
New York, N.Y. 10017-2773

EXAMINER

Representative

HASELTINE, LAKE & WATERS

Attorney

HASELTINE, LAKE & WATERS

Passed for Publication

*T Strickman*

Associate Attorney

Passed for Registration

Other Data

*The drawing is lined for the color gold.*
*Applicant disclaims the words*
*"Havana" and "Fundado en 1878"*
*apart from the mark as a whole.*

Claims Ownership of Registration *Cuban Reg. No. 110, 353*
*dated Feb. 12, 1974.*

Goods—Services

RUM.

First Use

In Commerce

| A F F I D A V I T | Sec. 8 | *M Bowman* |
|---|---|---|
| | Sec. 15 | |
| | Sec. 12c | |

Passed for Renewal *F. C. Pfohl*

Renewed From *Jan 27, 1996*

**PUBLISHED**

NOV 4 1975

U. S. PATENT OFF.

PO-102 (Aug. 1966) · KP 30280 AB · U.S. GOVERNMENT PRINTING OFFICE

*Cuban Reg. of Feb. 13, 1988*



The undersigned is granted access to this
file with the understanding that nothing
is to be removed without authority.

Date............Signed..........

Firm or...........................
Address

Feb 12, 1975



spec to Norman
5-4-92

Spec to
K.W. Beckman
7-30-76

Y. Dowell
5/20/91

# NOTE TO THE FILE

SERIAL NUMBER:        73023981

DATE:                 02/10/2016

NAME:                 jchicoski

**NOTE:**

**Searched:**
____ Google
____ Lexis/Nexis
____ OneLook
____ Wikipedia
____ Acronym Finder
____ Other:

**Discussed ID with:**
____ Senior Atty
____ Managing Atty

____ Protest evidence reviewed

**Checked:**
____ Geographic significance
____ Surname
____ Translation
____ ID with ID/CLASS mailbox

**Discussed Geo. Sig. with:**
____ Senior Atty
____ Managing Atty

__ Checked list of approved Canadian attorneys and agents

**Discussed file with**
**Attorney/Applicant via:**
____ phone
____ email

____ Requested Law Library search
for:

____ **PRINT** ____ **DO NOT PRINT**
____ Description of the mark
____ Translation statement

____ Negative translation statement
____ Consent of living individual

____ Changed TRADEUPS to:

____ Left message with
Attorney/Applicant

____ Issued Examiner's Amendment
and entered changes in TRADEUPS

____ Added design code in TRADEUPS

____ Re-imaged standard character
drawing

____ Contacted TM MADRID ID/CLASS
about misclassified definite ID

_X_ OTHER: File retrieved 2/9; scanned and indexed

Side - 1



**NOTICE OF ACCEPTANCE OF §8
DECLARATION AND §9 RENEWAL
MAILING DATE: Feb 16, 2016**

The declaration and renewal application filed in connection with the registration identified below meets the requirements of Sections 8 and 9 of the Trademark Act, 15 U.S.C. §§1058 and 1059. The declaration is accepted and renewal is granted. The registration remains in force.

For further information about this notice, visit our website at: http://www.uspto.gov. To review information regarding the referenced registration, go to http://tarr.uspto.gov.

**REG NUMBER:**     **1031651**
**MARK:**     **HAVANA CLUB(STYLIZED/DESIGN)**
**OWNER:**     **EMPRESA CUBANA EXPORTADORA DE ALIMENTOS, ETC.**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA 22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

David H. Bernstein
Debevoise & Plimpton LLP
919 Third Avenue
NEW YORK, NY 10022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| BACARDI & COMPANY LIMITED, and BACARDI U.S.A. INC., | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-1441-LMB-IDD |
| | ) | |
| UNITED STATES PATENT AND TRADEMARK OFFICE, and KATHI VIDAL, in her official capacity as the Director of the United States Patent and Trademark Office, | ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS, | ) ) ) | |
| Intervenor-Defendant | ) ) | |

---

## NOTICE OF FILING OF SUPPLEMENTAL ADMINISTRATIVE RECORD

Defendants, through their undersigned counsel, respectfully files this Notice of Filing of Supplemental Administrative Record. The attached supplement consists of two documents: a printout of the financial transaction history for the HAVANA CLUB registration for the relevant time period and a declaration explaining transaction codes reflected in the financial transaction history. These documents are bates-stamped A478-482. Explanatory declarations are properly part of the administrative record. *See, e.g.*, *Olivares v. Transportation Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016) (declaration that contains "no new rationalizations" and is "merely explanatory of the original record" may be included in administrative record (quoting *Envtl. Def. Fund., Inc. v. Costle*, 657 F.2d 275, 285 (1981))).

Because the financial transaction history is housed in a different database from the previously filed certified administrative record, it was inadvertently not previously included. However, the information in the attached supplement was considered by the agency in reaching the decision at issue in this case. To protect their privacy, certain personally identified information of agency employees not germane to the relevant legal issues has been redacted. *Cf.* 5 U.S.C. § 552(b)(6).

Intervenor-Defendant's counsel has informed undersigned counsel that Intervenor-Defendant consents to Defendants' filing of this supplemental administrative record. Plaintiffs' counsel has informed undersigned counsel that Plaintiffs take no position on this filing.

Dated: November 19, 2024

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

*By*: _____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:     (703) 299-3741
Fax:     (703) 299-3983
Email: matthew.mezger@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

ELIZABETH TULIS
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

Tel:      (202) 514-9237
Email: elizabeth.tulis@usdoj.gov

*Counsel for Defendants*

**U.S. DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

<u>**November 19, 2024**</u>
(Date)

**THIS IS TO CERTIFY** that the pages attached hereto (A478 – A482), coupled with the previously filed Administrative Record (A001 – A477), filed on September 17, 2024 (ECF No. 48), comprise the record before the United States Patent and Trademark Office of the trademark registration identified below concerning the 2005 and 2016 requests to renew the registration.

**Owner: EMPRESA CUBANA EXPORTADA DE ALIMENTOS Y PRODUCTOS VARIOS DBA CUBA EXPORT**

**U.S. Trademark Reg. No. 1,031,651**

**Registration Date: January 27, 1976**

**Mark:**





By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Orchideh Rushenas*
*Certifying Officer*

JA537

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BACARDI & COMPANY LIMITED, and ) <br> BACARDI U.S.A. INC.,                )<br>                                    )<br>   Plaintiffs,                 )<br>                                    )<br>   v.                         )<br>                                    )<br>UNITED STATES PATENT AND           )<br>TRADEMARK OFFICE, and              )<br>KATHI VIDAL, in her official capacity )<br>as the Director of the United States )<br>Patent and Trademark Office,        )<br>                                    )<br>   Defendants,                )<br>  and                         )<br>                                    )<br>EMPRESA CUBANA EXPORTADORA         )<br>                                    )<br>DE ALIMENTOS Y PRODUCTOS           )<br>VARIOS,                            )<br>   Intervenor-Defendant        )<br>_____   ) | Civil Action No. 1:21-cv-1441-LMB-IDD |

<u>**DECLARATION OF MATTHEW LEE**</u>

I, Matthew Lee, declare that:

1.  I am the Director, Receipts Accounting Division in the Office of Finance within the Office of the Chief Financial Officer of the United States Patent and Trademark Office ("USPTO").  The Receipts Accounting Division is responsible for administering USPTO deposit accounts, processing certain fee payments and refunds to USPTO customers, and providing information to USPTO internal and external customers about fees and refunds paid in particular patent and trademark matters.  I submit this declaration in support of Defendants' supplementation of the previously filed administrative record. This declaration is based on facts known to me or conveyed to me in the course of my official responsibilities.

2.   Financial transactions showing the fees paid or refunded for filings made with the USPTO are in an internal USPTO system called the Fee Processing Portal System ("FPP").  The FPP system is separate from the USPTO systems that contain the filings themselves (*i.e.*, applications for renewal).  Filings made in a particular trademark registration are publicly available in the Trademark Status and Document Retrieval system ("TSDR").  The financial transaction information is not available in TSDR, but is internally available in the FPP system.

3.   On November 8, 2024, I accessed the Transaction History Service within the Fee Processing Portal System to download a report of the financial transactions that occurred between October 10, 2004 and November 8, 2024 for U.S. Trademark Registration No. 1031651. Attached as Exhibit 1 is a true and correct copy of the report.  In order to ensure the privacy of certain personnel whose identity is not germane to this action, the report redacts the names of the USPTO personnel listed in the "Create User ID" field.

4.   The report contains a "Fee Code" column but does not contain descriptions of what the codes identify.  The descriptions of the fee codes are listed in the chart below.  The fee codes for filings and their descriptions are included on the USPTO Fee Schedule, which is publicly available on the USPTO's website at the following link: https://www.uspto.gov/sites/default/files/documents/USPTO-fee-schedule_current.pdf.

| Fee Code | Description |
|----------|-------------|
| 6201 | §9 registration renewal application |
| 6205 | §8 declaration |
| 6005 | Petition to the Director |
| 6207 | §8 declaration deficiency fee |
| 6999 | Internal use Trademarks holding code |
| 9106 | Internal use credit card refund code |

5. As shown in the report, and as I understand is relevant to this litigation, the fees for the December 14, 2005 Section 8 and Section 9 filings for Registration No. 1031651 were collected effective December 14, 2005, posted on December 21, 2005, refunded on August 3, 2006, and collected again effective January 12, 2016. As is used within the FPP system, "Effective Date" is the payment date for the fee based on the receipt date by the USPTO. "Date Posted" means the date the fee or refund of the fee was entered into the USPTO's fee collection system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Matthew Lee** Digitally signed by Matthew Lee
Date: 2024.11.18 16:15:11 -05'00'

Dated: November 18, 2024

MATTHEW LEE

# Exhibit 1

**United States Patent and Trademark Office**

*Office of the Chief Financial Officer*



# Transaction History Service

Date Downloaded   Fri Nov 08 2024 11:42:48 GMT-0500 (Eastern Standard Time)

| Transaction Type | Search Type | Sale Item Reference # | Start Date | End Date |
|---|---|---|---|---|
| All | Sale Item Reference # | 1031651 | 10/10/2004 | 11/08/2024 |

| Trans Type | Date Posted | Date Submitted | Effective Date | Create User ID | Fee Code | Amount | Status | Payment Method | DA Number |
|---|---|---|---|---|---|---|---|---|---|
| SALE | 1/21/16 | | 1/12/16 | | 6201 | $400.00 | ACTIVE | DA | 501997 |
| SALE | 1/21/16 | | 1/12/16 | | 6205 | $100.00 | ACTIVE | DA | 501997 |
| SALE | 1/14/16 | | 1/12/16 | | 6205 | $100.00 | ACTIVE | DA | 501997 |
| SALE | 1/14/16 | | 1/12/16 | | 6207 | $100.00 | ACTIVE | DA | 501997 |
| SALE | 1/14/16 | | 1/12/16 | | 6201 | $400.00 | ACTIVE | DA | 501997 |
| SALE | 8/20/12 | | 6/11/12 | | 6205 | -$100.00 | | CC | |
| SALE | 8/20/12 | | 6/11/12 | | 6201 | -$400.00 | | CC | |
| REFUND | 8/20/12 | | 8/20/12 | | 9106 | $100.00 | APPROVED | CC | |
| REFUND | 8/20/12 | | 8/20/12 | | 9106 | $400.00 | APPROVED | CC | |
| SALE | 6/20/12 | | 6/11/12 | | 6201 | $400.00 | REVERSED | CC | |
| SALE | 6/20/12 | | 6/11/12 | | 6205 | $100.00 | REVERSED | CC | |
| SALE | 7/25/08 | | 10/5/06 | | 6999 | -$100.00 | | DA | 061075 |
| SALE | 7/25/08 | | 10/5/06 | | 6005 | $100.00 | ACTIVE | DA | 061075 |
| SALE | 10/12/06 | | 10/5/06 | | 6999 | $100.00 | REVERSED | DA | 061075 |
| SALE | 8/3/06 | | 12/14/05 | | 6201 | -$400.00 | | DA | 061075 |
| SALE | 8/3/06 | | 12/14/05 | | 6205 | -$100.00 | | DA | 061075 |
| SALE | 1/18/06 | | 1/11/06 | | 6005 | $100.00 | ACTIVE | DA | 192105 |
| SALE | 12/21/05 | | 12/14/05 | | 6205 | $100.00 | REVERSED | DA | 061075 |
| SALE | 12/21/05 | | 12/14/05 | | 6201 | $400.00 | REVERSED | DA | 061075 |

**A482**

JA542

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
 2                  ALEXANDRIA DIVISION

 3   --------------------------x
     BACARDI & COMPANY LIMITED, :    Civil Action No.:
 4   et al.,                    :    1:21-cv-1441
                 Plaintiffs,    :
 5        versus                :    Friday, January 24, 2025
                                :    Alexandria, Virginia
 6   UNITED STATES PATENT AND    :
     TRADEMARK OFFICE, et al.,   :    Pages 1-16
 7                              :
                 Defendants.    :
 8   --------------------------x

 9        The above-entitled motion for summary judgment was
     heard before the Honorable Leonie M. Brinkema, United States
10   District Judge.  This proceeding commenced at 10:04 a.m.

11                  A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:   DAVID ZIONTS, ESQUIRE
                           COVINGTON & BURLING LLP
13                         One City Center
                           850 Tenth Street, NW
14                         Washington, D.C.  20001
                           (202) 662-6000
15
                           MICHAEL LYNCH, ESQUIRE
16                         DAMON SUDEN, ESQUIRE
                           KELLEY DRYE & WARREN LLP
17                         3 World Trade Center
                           175 Greenwich St
18                         New York, New York  10007
                           (212) 808-7800
19
                           JOSEPH GREEN, ESQUIRE
20                         KELLEY DRYE & WARREN LLP
                           Washington Harbour
21                         3050 K Street, NW
                           Suite 400
22                         Washington, D.C.  20007
                           (202) 342-8849
23

24

25
                                                              1
```

```
 1                   A P P E A R A N C E S:

 2   FOR THE DEFENDANTS:    MATTHEW MEZGER, ESQUIRE
                           ELIZABETH TULIS, ESQUIRE
 3                         OFFICE OF THE UNITED STATES ATTORNEY
                           2100 Jamieson Avenue
 4                         Alexandria, Virginia  22314
                           (703) 299-3700
 5
     FOR THE INTERVENOR:   CARL MICARELLI, ESQUIRE
 6                         DEBEVOISE & PLIMPTON LLP
                           66 Hudson Boulevard
 7                         New York, New York  10001
                           (212) 909-6000
 8
                           JONATHAN TUTTLE, ESQUIRE
 9                         DEBEVOISE & PLIMPTON LLP
                           801 Pennsylvania Avenue, NW
10                         Suite 500
                           Washington, D.C.  20004
11                         (202) 383-8000

12   COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
                           Official Court Reporter
13                         United States District Court
                           401 Courthouse Square
14                         Alexandria, Virginia  22314
                           (607) 743-1894
15                         S.AustinReporting@gmail.com

16          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

17

18

19

20

21

22

23

24

25
                                                            2
```

```
 1                 P R O C E E D I N G S

 2            THE DEPUTY CLERK:  Civil Action

 3    Number 1:21-cv-1441, Bacardi & Company Limited versus United

 4    States Patent and Trademark Office, et al.

 5            Will counsel please note their appearance for the

 6    record, first for the plaintiff.

 7            MR. ZIONTS:  Good morning, Your Honor.  David

 8    Zionts for plaintiff Bacardi.  I'm joined by Michael Lynch,

 9    Damon Suden and Joe Green.

10            THE COURT:  Good morning.

11            MR. MEZGER:  Good morning, Your Honor.  Matthew

12    Mezger, Assistant United States Attorney on behalf of

13    Federal defendants.  I'm joined by Elizabeth Tulis, Federal

14    Programs Attorney at the Department of Justice.  She'll be

15    presenting to the Court on behalf of Federal defendants.

16            THE COURT:  Good morning and we have the

17    intervenor.

18            MR. MICARELLI:  Good morning, Your Honor.  Carl

19    Micarelli on behalf of intervenor Cuba Export.  I am joined

20    by Jonathan Tuttle.

21            THE COURT:  All right.  A very interesting case.

22    I haven't had one like this before, so that's what makes

23    this job so interesting is to have cases like this.

24            Well, we have three motions for summary judgment

25    from each of the parties.  This is a case involving an APA
```

1    challenge to the decision of the director of the PTO to

2    essentially hold open, for probably a decade or more, the

3    ability of the intervenor to finally get permission from the

4    American government authorities to pay the registration fee

5    necessarily to maintain their trademark.  It's a very, very

6    interesting case.

7            I think I want the plaintiffs to explain to me

8    what law you think prevents the director from exercising his

9    discretion in this type of a case, especially when you have

10   apparently in the -- and I'm not going to pronounce it

11   correctly, the *Tribologists* case in which the director

12   issued a registration after a two-year eight-month delay in

13   the fee having been paid.

14           So, I mean, there is apparently precedent for the

15   director to take quite a few years to make the decision as

16   to whether or not to accept what would otherwise be an

17   out-of-time payment of the registration fee.

18           Counsel.

19           MR. ZIONTS:  Yes, Your Honor.  Good morning, and

20   thank you again.  I agree it's an interesting case and an

21   unusual one.

22           To go right to your question about what is the

23   statutory ground here, I would go to Section 9 of the Lanham

24   Act, 15 U.S. Code Section 1059, which has, you know, a

25   requirement for payment of the prescribed fee, and that has

                                                              4

1    to be paid within the renewal period or within the time, if

2    there's a deficiency in the application, including within

3    the fee, within -- it must be paid -- or corrected within

4    the time prescribed after notification of the deficiency.

5    So I think fundamentally what we're disputing here is what

6    is the time prescribed after notification of the deficiency.

7    And we have a regulation that we read, and I think we have a

8    dispute on this. We read that regulation as saying the time

9    prescribed is six months. Even if -- even if that was not

10   the case, we have an office action. The examiner prescribed

11   a time, said six months. You know, this is deficient, you

12   have six months to respond, and your response must be

13   accompanied by the fee or else this will be expired. So

14   that is a time prescribed by the agency, and that's the

15   statutory hook that we're talking about here.

16          THE COURT: Yeah, but then the applicant noted an

17   appeal of that decision; correct?

18          MR. ZIONTS: Yes, Your Honor.

19          THE COURT: And that was timely noticed. There

20   was no --

21          MR. ZIONTS: Yes, Your Honor.

22          THE COURT: All right. And that went to the

23   director; right?

24          MR. ZIONTS: Yes, Your Honor.

25          THE COURT: And, as I understand it, the director

                                                          5

1    did what a lot of, you know, appellate types of panels do.

2            Number 1, as I understand it, the director allowed

3    the registration to continue, it did not cancel the

4    registration; is that correct?

5            MR. ZIONTS:  Your Honor, I would distinguish

6    between cancellation, which was not -- and this was a

7    distinction that the Fourth Circuit drew when this was last

8    on appeal.  Section 9 is not about cancellation or not; it's

9    just about for -- it expires.

10           THE COURT:  Didn't allow -- all right.

11           MR. ZIONTS:  It accepted the payment in 2016.  And

12   so what we're challenging here is the lawfulness or the

13   arbitrariness of that action.

14           And if I could make two points.

15           We think that, you know, the law says the

16   deficiency must be corrected within the time prescribed.  I

17   just don't see -- and I'm not necessarily disputing -- you

18   know, let's say, for example, the examiner has said you get

19   one month to correct the deficiency.  And if you took an

20   appeal to the director and the director says I think that

21   was wrong, I don't think you should have set one month, I

22   think you should have set six months, I'm not disputing that

23   that -- you know, then the time prescribed for correction of

24   the deficiency becomes six months.

25           But I just don't see anywhere in the director's

                                                              6

```
 1    decision -- you have a statement -- and this goes both to

 2    the statutory issue but then has a fallback at a minimum to

 3    this requirement under the APA of reasoned decision-making.

 4    You know, I don't see anywhere in that decision that says,

 5    no, it's not going to be six months like the examiner said;

 6    it's going to be ten and a half years, that's going to be

 7    the amount of time that I prescribe.  It just doesn't say

 8    that.  And that's of statutory consequence, because the

 9    statute says this is mandatory, you have to pay the fee

10    within the renewal period or within the time prescribed, and

11    there just isn't another type prescribed anywhere other than

12    the six months.

13            THE COURT:  Of course, as you know, the fee was

14    tendered.  I mean, the fee was delivered to the PTO.  The

15    problem is, because it was on behalf of a Cuban company and

16    you had the embargo in place at that point, and the Cuban

17    company had not gotten the necessary clearance from, you

18    know, the agency to get a license to, you know, do a

19    financial transaction in the United States, the PTO returned

20    the fee.

21            So this is -- that's why I'm saying this is such

22    an unusual case.  This is not a case where, you know, you

23    had the applicant in any respect, you know, playing games or

24    being in any respect at fault.  And then, as you know, what

25    happened was when the appeal was taken to the director, at
```

1  the same time, the applicant was also appealing to OFAC or

2  whatever the agency's acronym is, to get leave to do the

3  transaction, and that took many, many years.

4       They did finally get leave, and immediately

5  thereafter they retendered not only the registration fee

6  back to 2006, but the one going forward so that currently

7  their registration is active through 2026, I believe.

8       MR. ZIONTS:  Your Honor, you know, I'm not

9  disputing that they tried their best to pay the fee as soon

10  as they could.  Our point is just, you know, one, the law

11  sets certain requirements for payment of the fee when it's

12  due or within the time prescribed after notification of the

13  deficiency.

14       And beyond that, you know, I think even if Your

15  Honor is not persuaded that the law, you know, left some

16  measure of discretion within the PTO here, in other words if

17  you say, you know, this is a one-of-a-kind case, I don't

18  think Section 9 of the Lanham Act said you had to do this

19  one way or the other but there is discretion here, that is

20  still discretion that the agency needs to exercise

21  reasonably and it needs to reasonably explain itself.

22       So, for example, on this idea that the fee was

23  actually paid in 2005, you know, that is a little bit hard

24  to reconcile at least without some explanation with this

25  payment record that's at page 482 of the administrative

8

1    record.

2              They call charge -- they accepted payment in 2016,

3    and they accepted a deficiency surcharge.  So if there was a

4    timely payment in 2005, that should never have happened.

5    There shouldn't be a deficiency surcharge when, you know,

6    you've fully complied with your payment obligations.  So I

7    think at a minimum you need -- you know, what the APA

8    requires is for the agency to grapple with all the facts and

9    explain what it's doing.

10             You know, as another example of this extending for

11   ten and a half years the time we're going to prescribe, the

12   trademark manual says, you know, we're going to give you

13   six months.  So I'm going to -- you know, I think that was

14   mandatory.  But grant for a moment that there's discretion

15   to depart from that, you know, at a minimum what the APA

16   requires is for you to acknowledge that you're doing

17   something a little bit different and a departure.  And maybe

18   it would be okay to say I acknowledge that the trademark

19   manual says we're going to prescribe six months for

20   correction of the deficiency, but this is an unusual

21   situation, and there were all these extenuating

22   circumstances, and so I'm going to allow ten and a half

23   years as the time period.

24             Now, if that had been the case, we could have a

25   different debate as to whether that was lawful or not

                                                              9

1 lawful, but at least you would have some engagement with the
2 fact that this is our ordinary way of doing things, we're
3 going to do it a different way here, and here's why. You
4 don't have a hint of that in the record. Instead, they cite
5 the trademark manual. They cite the section of the
6 trademark manual that describes this normal policy. And
7 this kind of a basic principle of administrative law, you
8 know, the bare minimum an agency needs to do, even when it
9 has discretion, even when there are a lot of different
10 lawful options that it has, it has to acknowledge all the
11 different competing facts, competing considerations, it has
12 to, you know, acknowledge why -- that it is, in fact, doing
13 something different. So to do something very -- that is
14 sort of very contrary to normal practice here, at a bare
15 minimum, the agency needed to acknowledge that and explain
16 it.
17         THE COURT: All right. Thank you. All right.
18 I'll hear from the PTO.
19         MS. TULIS: Your Honor, this is about the
20 lawfulness of the USPTO's renewal of Cuba Export's
21 registration of the Havana Club mark for the 2006 to 2016
22 time period.
23         Cuba Export timely submitted its Section 89
24 renewal application in December 2005 and paid the required
25 renewal fees. The USPTO's renewal of Cuba Export's

                                                    10

1    registration is consistent with the Lanham Act because that

2    is what the Lanham Act requires, timely filing of the

3    written application within one year before the registration

4    period expires and payment of the prescribed fee.

5            THE COURT:  Yeah.  But the problem is, it really

6    wasn't a payment.  I mean, they tendered the payment, but

7    the payment couldn't be accepted.

8            MS. TULIS:  Your Honor, the only reason the

9    renewal application could not be granted in 2005 or 2006 was

10   because of the overlay of a separate regulatory statutory

11   regime, the CACR.

12           THE COURT:  Right.

13           MS. TULIS:  The record before the director in 2016

14   showed that, one, Cuba Export had timely filed its

15   Section 89 renewal application; two, Cuba Export had paid

16   the renewal fee on December 14th, 2005.  And not only had it

17   actually tendered it, but by Bacardi's own sole argument in

18   their initial brief, it was paid because it was accepted as

19   well.  So it was tendered and accepted.

20           THE COURT:  How long was it kept before it was

21   returned, do you know?

22           MS. TULIS:  Several months.

23           THE COURT:  Oh, really?

24           MS. TULIS:  Yes, Your Honor.

25           THE COURT:  So the PTO had the payment for a

                                                            11

1  couple of months?

2  MS. TULIS: I think it was returned in August 2006

3  or -- July or August 2006. I would have to check the

4  registration.

5  THE COURT: Yeah. I think it was August 3rd;

6  wasn't it?

7  MS. TULIS: I believe so. August 3rd, yes, Your

8  Honor.

9  So that was before the director, these two things

10  happened, the requirements of the Lanham Act were satisfied.

11  The only thing that had prevented granting renewal back in

12  2006 was that there was a lack of a specific OFAC license

13  authorizing the transaction. But when the director reviewed

14  the record in 2016, there was such a license which

15  retroactively authorized the transaction. And OFAC licenses

16  can do that, they say this goes backwards. It retroactively

17  licenses the transaction. It was legal as of

18  September 14th, 2005. Therefore, it was both consistent

19  with the Lanham Act and not arbitrary and capricious for the

20  director to conclude that the registration could be renewed

21  and to grant the petition.

22  THE COURT: How do you respond, though, to the

23  plaintiffs' argument that if, in fact, it was deemed timely

24  paid, there was still the extra fee that was charged?

25  MS. TULIS: So I'm not sure what -- whether that

12

1  fee was just automatically paid by Cuba Export and not

2  returned or whether it was charged automatically by USPTO.

3  But I would point out to Your Honor that the director's

4  decision had two alternative justifications.  The primary

5  one, which I've just explained to Your Honor, fully

6  justifies the decision.  But the director sort of, belt and

7  suspenders, gave a second justification, which said that

8  even if that December 14th, 2005 payment was not authorized

9  by a specific OFAC license, the -- any deficiency related to

10  that lack of authorization had been cured.

11        And so as I can understand it, having a deficiency

12  fee there would be consistent with the second justification,

13  the alternative justification for granting renewal.  But

14  Your Honor doesn't even need to reach that, because, again,

15  the question here is whether the director's reasoning and

16  the record support the decision.  That's the only question

17  under arbitrary and capricious review, and I don't think

18  there can be any question that Cuba Export fulfilled the

19  terms of the Lanham Act based on the record before the

20  director.

21        THE COURT:  All right.  Thank you.  I'll hear from

22  the intervenor.

23        MR. MICARELLI:  Thank you, Your Honor.

24        In regard to the argument that the government just

25  made, the primary argument that the payment actually was

13

1  made in 2005, I'd like to focus on a section of the OFAC

2  regulations that I think the parties have not talked about

3  yet, though it is in our reply brief.  It's 31 CFR 515.203.

4  That is the section that governs the effect of a payment

5  that is in violation of the OFAC regulations.

6      This is not, you know, some general principle that

7  an illegal payment is ineffective, it's the regulations

8  actually specify when a payment that violates the

9  regulations is and is not effective.

10     Now, the general rule in that section which is in

11  subsection A which says payment -- you know, transactions

12  that are in violation of the regulations are null and void,

13  but then it goes on to provide two exceptions in

14  subsection C and subsection D.  We're not contending that

15  subsection D applies here; the question is subsection C.

16     That section says a license issued before, during

17  or after a transfer -- and a transfer includes a payment --

18  shall validate such transfer or render it enforceable to the

19  same extent as it would be valid or enforceable but for the

20  provisions of the Cuban Assets Control Regulations.

21     In other words, under subsection C if a license is

22  issued by OFAC even after the fact, it removes the

23  invalidity that would otherwise result from subsection A.

24  And this is just not just about OFAC enforcement, it's about

25  an effect of the transaction.  It's in a section called

                                                    14

effective transfers violating the provisions of this part.

So I think that as a matter of law establishes that the payment was effective when it was made -- when it was withdrawn in December 2005. Perhaps not at the time that it was retroactively made effective as of that date.

The second point, though, is even if it was ineffective, the USPTO was entitled to allow us to cure the deficiency. And I think that explains why they took the money out again with an extra fee, because they had an alternative rationale that that alternative rationale would work only if they collected a deficiency fee. So they collected the deficiency fee then in 2016, and we did not complain about it because that's what supported their alternative rationale. So, for that reason, we did not ask for the money back.

I think, as Your Honor pointed out, the ability to allow a cure of a deficiency after the fact is necessary to ensure that the parties -- that an applicant has the ability to challenge an examiner's decision before the director and ultimately before the Courts.

I think the Fourth Circuit in this very case, based on Bacardi's own argument, ruled that there is a strong presumption that administrative agency actions are reviewable. If Bacardi were right, that would mean our appeal of OFAC's denial of the license, if we had succeeded,

15

```
1    would have been useless because we would have been past the

2    six months.  And our appeal to the director of the

3    examiner's refusal to accept the renewal would have been

4    useless because, you know, the director took more than

5    six months.  That would defeat our right to administrative

6    review, it would defeat ultimately our right to judicial

7    review.  That's, you know -- that's not the law, that's not

8    a reasonable reading of the regulations, and for that

9    reason, as well as the other reasons you heard the

10   government explain, we submit that the USPTO properly

11   accepted the renewal.

12            Thank you, Your Honor.

13            THE COURT:  All right.  As I said, this is a very

14   interesting case.  I am going to grant summary judgment in

15   favor of the defendant and the intervenor.

16            We'll issue an opinion, so the time to appeal will

17   not start until the opinion has been issued.  But thank you

18   all for an interesting argument.

19            We'll call the next case.

20            (Proceedings adjourned at 10:23 a.m.)

21            ----------------------------------

22   I certify that the foregoing is a true and accurate
     transcription of my stenographic notes.
23

24   _____
              Stephanie Austin

25            Stephanie M. Austin, RPR, CRR
                                                          16
```

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BACARDI & COMPANY LIMITED and              )
    BACARDI USA, INC.,                   )
                              )
        Plaintiffs,                     )
                              )
        v.                              )        1:21-cv-1441 (LMB/IDD)
                              )
UNITED STATES PATENT & TRADEMARK           )
    OFFICE and COKE MORGAN STEWART,[1]       )
    in her official capacity as the Acting Director )
    of the United States Patent & Trademark     )
    Office,                                   )
                              )
        Defendants,                     )
                              )
      and                             )
                              )
EMPRESA CUBANA EXPORTADORA DE              )
    ALIMENTOS Y PRODUCTOS VARIOS.            )
                              )
        Intervenor-Defendant.           )

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment in a civil action

brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq.,[2] by Bacardi

& Company Limited and Bacardi USA, Inc. ("plaintiffs" or "Bacardi") against the U.S. Patent

and Trademark Office and the Director of the USPTO ("defendants") to set aside the Director's

---

[1] Ms. Stewart was named Deputy Director of the U.S. Patent and Trademark Office ("USPTO")
on January 20, 2025, and by statute, is currently serving as the Acting Director of the USPTO.

[2] This civil action was initially assigned to U.S. District Judge Liam O'Grady, who dismissed it
for lack of subject matter jurisdiction. The Fourth Circuit Court of Appeals reversed that opinion
and remanded. Upon the retirement of Judge O'Grady, this civil action was reassigned to this
Court.

decision accepting renewal of Empresa Cubana Exportadora de Alimentos y Productos Varios'

("intervenor-defendant" or "Cubaexport") "HAVANA CLUB" and design trademark, as pictured

below.



[Dkt. No. 48-1] at 1.

The motions have been fully briefed and oral argument has been held. At the hearing, the

Court orally granted defendants' and intervenor-defendant's Motions for Summary Judgment

and denied plaintiff's Motion for Summary Judgment. This Memorandum Opinion supplements

the oral decision and begins the time in which an appeal may be filed.

The following facts are not contested. Cubaexport is a Cuban corporate entity established

by the Cuban government in 1965. Beginning in the 1970s, Cubaexport exported rum from

Cuba to countries other than the United States under the "HAVANA CLUB" and design

trademark at issue. It could not export rum to the United States because of the Cuban embargo.

See Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515. In 1976, Cubaexport

obtained a registration from the USPTO for its "HAVANA CLUB" trademark for Cuban rum.[3]

_____

[3] The Cuban embargo blocks most U.S. transactions with Cuban entities like Cubaexport, but the
trademark registration and payment of the registration fee were allowed under a "general
license" included in the embargo regulations, which authorized Cuban companies to register
their trademarks in the United States. See 31 C.F.R. § 515.527(a)(1). A "general license" is a
general authorization included in the embargo regulations, see 31 C.F.R. § 515.317, and a
"specific license" is an authorization issued separately by the Office of Foreign Assets Control
("OFAC"), see id. § 515.318.

2

For nearly two decades, Cubaexport's registration went unchallenged until, in 1993, the international beverage distributor Pernod Ricard S.A. entered into an agreement to distribute Havana Club rum around the world. Bacardi, a competitor of Pernod Ricard S.A., attempted to register its own "Havana Club" trademark but the USPTO issued an Office Action advising that the registration would be denied on multiple grounds, one of which was that Bacardi's application conflicted with Cubaexport's existing registration.

On July 12, 1995, Bacardi filed a petition seeking cancellation of Cubaexport's "HAVANA CLUB" trademark registration before the Trademark Trial and Appeal Board ("TTAB"). In 2004, after receiving an adverse decision from the TTAB, Bacardi filed a civil action in the U.S. District Court for the District of Columbia. Bacardi & Co. v. Empresa Cubana Exportadora de Alimentos y Productos Varios, No. 1:04-cv-00519-EGS. That civil action is currently pending with fact discovery due to end in March 2025. Because Bacardi's APA claim regarding the validity of Cubaexport's 2006 renewal was not properly before the court in that action, Bacardi brought the instant APA action in this district. See Bacardi & Co. v. U.S. Pat. & Tmk. Off., 104 F.4th 527, 535 (4th Cir. 2024).

In 1998, Congress passed a statute, referred to as "Section 211," as part of an appropriations bill that modified the general license provision in the embargo regulations to exclude the registration of trademarks that are "the same as or substantially similar to a mark . . . that was used in connection with a business or assets that were confiscated." See Omnibus, Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 211, 112 Stat. 2681, 2681–88 (1998); 31 C.F.R. § 515.527(a)(2). U.S. courts have held that Section 211 applies to Cubaexport's "HAVANA CLUB" trademark because the same name was used long ago by a Cuban company that was nationalized in 1960 as part of Cuba's transition to

a socialist economy.  E.g., Empresa Cubana Exportadora de Alimentos y Productos Varios v.

U.S. Dep't of Treasury, 638 F.3d 794, 803 (D.C. Cir. 2011).  As so construed, Section 211

required Cubaexport to obtain a specific license from OFAC to pay fees to the USPTO to renew

its trademark registration.

       Cubaexport's initial trademark registration was effective for 20 years.  To continue its

registration, Cubaexport had to submit a renewal application by January 27, 2006,[4] along with a

declaration that it was using the mark or that its non-use was excusable.  15 U.S.C. §§ 1058-59.

Both the application and declaration, which are known as a Section 8/9 combined filing, required

the payment of fees.[5]  On or about December 14, 2005, Cubaexport, through its then-attorneys at

Ropes & Gray, LLP, submitted its Section 8/9 combined filing, which included an authorization

for the USPTO to charge all fees to Ropes & Gray's USPTO deposit account; however, because

Congress had adopted Section 211 in 1998, it was no longer clear that Cubaexport could rely on

the general license in 31 C.F.R. § 515.527 to pay the required filing fee.  Accordingly, the

application cited an existing specific license, which OFAC had issued to Ropes & Gray

authorizing it to represent Cubaexport, as an authorization for payment of the fee.  On December

21, 2005, the USPTO withdrew the renewal fee from Ropes & Gray's account, but on April 6,

2006, OFAC informed Cubaexport and the USPTO that the Ropes & Gray license did not

authorize the payment.  OFAC invited Cubaexport to apply for a specific license, which

Cubaexport did the next day.

---

[4] The Trademark Law Revision Act of 1988 changed the standard renewal period for trademarks from 20 years to 10 years.  Trademark registrations that were issued or renewed prior to November 16, 1989, were effective for 20 years and renewable for 10-year periods thereafter.

[5] A renewal application is referred to as a "Section 9 filing" and a declaration of use or excusable non-use is referred to as a "Section 8 filing."  These are often filed together in a "Section 8/9 combined filing."

4

On July 20, 2006, the USPTO's Post-Registration Division issued an Office Action refusing to accept Cubaexport's renewal application, based on OFAC's view that the existing specific license to Ropes & Gray did not authorize the USPTO to accept payment of the required fee ("July 2006 Office Action"). The Office Action stated as follows:

> [T]he USPTO was informed that License No. CU-74488 does not authorize Ropes & Gray LLP to pay the renewal fee. Therefore, the required fee for the combined filing has not been paid. It is noted in a letter dated April 7, 2006, Ropes & Gray LLP filed an application for another specific license for authorization of payment of the fees required for renewal of the subject registration. Registrant is required to notify the USPTO whether the specific license has been granted or denied . . . within 6 months from the mailing date of this Office action. . . . If the owner [or OFAC] informs the USPTO that the specific license has been denied, . . . the registration will be deemed cancelled/expired.

R. at A233. A registrant must respond directly to the Post-Registration Division if it disagrees with an initial refusal to accept a trademark renewal application and may file a petition to the Director from a subsequent refusal. See 37 C.F.R. §§ 2.146, 2.186; USPTO, Trademark Manual of Examining Procedure ("TMEP") §§ 1604.18(a), 1606.14(a).

On July 28, 2006, OFAC informed Cubaexport that its application for a specific license was denied. R. at A247. Cubaexport notified the USPTO of the denial on August 1, 2006, id. at A237, which was within the six-month deadline. The USPTO responded by issuing a new Office Action, dated August 3, 2006 ("August 2006 Office Action"), id. at A258, that maintained the USPTO's refusal to accept Cubaexport's renewal application and stated that the registration would be cancelled or deemed expired for failure to submit the required fee. Id. The USPTO refunded Cubaexport's fee the same day. Unlike the July 2006 Office Action, the August 2006 Office Action did not provide for a further response to the Post-Registration Division, but informed Cubaexport of its right to "file a petition to the Director requesting review of this decision . . . within six months from the mailing of this letter." Id.

5

On October 4, 2006, Cubaexport filed a timely petition with the Director seeking to set aside the August 2006 Office Action. Id. at A260.  On December 6, 2006, the USPTO suspended the petition pending the outcome of Cubaexport's pending challenge to OFAC's 2006 denial of its request for a specific license. Id. at A410.  While the petition was suspended, cancellation of Cubaexport's "HAVANA CLUB" registration was also suspended.

On June 11, 2012, Cubaexport notified the USPTO that the OFAC litigation had concluded and that OFAC's decision to deny Cubaexport's request for a specific license to pay USPTO the fee had been upheld by a district court and affirmed by the court of appeals. Id. at A453.

The record is silent as to any action on the renewal application until 2015, when, in light of the different political climate for U.S.-Cuba relations, Cubaexport applied to OFAC for a new license authorizing all transactions necessary to process the 2006 renewal fee, including the payment that the USPTO had refused to accept in December 2005, as well as the fee that was required for an upcoming 2016 renewal. Id. at A466.  On January 11, 2016, OFAC granted the license authorizing Cubaexport to pay the fees due for the 2006 and 2016 renewals. Id. at A466–67.  As to the 2006 renewal, the OFAC license specifically authorized transactions "related to Cubaexport's submission filed with the USPTO on or about December 14, 2005, and the payment referenced therein." Id. at A467 § 1.  The next day, on January 12, 2016, Cubaexport supplemented its petition to the Director, which was still suspended, with a letter explaining that OFAC had issued a specific license authorizing all transactions necessary to renew and maintain the "HAVANA CLUB" and design trademark registration, including payment of the 2006

6

renewal fee. <u>Id.</u> at A464.  Invoking its supervisory authority under 37 C.F.R. § 2.146(a)(3),[6] the

Commissioner for Trademarks, acting on behalf of the USPTO Director, issued a decision

granting Cubaexport's petition and accepting its renewal application and fees. <u>Id.</u> at A468.  The

Director's decision stated that, because the OFAC license specifically authorized the December

14, 2005 payment, "the fee payment is effective as of December 14, 2005, and the combined

§8/9 filing is considered complete and acceptable as of that date." <u>Id.</u> at A470.  The Director's

decision also stated that, even if the OFAC license did not authorize the 2005 payment, any

payment deficiency was cured because the August 2006 Office Action stated that its denial

decision could be challenged by petitioning the Director; Cubaexport "filed a timely petition;"

and Cubaexport "satisfied the fee requirement by . . . providing the [OFAC] license to the

USPTO as a timely supplement to its petition, and authorizing the USPTO to charge any

uncollected fees to its counsel's USPTO deposit account." <u>Id.</u>

     The APA, 5 U.S.C. § 701 <u>et seq.</u>, confines judicial review of executive branch decisions

to the administrative record of proceedings before the pertinent agency.  5 U.S.C. § 706; <u>see also</u>

<u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973).  As such, there can be no genuine issue of material fact

in an APA action; rather, it is the legal questions presented in the civil action that are ripe for

resolution on cross-motions for summary judgment.  <u>See</u> <u>Am. Forest Res. Council v. Hall</u>, 533 F.

Supp. 2d 84, 89 (D.D.C. 2008) (quoting <u>Occidental Eng'g Co. v. INS</u>, 753 F.2d 766, 769–70 (9th

Cir. 1985)) ("[I]t is the role of the agency to resolve factual issues to arrive at a decision that is

supported by the administrative record, whereas 'the function of the district court is to determine

---

[6] "The Director may exercise supervisory authority on [a] petition in appropriate circumstances. 37 C.F.R. § 2.146(a)(3).  The facts here support the invocation of supervisory authority to accept petitioner's combined §8/9 filing." R. at A470.

whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'").

Under the APA, the Court may set aside the USPTO Director's decision to accept Cubaexport's 2006 renewal application only if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). This standard does not allow the Court "to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

To renew a trademark registration, a registrant must submit a Section 8 declaration of use or excusable non-use and file a Section 9 written renewal application at any time within 1 year before the end of the 10-year renewal period or within a 6-month grace period thereafter. 15 U.S.C. §§ 1058(a), 1059(a). A complete application, including the required fees, must be submitted within this statutory timeframe. "The Director cannot extend, suspend, or waive this statutory requirement for any reason, [not] even for an extraordinary situation." Soc'y of Tribologists & Lubrication Eng'rs, Ser. No. 75/445,159 (Dir. USPTO Feb. 1, 2023); In re Holland Am. Wafer Co., 737 F.2d 1015, 1018 (Fed. Cir. 1984) (holding that "[t]imeliness set by statute" cannot be waived).

The record shows that Cubaexport timely filed its renewal application by submitting all required forms, including an authorization for the USPTO to charge all fees to Ropes & Gray's USPTO deposit account on December 14, 2005—more than a month before its registration was due for renewal on January 27, 2006. Bacardi argues that Cubaexport's application was untimely because the required fee "was not [made] within the statutory renewal period, nor within the time prescribed after notification of the deficiency." [Dkt. 53] at 20. It claims that the December 2005 payment was untimely because the USPTO refunded the payment in August

8

2006 based on OFAC's determination that the Ropes & Gray license did not authorize the payment. Bacardi further argues that the Director cannot waive this lack of timeliness and therefore disregarded the law when she accepted Cubaexport's 2006 renewal application in 2016.

Bacardi's argument fails because the law provides that OFAC may issue a license authorizing a transfer of funds previously made in violation of the embargo and that such license "shall validate such transfer or render it enforceable to the same extent as it would be valid and enforceable but for the [CACR]. . . ." 31 C.F.R. § 515.203(c). Given this regulation, Cubaexport's December 2005 payment was timely in that it met all conditions for payment by providing authorization for the USPTO to charge all fees to a sufficiently funded deposit account, which would have been effective except for OFAC not having authorized the payment. OFAC's subsequent retroactive authorization in January 2016 effectively validated the payment as having been made as of December 14, 2005, which was within the statutory renewal period. Accordingly, the Director's finding that payment of the fee was timely and the decision to accept Cubaexport's 2006 renewal application was neither arbitrary nor capricious and was in accordance with the Lanham Act and its regulations.

Alternatively, the Director found that even if the OFAC license had not authorized the 2005 payment, any payment deficiency was cured. When Cubaexport timely filed its petition, cancellation of its registration was suspended. See 37 C.F.R. § 2.165 ("The petition must be filed within six months of the date of issuance of the action maintaining the refusal, or the Office will cancel the registration and issue a notice of the cancellation."). While the petition was pending, Cubaexport filed a new application for a specific license to pay the fee, which OFAC ultimately granted, thereby curing the deficiency. See 31 C.F. R. § 501.801(b)(5) ("Denial of a specific license does not preclude the . . . filing of a further application.").

9

JA567

Bacardi claims that the Director's decision disregarded the law and was arbitrary and capricious in granting the petition because Cubaexport had not cured the deficiency "within the time prescribed after notification of the deficiency," as required by 15 U.S.C. § 1509(a). Bacardi erroneously argues that Cubaexport was required to cure the deficiency and pay the fee within six months from the date of the July 2006 Office Action, that is, by January 20, 2007. [Dkt. No. 53] at 18.[7] That is not the case. Rather, as the Office Action clearly stated, Cubaexport had six months to respond to the refusal to renew its registration and inform the USPTO whether OFAC had granted or denied its request for a specific license to pay the fee, which it did. Once Cubaexport sought review of the examiner's refusal to renew its registration, there was no prescribed time period for curing the deficiency. Cubaexport was entitled to cure the deficiency while its petition was pending and, as explained below, the Director had supervisory authority to consider the sufficiency of Cubaexport's renewal application.

The Commissioner, on the Director's behalf, may exercise supervisory authority over a petition in appropriate circumstances, even where there has been no clear error or abuse of discretion by an examiner if a petitioner can show that it has substantially complied with the requirements of the statute or rules. 35 U.S.C. §2; 37 C.F.R. § 2.146(a)(3); TMEP § 1707 (2015); Soc'y of Tribologists, Ser. No. 75/445,159 (Dir. USPTO Feb. 1, 2023).

In Society of Tribologists, the Commissioner of Trademarks granted the petition and allowed payment of a Section 8/9 combined filing fee more than two years and eight months

---

[7] Bacardi cites 37 C.F.R. § 2.184(b)(1) as support for its argument. Bacardi misreads this regulation, which specifies the time in which to file a response: "The registrant must file a response to the refusal of renewal within six months of the date of issuance of the Office action, or before the expiration of the registration, whichever is later. If no response is filed within this time period, the registration will expire. . . ." There is no reference in § 2.184(b)(1) to a deadline by which a deficiency must be cured.

10

JA568

after the statutory period had expired.  In that case, the petitioner filed a Section 7 request for an amendment or correction of a registration certificate and provided a specimen showing its use of the mark.  On the Section 7 request form, the petitioner selected a box indicating that it was also filing a Section 8/9 combined filing.  Because petitioner mistakenly believed that checking the box on the form was sufficient to satisfy the combined filing requirements, it did not submit any additional documents or fees before the statutory deadline, and the USPTO cancelled the registration.  The Commissioner initially dismissed the petition for review, finding it had no authority to waive a statutory requirement.  In response, the petitioner filed a request for reconsideration based on its substantial compliance—that is, it had checked the combined filing box and filed a declaration of use in support of its Section 7 request, which also satisfied Section 8's requirement.  The Commissioner granted the request for reconsideration and granted the petition after finding that because the petitioner timely filed what it thought was a complete Section 8/9 combined filing, its application was timely filed but deficient and that the deficiencies could be cured after the statutory deadline.  "[W]hen a combined filing is filed within the statutory filing period but contains deficiencies, those deficiencies may be corrected after the statutory time period, with the payment of a deficiency surcharge." Soc'y of Tribologists (citing 15 U.S.C. §§1058(c), 1059(a); 37 C.F.R. §2.164, 2.185; TMEP §§1604.17 and 1606.13).  The Commissioner directed that the registration be reinstated and forwarded to the Post-Registration Division to identify additional requirements necessary for a complete combined filing.

Here, just as in the Tribologists matter, Cubaexport had substantially complied with the renewal application requirements because the Section 8/9 combined filing, along with the filing fee, was submitted to the USPTO within the statutory deadline.  The USPTO kept the filing fee

11

for several months until a subsequent determination that it could not accept the fee because Cubaexport did not have a specific license to pay the fee, thereby causing a deficiency. That deficiency was cured when the renewal and deficiency surcharge were paid. Accordingly, the Director's alternative reason for accepting Cubaexport's 2006 renewal application was also neither arbitrary nor capricious and was in accordance with the Lanham Act and its regulations.

For the reasons stated in open court, as further explained in this Order, plaintiff's Motion for Summary Judgment has been DENIED and defendants' Motion for Summary Judgment and intervenor-defendant's Motion for Summary Judgment have been GRANTED. Therefore, the January 13, 2016 decision of the USPTO Director will be AFFIRMED by an Order to issue with this Memorandum Opinion.

Entered this 4th day of March, 2025.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BACARDI & COMPANY LIMITED and          )
    BACARDI USA, INC.,                  )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )          1:21-cv-1441 (LMB/IDD)
                                        )
UNITED STATES PATENT & TRADEMARK        )
    OFFICE and COKE MORGAN STEWART,     )
    in her official capacity as the Acting Director  )
    of the United States Patent & Trademark  )
    Office,                             )
                                        )
            Defendants,                 )
                                        )
        and                            )
                                        )
EMPRESA CUBANA EXPORTADORA DE           )
    ALIMENTOS Y PRODUCTOS VARIOS.       )
                                        )
            Intervenor-Defendant.       )

## ORDER

For the reasons stated in open court and as further explained in the accompanying

Memorandum Opinion, defendants' and intervenor-defendant's Motions for Summary Judgment

[Dkt. No. 58 & 62] are GRANTED and plaintiff's Motion for Summary Judgment [Dkt. No. 52]

is DENIED.  Accordingly, it is hereby

ORDERED that the January 13, 2016 final decision of the Director of the U.S. Patent and

Trademark Office be and is AFFIRMED.

The Clerk is directed to update the name of the Acting Director of the U.S. Patent and

Trademark Office (as reflected in the above caption), forward copies of this Order and the

accompanying Memorandum Opinion to counsel of record, enter judgment in defendants' and

intervenor-defendant's favor pursuant to Fed. R. Civ. P. 58, and close this civil action.

Entered this ___4th___ day of March, 2025.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BACARDI & COMPANY LIMITED and BACARDI U.S.A. INC., <br><br>      Plaintiffs, <br><br>    v. <br><br> UNITED STATES PATENT AND TRADEMARK OFFICE, and COKE MORGAN STEWART, in her official capacity as the Acting Director of the United States Patent and Trademark Office, <br><br>      Defendants, <br>   and <br><br> EMPRESA CUBANA EXPORTADORA DE ALIMENTOS Y PRODUCTOS VARIOS, <br><br>     Intervenor-Defendant. | Civil Action No.:  1:21-cv-01441 (LMB/IDD) |

**NOTICE OF APPEAL**

   Notice is hereby given that Plaintiffs Bacardi & Company Limited and Bacardi U.S.A., Inc., above named, hereby appeal to the United States Court of Appeals for the Fourth Circuit from the Judgment entered in this action on March 5, 2025, (ECF No. 80), and all orders and rulings merged therein.

Dated:   Washington, DC
         April 2, 2025

COVINGTON & BURLING LLP


David M. Zionts (admitted *pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-5987

*Counsel for Plaintiffs Bacardi & Company*
*Limited and Bacardi U.S.A. Inc.*

Respectfully submitted,

KELLEY DRYE & WARREN LLP

  */s/ Joseph J. Green*
Joseph J. Green (Va Bar No. 40336)
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Phone: (202) 342-8849
Fax: (202) 342-8451
jgreen@kelleydrye.com

Michael C. Lynch (admitted *pro hac vice*)
Damon Suden (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
mlynch@kelleydrye.com
dsuden@kelleydrye.com